1  LIONEL SAWYER & COLLINS
   Samuel S. Lionel (NSB #1766)
2  Charles H. McCrea, Jr. (NSB #104)
   Christopher Mathews (NSB #10674)
3  Lauren D. Calvert (NSB #10534)
4  1700 Bank of America Plaza
   300 South Fourth Street
5  Las Vegas, Nevada 89101

6  Tel    (702) 383-8888
7  Fax    (702) 383-8845

8  Attorneys for Defendants FORUM SHOPS, LLC,
   FORUM DEVELOPERS LIMITED
9  PARTNERSHIP, SIMON PROPERTY GROUP
   LIMITED PARTNERSHIP, AND SIMON
10 PROPERTY GROUP, INC.

11

12                    **UNITED STATES DISTRICT COURT**

13                         **DISTRICT OF NEVADA**

14
   PHASE II CHIN, LLC and LOVE & MONEY,
15 LLC (formerly dba O.P.M.L.V., LLC),           Case No. 2:08-cv-00162-JCM-GWF

16                    Plaintiffs,

17 v.                                            **MOTION TO DISMISS OF
                                                 DEFENDANTS FORUM SHOPS, LLC,**
18 FORUM SHOPS, LLC, FORUM                       **FORUM DEVELOPERS LIMITED**
   DEVELOPERS LIMITED PARTNERSHIP,               **PARTNERSHIP, SIMON PROPERTY**
19 SIMON PROPERTY GROUP LIMITED                  **GROUP LIMITED PARTNERSHIP, AND**
   PARTNERSHIP, SIMON PROPERTY                   **SIMON PROPERTY GROUP, INC.**
20 GROUP, INC., CAESARS PALACE CORP.,
   and CAESARS PALACE REALTY CORP.

21                    Defendants.

22

23     Defendants FORUM SHOPS, LLC, FORUM DEVELOPERS LIMITED PARTNERSHIP,

24 SIMON PROPERTY GROUP LIMITED PARTNERSHIP and SIMON PROPERTY GROUP, INC.

25 (collectively "Defendants") move this Court to dismiss the Complaint filed herein by plaintiffs

26 PHASE II CHIN, LLC and LOVE & MONEY, LLC (collectively "Plaintiffs") for failure to state a

27 claim upon which relief can be granted. This Motion is made and based on FED. R. CIV. P. 12(b)(6),

28 the pleadings and papers on file herein, the exhibits attached here, the Memorandum of Points and

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

Authorities that follow and any oral argument permitted by the Court at a hearing on this Motion.

DATED this ___ day of March 2008.

LIONEL SAWYER & COLLINS

By: _____
      Samuel S. Lionel (NSB #1766)
      Charles H. McCrea, Jr. (NSB #104)
      Christopher Mathews (NSB #10674)
      Lauren D. Calvert (NSB #10534)
      1700 Bank of America Plaza
      300 South Fourth Street
      Las Vegas, Nevada 89101

      Tel   (702) 383-8888
      Fax  (702) 383-8845

Attorneys for Defendants FORUM SHOPS, LLC, FORUM DEVELOPERS LIMITED PARTNERSHIP, SIMON PROPERTY GROUP LIMITED PARTNERSHIP, AND SIMON PROPERTY GROUP, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PRELIMINARY STATEMENT

Plaintiffs have attempted to transform a garden variety commercial dispute into a highly-charged racial discrimination case. Plaintiffs' charges that Defendants have engaged in racial discrimination are not just incendiary, they are absolutely false and undescribably offensive. Plaintiffs have gone to great lengths to craft a pleading that implies solely "on information and belief" that Defendants' otherwise proper and lawful acts to address serious public safety concerns and to enforce the provisions of its Lease were unlawful and improper because they were motivated by a reprehensible "hostility towards and prejudice against African-Americans." In making these baseless charges, Plaintiffs are playing a race card they do not hold solely to cast Defendants in the most unfavorable light possible. Neither their slanderous allegations nor their scurrilous innuendos support the claims for relief Plaintiffs have asserted in their Complaint. As seen below, an objective

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

examination of each cause of action set forth in the Complaint -- separated from Plaintiffs' groundless histrionic allegations of racial discrimination -- must conclude with a FED. R. CIV. P. 12(b)(6) dismissal of all claims asserted.

## II.  **STATEMENT OF FACTS**

In 1990, defendants Caesar's Palace Realty Corp., as lessor, and Forum Developers Limited Partnership ("Forum Developers"), as lessee, entered into a ground lease on the property underlying the high-end retail mall now known as the Forum Shops at Caesar's Palace (the "Forum Shops").

On March 18, 1997, Forum Developers entered into a lease (the "Lease") with GGH Restaurant, LLC ("GGH") of premises in the Forum Shops to be used for the operation of a restaurant (the "Premises"). A copy of the Lease is attached hereto as Exhibit A. Plaintiff Phase II Chin, LLC ("Chinois") succeeded to GGH's rights and obligations under the Lease and now operates a restaurant on the Premises known as "Chinois".

On June 20, 2002 Chinois entered into an agreement with O.P.M.L.V., LLC ("OPM") granting OPM the right to use approximately 10,000 square feet on the second floor of the Premises as an after-hours club to be operated Wednesday through Sunday from 10:00 PM to 6:00 AM the following day (the "Club"). While the agreement is titled "Management Agreement," it is unarguably a sublease and will be referred to as such (i.e., hereafter the "Sublease"). A copy of the Sublease is attached hereto as Exhibit C.[1] Although the Lease prescribes that Chinois "shall not sell, assign or in any manner transfer this Lease or any interest therein, nor sublet all or any part of the Premises, nor license concessions nor lease departments therein, without Landlord's <u>prior written</u>

---

[1]  In drafting the Sublease (so-called "Management Agreement"), it appears that Chinois' lawyers simply took a standard (well drafted) commercial lease and performed a "global" substitution of the word "Manager" for "Tenant" and the word "Owner" for "Landlord". It is a "Management Agreement" in name only. Provisions such as those granting OPM the "exclusive right" to "use" or "utilize" a specific portion of the leasehold premises at specific times and those requiring OPM to pay a "security deposit" and what amounts to "minimum" rent and "percentage" rent based on "gross sales" belie any attempt to disguise the instrument.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

consent,"[2] no such consent was ever obtained.

On October 9, 2003, Forum Developers and Chinois executed an amendment to the Lease (the "Lease Amendment") expanding Chinois' right to use the Premises for the operation of "an after-hours club, with the sale of food and alcoholic beverages for on-premises consumption, along with live and/or pre-programmed music."[3] A copy of the Lease Amendment is attached hereto as Exhibit B.[4] The Lease Amendment grants <u>only</u> Chinois the right to use a portion of the Premises as an after-hours club and makes no mention of OPM or the pre-existing Sublease.[5]

Defendant Forum Shops, LLC ("Forum") is the present-day successor to all of the rights and obligations of Forum Developers under the ground lease, Lease and Lease Amendment.

---

[2] Lease, p. 20 §13.1 (emphasis added).

[3] Lease Amendment, p. 1 §1.

[4] The Lease Amendment was signed by "Chin-LV, LLC" as the manager of "Phase II Chin-LV, LLC". This appears to be a typographical error in that there is no entity known by that name. The entity that was intended to be named in the Lease Amendment is plaintiff Phase II Chin, LLC.

[5] Although Plaintiffs allege in the Complaint that Forum was provided a copy of the "Management Agreement" prior to the execution of the Lease Amendment (Complaint, ¶ 21), the point is irrelevant. The Lease <u>expressly</u> provides that Forum's written consent to any assignment or sublease is <u>not waived</u>, even if Forum has knowledge of the Sublease and actually collects rent from the sub-lessee. Section 13.1 of the Lease provides:

> If this Lease is assigned or the Premises or any part sublet or occupied by anybody other than Tenant without Landlord's <u>written</u> consent, Landlord may collect rent from the assignee, subtenant or occupant and apply the same to the rent herein reserved, but <u>no such assignment, subletting, occupancy or collection of rent shall be deemed a waiver</u> of any restrictive covenant contained in this Section 13.1 or of the acceptance of the assignee, subtenant or occupant as tenant, or a release of Tenant from the performance by Tenant of any covenants on the part of Tenant herein contained. [Emphasis added.]

*See In Re Ruby's Florida, Inc.*, 11 B.R. 171 (Bankr. Fla. 1981) (requirement of lessor's written consent to assignment of lease not waived by acceptance of rent from alleged assignee); *see also Shropshire v. Prahalis*, 419 S.E.2d 829 (S.C. 1992) *and K.&J. Markets, Inc. v. Martin Packing Corp.*, 90 A. 2d 507 (N.J. Super. 1952).

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

Although the Lease Amendment required Chinois to "operate the Club in a first class manner in keeping with the standards of the [Forum Shops],"[6] Chinois permitted the Club to be operated in a manner that openly countenanced unruly behavior on the part of its patrons, including public drunkenness, shouting of obscenities, urination and vomiting in public areas, fighting, vandalism to property of other tenants in the Forum Shops, and assault and battery of customers and security personnel. Such behavior of the Club's clientele required the repeated attention of Forum security personnel and Las Vegas Metropolitan Police.

Repeated incidents of unruly behavior by the Club's patrons ultimately compelled Forum to take action and, on March 6, 2006, Forum served written notice on Chinois declaring it in default of the Lease (the "Notice of Default"). A copy of the Notice of Default is attached as Exhibit D. The Notice of Default declared Chinois in default of the Lease by virtue of the Sublease to OPM and its failure to control the unruly behavior of its clientele. Chinois was informed that "[y]our failure to cure the defaults cited above within the period permitted by the Lease will cause Landlord to take those steps deemed necessary [which could] include, without limitation, termination of the Lease."[7]

Notwithstanding the Notice of Default, Chinois failed to cure compelling Forum to commence a declaratory judgment action in the Superior Court of the State of Delaware (the "Delaware Action").[8] Among other things, the Delaware Action seeks a declaration that "Chinois' assignment or sublease of a portion of the Premises to OPMLV, LLC constitutes an incurable default under and breach of the [Lease]." Delaware Action Complaint, p. 6.

On January 3, 2008, seeking to effect an end run around the Delaware Action, Chinois and its

---

[6] Lease Amendment, p. 1 §3.

[7] Notice of Default, p. 2.

[8] *Forum Shops, LLC v. Chin-LV, LLC*, Case No. 07C-10-0330 CLS, filed October 3, 2007, pending in the Superior Court of the State of Delaware in and for New Castle County. A copy of the Complaint for Declaratory Judgment (sans exhibits) is attached hereto as Exhibit E. Defendants

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

sub-lessee O.P.M. (now known as "Love & Money, LLC") commenced the instant action in the Eighth Judicial District Court, Clark County, Nevada. On February 7, 2008, defendants Caesars Palace Corp. and Caesars Palace Realty Corp. filed a Notice of Removal (Doc. No. 1) removing the action to this Court. Defendants filed a Consent to Removal (Doc. No. 5) on February 8, 2008.

The Complaint filed by Chinois and Love & Money, LLC ("L&M") purports to set forth eight causes of action: (1) Declaratory Relief, (2) Interference with Contractual Relations, (3) Interference with Prospective Business Advantage, (4) Injunctive Relief, (5) Violation of 42 U.S.C. §1981; (6) Breach of the Lease, (7) Conspiracy and (8) Breach of Implied Covenant of Good Faith and Fair Dealing. Not one of these purported causes of action pass muster under FED. R. CIV. P. 12(b)(6). All are subject to dismissal for Plaintiffs' failure to state a claim upon which relief can be granted.

### III.  SUMMARY OF ARGUMENT

A.      Chinois' first cause of action for declaratory relief seeks "a judgment declaring the following: (1) that Chinois has not violated Section 13.1 of the Lease; (2) that Chinois has not violated either Section 8.1 or 8.4 of the Lease; (3) that Forum is therefore entitled to no remedy against Chinois under the Lease; and (4) that Forum has breached the Lease." Complaint, p. 25. The purpose of the Declaratory Judgment Act, 28 U.S.C. §2201, is to afford a remedy to one who is uncertain of his or her rights and who desires an early adjudication thereof without having to wait to be sued. If the action for declaratory relief will not terminate the dispute and afford relief from uncertainty, a court should decline to entertain it. Here, there is a pre-existing declaratory relief action still pending in Delaware between the same parties, involving the same Lease and addressing the same issues. Since there is already a suit pending to resolve Chinois' uncertainty and this action will not terminate the dispute between the parties, Chinois cannot state a claim for declaratory relief.

request that the Court take judicial notice of the Complaint pursuant to FED. R. EVID. 201.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

B.     Plaintiffs' second cause of action, for intentional interference with contractual relations, requires an <u>actual disruption</u> of a contract effecting its termination or a denial of its benefits to the Plaintiff. Here, the contract allegedly "disrupted" is the Sublease between Chinois and OPM. There is no allegation in the Complaint that the contract has been terminated or that the Plaintiffs have been denied its benefits. The contract is still very much in effect. Moreover, Defendants' only alleged "interference" with that contract is Forum's privileged assertion in a court of law that the existence of the contract itself constitutes a breach of and default under the Lease. Until a court makes that determination, there will be no "actual disruption" of the contract. When that occurs, the "interference" will have the imprimatur of the court rendering the issue moot.

C.     Plaintiffs' third cause of action for intentional interference with prospective business advantage requires the Plaintiffs to allege a prospective contractual relationship between the Plaintiffs and a third party. Plaintiffs attempt to meet this requirement by alleging that a prospective contractual relationship existed between Chinois and OPM, on the one hand, and "actual and prospective patrons" of the Club on the other. Relationships with actual and prospective customers are too speculative to give rise to the requisite promise of future business advantage necessary to this tort. Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted.

D.     Plaintiffs' purported fourth cause of action for an injunction is not a claim for relief -- it is a remedy that is entirely dependent on Plaintiffs' ability to prevail on the merits of an underlying legally cognizable claim. Plaintiffs have not alleged a legally cognizable claim that would entitle them to any injunctive relief. All of the claims Plaintiffs attempt to assert in this action -- even if they were viable -- provide adequate legal remedies for their redress and, consequently, Plaintiffs state no claim entitling them to injunctive relief.

E.     Plaintiffs fifth cause of action for racial discrimination under 42 U.S.C. §1981 fails because: (a) Plaintiffs have not alleged that they are members of a protected class and lack standing

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

to bring such a claim; and (b) even if the claim was viable, it is barred by the applicable statute of limitations.

(a) 42 U.S.C. §1981 prohibits intentional discrimination based on the plaintiff's race. To establish a prima facie case, a plaintiff must show that he or she is a member of a protected class. Here, there are no allegations that Plaintiffs (both being for-profit corporations) have any racial identity whatsoever. Plaintiffs' claims are based entirely on allegations that Defendants discriminated against some (but not all) of Chinois' patrons. Because Plaintiffs have not asserted any discrimination based on their own racial identity and have no standing to assert discrimination claims on behalf of anyone else, they cannot state a prima facie case under 42 U.S.C. §1981.

(b) Claims under §1981 must be brought within two years. In their Complaint, Plaintiffs assert that the acts allegedly constituting racial discrimination by Defendants began "in or about January 2005." This action was not commenced until three years later, well beyond the expiration of the statutory period. Thus, even if Plaintiffs were capable of stating a viable §1981 claim, it would be time-barred.

F. In the sixth cause of action, Chinois alleges that Forum and Simon have breached the Lease by (a) failing to provide an adequate air conditioning system for the Premises and (b) violating the covenant of quiet enjoyment. Neither of these allegations, even if true, would constitute a breach of the Lease. Before considering either alleged breach, however, the Court must be statisfied that Chinois itself is not in breach of or default under the Lease by virtue of the unauthorized Sublease. Since the existence of the Sublease and the absence of any written consent thereto by Forum are unassailable facts, Chinois cannot meet an essential element of its claim for breach of contract. Even ignoring the unauthorized Sublease and its affect, an examination of the breaches alleged by Plaintiffs reveals that they are not breaches at all.

(a) With respect to the alleged failure of Defendants to provide air conditioning,

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

Section 7.1 of the Lease clearly and unequivocally provides that <u>Chinois "shall be responsible for the installation, maintenance, repair and replacement of air conditioning</u>, heating and ventilation systems exclusively serving the Premises, including all components such as air handling units, air distribution systems, motors, controls, grilles, thermostats, filters and all other components."[9]  In the face of this provision, Chinois can allege no facts upon which a claim for relief could be granted based on Defendants' failure to provide an adequate air conditioning system.

> (b)     Turning to Defendants' alleged breach of the covenant of quiet enjoyment, the covenant simply ensures that Chinois "shall peaceably and quietly hold and enjoy the Premises for the Lease Term without interruption by Landlord or any person or persons claiming by, through or under Landlord."[10]  Interference by a landlord rising to a breach of the covenant of quiet enjoyment must render the premises unfit or unsuitable for occupancy in whole or in substantial part for the purposes for which they were leased.  None of the acts alleged by Chinois deprived it of possession or occupancy of the Premises or impaired the character of the Premises, rendering them or any part unfit or unsuitable for occupancy.  Accordingly, Chinois has not stated a claim upon which relief can be granted for alleged breach of the covenant of quiet enjoyment.

> G.     In their seventh cause of action for conspiracy, Plaintiffs allege that Defendants conspired together to further unlawful objectives to cause damage to Plaintiffs.  This claim is defective for many reasons.  First, Plaintiffs have failed to allege facts sufficient to establish that there was an agreement between the Defendants, which is an essential prerequisite to a claim for conspiracy.  Second, the alleged unlawful objectives of the conspiracy are the subject of Plaintiffs' causes of action for breach of the Lease, intentional interference with contract and intentional interference with prospective business advantage.  Because each of these claims is defective in its own right, they cannot serve as unlawful objectives for purposes of establishing a claim for

---

[9]     Lease, p. 10 §7.1 (emphasis added).

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

conspiracy. Lastly, it is axiomatic that agents and employees of a corporation cannot conspire with their corporate principal where they act on behalf of the corporation and not as individuals for their individual advantage. In paragraph 11 of the Complaint, Plaintiffs allege, "At all times relevant hereto, defendants and each of them were the agents, servants, employees, employers, partners, co-owners and/or joint venturers of each other and of their co-defendants, and were acting within the color, purpose and scope of their employment, agency, ownership and/or joint ventures." Thus, Plaintiffs admit that each of the Defendants is an agent or employee of the other precluding a claim for conspiracy. Additionally, there are no allegations whatsoever to the effect that any defendant/agent acted for its individual advantage as opposed to the advantage of its corporate principal. Plaintiffs cannot state a claim upon which relief can be granted for conspiracy.

H.  Plaintiffs' eighth and last cause of action for breach of the implied covenant of good faith and fair dealing is rife with defects. First, there is no contract alleged to exist between Defendants and Plaintiff L&M, necessitating a summary dismissal of the claim as asserted by L&M. Second, there is no contract alleged to exist between any Defendant except Forum Developers, necessitating a summary dismissal of this claim as it is asserted against all other Defendants. Third, it is not at all clear from the Complaint whether the claim is asserted as sounding in contract or tort. To the extent Chinois asserts it as a tort claim, it must be dismissed because there is no allegation of the requisite "special relationship" between Defendants and Chinois necessary to elevate it to that level. Lastly, to the extent Chinois asserts it as a contract claim, it must be dismissed because the acts alleged to violate the covenant are the same acts alleged as a breach of contract -- acts that, as noted above, do not constitute breach.

. . . .

. . . .

---

[10] Lease, p. 28 §23.1.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

# IV.   **LEGAL DISCUSSION**

## A.   **Plaintiffs' Claims Must be Dismissed Pursuant to FED. R. CIV. P. 12(b)(6).**

### (1)   **The Motion to Dismiss Standard.**

Pursuant to FED. R. CIV. P. 12(b)(6), the court may dismiss a complaint for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Henkle v. Gregory*, 150 F. Supp. 2d 1067, 1071 (D.Nev. 2001), *quoting Smilecare Dental Group v. Delta Dental Plan*, 88 F.3d 780, 783 (9th Cir. 1996). In examining the Complaint, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001), *citing Assoc. Gen. Contractors v. Met. Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Attached to this Motion are copies of the Lease, Lease Amendment, Sublease and Notice of Default that are referred to extensively in the Complaint but not attached. *See, e.g.,* Complaint ¶¶ 14, 18, 19, 23, 32, 43-48, 52, 56, 66, 69, 72, 73, 75-77, 85, 90, 94, 95 and 102. If a document is not attached to a complaint, the district court may properly consider it on a motion to dismiss under RULE 12(b)(6) if the document is incorporated by reference into a complaint through the plaintiff's extensive referral to such document or if the document forms the basis of the complaint. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Here, Plaintiffs have referred extensively to the Lease, Lease Amendment, Sublease and

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

11 of 30

Notice of Default throughout their Complaint. The Lease, Lease Amendment and/or Sublease also form the basis of Plaintiffs' causes of action for declaratory relief, breach of lease, interference with contractual relations, conspiracy and breach of the covenant of good faith and fair dealing. Complaint, ¶¶ 71-78, 93-99. In ruling on this Motion, the Court may therefore properly consider the Lease, Lease Amendment, Sublease and Notice of Default although they were not attached to Complaint.

> **(2)** **Plaintiffs Have Failed to Aver the Necessary Elements of a Claim for Declaratory Relief (First Cause of Action).**

The Federal Declaratory Judgment Act ("the Act"), 28 U.S.C. § 2201, states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration[.]" Pursuant to the Act, "the court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." The court may decline to grant declaratory relief when it will not be effective in settling the controversy. *See* Notes of the Advisory Committee on Rules, Rule 57, 28 U.S.C.A., at p. 568 (1960).

Although a court "cannot decline to entertain an action as a matter of whim or personal disinclination," a declaratory judgment, like other equitable relief, is "granted only as a matter of judicial discretion, exercised in the public interest." *American Nat'l Fire Ins. Co. v. Hungerford*, 53 F.3d 1012, 1015 (9th Cir. 1995) (overruled on other grounds). The Act's purpose is to afford a remedy to one who is uncertain of his or her rights and who desires an early adjudication thereof without having to wait for his or her adversary to bring suit. *Shell Oil Co. v. Frusetta*, 290 F.2d 689, 691-92 (9th Cir. 1961). The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) when it will terminate and afford relief from the uncertainty, insecurity, and

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed. *Delno v. Market St. Ry. Co.*, 124 F.2d 965, 968 (9th Cir. 1942), *quoting* BOCHARD, DECLARATORY JUDGMENTS 299 (2d ed. 1941).

The conditions that must exist for declaratory relief to be appropriate are: (1) there must exist a justiciable controversy, that is, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legally protectible interest in the controversy; and (4) the issue involved in the controversy must be ripe for judicial determination. BORCHARD, DECLARATORY JUDGMENTS, pp. 26-57; *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-241 (1937). The bases for refusing declaratory relief include situations where declaratory relief: (1) would not finally determine the rights of the parties; (2) is being sought only to determine issues involved in a case already pending and can be properly disposed of in the pending case; or (3) would result in piecemeal trials of various controversies presented. *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342-43 (9th Cir. 1966), *quoting Yellow Cab Co. v. City of Chicago*, 186 F.2d 946, 950-51 (7th Cir. 1951).

Declaratory relief would be particularly inappropriate here because the same issues raised in this case are currently pending in a case before another court. A declaration by this Court as to which party is entitled to remedies under the Lease or who has violated the Lease will not constitute a "final determination of the rights of the parties" in the controversy, but rather will result in piecemeal litigation because of the pending case in Delaware. In the same vein, such relief will not serve the purpose of the Act in settling the parties' rights without having to wait for his or her adversary to bring suit, because a suit seeking adjudication of the parties' contract claims has already been brought. Plaintiffs have brought breach of lease and other contractual claims in the instant case and Defendants have brought an action for declaratory relief seeking the same relief in Delaware. For

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

these reasons, Plaintiffs' claim for declaratory relief should be dismissed.

**(3)** **Plaintiffs Have Failed to State a Claim for Intentional Interference with Contractual Relations (Second Cause of Action).**

Intentional interference with contractual relations is established where: (1) there exists a valid contract between a plaintiff and a third party; (2) the defendant knew of the contract; (3) the defendant committed intentional acts intended or designed to disrupt the contractual relationship; (4) there was an actual disruption of the contract; and (5) the plaintiff sustained damages as a result. *Hilton Hotels Corp. v. Butch Lewis Productions, Inc.*, 109 Nev. 1043, 1048, 862 P.2d 1207, 1210 (1993); *Sutherland v. Gross*, 105 Nev. 192, 196, 772 P.2d 1287, 1290 (1989). Although purely economic loss is recoverable in actions for tortious interference with contractual relations or prospective economic advantage, the interference must be intentional. *Local Joint Executive Bd. of Las Vegas, Culinary Workers Union, Local No. 266 v. Stern*, 98 Nev. 409, 411, 651 P.2d 637, 638 (1982).

Plaintiffs contend that Forum has acted intentionally to disrupt the unauthorized Sublease between Chinois and OPM. Complaint ¶¶ 75-77. There are several problems with this contention. Foremost, at least as to Forum, there is no valid contract between Chinois and OPM because the Sublease to OPM was in violation of the terms of the Lease.[11]

Even assuming the Sublease is valid, there has been no "actual disruption of the contract." The Club is still operating and, presumably, OPM is continuing to honor its obligations under the Sublease to Chinois -- certainly, there is nothing in the Complaint suggesting otherwise. At most, Plaintiffs have alleged that their relationship has been strained by Forum's privileged assertion in the Delaware Action that the Sublease constitutes a breach of and default under the Lease, but they have not made any allegations that there has been an <u>actual disruption of their contract</u>.

Because on the face of the Complaint the Sublease is invalid and because Plaintiffs have not pleaded that Defendants' acts have actually interrupted the contractual relationship between Chinois and OPM, their claim for intentional interference of contract must be dismissed.

---

[11] *See* Lease at p. 20, Article XIII (stating, "Tenant shall not…sublet all or any part of the Premises…nor lease departments therein, without Landlord's prior written consent in each instance").

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

**(4)** **Plaintiffs Have Failed to State a Claim for Intentional Interference with Prospective Business Advantage (Third Cause of Action).**

The elements of a claim for intentional interference with prospective economic advantage are: (1) a prospective contractual relationship between plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct. *Leavitt v. Leisure Sports, Inc.*, 103 Nev. 81, 88, 734 P.2d 1221, 1225 (1987). Improper or illegal interference is crucial to the establishment of this tort. *Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of Southern Nevada*, 106 Nev. 283, 287, n.1, 792 P.2d 386, 388, n. 1 (1990).

Here, Plaintiffs claim that a "prospective business and contractual relationship exists… between Chinois and OPM, on the one hand, and actual and prospective patrons of Chinois and OPM on the other." Complaint ¶ 80. However, Defendants' alleged "interference" is not illegal or improper. The acts taken by Defendants that led to an alleged business disruption, as pleaded by Plaintiffs, involved privileged and/or justified safety and security measures concerning individuals who were not their patrons. Complaint ¶ 51, 53-54, 58. Plaintiffs allege that Defendants have removed disruptive and violent individuals from the premises and surrounding areas. Complaint ¶¶ 37-41, 51, 53. However, Plaintiffs further allege these individuals were not their patrons; thus there has been no interference with a prospective business relationship regarding these individuals. *See id.* Plaintiffs also allege patrons have been inconvenienced by having to use alternate entrances to the Club when the Forum Shops close at 1:00 A.M.. Complaint ¶ 60. This does not prevent any relationship between Plaintiffs and their customers, and, as Plaintiffs have recognized, stems from security considerations following the publicized shooting that took place in Caesars' Casino. *Id.* at ¶58

Also fatal to Plaintiffs' claim, is their failure to allege any prospective <u>contractual relationship with their patrons</u>. Businesses normally do not have a contractual relationship with their at will patrons, and it is for this reason that competing businesses are permitted to solicit the customers of

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

their rivals without incurring liability for interference with prospective business advantage. *See Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1337 (9th Cir. 1980). Even as to relationships with repeat customers who will probably continue to visit its business and purchase its goods and services, alleged expectation of future and prospective sales to these customers, with which Defendants are alleged to have interfered, is too speculative to support this claim. *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-05340 JF, 2005 WL 802398, *8-9 (N.D. Cal. March 30, 2005). As in *Google*, the alleged relationship does not rise to the level of the requisite promise of future business advantage and dismissal is appropriate. *Id.*

### (5)    Plaintiffs Have Failed to State a Claim for Injunctive Relief (Fourth Cause of Action).

An injunction is a remedy, not a cause of action. To establish a right to an injunction, a plaintiff must first establish (1) that the defendant will violate a legal right of the plaintiff that will result in substantial injury and (2) that money damages are an inadequate remedy to redress that violation. *G.C. & K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1107 (9th Cir. 2003).

The injunction demanded by Plaintiffs here would order Defendants to: "(1) cease and desist from interfering with the contractual relationship between the Plaintiffs; (2) cease and desist from interfering with the prospective and actual business relationship between Plaintiffs and their actual and prospective patrons; (3) cease and desist from serving improper, baseless 'notices of default;' and (4) cease and desist the racially-motivated misconduct alleged herein." Complaint at pp. 25-26. To be valid, each of Plaintiffs' injunctive demands must be tied to a legally cognizable right of the Plaintiffs which, if violated, could not be redressed through the payment of money damages. *LaDuke v. Nelson*, 560 F. Supp. 158, 164 (E.D. Wash. 1982). Thus, it is incumbent upon the Court to examine the legally cognizable right underlying each demand. If Plaintiffs have failed to state a claim upon which relief can be granted with respect to that right, it follows that the request for injunctive relief to redress it also fails. If it is determined that Plaintiffs have stated a claim entitling

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

them to relief in the form of a Court sanctioned remedy, the Court must then determine whether that remedy must include an injunction. *See LaDuke v. Nelson*, 762 F.2d 1318, 1330 (9th Cir. 1985). Upon examination of the four injunctive demands made here by Plaintiffs, it is readily seen that there is no underlying basis to support them.

  (a) **Plaintiffs' demand that Defendants must "cease and desist from interfering with the contractual relationship between the Plaintiffs."**

   The underlying claim for this demand is Plaintiffs' purported second cause of action for "intentional interference with contractual relationship." As noted above (Section IV(A)(3), *supra*), Plaintiffs have failed to state a claim upon which relief can be granted for this tort. Accordingly, it must follow that the remedy of an injunction to redress this tort must also fail.

   Even if the underlying claim was viable, the proper remedy is not an injunction. One of the elements of this claim requires the plaintiff to prove the damages sustained as a result of the unlawful interference and it is the imposition of those damages against the defendant that is the plaintiff's remedy -- not an injunction.

  (b) **Plaintiffs' demand that Defendants must "cease and desist from interfering with the prospective and actual business relationship between Plaintiffs and their actual and prospective patrons."**

   The underlying claim for this demand is Plaintiffs' purported third cause of action for "interference with prospective business advantage." As noted above (Section IV(A)(4), *supra*), and for exactly the same reasons Plaintiffs are not entitled to injunctive relief as a remedy in connection with their second cause of action, they have no basis for seeking that remedy in connection with their third cause of action.

  (c) **Plaintiffs' demand that Defendants must "cease and desist from serving improper, baseless 'notices of default.'"**

   This demand is tied to no underlying cause of action at all. Neither law nor equity recognize a cause of action to preempt a landlord from seeking to enforce its rights under a lease. Moreover,

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

such an injunction clearly would be an unconstitutional prior restraint on the exercise of a defendant's First Amendment right of free speech. *See Alexander v. U.S.*, 509 U.S. 544 (1993) ("Permanent injunctions -- *i.e.*, court orders that actually forbid speech activities -- are classic examples of prior restraints"). Who would make the prior determination whether a notice of default is proper or improper? Furthermore, what damages are sustained by Plaintiffs if they are served with a notice of default even if it is improper and baseless?

> **(d)** **Plaintiffs' demand that Defendants must "cease and desist the racially-motivated misconduct alleged herein."**

The underlying claim for this injunctive demand is Plaintiffs' purported fifth cause of action for "violation of 42 U.S.C. §1981." As noted below (Section IV(A)(6), *infra*), even assuming all of the facts alleged by Plaintiffs in the Complaint were true, it is legally impossible for them to state a claim upon which relief can be granted for racial discrimination. Ignoring for a moment the expiration of the statute of limitations to bring such claim, Plaintiffs have no standing to assert a claim for racial discrimination under 42 U.S.C.      §1981 and, accordingly, they can assert no legally cognizable claim that would support the injunctive relief sought.

In addition, the order Plaintiffs seek, on its face, would be incapable of judicial supervision. A court has no way to monitor motivation -- something that is totally subjective. Injunctive relief will not be granted where: (1) the injunction cannot be enforced by the court, *Penn Central Co. v. Buckley & Co.*, 293 F. Supp. 653, 658 (D.C.N.J. 1968); *Bank v. Bank*, 23 A.2d 700, 705 (Md. 1942); (2) it would be inconvenient or inefficient to administer, *Bray v. Safeway Stores, Inc.*, 392 F. Supp. 851, 868 (N.D. Cal. 1975); or (3) such enforcement would require a continuous supervision by the court. *Unicon Management Corp. v. Koppers Co.*, 366 F.2d 199, 205 (2d Cir. 1966); *Dahlberg Bros., Inc. v. Ford Motor Co.*, 137 N.W.2d 314, 323 (Minn. 1965).

Finally, the law only punishes (or enjoins) unlawful conduct. So long as a defendant's conduct is lawful, motivation is irrelevant. *Banerjee v. Board of Trustees of Smith College*, 648 F.2d

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

61 (1st Cir. 1981).

For all of the foregoing reasons, Plaintiffs' purported fourth cause of action for "injunctive relief" must be dismissed.

> **(6)** **Plaintiffs Have Failed to State a Claim for Violation of 42 U.S.C. §1981 (Fifth Cause of Action).**

The Civil Rights Act of 1991 §101, 42 U.S.C. §1981 (1991), secures to all persons "the same right…to make and enforce contracts… and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." Noting its origins in Reconstruction Era legislation, the Supreme Court has limited §1981 to claims of racial discrimination and, to recover, a plaintiff must prove that the defendant acted against him or her with purposeful discriminatory intent. *Runyon v. McCrary*, 427 U.S. 160, 168-72 (1976); *Johnson v. Railway Express Agency, Inc.* 421 U.S. 454, 459-60 (1975); *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982); *Craig v. County of Los Angeles*, 626 F.2d 659, 668 (9th Cir. 1980).

In a §1981 action, the plaintiff must prove discriminatory intent to establish liability, and mere proof of disparate impact is insufficient. *General Bldg. Contractor's Ass'n, Inc.*, 458 U.S. at 390-91 (1982); *Sanders v. Culinary Workers Local No. 226*, 804 F. Supp 86, 96 (D.Nev. 1992). The plaintiff must prove that the defendant's action was motivated by racial considerations. *Smith v. Firestone Tire and Rubber Co.*, 875 F.2d 1325, 1328-30 (7th Cir. 1989). Establishing intentional discrimination on the basis of race involves a high threshold of proof. *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). Facially neutral conduct having the effect of burdening one race more than another does not violate §1981. *Croker v. Boeing Co.*, 662 F.2d 975, 989 (3d Cir. 1981) (overruled on other grounds). Where the alleged offender's actions were proper, a claim cannot be maintained, even if his or her reasons for taking the actions were allegedly improper. *Banerjee v. Board of Trustees of Smith College*, 648 F.2d 61 (1st Cir. 1981).

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

Additionally, to establish a violation of the clause in §1981 involving the right to make or enforce contracts, there must be a tangible interference with the injured party's economic interest. *Guy v. City of Phoenix*, 668 F.Supp. 1342, 1351 (D.Ariz. 1987). A plaintiff cannot state a claim under §1981's contract provision unless he or she has, or would have, rights under an existing or proposed contract that he or she wishes "to make and enforce." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006). Alternatively, if a plaintiff sues under the "full-and-equal benefit" clause of §1981, he or she must allege that state action contributed to the discrimination. *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 838 (8th Cir. 2004).

In the instant case, Plaintiffs allege that Defendants discriminated against Plaintiffs "in the making, performance, and attempted termination" of the Lease because of Defendant's "hostility to African-Americans in general and to Plaintiff's African-American patrons in particular." Complaint ¶ 90. Plaintiffs, however, misunderstand the essential nature of a §1981 claim. They cannot base their claims on the legal rights of their patrons or an entire generalized race of persons. This is so even if discrimination against these third parties also affects Plaintiffs.

Plaintiffs also misunderstand that it is not a disparate impact that matters in a §1981 claim; the crux of the claim is racially motivated conduct. All acts alleged by Plaintiffs, such as Defendants enforcing their rights under the Lease or taking certain security measures, are facially neutral and result in a disparate impact. This does not establish a §1981 claim. As already examined in Sections IV(A)(3) and (4) above, Plaintiffs also cannot establish an injury to their economic interests under the Lease resulting from Defendants' actions.

### (a) Plaintiffs Lack Standing to Assert a Claim Under 42 U.S.C. §1981.

A threshold question is whether Plaintiffs, as corporations, have standing to assert discrimination claims under 42 U.S.C. §1981. "At the most general level the standing inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

exercise." *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1057 (9th Cir. 2004). Constitutional standing is established where a plaintiff shows: (1) injury in fact that is either particularized, concrete, and actual or imminent; (2) injury that is traceable to the alleged acts of the defendants; and (3) it is likely, and not merely speculative, that the injury can be redressed by a favorable decision. *Id.* If a corporation either suffers discrimination cognizable under §1981 or has acquired an imputed racial identity, it is sufficiently within the statutory zone of interest to have prudential standing to bring an action. *Id.* at 1058-59. Prudential standing may exist for non-profit corporations suing to redress the injuries of its members, but a for-profit corporation will not generally be able to satisfy the "associational standing" tests. *Id.* at 1059.

In a §1981 action, the plaintiff must assert his or her own rights and cannot rest his or her claim on the legal rights of third parties -- even if the very same allegedly illegal act that affects the litigant also affects a third party. *Benjamin v. Aroostook Medical Center, Inc.*, 57 F.3d 101, 104-05 (1st Cir. 1995). One person cannot sue for the deprivation of rights of another, because §1981 prohibits only intentional discrimination based on the <u>plaintiff's</u> race. *Ramirez v. City of Reno*, 925 F.Supp. 681, 689 (D.Nev. 1996).

Here, the Plaintiffs are for-profit corporations and there are no allegations in the Complaint remotely suggesting that they have a particular racial identity. They do not claim to be minority-owned businesses or that they cater solely to a single minority group. Plaintiffs have not asserted any discrimination <u>because of their own racial identity</u>. Plaintiffs must assert their own rights, and cannot sue for the alleged deprivation of their customer's rights. Any racial discrimination suffered by Plaintiffs' customers will not be redressed by awarding damages to Plaintiffs. Because Plaintiffs rest their claim on the rights of third parties, they have no standing to maintain a claim under 42 U.S.C. §1981.

. . . .

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

(b) **Plaintiffs Cannot Establish the Requisite Elements of a §1981 Prima Facie Case.**

In a §1981 action, the plaintiff bears the initial burden of establishing a prima facie case by proving racial discrimination. *Bediako*, 354 F.3d at 839. A prima facie case of discrimination under §1981 is established where the plaintiff shows: (1) that he or she is a member of a protected class; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in §1981. *Id.* Even though such pleadings are to be viewed liberally, they cannot be conclusory and must state the claim in a manner which states a claim as a matter of law. *Id.*

First, although a segment of Plaintiffs' customers may be members of a protected class, Plaintiffs have not alleged that <u>they</u> are members of a protected class. As admitted, Plaintiffs' customers are of many different racial and ethnic backgrounds, not just African-American. Complaint ¶ 34. Plaintiffs' rest their claim on their African-American customers and African-Americans in general and not on <u>their own</u> racial status. As discussed above in Section IV(A)(4), there also has not been any interference with a protected activity because Plaintiffs have not entered into contracts with any of their patrons. Further, Plaintiffs have stated that Defendants' alleged actions were motivated primarily by the racially-neutral desire to evict Chinois because it pays below market rent for its space. Complaint ¶ 29.

Plaintiffs are unable to point to even one instance in which Defendants have committed racially motivated acts intended to harm Plaintiffs. Plaintiffs detail letters and visits from Defendants regarding Chinois' violations of the Lease, but these acts are, on their face, racially neutral and only allegedly disparately impact some of Plaintiffs' clientele. Complaint ¶¶ 42-50. A prima facie case cannot merely state in conclusory fashion that Defendants' actions were racially motivated. Nor can a prima facie case be established by reliance solely on disparate impact, which is all that Plaintiffs have alleged here.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

#### (c)      <u>Plaintiffs' §1981 Claim Is Barred by the Statute of Limitations.</u>

In actions brought under 42 U.S.C. §1981, courts apply the statute of limitations for personal injury actions. *Rodriguez-Garcia v. Municipality of Caguas*, 354 F.3d 91, 96 (1st Cir. 2004); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278-79 (5th Cir. 2004); *King v. American Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir. 2002).[12] In Nevada, the statute of limitations for personal injury actions is two years. NEV. REV. STAT. §11.190(4) (2005).

Here, Plaintiffs attempt to assert a cause of action pursuant §1981's contract provision and a two year statute of limitations applies. As pleaded by Plaintiffs, "Beginning in or about January 2005, Defendants engaged in an ongoing and concerted campaign of harassment and misconduct against Plaintiffs ... Plaintiffs are informed and believe ... one of these motives stems from Defendants' hostility towards, and prejudice against, African Americans...." Complaint ¶ 27. By their own account, even if they had standing to bring a cause of action under §1981, Plaintiffs would have had to commence it no later than January 2007, more than a year ago. Since Plaintiffs did not assert their §1981 claim within the period prescribed by the applicable statute of limitations, it must be dismissed.

#### (7)      <u>Plaintiffs Have Failed to State a Claim for Breach of Lease (Sixth Cause of Action).</u>

#### (a)      **Since Chinois Is in Material Breach of the Lease any Non-Performance by Defendants Is Excused.**

A lease is a contract that is subject to ordinary contract interpretation. *Solo Serve Corp. v.*

---

[12] Causes of action brought under provisions of 42 U.S.C. §1981 added by the Civil Rights Act of 1991 are governed by the four year statute of limitations provided in 28 U.S.C. §1658(a). *Thinket*, 368 F.3d at 1061. 42 U.S.C. §1981(b) was added by the 1991 Amendment to overturn the Supreme Court's interpretation of section (a) that workplace discharge was post-formation breach of contract and thus not protected by §1981. *Sanders*, 804 F. Supp at 96, n. 8. This means that employment discharge claims brought under §1981(b) will have a four year statute of limitations, but other claims brought under §1981, such as the claim brought here, are governed by the statute of limitations for personal injuries.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

*Westowne Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991). Breach of contract exists where there is: (1) a valid and existing contract entered into between plaintiff and defendant; (2) plaintiff performed or was excused from performance; (3) defendant breached; and (4) plaintiff sustained damages as a result of the breach. *Reichart v. General Insurance Co. of America*, 442 P.2d 377, 381 (Cal. 1968). "'Breach of contract' may be said to be a material failure of performance of a duty arising under or imposed by agreement." *Calloway v. City of Reno*, 116 Nev. 250, 256, 993 P.2d 1259, 1263 (2000) (overruled on other grounds). However, "[the] party who commits the first breach of a contract cannot maintain an action against the other for a subsequent failure to perform." *Bradley v. Nevada-California-Oregon Ry.*, 42 Nev. 411, 421, 178 P. 906, 908 (1919).

Chinois' execution of the Sublease with OPM constituted a material breach of the Lease. Consequently, Chinois cannot establish an essential element of its claim for breach of contract -- that it has performed, or been excused from performing, its obligations under the Lease. Because Chinois first breached the contract by subletting to OPM in violation of the Lease it cannot maintain an action against Defendants for any alleged subsequent breach.

>    **(b)     The Breaches of the Lease Claimed by Chinois Do Not Constitute Breaches at all.**

Chinois claims that Defendants have committed two breaches of the Lease: (1) "by failing to provide an adequate air conditioning system;" (Complaint ¶ 94) and (2) by violating "the Lease's covenant of quiet enjoyment through its harassment of Chinois." *Id.* Neither of these contentions is actionable.

>    **(i)     The Air Conditioning System.**

Pursuant to the Lease, "<u>Tenant shall be responsible for the installation, maintenance, repair and replacement of air conditioning, heating and ventilation systems</u> exclusively serving the Premises, including all components such as air handling units, air distribution systems, motors, controls, grilles, thermostats, filters and all other components." Lease at 10, section 7.1 (emphasis added). Apparently, Chinois did not bother to read the Lease before asserting that Defendants' had breached the Lease by failing to provide an adequate air conditioning system. Under the express

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1  terms of the Lease, the obligation to provide the air conditioning system was on Chinois, not
2  Defendants. This claim represents the epitome of Plaintiffs' lack of concern that their allegations of
3  wrongdoing on the part of Defendants have any foundation in fact.

(ii)    **The Covenant of Quiet Enjoyment.**

5          The covenant of quiet enjoyment is a promise that during the term of the tenancy, the tenant
6  will not be disturbed by the lessor or anyone claiming under him or her or by anyone asserting
7  paramount title. *Rahman v. Federal Management Co., Inc.*, 505 N.E.2d 548, 550 (Mass. App. Ct.
8  1987). The covenant is interpreted to secure the lessee against the acts of the lessor and requires that
9  the lessor refrain from voluntarily impairing the character and value of the leased premises. *Ripps v.
10 Kline*, 70 Nev. 510, 513, 275 P.2d 381, 382 (1954). The covenant of quiet enjoyment in a lease is
11 breached when an actual or constructive eviction occurs. *Standard Livestock Co. v. Pentz*, 269 P. 645,
12 647-48 (Cal. 1928). Constructive eviction occurs where the landlord's intentional conduct renders the
13 lease unavailing to the tenant or deprives the tenant of the beneficial enjoyment of the leased property
14 and causes the tenant to vacate the premises. *Veysey v. Moriyama*, 195 P. 662, 663  (Cal. 1921);
15 *Lindenberg v. MacDonald*, 214 P.2d 5, 9 (Cal. 1950). The interference by the landlord must render
16 the premises unfit or unsuitable for occupancy, in whole or in substantial part, for the purposes for
17 which they were leased. *Id.* at 662. Where a plaintiff admits to still being in possession of the
18 premises, he or she cannot state a claim for breach of the covenant of quiet enjoyment based on either
19 actual or constructive eviction, and the claim should therefore be dismissed. *Veysey*, 195 P. at 662;
20 *see also Duvall v. Craig*, 15 U.S. 45, 62 (1817) ("it is necessary to set forth in the breach…an actual
21 eviction or disturbance of the possession of the grantee").

22         Of all the acts Chinois has alleged Defendants have taken, none had the effect of impairing
23 the character of the leased premises. While the purported acts may have allegedly affected the
24 conduct of Plaintiffs' business, none of the acts affected the physical premises or Plaintiffs' right of
25 occupancy. Plaintiffs admit to still being in possession of the Premises. There is no eviction alleged
26 -- actual or constructive -- nor any claim that another has asserted paramount title to the Premises.
27 Chinois cannot state a claim upon which relief can be granted that Defendants breached the covenant
28 of quiet enjoyment.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

(8) **Plaintiffs Fail to State a Claim for Conspiracy (Seventh Cause of Action).**

Plaintiffs' seventh cause of action is titled "Conspiracy" but does not mention the term in the allegations comprising the cause of action or otherwise set forth the elements necessary to state a claim for conspiracy.

A civil conspiracy exists where: (1) two or more persons, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming plaintiff; and (2) plaintiff sustained damage resulting from their act or acts. *Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998). The claim must identify a combination between two or more persons, name the alleged parties to the conspiracy and identify the required unlawful object. *Morris v. Bank of America Nevada*, 110 Nev. 1274, 1276, 886 P.2d 454, 456 (1994); *Sutherland v. Gross*, 105 Nev. 192, 196, 772 P.2d 1287, 1290 (1989). To prevail, a plaintiff must prove an agreement between the tortfeasors. *Dow Chemical Co. v. Mahlum*, 114 Nev. 1468, 1489, 970 P.2d 98, 112 (1998) (overruled in part on other grounds).

> [W]e hold that stating [a claim for conspiracy under the Sherman Act] requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. . . . In identifying facts that are suggestive enough to render a ... conspiracy plausible, we have the benefit of the prior rulings and considered views of leading commentators, already quoted, that lawful parallel conduct fails to bespeak unlawful agreement. It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a [conspiracy] claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

*Bell Atlantic Corp. v. Twombly*, __ U.S. __, __, 127 S. Ct. 1955, 1966 (2007).

Here, Plaintiffs have alleged no facts suggesting that there was an agreement between the Defendants -- much less, an unlawful agreement. The Complaint alleges only that the "Defendants, and each of them, acted in concert, directly or through common agents." This falls far short of the requirements mandated by the U.S. Supreme Court in *Twombly*. Plaintiffs have not even made "a

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

conclusory allegation of agreement," which, standing alone, still would be insufficient but at least a start.

Beyond Plaintiffs' failure to allege facts -- or even conclusory allegations -- suggesting an agreement between Defendants essential to a conspiracy claim, they also fail to allege facts suggesting that Defendants engaged in any unlawful acts. The gist of a civil conspiracy is not the unlawful agreement itself but the damage resulting from that agreement or its execution. *Eikelberger v. Tolotti*, 96 Nev. 525, 528, 611 P.2d 1086, 1089 (1980). The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants that cause injury to the plaintiff. *Id.* "[T]he existence of an alleged civil conspiracy must be established by *clear*, *cogent*, and *convincing* evidence." *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984) (emphasis in original).

The unlawful objectives alleged by Plaintiffs are "(i) improperly invoking remedies under the Lease, including termination of the Lease, (ii) intentionally disrupting the contractual relationships between Chinois and O.P.M.L.V.; and (iii) improperly disrupting the contractual relationships between Chinois and O.P.M.L.V., on the one hand, and actual and prospective patrons of Chinois and O.P.M.L.V. on the other." Complaint ¶ 98. However, as seen in Sections IV(A)(3), (4) and (7) above, none of these "objectives" is sufficient to form the basis of a claim upon which relief can be granted. It follows that none of these objectives is unlawful and therefor cannot serve to meet the second essential element of Plaintiffs' claim for conspiracy.

Finally, it is axiomatic that agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in the scope of their authority on behalf of the corporation and not as individuals for their individual advantage. *Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 303, 662 P.2d 610, 622 (1983); *Laxalt v. McClatchy*, 622 F.Supp. 737, 745 (D.Nev. 1985). If defendants are not acting as individuals for their individual advantage, no unlawful combination of persons can exist upon which a plaintiff can premise his or her claim of civil conspiracy. *Collins*, 99 Nev. at 303, 662 P.2d at 622.

The Simon Defendants manage the property of Forum and are agents of Forum. Forum in

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

turn acts as an agent of the Caesars defendants. This is acknowledged by Plaintiffs. At paragraph 11 of the Complaint, Plaintiffs allege:

> At all times relevant hereto, defendants and each of them were the agents, servants, employees, employers, partners, co-owners and/or joint venturers of each other and their co-defendants, and were acting within the color, purpose and scope of their employment, agency, ownership and/or joint ventures....

Because agents of a corporation cannot conspire with their corporate principal or employer and because Plaintiffs affirmatively allege that each Defendant was "[a]t all times" the agent or employee of the others and was "acting within the color, purpose and scope of their employment [and] agency," Plaintiffs have not and cannot allege a combination of two or more persons conspiring together. Consequently, Plaintiffs' claim for conspiracy must be dismissed.

### (9)    Plaintiffs' Fail to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Eighth Cause of Action).

Where the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing. *A.C. Shaw Constr. v. Washoe County*, 105 Nev. 913, 914-15, 784 P.2d 9, 9-10 (1989). Where the actions allegedly constituting a violation of the covenant of good faith and fair dealing are also a violation of the contract itself, those claims are properly asserted as a breach of contract claim. *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 120 Nev. 277, 287, 287-88, 89 P.3d 1009, 1016 (2004); *Hilton Hotels Corp. v. Butch Lewis Prods.*, 107 Nev. 226, 233-34, 808 P.2d 919, 923-24 (1991).

*A.C. Shaw Constr.*, 105 Nev. at 914-15, 784 P.2d at 9-10, notes the difference between a tort action and contract action in good faith covenant cases. The tort action for breach of the covenant of good faith and fair dealing (sometimes called a "contort" because of its hybrid contract-tort nature) must not be confused with the essentially contract form of the claim. The tort remedy is necessarily a narrow one found, for example, in insurance cases (*see United States Fidelity & Guar. Co. v. Peterson*, 91 Nev. 617, 620, 540 P.2d 1070, 1071 (1975)) and certain highly restricted wrongful discharge cases (*see K Mart Corp. v. Ponsock*, 103 Nev. 39, 51, 732 P.2d 1364, 1372 (1987)). Although "every contract contains an implied covenant of good faith and fair dealing, an action in

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

tort for breach of the covenant arises only in rare and exceptional cases when there is a special relationship between the victim and the tortfeasor." *Ins. Co. of the West v. Gibson Tile, Co., Inc.*, 122 Nev. 455, 134 P.3d 698, 702 (2006).

> A special relationship is characterized by elements of public interest, adhesion… fiduciary responsibility [and]… a special element of reliance. We have recognized that in these situations involving an element of reliance, there is a need to protect the weak from the insults of the stronger that is not adequately met by ordinary contract damages. In addition, we have extended the tort remedy to certain situations in which one party holds vastly superior bargaining power.

*Id.* (internal citations omitted).

Here, Plaintiffs merely claim there exists a duty of good faith and fair dealing -- which is of course present in every contract -- and that Defendants breached by "failing to perform in a manner that was faithful to the purpose of the Lease by failing to comply with the terms and conditions of the Lease, and failing to exercise diligent and good faith efforts… with respect to fulfilling their obligations under the Lease." Complaint ¶¶ 101-02. Because the latter two alleged breaches would also constitute breach of the Lease itself, they are properly asserted as such and not as breaches of the implied covenant of good faith and fair dealing. Although Plaintiffs claim Defendants failed to perform in a manner faithful to the Lease, as previously discussed, Plaintiffs first materially breached the Lease by subletting the Premises and Defendants' "unfaithful" acts were necessary for security reasons or authorized pursuant to the Lease.

Moreover, there can be no valid claim for tort damages even assuming that there was a breach since Plaintiffs have not pleaded a special relationship which is a condition precedent to a viable claim for tort damages. The elements of adhesion, fiduciary responsibility, and a special element of reliance are not present in this situation where sophisticated business entities are engaged in a landlord/tenant relationship. Because Plaintiffs' Complaint does not contain any facts to suggest the existence of the required special relationship or adequately allege a breach, Plaintiff's tortious breach claim must be dismissed.

Finally, in their claim for breach of the implied covenant of good faith, Plaintiffs seek damages in favor of both Chinois and OPM and against all of the Defendants. However, the only parties to the contract that is the subject of the claim are Forum and Chinois. OPM is not properly a

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1  party to this claim, nor are any of the other Defendants. Consequently, at a minimum, the claim must

2  be dismissed as to OPM and all Defendants except Forum.

3  **IV.    CONCLUSION**

4      For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint in its entirety.

5      DATED this ___ day of March 2008.

6                                              Respectfully submitted,

7                                              LIONEL SAWYER & COLLINS

8
9                                              By: _____
                                                   Samuel S. Lionel (NSB #1766)
10                                                 Charles H. McCrea, Jr. (NSB #104)
                                                   Christopher Mathews (NSB #10674)
11                                                 Lauren D. Calvert (NSB #10534)
                                                   1700 Bank of America Plaza
12                                                 300 South Fourth Street
                                                   Las Vegas, Nevada 89101
13
14                                                 Tel     (702) 383-8888
                                                   Fax     (702) 383-8845
15
                                               Attorneys for Defendants FORUM SHOPS,
16                                             LLC, FORUM DEVELOPERS LIMITED
                                               PARTNERSHIP, SIMON PROPERTY GROUP
17                                             LIMITED PARTNERSHIP, AND SIMON
                                               PROPERTY GROUP, INC
18

19

20

21

22

23

24

25

26

27

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

30 of 30