HAROLD P. GEWERTER, ESQ.  E-filed: 7/7/2008
Nevada Bar No. 499
HAROLD P. GEWERTER, ESQ., LTD.
5440 W. Sahara Avenue, Third Floor
Las Vegas, Nevada 89146
Telephone: (702) 382-1714
Fax: (702) 382-1759
Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \* \*

| | |
|---|---|
| PHASE II CHIN, LLC and LOVE & MONEY, LLC, formerly O.P.M.L.V., LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>FORUM SHOPS, LLC, FORUM DEVELOPERS LIMITED PARTNERSHIP, SIMON PROPERTY GROUP LIMITED PARTNERSHIP, SIMON PROPERTY GROUP, INC., CAESARS PALACE CORP, CAESARS PALACE REALTY CORP., DOES 1 through 20, AND ROE CORPORATIONS 1 through 20,<br><br>Defendants. | Case No. 2:08-cv-00162-JCM-GWF |

**PLAINTIFF, LOVE & MONEY, LLC'S OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS FORUM SHOPS, LLC, FORUM DEVELOPERS LIMITED PARTNERSHIP, SIMON PROPERTY GROUP LIMITED PARTNERSHIP, AND SIMON PROPERTY GROUP, INC. and OPPOSITION TO MOTION TO DISMISS THE CAESARS DEFENDANTS**

COMES NOW, Plaintiff, LOVE & MONEY, LLC, formerly O.P.M.L.V., LLC, by and through its counsel of record, HAROLD P. GEWERTER, ESQ., of the law firm of HAROLD P. GEWERTER, ESQ., LTD., and hereby opposes Defendants' Simon and Forum's Motion to

1

Dismiss, and further opposes the Defendant Caesars Motion to Dismiss (which is really a Joinder in Simon and Forum's Motion to Dismiss). This Opposition is based upon the attached points and authorities, all pleadings and papers on file herein, and any arguments that may be adduced at the time of hearing on this matter.

Additionally, Plaintiff OPM hereby incorporates and adopts all arguments made by Plaintiff Phase II Chin, LLC, in its Opposition to the Motion to Dismiss being filed today, which are not otherwise inconsistent with Plaintiff OPM's Opposition Motion herein.

## POINTS AND AUTHORITIES

### I.

### FACTS

On or about June 1, 1990, Defendant Caesars Palace Realty Corp. and Defendant Forum Developers Limited Partnership entered into a ground lease pursuant to which Defendant Forum Developers Limited Partnership acquired possession of The Forum Shops. On or about March 18, 1997, Defendant Forum Developers Limited Partnership and GGH Restaurant, LLC ("GGH") entered into a Lease (the "Lease") pursuant to which the latter leased from the former certain premises in The Forum Shops at Caesars Palace for the operation of a restaurant. Plaintiff Phase II Chin, LLC has succeeded to GGH's rights and obligations under the Lease and is operating Chinois-Las Vegas in the leased premises. Defendant Forum Shops, LLC has succeeded to Defendant Forum Developers Limited Partnership's rights and obligations under the Lease. The Forum and Simon Defendants are sometimes collectively referred to as Forum or Simon and the Caesar Defendants are sometimes referred to as Caesar.

In March of 2002, Tom Kaplan ("Kaplan"), managing member of Chinois, informed Gary Lewis ("Lewis") of Defendant Simon that Chinois was "in the process of formulating letters of intent with two potential groups with whom [Chinois] wish[ed] to jointly operate a first-class lounge on the second floor of Chinois". In June of 2002, Chinois entered into a Management Agreement with Plaintiff O.P.M.L.V. pursuant to which O.P.M.L.V. would operate a night club on the second floor of Chinois. The Management Agreement did not assign or

transfer any of Chinois's rights or obligations under the Lease to Plaintiff O.P.M.L.V. and did not in any respect constitute a sublease of the leased premises.

In November of 2002, Kaplan wrote Lewis again informing him that the lounge would be called OPM and would be managed by O.P.M.L.V. in conjunction with Chinois. In an email message of December 1, 2002, Lewis informed Kaplan in writing that the lounge had been approved. Lewis reiterated this approval in a letter to Kaplan of January 28, 2003 on "Simon Property Group" letterhead. Forum was provided a copy of the Management Agreement on July 10, 2002. Effective October 9, 2003, after Plaintiff OPM had been in operation for five (5) months, at Simon's suggestion, the parties executed an amendment to the Lease to permit Chinois to operate Plaintiff OPM in part of the leased premises Wednesdays through Sundays from 10 p.m. until 6 a.m. each following morning.

Defendants have engaged in a pattern of harassment and misconduct against the Plaintiffs. Almost every time there has been any sort of security problem in any way involving an African-American anywhere in the Forum or Caesars Palace complex, Defendants have sought to blame Plaintiffs, even when it can be clearly demonstrated that the persons involved were not Plaintiff OPM patrons and when the problems have arisen in The Forum Shops' common areas or on Caesars property. Defendants have discriminated against Chinois and Plaintiff OPM, and treated Chinois, and by extension Plaintiff OPM, differently, and less favorably, than other similarly situated tenants of The Forum Shops. Additional details of Defendants' harassment and misconduct are laid out in detail in Plaintiffs' Complaint.

## II.

## ARGUMENT

### A. Standards relating to the Motion to Dismiss.

Defendant's Motion to Dismiss is based upon allegations of fact and exhibits which are not included in nor attached to the Complaint. Unless the Court converts the Rule 12(b)(6) motion into a summary judgment motion or the defense is apparent from matters of which a court may take judicial notice the court **cannot** consider material outside the complaint. *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 925 (9th Cir. 2001). None of the attachments

to Defendant's Motion, however, dispute the facts as laid out in the Complaint. Defendant's interpretation of those documents is not in line with that of Plaintiff, but such interpretation cannot be considered by the Court in a Motion to Dismiss. The Complaint must be construed on the assumption that *all of its allegations are true* ... even if doubtful in fact. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct 1955, 167 L.Ed 2d 929 (2007). Each of the causes of action in the Complaint are well pled and state a cause of action upon which relief can be granted despite the interpretations and allegations contained in Defendant's Motion.

Pursuant to F.R.C.P. 12(b)(6), the Court may dismiss a complaint only for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Henkle v. Gregory,* 150 F. Supp. 2d 1067, 1071 (D.Nev. 2001), *quoting Smilecare Dental Group v. Delta Dental Plan,* 88 F.3d 780, 783 (9th Cir. 1996). All of the causes of action in the Complaint both lay out a cognizable legal theory and contain sufficient facts under such claims.

Defendant Forum's Motion to Dismiss is 30 pages long with over 100 pages of exhibits. It seems illogical that if Plaintiff's Complaint had not laid out any facts to support cognizable claims, as Defendants claim, that it would take over 130 pages to refute facts which Defendants claim do not exist. Thus the very length and depth of Defendants Motion is an argument against granting their Motion.

Defendants' Motion to Dismiss attempts to ignore the almost 15 pages of facts contained in Plaintiff's Complaint and treats such Complaint as if such facts were not incorporated into each cause of action. In fact, each cause of action specifically notes that it incorporates all of the previously stated allegations in the Complaint into such cause. Perhaps Defendants, in their Motion to Dismiss, choose to ignore the pleading of such facts as such facts and allegations doom their Motion to Dismiss to denial.

**B.  Plaintiff's First Cause Of Action For Declaratory Relief Is Sufficiently Pled.**

The sole basis for Defendants' allegation that the first cause of action for declaratory relief is insufficient is that a matter has been filed in another jurisdiction. If this reasoning were allowed to stand, then all one would have to do to dismiss a complaint is to file for similar relief in separate court. Defendants cite no case law to support this opinion. In this case, the real

property subject to the dispute exists in this jurisdiction, the Lease was signed in this jurisdiction, all activities which are in dispute occurred in this jurisdiction, and the majority of witnesses who would be called to testify reside in this jurisdiction. If the Defendants wish to have certainty and avoid piecemeal litigation, they should dismiss the suit they brought in Delaware and allow this litigation to proceed. Regardless of other actions filed in regard to these matters, however, the instant matter filed before this Court seeks to determine the rights and responsibilities of parties and property mainly present in this jurisdiction and this Court should proceed to determine those rights. Moreover, Plaintiff OPM is not a named party in the Delaware litigation.

The declaratory relief requested in this case both would serve a useful purpose in clarifying and settling the legal relations at issue here and would terminate and afford relief from the uncertainty, insecurity and controversy which gave rise to this proceeding. Plaintiffs have asked that this Court declare that "(1) that Chinois has not violated Section 13.1 of the Lease; (2) that Chinois has not violated either Section 8.1 or 8.4 of the Lease; (3) that Forum is therefore entitled to no remedy against Chinois under the Lease; and (4) that Forum has breached the Lease. Not only would such declarations by this Court serve a useful purpose in clarifying and settling the legal relations at issue and afford relief from uncertainty but would also serve as a buttress to the Court having to retry this matter over and over as without a declaratory resolution of these issues, Defendants would allege breach for the same set of facts over and over again in an attempt to so burden Plaintiffs with attorney and court fees so as to cause Plaintiffs to vacate the premises rather than face financial destruction.

### C. Plaintiff's Second Cause Of Action For Intentional Interference With Contractual Relations States A Claim Upon Which Relief Can Be Granted.

Defendants state two (2) contentions to support their argument that the second cause of action is insufficient. The first is that the Management Agreement entered into by Plaintiffs is a violation of the original Lease. Once again Defendants fail to cite facts, such as actual language of the Management Agreement, which violate the original Lease, but simply contend the entire document is a violation. Even if the Court were to find that the Management Agreement constituted a Sublease, as we have already seen, the Plaintiffs were given written consent to enter

into such agreement as required in the Lease. The Court need not even reach this analysis in reviewing the Motion to Dismiss, however, because the standard for review of a 12(b)(6) Motion states that the Complaint must be construed on the assumption that *all of its allegations are true* ... even if doubtful in fact. *Bell Atlantic Corp. supra.*

Here, Plaintiffs' Complaint avers that "The Management Agreement did not assign or transfer any of Plaintiff CHINOIS' rights or obligations under the Lease to Plaintiff O.P.M.L.V. and did not in any respect constitute a sublease of the leased premises." See Complaint paragraph 19. Thus the Court must assume, as is in fact the case, that the Management Agreement is not a sublease and does not violate the terms of the Lease.

Additionally, Defendants contend that there has been no "disruption" of the business relationship between Plaintiff and its business partners because the Management Agreement has not been terminated. Once again, Defendants make a legal assumption not based in law or fact. Defendants cite no law which requires termination of a business relationship to support this cause of action. In fact Plaintiffs lay out in great detail the actions which Defendants took to disrupt the business relationship and the actual disruption which occurred. See Complaint paragraphs 27-70. As the Court must accept these allegations as true, the Complaint states a cause of action and should deny the Motion to Dismiss this cause of action.

Defendants claim further ignores the actual terms of the Management Agreement. Paragraph 8.1 requires Plaintiff OPM to purchase its food from Chinois and 8.1(d) further sets out payment for such food products. In addition, Paragraph 12 of the Management Agreement sets out a fee due to Chinois based upon a percentage of the gross sales of Plaintiff OPM. Thus Defendants actions, which have clearly slowed the traffic stream and thus the revenue and food sales of Plaintiff OPM, have disrupted the relationship between Plaintiffs.

**D.** **Plaintiff's Third Cause Of Action For Intentional Interference With Prospective Business Advantage States A Claim Upon Which Relief Can Be Granted.**

Defendants' next contentions once again insist the Court ignore the allegations contained in the Complaint and instead substitute those of the Defendants in order to rule on the Motion.

The Complaint alleges numerous means by which Defendants obstructed Plaintiff's business, not only with its business partners through the harassment involving the Lease terms, but also by blocking the entrances to the establishment and failing to provide for vital utilities required for proper functioning of the establishment. While it may be true that a rival may attempt to woo customers from its competitors, it is not legally permissible for a landlord to prevent those customers from entering the premises of a tenant, or to make the environment of those premises such that the patrons cannot enjoy the premises. Clearly the harassment of individuals of the race or ethnicity who normally attend Plaintiff OPM and requiring such patrons to come in through rear service entrances clearly obstructs Plaintiff's business. These are some of the actions that are alleged in the Complaint and must be treated by the Court as true, and form the basis for this cause of action. In addition such actions have made it difficult for Plaintiffs to gain long term regular customers.

### E. Plaintiff's Fourth Cause Of Action For Injunctive Relief States A Claim Upon Which Relief Can Be Granted.

Defendants' attack on Plaintiff's fourth cause of action is simply a derivative of its attacks on the other causes of action contained in the Complaint. As each cause of action stands on its own as well plead and justifiable, each request for injunctive relief is equally valid. The Court should deny the Motion to Dismiss injunctive relief claims as each of the underlying claims is valid. Defendant have offered no defense against injunctive relief should the Court find against Defendants' Motion in the other causes of action.

Plaintiff in establishing a right to an injunction must establish (1) that the Defendant will violate a legal right of the Plaintiff that will result in substantial injury and (2) that money damages are an inadequate remedy to redress that violation. *G.C. & K.B. Investments, Inc. v. Wilson,* 326 F. 3d 1096, 1107 (9th Cir. 2003). In this case, Plaintiff has asked for an injunction ordering Forum to: (1) cease and desist from interfering with the contractual relationship between the Plaintiffs, (2) cease and desist from interfering with the prospective and actual business relationship between Plaintiffs and their actual and prospective patrons; (3) cease and

desist from serving improper, baseless "notices of default" and (4) cease and desist the racially-motivated misconduct alleged herein.

All of these requested injunctions seek to prevent a substantial injury which money damages are inadequate to redress. Neither patrons or passers-by have any way to know whether their harassment and racial discrimination are emanating from Plaintiff OPM or from Defendants, thus not only will Plaintiffs current reputation and business be damaged but the stigma of racism may follow Plaintiffs for years and years and financial damages can never completely redress such injury.

### F. Plaintiff's Fifth Cause Of Action For Violation of 42 USC 1981 States a Claim Upon Which Relief Can Be Granted.

Defendants cite two (2) basic arguments for its contention that the fifth cause of action is without merit. The first is that Plaintiffs lack standing to bring these claims and the second is that the claim is barred by the statute of limitations. The statute of limitations issue is easily dealt with as Defendants have simply ignored the allegations contained in the Complaint and choose to mislead the Court regarding the time frame of the Complaint. While it is true that Defendants' harassment of Plaintiff OPM, its business associates and it patrons began in 2005, there are multiple instances of Defendants ongoing misconduct cited in the Complaint within the two (2) year statute of limitations, from February of 2006 to November of 2007. See Complaint paragraphs 40-72. Defendants harassment of Plaintiffs is ongoing to this day. Defendants' willful omission of these allegations shows the baseless character of its objections to the Complaint. In *TwoRivers v. Lewis,* 174 F. 3rd 987 (9th Cir. 1999), the Court held "Dismissal on the statute of limitations grounds can be granted pursuant to F.R.C.P. 12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would not permit the Plaintiff to prove that the statute was tolled'. Clearly any reasonable reading of the Complaint in this case shows that the ongoing actions complained of herein are within the statute of limitations and thus Defendants statute of limitations argument must fail.

Defendant's second contention is that Plaintiffs lack standing to pursue this cause of action. To establish a claim under § 1981, a Plaintiff must allege facts in support of the following

elements: (1) Plaintiff is member of racial minority; (2) intent to discriminate on basis of race by Defendant; and (3) discrimination concerned one or more of the activities enumerated in statute. *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, (2nd Cir. 1993). Defendants point to no case law which rules out a corporation being classified as a member of a racial minority. In fact, Defendants' Motion makes it clear that it is possible for a corporation to have standing. In Defendants discussion of *Thinkjet Ink Information Resources, Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1057 (9th Cir. 2004), it states, "If a corporation either suffers discrimination cognizable under §1981 or has acquired an imputed racial identity, it is sufficiently within the statutory zone of interest to have prudential standing to bring an action. Prudential standing may exist for non-profit corporations suing to redress injuries to its members, but a for-profit corporation will not generally be able to satisfy the "associated standing" tests". Therefore they acknowledge that although a profit corporation may not *generally* be able to satisfy the standing tests, there are circumstances in which it may, thus admitting that this claim of Plaintiffs is cognizable. In its pleadings, Plaintiff OPM plainly states that the majority of its patrons are African American, a protected class, and that the basis for the misconduct of Defendants against Plaintiffs was racial animus toward that class of individuals. Indeed, other organizations have been granted standing to bring a civil rights action. *Vietnamese Fishermen's Ass'n v. Knights of Ku Klux Klan,* 518 F. Supp. 993 (S.D.Tex.1981). A civil rights suit should not be dismissed at the pleading stage unless it appears to a certainty that the Plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim. *Cubellis v. Costar*, 65 F.R.D. 49 (W.D.Pa.1974). In order to demonstrate a violation of this section, it is only necessary that the Plaintiffs show that they were unlawfully denied, by the Defendants, one of the rights protected by this section. *Vietnamese Fishermen's Ass'n, Id.* This section is to be liberally construed. *Spiess v. C. Itoh & Co. (America), Inc.,* 408 F. Supp 913 (S.D.Tex.1976).

Defendants Caesar's allegations that the claim against them under §1981 must be dismissed for lack of contractual basis is an incorrect reading of the case law under such statute. Defendants Caesar's cite *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006), as the basis of their claim but fail to completely analyze the case. In

*Domino's*, McDonald owned a business which business had a contractual relation with Domino's, there was no allegation that the business and Dominos had an relationship or had acted in concert against McDonald and thus the Court ruled that since McDonald had no contractual relationship with the side alleged to have committed the racial discrimination, he had no claim under § 1981.  This is a vastly differing situation from the instant case in which the Defendants have a myriad of cross contracts and duties such as duty of access and support services which should benefit Plaintiffs based upon the Lease and Lease amendment.  In fact, the Court in *Domino's* in footnote four (4) acknowledges the possibility of a third party causing harm to a contractual relation which would place liability under § 1981 on such third party. The Court in *Domino's* footnote four (4) states: "McDonald also argues in his merits brief (for the first time) that we should affirm the Ninth Circuit's judgment because Domino's interfered with McDonald's own contracts with JWM. Counsel for McDonald asserted at oral argument that this contention is not a new argument (see this Court's Rule 15.2), but is a "sort of formulation of the same argument" that he had properly raised. Tr. of Oral Arg. 28. As such, it fails for the same reasons that the argument fails in its original incarnation. McDonald acknowledges that JWM did not breach any contractual obligation to him, see Brief for Respondent 44, and so any injury he may have received still derived from impairment of the contractual relationship between JWM and Domino's, under which McDonald has no rights. Thus the Court acknowledged that if the third parties actions had caused impairment of the contract between the two directly contracted parties, a claim under § 1981 would have been permissible.

The *Domino's* Court reading of § 1981 backs up this conclusion.  The Court finds the definition under § 1981 to include the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. *Domino's Id.*  The Court further states "We have never retreated from what should be obvious from reading the text of the statute: Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would

have rights under the existing or proposed contractual relationship." *Domino's Id.* Thus it is clear that third parties such as Caesars who interfere with contractual relations may be liable to a claim under § 1981. This is especially so in a case such as this where the Defendants and the party directly contracted with have numerous contractual relations which affect Plaintiff and share many joint obligations due Plaintiff under the Lease and Lease amendment.

*Benton v. Cousins Props., Inc.,* 230 F.Supp. 2d 1351 (N.D. Ga. 2002) is a case in which the Plaintiff alleged that the Defendants, acting in concert with one another, deprived her of the enjoyment of all the benefits, privileges, terms, and conditions of the contractual relationship that the Plaintiff had with only one of the parties. The directly contracted party had a contractual relationship to be provided certain services by the third party. Although the Court found that the plaintiff in that case had failed to show either that defendants failed to confer the benefits and conditions of the contract to which the parties had agreed or that any negative interaction between defendants and plaintiff resulted from a racially discriminatory animus. Thus although the Court ruled against the Plaintiff in *Benton*, they made it clear that such a claim was actionable under § 1981 in that situation which is analogous to the one in this case.

In *Franklin v. Allstate,* 2007 U.S. Dist. LEXIS 51332, a Ninth Circuit Court (United States District Court for the Northern District of California) decided a year after *Domino's* was published stated: "persons other than parties to a contract may be held liable under §1981. (See EFI/Alboff Order at 7-8); *see also Imagineering, Inc. v. Kiewit Pacific, Co.* 976 F.2d 1303, 1313 (9th Cir. 1992) ("Courts have not imposed a privity of contract type requirement that would otherwise protect third parties from section 1981 liability.")

Defendant Caesars' claim that the fact that Plaintiff's establishment is the only one in the Forum Shops Mall is deserted after midnight is a fatal flaw is in itself fatally flawed. First, nowhere in Plaintiff's claim is it stated that the discriminatory actions of Defendants occurred only after midnight. In fact the discriminatory actions of Defendants have occurred during many times of the day including when all the shops in the Forum are open. Many that have occurred during the evening have occurred when PURE (which is a nightclub run partially by certain Defendants) is open or after their closing when many of their mostly white patrons still

remain in the Forum Shops and Caesars, yet only the patrons of Plaintiff OPM are singled out for harassment and have access denied.

### G. Plaintiff's Sixth Cause Of Action For Breach of Lease States a Claim Upon Which Relief Can Be Granted.

Defendants' allegations regarding the breach of the Lease are likewise without legal basis under the standard which must be used by the Court. The first breach alleges that Defendants failed to provide cooling water required for the air conditioning system of the premises. The Lease states this is the duty of the Defendants. The water for the cooling systems is shared throughout the Forum Shops and Caesars and does not exclusively serve Plaintiff's premises. In addition, Plaintiff has requested to make improvements, at its own expense, to alleviate the desert conditions during the summer months, but Defendants has unreasonably refused. See Complaint paragraph 69. These allegations when assumed to be true, as is required by the Court, constitute a breach of the Lease.

The second breach of Lease is a denial of Plaintiff's quiet enjoyment of the premises. While Plaintiff is still in possession of the main premises, the entrance to the establishment has been denied Plaintiff OPM and its patrons for a significant part of the business day. See Complaint Paragraphs 60-62. This has significantly altered the character and value of the premises and denied access to both Plaintiff OPM and its patrons. This denial of access, along with the lack of sufficient cooling water in the summer months, resulted in a denial of Plaintiff's quiet enjoyment of the premises.

Chinois received written permission from Defendants to complete the transaction with Plaintiff OPM as set out in its Management Agreement. Therefore, Plaintiff Chinois has not violated its Lease with Defendants and can also pursue its claim in relation to the above stated breaches.

### H. Plaintiff's Seventh Cause Of Action For Conspiracy States a Claim Upon Which Relief Can Be Granted.

Plaintiffs have laid out their claim for conspiracy in detail in the Complaint. See Complaint paragraph 98. At this early stage, Plaintiff is not required to plead every fact upon

which the trial will be based, Courts must assume that all general allegations "*embrace whatever specific facts* might be necessary to support them." *Peloza v. Capistrano Unified School Dist.,* 37 F. 3d 517, 521 (9th Cir. 1994). Defendants claim that Plaintiffs are barred from claiming a conspiracy because they also claim agency, however, Plaintiffs may plead inconsistent theories in their pleadings. The necessary facts and allegations for a claim of conspiracy are present in the Complaint and the discovery process will fill in the facts, if necessary, to support this claim. "A suit should not be dismissed if it is possible to hypothesize facts, consistent with the Complaint, that would make out a claim"; *Hearn v. R.J. Reynolds Tobacco Co.* 279 F. Supp. 2d 1096, 1101 (D AZ 2003).

Plaintiffs' allegations clearly lay the basis for a claim of an unlawful agreement between the Defendants. Plaintiffs have laid out examples in their complaint which demonstrate discriminatory actions taken by all the Defendants or employees thereof thereby demonstrating contrete examples of the conspiracy in action. Taken in its entirety, the Complaint more than adequately lays out a factual basis for this allegation.

The unlawful objectives of the Defendants in this conspiracy are (i) improperly invoking remedies under the Lease, including termination of the Lease, (ii) intentionally disrupting the contractual relationships between Chinois and O.P.M.L.V.; and (iii) improperly disrupting the contractual relationships between Chinois and O.P.M.L.V., on the one hand, and actual and prospective patrons of Chinois and O.P.M.L.V. on the other. As we have seen above, these objectives are sufficient to form the basis of a claim upon which relief can be granted and therefore meet the element of unlawful actions required for a claim of conspiracy.

### I.   Plaintiff's Eighth Cause Of Action For Breach Of The Implied Covenant Of Good Faith And Fair Dealing States A Claim Upon Which Relief Can Be Granted.

Where the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing. *A.C. Shaw Constr. v. Washoe County,* 105 Nev. 913, 914-15, 784 P.2d 9, 9-10 (1989). Defendants once again ignore facts

plead in the Complaint to protest a properly pled cause of action. The Complaint details the manner in which the Plaintiffs obtained approval for the Management Agreement through Defendants, which Defendants gave on their letterhead. See Complaint paragraphs 17-20. Plaintiffs relied on this approval to their detriment and Defendants tortuously harassed Plaintiffs and their patrons. The Defendants have numerous contractual relations and act as partners in the development, staffing, marketing and servicing of the Forum Shops. As agency for all Defendants is pled, all Defendants are liable for the torts of the others. The Defendant have numerous contractual relations and act as partners in the development staffing, marketing and servicing of the Forum Shops. Plaintiffs have complied with the Lease but Defendants, through their actions as seen herein, have contravened the intention and spirit of the Lease (providing a place to operate a business free from interference for the financial benefit of all parties). Defendants are powerful corporations and landlords with vast resources and control substantial portions of the prime real estate suitable for Plaintiffs business. Plaintiff OPM is a small corporation with few financial or political resources. The agencies, partnerships, joint services and conspiracy between the Defendants give them all duties due to Plaintiffs under the Lease and Lease addendum. Thus the elements of this tort are met as to all Defendants.

**J.** **Plaintiff's Complaint does not include any immaterial, impertinent or scandalous matters.**

As has been seen above, the Plaintiffs have an actionable complaint against all Defendants and the allegations which Defendants deem "scandalous" are central to the case against Defendants. Their argument is essentially that in arguing a racial discrimination case Plaintiffs should not be allowed to make accusations of racial discrimination as they might be deemed scandalous. As discriminatory conduct is one of the elements of a claim under § 1981, it is impossible to put forth a § 1981 claim without allegations of discrimination. It is the very nature of racial discrimination cases that the core allegations will likely be deemed scandalous and for courts to deem all such allegations must be dismissed from any racial discrimination cases would render the enforcement of any racial discrimination actions moot.

## III.

## CONCLUSION

For the foregoing reasons the Court should deny the Motion to Dismiss filed by Simon and Forum Defendants in its entirety and further deny the Motion to Dismiss filed by the Caesars Defendants (which is really a Joinder in the Motion to Dismiss by the Simon and Forum Defendants) for each and every cause of action.

DATED this 7th day of July, 2008.

HAROLD P. GEWERTER, ESQ., LTD.


    /s/ Harold P. Gewerter, Esq.
HAROLD P. GEWERTER, ESQ.
Nevada Bar No. 499
5440 W. Sahara Avenue, Third Floor
Las Vegas, Nevada 89146
Attorney for Plaintiffs