OPPO
PHILIP HELLER, ESQ.
California Bar No. 113938
FABELBAUM & HELLER LLP
2049 Century Park East, Suite 4250
Los Angeles, CA 90067-3254
Telephone: (310) 286-7666

C. STANLEY HUNTERTON, ESQ.
Nevada Bar No. 1891
PAMELA R. LAWSON, ESQ.
Nevada Bar No. 5044
HUNTERTON & ASSOCIATES
333 South Sixth Street
Las Vegas, Nevada 89101
Telephone: (702) 388-0098
Attorneys for Phase II Chin, LLC

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PHASE II CHIN, LLC and LOVE
& MONEY, LLC, (formerly dba
O.P.M.L.V., LLC),

                Plaintiffs,

vs.

FORUM SHOPS, LLC, FORUM
DEVELOPERS LIMITED
PARTNERSHIP, SIMON
PROPERTY GROUP LIMITED
PARTNERSHIP, SIMON
PROPERTY GROUP, INC.,
CAESARS PALACE CORP, and
CAESARS PALACE REALTY
CORP.,

                Defendants.

CASE NO.: 2:08-cv-162-JCM-GWF

OPPOSITION TO MOTION TO DISMISS
OF DEFENDANTS FORUM SHOPS, LLC,
FORUM DEVELOPERS LIMITED
PARTNERSHIP, SIMON PROPERTY
GROUP LIMITED PARTNERSHIP, AND
SIMON PROPERTY GROUP, INC. (#12)

## INTRODUCTION

Plaintiff Phase II Chin, LLC ("Chinois") respectfully submits this Opposition to the

Motion to Dismiss of Defendants Forum Shops, LLC ("Forum"), Forum Developers Limited

Partnership, Simon Property Group Limited Partnership, and Simon Property Group, Inc.

Page 1 of 1

Dockets.Justia.com

(collectively, "defendants"). As explained below, defendants' memorandum of points and authorities ("Defendants' Brief") fails utterly to establish that any of the eight causes of action in the Complaint fail to state a claim. Defendants' motion, therefore, should be denied *in toto*.

## FACTS[1]

At all times relevant to this action, Chinois has leased premises (the "Premises") in The Forum Shops[2] at the Caesars Palace complex in Las Vegas from Forum pursuant to a lease initially between Forum Developers Limited Partnership and GGH Restaurant, LLC, Forum's and Chinois' predecessors in interest, respectively (the "Lease"). Complaint ¶ 14.[3] Chinois operates a restaurant called Chinois-Las Vegas in the Premises. *Id.* Chinois-Las Vegas is a fine dining establishment serving Asian/Pacific Rim and American cuisine, including certain signature dishes of world-renowned chef Wolfgang Puck. *Id.* ¶ 15.

On December 1, 2002, Forum approved Chinois' plan for the operation of a nightclub, OPM, on the second level of the Premises to be managed by plaintiff Love & Money, at the time doing business as O.P.M.L.V., LLC ("O.P.M.L.V."). *Id.* ¶¶ 20-21. Forum had been provided a copy of the Management Agreement pursuant to which O.P.M.L.V. was to manage the club (the "Management Agreement") on July 10, 2002. *Id.* ¶ 21.[4] OPM is an upscale dance

---

[1] This section presents only a brief summary of the allegations of the Complaint. Chinois respectfully suggests that the Court should review the Complaint in full to obtain a comprehensive understanding of the parties' dispute.

[2] The Forum Shops consist of more than 160 upscale stores and restaurants in an ancient Rome-themed mall at the Caesars Palace complex. The mall is attached to the Caesars Palace casino (the "Casino") with a large archway providing access between the Casino and The Forum Shops. While most of the retail establishments in The Forum Shops close each night at or about 11 p.m. on weekdays and 12 midnight on weekends, the mall's common areas remain open to the public 24 hours per day, 7 days per week. Complaint ¶ 16.

[3] Defendants submitted a copy of the Lease as Exhibit A to their moving papers.

[4] Defendants submitted a copy of the Management Agreement as Exhibit C to their moving papers.

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

club that plays a range of different types of music, including hip-hop; most of its patrons are African-Americans. *Id.* ¶ 22.[5]

Effective October 9, 2003, after OPM had been in operation for five months, at defendants' suggestion, the parties executed an amendment to the Lease (the "Lease Amendment") to permit Chinois to operate OPM in part of the leased Premises Wednesdays through Sundays from 10 p.m. until 6 a.m. each following morning. *Id.* 22.[6]

Beginning in or about January 2005, defendants engaged in an ongoing and concerted campaign of harassment and misconduct against plaintiffs. *Id.* 27. Defendants' misconduct has been calculated to force plaintiffs out of business and has been driven by at least two motives. *Id.* One of these motives stems from defendants' hostility towards, and prejudice against, African-Americans, who comprise the majority of OPM's clientele. *Id.* Plaintiffs believe that defendants seek to force OPM out of business because, in defendants' view, it attracts "too many" African-Americans to The Forum Shops and the Caesars Palace complex generally. *Id.*[7]

Chinois believes that defendants' other motive stems from the fact that the rent Chinois pays under the Lease is considerably below "market" for the type of space it occupies. *Id.* ¶ 29. Were defendants able to force Chinois out of The Forum Shops, they could

---

[5] By March 2006, O.P.M.L.V. and Chinois had successfully operated the nightclub for nearly three years in compliance with the terms and conditions of the Lease, the Lease Amendment and the Management Agreement and amendments thereto. During that time, OPM was the recipient of several awards, including the #1 Zagat Rated Award in 2004 and 2005, the AOL Cityguide City's Best Award in 2005, and the #1 Yahoo! Readers' Poll Award in 2006. Complaint ¶ 26.

[6] Defendants submitted a copy of the Lease Amendment as Exhibit B to their moving papers.

[7] Defendants have previously been criticized for their treatment of minorities. For example, in March 2007, ACORN, a self-described community organization of low and moderate income families, published a report, "Racial Discrimination at Simon Malls: A Separate and Unequal Shopping Experience for People of Color," describing racial discrimination at a "Simon Property Group" mall in Colorado. Similarly, in a December 2007 meeting before the Nevada Gaming Control Board, eleven groups representing minority communities criticized Harrah's Entertainment, Inc., Caesars' parent corporation, for its lack of transparency in its diversity efforts. Complaint ¶ 28.

Page 3 of 3

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

then lease the Premises to a new tenant at a substantially higher rent, which would, of course, yield for them correspondingly higher profits than they currently receive under the Lease. *Id.*

As detailed in the Complaint, defendants' misconduct has taken a variety of forms. *Id.* ¶ 30. First, almost every time when there has been any sort of security problem in any way involving an African-American anywhere in the Caesars Palace complex, defendants have sought to blame plaintiffs, even, as explained below, when it can be clearly demonstrated that the persons involved were not OPM patrons, and when the problems have arisen in The Forum Shops' common areas or on Caesars property, where plaintiffs have no security obligations and, moreover, no right to provide security. *Id.*

Second, defendants have discriminated against Chinois and OPM, and treated Chinois, and by extension OPM, differently, and less favorably, than other similarly situated tenants of The Forum Shops. *Id.* ¶ 31.

Finally, defendants have missed no opportunity to serve Chinois with formal legal notices of purported defaults under the Lease for even the most minor perceived transgression, instead of simply bringing these issues to Chinois' attention informally, as is customarily done with other tenants of The Forum Shops. *Id.* ¶ 32.

The Complaint states eight causes of action: (1) declaratory relief (First Cause of Action); (2) interference with contractual relations (Second Cause of Action); (3) interference with prospective business advantage (Third Cause of Action); (4) injunctive relief (Fourth Cause of Action); (5) violation of 42 U.S.C. § 1981 (Fifth Cause of Action); (6) breach of the Lease (Sixth Cause of Action); (7) civil conspiracy (Seventh Cause of Action); and (8) breach of the covenant of good faith and fair dealing (Eighth Cause of Action).

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

## I.   The Fed.R.Civ.P. 12(b)(6) Standard

In *Angel v. Eldorado Casino, Inc.*, 2008 U.S. Dist. LEXIS 37491, *4-*5 (D. Nev. April 25, 2008), Judge Sandoval of this district recently explained the standard for dismissal under Fed.R.Civ.P. 12(b)(6) as follows:

> In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court must accept as true all material allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 (9th Cir. 2000). The allegations of the complaint also must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). However, there is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). Thus, upon being adequately stated, a claim may be supported by showing "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929 (2007) (citation omitted). However, the factual allegations included in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1964-65. "The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action ." *Id.* at 1965.

2008 U.S. Dist. LEXIS 37491, *4-*5; *accord Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (2008) ("To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)); *McGrath v. Nevada Dep't of Public Safety*, 2008 U.S. Dist. LEXIS 38814, *3 (D. Nev. April 30, 2008) (citing *Wyler Summit Partnership v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) and *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)).

Defendants' incomplete recitation of this standard belies their understanding that they cannot satisfy it.

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

## II. Chinois' Declaratory Relief Claim Should Not Be Dismissed

### A. Defendants Do Not Seek Dismissal of Chinois' Declaratory Relief Claim On Rule 12(b)(6) Grounds

Defendants do not seek dismissal of Chinois' claim for declaratory relief (First Cause of Action) under Rule 12(b)(6). Indeed, nowhere in their brief do they state that the First Cause of Action fails to state a claim upon which relief may be granted, nor could they. A declaratory relief claim need allege only "[f]acts demonstrating the existence of an actual controversy, including facts showing standing and ripeness." 12 Moore's Federal Practice—Civil § 57.60[1] (2008) (citations omitted).

An "actual controversy" exists where the parties' dispute is "'definite and concrete, touching the legal relations of parties having adverse legal interests.'" *Id.* § 57.22[2][a] (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937)).

With respect to standing, "[t]he Declaratory Judgment Act permits any interested party to seek declaratory relief." Moore's, *supra*, § 57.22[2] (citing 28 U.S.C. § 2201(a) and Advisory Committee Note to 1937 Adoption to Fed. R. Civ. P. 57).

"[T]he concept of ripeness relates to the Article III standing requirement that a plaintiff must sustain or face an actual or imminent injury." Moore's, *supra*, § 57.22[3][a] (and cases cited).

There can be no question that the dispute as alleged here meets all these requirements—Forum, lessor under the Lease, seeks to evict Chinois, the lessee, and has served Chinois with numerous purported notices of default to effect that end. The parties' dispute is thus definite and concrete, they have directly adverse legal interests and Chinois is obviously an "interested party" facing actual or imminent injury.

Apparently recognizing that Chinois has adequately pled its claim for declaratory relief, defendants make what is essentially an abstention argument, without labeling it as such

HUNTERTON & ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

1    or making any attempt to cogently lay out the applicable law. This is perhaps not surprising

2    given that, as explained below, abstention here would be manifestly improper.

3        **B.  The Court Should Hear Chinois' Declaratory Relief Claim**

4        Defendants contend that this Court should abstain from hearing Chinois' declaratory

5    relief claim in deference to one Forum filed in Delaware state court, even though all of the

6    relevant parties are headquartered in Nevada, Nevada law expressly governs all the relevant

7    contracts, all of the relevant events occurred in Nevada, all of the witnesses are in Nevada, all

8    of the documentary evidence is in Nevada, and the only state with any conceivable interest in

9    the case's outcome is Nevada.

10

11       The Declaratory Judgment Act, 28 U.S.C. § 2201, affords District Courts discretion as

12   to "whether and when to entertain an action under the . . . Act, even when the suit otherwise

13   satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.,* 515 U.S. 277,

14   282 (1995). When the action at issue consists *solely* of a request for declaratory relief, that

15   discretion is very broad. *Id.* at 282-283 (applying *Brillhart v. Excess Ins. Co. of America*, 316

16   U.S. 491 (1942)).

17

18       But "[i]f a suit seeks both injunctive and declaratory relief, the appropriateness of

19   abstention must be assessed according to the general abstention doctrine of *Colorado River*

20   *Water Conservation Dist. v. U.S.,* [424 U.S. 800 (1976)], rather than under *Brillhart.*"

21   Moore's, *supra,* § 57.42[b][ii][B] (citing *Black Sea Investment, Ltd. v. United Heritage Corp.,*

22   204 F.3d 647, 652 (5th Cir. 2000); *accord Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220,

23   1225 (9th Cir. 1998) ("when other claims are joined with an action for declaratory relief (*e.g.,*

24   bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary

25   relief), the district court should not, as a general rule, remand or decline to entertain the claim

26   for declaratory relief"); *Snodgrass v. Provident Life & Accident Ins. Co.,* 147 F.3d 1163, 1167

27   (9th Cir. 1998) (same); *Unum Life Ins. Co. of America v. Humphrey*, 2008 WL 182251, *2 (D.

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

Nev. Jan. 15, 2008) (same where declaratory relief claim joined with rescission claim); *Cedar Rapids Cellular Tel., LP v. Miller*, 280 F.3d 874, 879 (8th Cir. 2002) (*Brillhart* not applicable to cases that involve claims for injunctive relief); *Westfield v. Welch's*, 170 F.3d 116, 124 n.5 (2d Cir. 1999) (applying *Colorado River* where federal action did not seek "purely declaratory relief"). This is because "[c]laims that exist independent of the request for a declaration are not subject to the Declaratory Judgment Act's discretionary jurisdictional rule." *Snodgrass*, 147 F.3d at 1167.

Colorado River abstention is far narrower than *Brillhart* abstention. As the Supreme Court recognized in *Colorado River*, the former is "an extraordinary and narrow exception" to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." 424 U.S. at 813, 817. Abstention is proper only where "exceptional circumstances" exist. *Id.* at 813.

The party seeking abstention bears the burden of establishing such exceptional circumstances. *See, e.g., Communications Telesystems Int'l v. California Public Utility Comm'n*, 196 F.3d 1011, 1020 (9th Cir. 1999). Defendants have certainly not borne this burden here. Indeed, there is no reason under law or common sense why a federal court sitting in Nevada should defer to a state court across the continent in Delaware with respect to a case involving Nevada parties and Nevada events, that will be resolved applying Nevada law and considering documentary evidence located in Nevada, and almost exclusively the testimony of Nevada witnesses, especially when that Delaware case was so transparently filed solely to complicate and make more expensive a full airing of the parties' Nevada disputes.[8]

---

[8] Should the Court decide to abstain (and under the circumstances here, it clearly should not), the proper procedure would be to stay Chinois' declaratory relief claim rather than to dismiss it. "[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy. *Wilton*, 515 U.S. at 288 n. 2.

Page 8 of 8

HUNTERTON & ASSOCIATES ATTORNEYS AT LAW 333 South Sixth Street Las Vegas, NV 89101 (702) 388-0098

Case No.:

### III. The Second Cause of Action States A Claim for Intentional Interference With Contractual Relations

Chinois' Second Cause of Action states a claim for intentional interference with its contractual relations with O.P.M.L.V. The elements of such a claim are: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *Hilton Hotels Corp. v. Butch Lewis Productions, Inc.*, 109 Nev. 1043, 1048, 862 P.2d 1207 (1993) (citing *Ramona Manor Convalescent Hosp. v. Care Enterprises, 177 Cal. App. 3d 1120, 1130, 225 Cal. Rptr. 120, 124 (1986)*). This much defendants get right. But their two arguments for the dismissal of the Second Cause of Action are meritless.

Defendants first contend that the Second Cause of Action fails because "there is no valid contract between Chinois and [O.P.M.L.V.] because the [Management Agreement] was in violation of the terms of the Lease." Defendants' Brief at 14. Defendants misapprehend the very nature of a motion to dismiss under Rule 12(b)(6). That rule simply "tests the legal sufficiency of the claims asserted in the complaint." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). The court "'must take "all well-pleaded allegations of material fact as true and construe them in the light most favorable to the plaintiff."'" *Id.* at 1200 (quoting *Desaigoudar v. Meyercord, 223 F.3d 1020, 1021 (9th Cir. 2000)*). Paragraph 19 of the Complaint unambiguously alleges that "[t]he Management Agreement did not assign or transfer any of Chinois' rights or obligations under the Lease to O.P.M.L.V. and did not in any respect constitute a sublease of the leased premises." Defendants cannot dispose of one of the principal issues in dispute on a motion to dismiss simply by stating their position and saying it is so.

Moreover, courts have repeatedly and consistently held that issues of contractual interpretation and validity are not appropriate for decision on a Rule 12(b)(6) motion. *See, e.g., Martin Marietta Corp. v. Int'l Telecomm. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1992)*;

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 897 (2d Cir.1976); *Harmon v. Adjoined Consulting, LLC*, 2007 U.S. Dist. LEXIS 60050, *18 (S.D. Fla. Aug. 16, 2007); *Ventana Hotels & Resorts, LLC v. Habana Libre Hotel, LLC*, 2007 U.S. Dist. LEXIS 49979, *4-*5 (S.D. Fla. 2007); *Test Services, Inc. v. The Princeton Review, Inc.*, 2005 U.S. Dist. LEXIS 31417, * (D. Colo. Nov. 29, 2005); *Holveck v. Ameriquest Mortgage Co.*, 2003 U.S. Dist. LEXIS 8365, *9 (N.D. Ill. May 19, 2003); *Associated Credit Corp. v. Crossley Carpet Mills Ltd.*, 1998 U.S. Dist. LEXIS 12567, *5-*6 (S.D.N.Y. Aug. 14, 1998). Defendants' first argument against Chinois Second Cause of Action simply ignores these commonsense, settled principles and must therefore be rejected.[9]

Defendants' second argument against Chinois' Second Cause of Action, that Chinois has failed adequately to allege "actual disruption" of its contract with O.P.M.L.V.,[10] is equally infirm, and cannot withstand even a cursory review of the Management Agreement and the allegations of the Complaint.

It is clear from that agreement that the essence of the contractual relationship between Chinois and O.P.M.L.V. is the operation of a nightclub, OPM, in the second level of the Premises in a fashion profitable to both parties. The Complaint alleges that defendants have "actually disrupted" that relationship in at least the following ways:

- Since August 17, 2007, defendants, acting in concert, have closed the entrance between the Casino and The Forum Shops weekend evenings at 1 a.m., after all other Forum Shops tenants have closed, but just before OPM's busiest time, and posted a

---

[9]     Defendants offer speculation regarding the drafting of the Management Agreement (Defendants' Brief at 3 n.1), and also go to great lengths attempting to explain away the fact that they received a copy of that agreement prior to the execution of the Lease Amendment, but never uttered a peep of protest about it, or labeled it an improper "sublease" until much later. Defendants Brief at 4 n. 5. While Chinois disagrees with defendants' factual and legal assertions and analyses, it declines to engage defendants over issues that are utterly irrelevant in the context of a Rule 12(b)(6) motion. It does warrant note, however, that defendants' highlighting of these factual and legal disputes makes dismissal under Rule 12(b)(6) all the more inappropriate.
[10]     Defendants concede through their silence that Chinois has adequately alleged all the other elements of their Second Cause of Action.

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

sign reading, "Forum Shops to Reopen at 8 a.m." Complaint ¶ 59. As a result, many OPM patrons leave, thinking OPM is also closed, or out of business. *Id.* ¶ 60. Those undeterred have been forced to use an unmarked, poorly lit and potentially unsafe back hallway to gain entry to The Forum Shops and access OPM. *Id.* Given that most of OPM's clients are African-American, this is especially degrading, and reminiscent of Jim Crow laws that required blacks to use "service entrances." It is difficult to conceive of exactly how tricking a nightclub's patrons into believing the club is closed, and then degrading those who discover that it is not, does not constitute an "actual disruption" of that establishment's business.

- Despite its obligations under the Lease, and several complaints from both Chinois and O.P.M.L.V., Forum refuses to provide adequate air conditioning to the space occupied by OPM, and also refuses to permit the space to be glassed in (as are many other businesses in The Forum Shops) to prevent what air conditioning there is from simply escaping out into the mall. Complaint ¶¶ 69-70. Patrons have become ill from the excessive heat and one actually had to be taken away in an ambulance. *Id.* It is difficult to understand how knowingly causing a nightclub's customers to collapse from heat exhaustion does not constitute an "actual disruption" of the club's business.

- In March 2007, Forum (on Simon letterhead) complained that O.P.M.L.V. had placed signs directing patrons to OPM in certain common areas, as Forum had agreed to permit beginning in 2003. Complaint ¶¶ 56-57. Here again, it is difficult to see how making it more difficult for a business' customers to find the business does not constitute "actual disruption" of that business.

The Management Agreement itself also makes clear the "actual disruption" defendants' wrongdoing has caused. That agreement includes several relevant provisions. Under § 8.1, Chinois provides food to OPM. Under § 8.1(d), O.P.M.L.V. pays Chinois for that food. Under § 8.2, Chinois under certain circumstances also purchases beverages for O.P.M.L.V. for use in the club. Under § 12.1, O.P.M.L.V. is required to pay Chinois a percentage of its monthly gross sales exceeding a certain amount.

Each of these provisions in the Management Agreement obviously makes Chinois' receipts under that contract dependent in significant part on OPM's profitability, which is in turn just as obviously dependent upon the number of patrons OPM serves. Fewer patrons means less food ordered from Chinois, and less beverages purchased by OPM. Fewer patrons also means lower gross sales for O.P.M.L.V., hence lowering Chinois' percentage under § 12.1. It necessarily follows, therefore, that the misconduct of defendants described above may reasonably be inferred to have decreased the number of patrons at OPM and also decreased

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Chinois' receipts under the Management Agreement, thereby "actually disrupting" the relationship between Chinois and O.P.M.L.V. *See, e.g., First American Real Estate Information Services, Inc. v. Consumer Benefit Services, Inc.,* 2004 U.S. Dist. LEXIS 30316, *17 (S.D. Cal. April 23, 2004) (motion to dismiss denied where plaintiff alleged it was "damaged by lost profits that it would have earned but for [defendant's] interference").

Defendants, therefore, have failed to establish any legal basis for the dismissal of Chinois' claim for interference with contractual relations. Their motion must therefore be denied with respect to the Second Cause of Action.

## IV.    The Third Cause of Action States A Claim for Intentional Interference With Prospective Business Advantage

The elements of a claim for intentional interference with prospective business advantage are: "(1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct." *Leavitt v. Leisure Sports, Inc.*, 103 Nev. 81, 88, 734 P.2d 1221, 1225 (1987) (citing *Buckaloo v. Johnson*, 14 Cal. 3d 815, 827, 537 P.2d 865, 872 (Cal. 1975)). Again, defendants get the elements right, but the two arguments they assert for the dismissal of the Third Cause of Action are each meritless.

Defendants' first argument goes to the fourth element of the Third Cause of Action, that defendants "acted, without right or privilege, to harm plaintiffs . . ." Complaint ¶ 82. In essence, defendants assert a sort of "counter-allegation"—that the misdeeds about which Chinois complains were actually "privileged and/or justified safety and security measures . . ." Defendants' Brief at 15. Defendants apparently believe that all they need do to defeat the Third Cause of Action is simply deny its allegations. That, however, is not the way Rule

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

12(b)(6) works. All allegations in Chinois' Complaint must be accepted as true, and construed in Chinois' favor.

Moreover, the law is unambiguous—whether a defendant acts without privilege or justification is a factual issue, and hence by its very nature inappropriate for decision on a Rule 12(b)(6) motion. *See, e.g., Trans-World Airline, Inc. v. American Coupon Exchange, Inc.*, 913 F.2d 676, 694 (9th Cir. 1990) (relying on *Lowell v. Mother's Cake & Cookie Co.*, 79 Cal. App. 3d 13, 20, 144 Cal. Rptr. 664, 669 (1978)); *Nilavar v. Mercy Health System-Western Ohio*, 494 F. Supp. 2d 604, 626 (S.D.N.Y. 2005) (citing *Juhasz v. Quik Shops, Inc., 55 Ohio App. 2d 51, 57, 379 N.E.2d 235, 238 (1977)*); *Ayres v. AG Processing, Inc.*, 345 F. Supp. 2d 1200, 1215 (D. Kan. 2004); *Stucchio v. Huffstetler*, 720 So. 2d 288, 290 (Fla. App. 1998).

Defendants' second argument fares no better. Defendants argue that plaintiffs fail to allege a prospective contractual relationship between themselves and their patrons because, according to defendants: (1) "[b]usinesses normally do not have a contractual relationship with their at will patrons;" and because (2) plaintiffs' "expectation of future and prospective sales to these customers . . . is too speculative." Defendants' Brief at 15-16. Defendants are wrong on both points. With respect to (1), as courts have repeatedly held, "dining at a restaurant generally involves a ***contractual relationship*** that continues over the course of the meal and entitles the customer to benefits in addition to the meal purchased." *Arguello v. Conoco Inc.,* 330 F.3d 355, 360-361 (5th Cir. 2003) (distinguishing restaurants and clubs from other retail establishments) (emphasis added); *accord Gennell v. Denny's Corp.,* 378 F. Supp. 2d 551, 557 (D. Md. 2005); *Callwood v. Dave & Buster's, Inc., 98 F. Supp. 2d 694, 702-03 (D. Md. 2000)* (and cases cited); *Charity v. Denny's, Inc.,* 1999 U.S. Dist. LEXIS 11462 *11 (E.D. La. 1999); *McCaleb v. Pizza Hut of America, Inc.*, 28 F. Supp. 2d 1043, 1048 (N.D. Ill.

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

1998). The prospective relationship between plaintiffs and their patrons, therefore, is manifestly "contractual."[11]

With respect to (2), defendants rely exclusively on *Google Inc. v. American Blind & Wallpaper Factory, Inc.*, 74 U.S.P.Q.2D (BNA) 1385, 2005 U.S. Dist. LEXIS 6228 (N.D. Cal. March 30, 2005). The *Google* court held plaintiff's allegations of "relationships with 'repeat customers' who 'probabl[y]' [would] 'continue to seek to visit' its web site and purchase its goods and services" to be too speculative to support a claim for interference with prospective business advantage because they expressed "merely a 'hope . . . and a desire' for unspecified future sales to unspecified returning customers." 2005 U.S. Dist. LEXIS 6228 at *39-*40.

In stark contrast, there is absolutely nothing "speculative" about plaintiffs' allegations here. Unlike plaintiff in *Google*, plaintiffs' claim here does not rest on speculation about customers who might possibly have visited a web site, and, while there, would maybe have bought something. Instead, plaintiffs here allege that ***real, identifiable customers*** actually ***did*** arrive at The Forum Shops, fully intent on patronizing OPM, but were prevented from doing so because, among other reasons, the door between the Casino and The Forum Shops had been closed and a deceptive sign had been posted, specifically intended to turn them away, or because they opted not to use an unmarked, poorly lit, potentially unsafe and degrading alley and/or back hallway to gain entry to The Forum Shops and access OPM. Complaint ¶¶ 60-61. Plaintiffs also allege that ***real, identifiable customers*** of OPM who were trying to patronize

---

[11] Defendants rely on *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324 (9th Cir. 1980) for the proposition that businesses may solicit each other's customers without incurring liability for interference with prospective business advantage. Defendants' Brief at 15-16. *Hollingsworth* "principally concern[ed] the circumstances in which California law permits a salesman who leaves his employer to solicit the employer's customers by using various kinds of information acquired in his first position." *Id.* at 1326. This case, however, is not about businesses competing for customers, or the extent to which one might compete with a former employer. Plaintiffs here allege that defendants deliberately and maliciously interfered with plaintiffs' relationships with their patrons, and did so largely out of racial bias. *Hollingsworth* is immaterial here.

Page 14 of 14

HUNTERTON & ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

the club became sick because defendants refused to provide adequate air conditioning to the club, and that one such *real, identifiable customer* actually had to be taken away in an ambulance. *Id.* ¶ 69. Defendants "speculative allegations" argument is thus baseless.

## V.  The Fourth Cause of Action States A Claim for Injunctive Relief

Defendants contend that Chinois' Fourth Cause of Action, for injunctive relief, fails to state a claim because the causes of action upon which it is based themselves fail to state claims. Defendants are incorrect.

### A. Chinois' Demand that Defendants Cease and Desist from Interfering With Contract and Prospective Business Advantage

Defendants argue that the Fourth Cause of Action fails to state a claim with respect to its demand that defendants cease and desist interfering with their contractual relationship with O.P.M.L.V. and with their prospective and actual business relationships with patrons because: (1) Chinois Second and Third Causes of Action purportedly fail to state claims; and (2) injunctive relief is purportedly unavailable to prohibit such interference.

With respect to (1), Chinois respectfully refers the Court to Parts III and IV above, where Chinois demonstrates that both its Second and Third Causes of Action easily satisfy the Rule 12(b)(6) standard.

With respect to (2), defendants simply ignore the law. It is well settled that "[i]njunctive relief is available to restrain unjustified interference with contractual relations when damages would not afford an adequate remedy." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1130 n. 9, 791 P.2d 587, 270 Cal. Rptr. 1 (1990) (citing *Imperial Ice v. Rossier*, 18 Cal.2d 33, 112 P.2d 631 (1941); *Remillard-Dandini Co. v. Dandini*, 46 Cal. App. 2d 678, 680, 116 P.2d 641(1941); *Heavener, Ogier Services v. R.W. Fla. Region*, 418 So. 2d 1074, 1076, 1077 (Fla. 1982); Restatement (Second) Torts § 766 comment u at 17; and Prosser and Keeton, Torts § 129 at 1002 (5th ed. 1984)); *accord Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1243 (10th Cir. 2006); *Northern PCS*

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

*Services, LLC v. Sprint Nextel Corp.*, 2006 U.S. Dist. LEXIS 22555, *15 (D. Minn. April 21, 2006) (citing *Metropolitan Sports Facilities Comm'n v. Minnesota Twins Parnership*, 638 N.W.2d 214, 228 (Minn. Ct. App. 2002)); *Telerate Systems, Inc. v. Caro*, 689 F. Supp. 221, 233-234 (S.D.N.Y. 1988).

### B. Chinois' Demand that Defendants Cease and Desist from Serving Improper Notices of Default Under the Lease

Defendants assert that Chinois' request for an injunction prohibiting defendants from continuing to serve improper, baseless notices of default under the Lease "would be an unconstitutional prior restraint on the exercise of a defendant's First Amendment Right of free speech," purporting to rely upon *Alexander v. U.S.*, 509 U.S. 544 (1993). Defendants' Brief at 17-18. Defendants' argument is frivolous. *Alexander* concerned the lawfulness of the District Court's order requiring petitioner, who had been convicted of violating obscenity laws and the Racketeer Influenced and Corrupt Organizations Act, to forfeit his adult entertainment business.

Here, Chinois seeks nothing more exotic than an order that defendants comply with the Lease, an entirely routine request. *See, e.g., Stoltz v. Grimm*, 100 Nev. 529, 533, 689 P.2d 927, 930 (1984); *Myers v. Jones*, 99 Nev. 91, 93, 657 P.2d 1163, 1164 (1983); *General Motors Corp. v. Manly Oldsmobile-GMC, Inc.*, 2007 U.S. Dist. LEXIS 21489, *8-*9 (N.D. Cal. March 12, 2007).

### C. Chinois' Demand That Defendants Cease and Desist Their Racially-Motivated Misconduct

Defendants assert that Chinois has failed to state a claim for injunctive relief with respect to their racially-motivated misconduct because: (1) Chinois' claim under 42 U.S.C. § 1981 (Fifth Cause of Action) is purportedly invalid; and (2) an injunction would not be a proper form of relief.

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

With respect to (1), Chinois respectfully refers the Court to Part VI below, where it demonstrates that its Fifth Cause of Action unambiguously states a proper claim.

With respect to (2), the U.S. Supreme Court has expressly held that "[a]n individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460 (1975); *accord U.S. v. Burke*, 504 U.S. 229, 240 (1992) (relying on *Johnson*); *Miller v. Fairchild Indus. Inc.*, 797 F.2d 727, 733 (9th Cir. 1986).

Based for the most part on antediluvian authority not involving § 1981, defendants argue that the injunction Chinois seeks would "be incapable of judicial supervision," "inconvenient or inefficient to administer" and "would require a continuous supervision by the court" because "[a] court has no way to monitor motivation." Defendants' Brief at 18. There are two answers to this "reasoning." First, Chinois does not seek to regulate defendants' "*motivation*." It demands only that they cease and desist their racially-biased *conduct*. Second, that the U.S. Supreme Court has expressly held equitable relief to be available under § 1981, and that courts have indeed granted such relief, gives the lie to defendants' infeasibility argument.

## VI. The Fifth Cause of Action States A Claim for Violation of 42 U.S.C. § 1981

### A. Chinois Has Standing to Assert Its § 1981 Claim

Defendants argue that Chinois lacks standing to assert a claim under 42 U.S.C. § 1981 because Chinois has no "particular racial identity" and "cannot sue for the alleged deprivation of their customer's [sic] rights." Defendants' Brief at 21. One of the very cases upon which defendants purport to rely, however, *Thinkjet Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053 (9th Cir.), as well as many others treated below, prove them wrong.

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

*Thinkjet* expressly holds "that if a corporation either suffers discrimination harm cognizable under § 1981, *or* has acquired an imputed racial identity, it is sufficiently within the statutory zone of interest to have prudential standing to bring an action under § 1981." *Id.* at 1055 (emphasis added). Defendants improperly ignore the first part of the *Thinkjet* holding. Elaborating on that holding later in the decision, the court stated that a "corporation ha[s] 'an implied right of action against any other person who, with a racially discriminatory intent, interferes with its right to make contracts with non-whites.'" *Id.* at 1058 (quoting *Des Vergnes v. Seekonk Water District*, 601 F.2d 9, 13-14 (1st Cir. 1979).

*Des Vergnes* is instructive. There, the corporate plaintiff, owner of a tract of land, sued defendant city water district under § 1981 for having refused to include the tract in the district because the district believed plaintiff intended to sell lots on the land to African-Americans. 601 F.2d at 11-12. The court reversed the district court's dismissal of plaintiff's § 1981 claim, explaining:

> The text of § 1981 does not explicitly give a cause of action to [plaintiff] inasmuch as it is "a corporation (which) has no racial identity and cannot be the direct target of . . . alleged discrimination." . . . But that is not the end of the matter.

> After the Supreme Court in *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237, 90 S. Ct. 400, 24 L. Ed. 2d 386 (1969) held that the parallel text of 42 U.S.C. § 1982 gave a cause of action to a white person against another who had injured the white person because he had made an assignment of property to a black, lower federal courts held that a white person had a cause of action under § 1981 against another who injured him because he made a contract with a black, *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, *modified* 520 F.2d 409 (2nd Cir. 1975), or because he protested the racially discriminatory discharge of a black, *Winston v. Lear-Siegler, Inc.*, 558 F.2d 1266 (6th Cir. 1977), or because he associated with blacks, *Faraca v. Clements*, 506 F.2d 956 (5th Cir. 1975).

> Those cases stand for two propositions: *to invoke § 1981 or § 1982 one need not be a member of the racial class protected by the statute and one need not even be able to identify any specific member of the class who suffered or may suffer discrimination.*

\* \* \*

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

From *Sullivan* and from cognate cases under § 1981, ***we conclude that, in order to effectuate the public policy embodied in § 1981, and in order to protect the legal rights of non-whites expressly created by § 1981, a person has an implied right of action against any other person who, with a racially discriminatory intent, interferes with his right to make contracts with non-whites. A fortiori a person has an implied Right of action against any other person who, with a racially discriminatory intent, injures him because he made contracts with non-whites.***

601 F.2d at 13-14 (emphasis added; citation omitted).

Nor is *Des Vergnes* in any sense a fluke. Indeed, many other courts have held that corporations and/or non-minorities may sue under § 1981 when they are harmed by defendant's discriminatory actions against third-party minorities. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387 (7th Cir. 2007), *aff'd*, 128 S. Ct. 1951 (2008) collects some of the relevant cases.[12] Under this authority, it is beyond reasonable argument that plaintiffs have standing to assert their § 1981 claim because, as alleged in the Complaint, they have suffered direct harm as a result of defendants' unlawful discriminatory treatment both of themselves and their patrons on the basis of race.

---

[12] *Id.* at 403 n. 11 (citing to *Johnson v. University of Cincinnati*, 215 F.3d 561, 575 (6th Cir. 2000) (holding it was clear under "well-settled" law that a plaintiff "need not have alleged discrimination based upon his race as an African-American in order to satisfy the protected status requirement of his claims[,]" but rather plaintiff's advocacy on behalf of minorities was sufficient to allege retaliation under § 1981); *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1446-1447 (10th Cir. 1988) (white employee fired for helping African-American co-worker file an EEOC claim could state a claim under § 1981); *Pinkard v. Pullman-Standard, Div. of Pullman, Inc.*, 678 F.2d 1211, 1229 (5th Cir. 1982) (retaliatory discharge claim allowed under § 1981 where evidence showed plaintiff was discharged for lawful advocacy of minority and union rights); *Liotta v. Nat'l Forge Co.*, 629 F.2d 903, 906-907 (3d Cir. 1980) (summary judgment inappropriate where material issues of fact remained regarding § 1981 claim brought by plaintiff who claimed he was discharged for supporting rights of African-American co-workers); *Fiedler v. Marumsco Christian School*, 631 F.2d 1144, 1149 (4th Cir. 1980) (white student protected under § 1981 from retaliation by school because of her association with a black schoolmate); *Winston v. Lear-Siegler, Inc.*, 558 F.2d 1266, 1270 (6th Cir. 1977) (white plaintiff had standing under § 1981 for claim that employer fired him because he objected to discriminatory discharge of African-American co-worker); *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 312 (2d Cir. 1975) (white plaintiff could bring § 1981 claim based upon allegation that his employer "'forced' him into retirement solely because he had sold his house to a black person") (parentheticals by the *Humphries* court)).

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

The two cases defendants cite in support of their position are not to the contrary. The court in *Benjamin v. Aroostook Medical Center, Inc.*, 57 F.3d 101 (1st Cir. 1995) upheld the dismissal of a claim brought by certain patients of an African-American physician whose staff privileges has been terminated by defendant hospital, reasoning that the patients' claims were really "an assertion of [the physician's] third-party right to a race-neutral review process." *Id.* at 105. The *Benjamin* court, however, specifically recognized that standing is proper in cases such as *Des Vergnes*, "in which the plaintiff was the direct target of the defendant's discriminatory action." *Id.*

Unlike the patient plaintiffs in *Benjamin*, who were not the targets of the hospital's allegedly discriminatory termination of the physician's staff privileges, plaintiffs here have unambiguously alleged that defendants' misdeeds, from the repeated service of unwarranted default notices to the closure of the door between the Casino and The Forum Shops to the refusal to provide adequate air conditioning, while motivated by racial bias against plaintiffs' patrons, nonetheless targeted plaintiffs themselves, thereby bringing them well within "the statutory zone of interest to have prudential standing to bring an action under § 1981." *Thinkjet*, 368 F.3d at 1055.

Defendant's second case, *Ramirez v. City of Reno*, 925 F. Supp. 681 (D. Nev. 1996) was apparently tossed in for ornamental purposes—the court there stated that defendants were "entitled to judgment on Plaintiff's Section 1981 claim" because "[n]owhere in the complaint [did] Mr. Ramirez allege any racial discrimination."

### B. Chinois Has Adequately Stated Its § 1981 Claim

Defendants next contend that "Plaintiffs [c]annot [e]stablish the [r]equisite [e]lements of a § 1981 [p]rima [f]acie [c]ase," relying solely on an Eighth Circuit case that concerned a motion for summary judgment, not one under Rule 12(b)(6). Defendants' Brief at 22 (relying on *Bediako v. Stein*, 354 F.3d 835 (8th Cir. 2004). Plaintiffs, however, are not required to

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

"establish . . . a prima facie case" at the pleadings stage, before discovery has even begun. A Ninth Circuit panel recently described the pleading standard governing civil rights claims as follows:

> Federal Rule of Civil Procedure 8(a) states that a complaint only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." This court has repeatedly held that "'[a] party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case.'" *Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004) (quoting *Am. Timber & Trading Co. v. First Nat'l Bank*, 690 F.2d 781, 786 (9th Cir. 1982)). "[The] simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002). ***Furthermore, civil rights complaints are liberally construed.*** *Holley v. Crank*, 386 F.3d 1248, 1256 (9th Cir. 2004).

*Edwards v. County of San Diego*, 124 Fed. Appx. 547, 548, 2005 U.S. App. LEXIS 3595, *2 (9th Cir. 2005) (emphasis added). Chinois will therefore treat defendants' arguments in this regard as going to the adequacy of the Complaint's allegations.

Defendants first argue that "[p]laintiffs have not allege that ***they*** are members of a protected class." Defendants' Brief at 22. As defendants themselves acknowledge by referring the Court back to Section IV(A)(4) of their brief, this is simply defendants' standing argument, redux. As explained in Part VI.A above, plaintiffs unambiguously have standing to assert their § 1981 claim under the relevant authority.

Plaintiffs next contend that "[p]laintiffs are unable to point to even one instance in which Defendants have committed racially motivated acts intended to harm Plaintiffs." Defendants' Brief at 22. The short answer to this contention is that a civil rights plaintiff need not allege ***any*** facts regarding discriminatory intent at the pleadings stage. *See, e.g., Wang v. Office of Professional Medical Conduct*, 228 Fed. Appx. 17, 2007 U.S. App. LEXIS 7351 (2d Cir. 2007) ("Although Wang alleges no facts that would support a finding of discriminatory intent, he need not do so at the pleading stage.") (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 511-13, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)); *Duran v. Ashcroft*, 114 Fed. Appx. 368, 371

HUNTERTON & ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

n.2 2004 U.S. App. LEXIS 23305 (10th Cir. 2004) ("At the pleading stage . . . plaintiff need not allege specific facts supporting a finding of discriminatory intent so long as he points to some circumstances, occurrences, or events underlying his claim of discrimination.").

The court in *Kim v. Nash Finch Co.*, 123 F.3d 1026 (8th Cir. 1997) explained:

> [D]irect evidence of intentional discrimination was not required; case law recognizes that intentional discrimination may be proven by circumstantial evidence because "there will seldom be 'eyewitness' testimony as to the employer's mental processes." *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714 n.3, 75 L. Ed. 2d 403, 103 S. Ct. 1478 (1983). "After all, the *McDonnell Douglas* framework exists to provide discrimination plaintiffs a way to prove their case when they do not have 'explicit, inculpatory evidence of discriminatory intent.'" *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996), *citing Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 776 (8th Cir. 1995).

123 F.3d at 1059.

But notwithstanding this liberal pleading standard, as already explained, plaintiffs point to ***many*** instances in which defendants have committed racially motivated acts intended to harm plaintiffs, including without limitation the improper "default notices," the failure to provide adequate air conditioning, the refusal to permit plaintiffs to place a sign in the mall common area regarding OPM, the closure of the door between the Casino and The Forum Shops and the practice of blaming plaintiffs for every security problem anywhere in the Caesars Palace complex involving an African-American.

## C. The § 1981 Claim Is Not Time-Barred

Defendants contend that Nevada's two-year statute of limitations governing personal injury actions applies to plaintiffs' § 1981 claim and that because plaintiffs allege that defendants' pattern of racially discriminatory misconduct began "in or about January 2005," their entire claim is time-barred because the Complaint was not filed until January 8, 2008. Defendants' Brief at 23. Defendants are wrong for at least two reasons.

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

First, defendants simply ignore the principle of "continuing violation" as it applies to limitations periods. The court in *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472 (9th Cir. 1989) explained:

> [A] systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period. The reason is that the continuing system of discrimination operates against the employee and violates his or her rights up to a point in time that falls within the applicable limitations period.

883 F.2d at 1480 (citing *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir.) (citation omitted), *cert. denied*, 459 U.S. 971 (1982); *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1443 (9th Cir. 1984), *modified* 742 F.2d 520 (1984); and *Reed v. Lockheed Aircraft Co.*, 613 F.2d 757, 760 (9th Cir. 1980)).

Plaintiffs here allege an "ongoing and concerted campaign of harassment and misconduct" that began in January 2005 and has yet to cease, *i.e.*, a "continuing violation" of § 1981. Complaint ¶ 27. No part of plaintiffs' claim, therefore, is time barred.

Second, even were the "continuing violation" doctrine inapplicable, defendants offer no reason as to why the misconduct that occurred within the limitations period would be time-barred, and there is no reason.

## VII.    The Sixth Cause of Action States A Claim for Breach of the Lease

Defendants contend that Chinois' Sixth Cause of Action, for breach of the Lease, fails to state a claim because: (1) Chinois purportedly breached the Lease first; and (2) the breaches Chinois alleges are not really breaches at all. Both arguments are ridiculous.

With respect to (1), here again, as with their argument with respect to Chinois' Second and Third Causes of Action, defendants seem to believe they can defeat Chinois' claim simply by making their own counter-allegations regarding breach. Defendants will be free to assert affirmative defenses to Chinois' breach of lease claim in their answer, including prior alleged breach by Chinois, and to then back those defenses up with admissible evidence. But, under

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

the authority cited in Part III above, they may not defeat Chinois' claim simply by reciting their defenses in a Rule 12(b)(6) motion. Chinois has expressly alleged that it "has complied with all terms of the Lease," Complaint ¶ 95, and that allegation must be taken as true for Rule 12(b)(6) purposes.

With respect to (2), defendants' argument suffers from the same infirmity. They will be perfectly free to present evidence and argument that they did not breach the Lease at the summary judgment stage or at trial, but they cannot defeat Chinois' claim at the pleading stage simply by gainsaying Chinois' allegations.

But even leaving these fatal procedural defects aside, defendants' claim that they did not breach the lease is substantively absurd as well. With respect to air conditioning at the Premises, defendants point to § 7.1 of the Lease and assert that it is Chinois' fault that the space OPM occupies cannot be kept cool in the summertime. Plaintiffs' complaint, however, has nothing to do with the "installation, maintenance, repair or replacement" of the air conditioning unit. The relevant Lease term is § 7.2, "Air Conditioning of Premises," which requires defendants to provide adequate condensed water to properly cool the Premises. This they have failed to do. Complaint ¶ 90.

Defendants' argument with respect to the covenant of quiet enjoyment is equally baseless. Relying on authority from 1817 and 1921, defendants contend that breach of the covenant requires "either actual or constructive eviction." Defendants' Brief at 25. Whatever the scope of the covenant might have been in the hoary past, for at least the last few decades it has "insulate[d] the tenant against any act or omission on the part of the landlord, or anyone claiming under him, which interferes with a tenant's right to use and enjoy the premises for the purposes contemplated by the tenancy." *Petroleum Collections, Inc. v. Swords*, 48 Cal. App. 3d 841, 846, 122 Cal. Rptr. 114, 117 (1975) (citing <u>Green v. Superior Court, 10 Cal.3d 616,</u>

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

625, n. 10, 111 Cal. Rptr. 704, 517 P.2d 1168 (1974); 49 Am.Jur.2d, Landlord and Tenant, § 336, p. 351). Plaintiffs' allegations fall well within this standard.

## VIII.    The Seventh Cause of Action States A Claim for Civil Conspiracy

"An actionable civil conspiracy 'consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts.'" *Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998) (quoting *Hilton Hotels v. Butch Lewis Productions*, 109 Nev. 1043, 1048, 862 P.2d 1207, 1210 (1993) and citing Sutherland v. Gross, 105 Nev. 192, 196, 772 P.2d 1287, 1290 (1989)).

Defendants contend that "[t]he Complaint alleges only that the 'Defendants, and each of them, acted in concert, directly or through their common agents.'" Defendants' Brief at 26. Defendants are wrong. Plaintiffs allege that defendants acted in concert to further certain unlawful objectives, incorporating by reference the preceding 23 pages of allegations concerning the details of defendants' concerted wrongdoing. Complaint ¶ 98. In paragraph 27 of the Complaint, plaintiffs explain the motivations underlying the conspiracy.

Defendants also argue that the specialized pleading standard the U.S. Supreme Court articulated for conspiracies in restraint of trade under the Sherman Act in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929 (2007) must be applied to every mine run civil conspiracy claim. Not surprisingly, they cite no authority for this proposition. Indeed, the *Twombly* standard speaks in terms of "parallel conduct," an antitrust term of art with no bearing here. *See, e.g., Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 2000 U.S. Dist. LEXIS 9256, *20-*21, 2000-2 Trade Cas. (CCH) P72,971 (S.D.N.Y. July 6, 2000) ("certain 'parallel conduct is consistent with independent competitive decisions or at most reflects a non-consensual decision not to compete[, a]dditional facts or circumstances are needed to show that the decisions were interdependent and thus raise an inference of a tacit

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No.:

agreement to boycott.'" (quoting *Modern Home Institute, Inc. v. Hartford Accident & Indemnity Co., 513 F.2d 102, 110 (2d Cir. 1975)* and citing Donald F. Turner, *The Definition of Agreement Under the Sherman Act: Conscious Parallelism and Refusals to Deal*, 75 Harv. L. Rev. 655, 658-59, 681 (1962)).

Much more to the point is *Hayes v. Arthur Young & Co.*, 1994 U.S. App. LEXIS 23608, *67-*68 (9th Cir. Aug. 26, 1994) ("To assert a conspiracy, the complaints must allege that [defendants] owed a duty to [plaintiffs] and that they breached this duty. . . . Both complaints do so. Therefore, the civil conspiracy allegations properly state a claim and should not have been dismissed." (citation omitted)).

Finally, defendants ludicrously contend that the standard allegations in paragraph 11 of the Complaint that defendants acted as each other's agents, servants, employees, etc. preclude plaintiffs from stating a claim for civil conspiracy, relying on *Collins v. Union Federal Savings & Loan Ass'n*, 99 Nev. 284, 303, 662 P.2d 610, 622 (1983) and *Laxalt v. McClatchy*, 622 F. Supp. 737, 745 (D. Nev. 1985). These cases, however, stand only for the unremarkable proposition that a corporation cannot conspire with its employees, a principle that has no application here. Plaintiffs do not allege that any corporate defendant conspired with its own employees. Plaintiffs allege that the corporate defendants conspired with each other, and nothing in the Complaint can reasonably be construed to say otherwise.

## IX.  The Eighth Cause of Action States A Claim for Breach of the Covenant of Good Faith and Fair Dealing

Defendants concede, as they must, that a covenant of good faith and fair dealing is implied in all contracts under Nevada law, including commercial leases. *See, e.g., A.C. Shaw Construction, Inc. v. Washoe County*, 105 Nev. 913, 915, 784 P.2d 9, 10 (1989). The covenant imposes upon the parties an "obligation of good faith in [the contract's] performance and enforcement." 105 Nev. at 914, 784 P.2d at 9.

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

Defendants argue that plaintiffs have not stated a claim for breach of the covenant, however, because they have failed to allege a "special relationship" between themselves and defendants that would entitle them to tort damages. The problem with this contention is that plaintiffs are seeking to recover contract damages, not tort damages. As the Nevada Supreme Court held in *A.C. Shaw*, contract damages are available for breach of the covenant without a showing of any special relationship. 105 Nev. at 915, 784 P.2d at 10.

Defendants also argue once again that this claim fails because Chinois purportedly breached the Lease first, and because defendants did not breach the Lease. As already explained, however, these arguments are not only false, but wholly inappropriate in the context of a Rule 12(b)(6) motion.

Finally, defendants argue that only Forum may be held liable on this claim because it is the only party to the Lease. Defendants, however, ignore plaintiffs' allegations that the Forum and Simon defendants are alter egos of each other. Complaint ¶¶ 3-6. Indeed, each of the purported default notices sent to Chinois was on "Simon" or "Simon Property Group" letterhead, and purported to be from "Forum Shops, LLC, By: Forum Developers Limited Partnership, its sole member, By: Simon Property Group, LP, its general partner, By: Simon Property Group, Inc., its general partner." Complaint ¶¶ 43, 52 and 56.

## CONCLUSION

For the reasons explained above, Chinois respectfully requests that the Court deny defendants' motion *in toto*. Should the Court find any of Chinois' claims to be inadequately

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.:

pled, however, Chinois respectfully requests that it be permitted an opportunity to amend.

DATED this _____ day of July, 2008.

FAGELBAUM & HELLER LLP


_____/s/_____
Philip Heller
2049 Century Park East, Suite 4250
Los Angeles, CA 90067-3254
Counsel for Phase II Chin, LLC

HUNTERTON & ASSOCIATES


_____
C. Stanley Hunterton
333 So. Sixth St.
Las Vegas, Nevada 89101
Counsel for Phase II Chin, LLC

Case No.:

<u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed.R.Civ.P. 5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of HUNTERTON & ASSOCIATES and that the foregoing document was served via electronic service: OPPOSITION TO MOTION TO DISMISS to:

Samuel S. Lionel
LIONEL SAWYER COLLINS
300 So. Fourth St. #1700
Las Vegas, Nevada 89101
Counsel for Defendants Forum Shops, LLC, Forum Developers
Limited Partnership, Simon Property Group Limited Partnership
and Simon Property Group, Inc.

Harold Gewerter
GEWERTER LAW OFFICES
5440 W. Sahara Ave., Third Floor
Las Vegas, Nevada 89146
Counsel for Plaintiff Love & Money, LLC

Kristina Pickering
MORRIS PICKERING & PETERSON
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101
Counsel for Defendants Caesars Palace Corp. and
Caesars Palace Realty Corp.

_____
Jan Allen

HUNTERTON
&
ASSOCIATES
ATTORNEYS AT LAW
333 South Sixth Street
Las Vegas, NV 89101
(702) 388-0098

Case No.: