1   LIONEL SAWYER & COLLINS
    Samuel S. Lionel (NSB #1766)
2   Charles H. McCrea, Jr. (NSB #104)
    Christopher Mathews (NSB # 10674)
3   Lauren D. Calvert-Arnold (NSB # 10534)
4   1700 Bank of America Plaza
    300 South Fourth Street
5   Las Vegas, Nevada 89101

6   Tel     (702) 383-8888
7   Fax     (702) 383-8845

8   Attorneys for Defendants FORUM SHOPS, LLC,
    FORUM DEVELOPERS LIMITED
9   PARTNERSHIP, SIMON PROPERTY GROUP
    LIMITED PARTNERSHIP, AND SIMON
10  PROPERTY GROUP, INC.

11

12                  **UNITED STATES DISTRICT COURT**

13                      **DISTRICT OF NEVADA**

14

15  CHINOIS, LLC and LOVE & MONEY, LLC          Case No.  2:08-cv-00162-JCM-GWF
    (formerly dba O.P.M.L.V., LLC),
16
                    Plaintiffs,
17
    v.
18
    FORUM SHOPS, LLC, FORUM
19  DEVELOPERS LIMITED PARTNERSHIP,
    SIMON PROPERTY GROUP LIMITED
20  PARTNERSHIP, SIMON PROPERTY
    GROUP, INC., CAESARS PALACE CORP.,
21  and CAESARS PALACE REALTY CORP.

22                  Defendants.

23  **REPLY IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS FORUM SHOPS,**
24  **LLC, FORUM DEVELOPERS LIMITED PARTNERSHIP, SIMON PROPERTY GROUP**
    **LIMITED PARTNERSHIP, AND SIMON PROPERTY GROUP, INC.**
25
                            **AND**
26
    **JOINDER IN CO-DEFENDANTS' ALTERNATIVE MOTION TO STRIKE**
27  **IMMATERIAL, IMPERTINENT AND SCANDALOUS MATTER FROM PLAINTIFFS'**
                        **COMPLAINT**
28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES.......................................... 1

I. LEGAL ARGUMENT................................................................................... 1

    A. Plaintiffs' Claims Must Be Dismissed Pursuant to FED R. CIV. P. 12(B)(6).......................................................................................... 1

        (1) The Motion to Dismiss Standard ...................................... 1

        (2) Plaintiffs Have Failed to Aver the Necessary Elements of a Claim For Declaratory Relief (First Cause of Action )............... 3

        (3) Plaintiffs Have Failed to State a Claim for Intentional Interference with Contractual Relations (Second Cause of Action) .............................................................................. 8

            (a) As a Matter of Law, Plaintiffs Cannon Establish that Defendants Interfered with a Valid and Existing Contract. .................................................. 8

                (i) The "Management Agreement" Is an Invalid Sublease ................................................... 8

                (ii) As a Matter of law, Defendants Neither Approved The Sublease Nor Waived the Prohibition in the Lease Against Subletting........................................... 11

            (b) There Was No "Actual Disruption" of the Contract Between Chinois and OPM ................................. 14

        (4) Plaintiffs Have Failed to State a Claim for Intentional Interference with Prospective Business Advantage (Third Cause of Action) ................................................. 15

        (5) Plaintiffs Have Failed to State a Claim for Preliminary Injunction (Fourth Claim for Relief)................................................. 17

        (6) Plaintiffs Have Failed to State a Claim for Violation of 42 U.S.C. § 1981 (Fifth Claim for Relief) ...................................... 20

        (7) Plaintiffs Have Failed to state a Claim for Breach of Lease (Sixth Claim for Relief)................................................. 22

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101

(8) **Plaintiffs Fail to State a Claim for Conspiracy (Seventh Claim for Relief)** .............................................................. 25

(9) **Plaintiff's Fail to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Eighth Cause of Action)** ...................................................................... 26

B. **Defendants' Joinder in Co-Defendants' Motion to Strike Immaterial, Impertinent, or Scandalous Matters Pursuant to FED. R. CIV. P. 12(f)** ....................................................... 27

II. **CONCLUSION** .......................................................................28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101

# TABLE OF AUTHORITIES

## CASES

*Alexander v. U.S.*, 509 U.S. 544 (1993) ................................................................ 18

*American States Ins. Co. v. Kearns,* 15 F.3d 142 (9th Cir. 1994) ................................ 6

*Angel v. Eldorado Casino, Inc.*, 2008 U.S. Dist. LEXIS 37491 (D. Nev. April 25, 2008) ........... 2

*Arguello v. Conoco Inc.*, 330 F.3d 355 (5th Cir. 2003) ............................................... 16

*Arpin v. Santa Clara Transp. Agency*, 261 F.3d 912 (9th Cir. 2001) .................................. 9, 23

*Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 167 L.Ed 2d 929 (2007) ........................ 1, 2, 3

*Bradley v. Nevada-California-Oregon Ry.*, 42 Nev. 411, 178 P. 906 (1919) ............................ 23

*Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) ........................................ 4, 5, 6, 7

*Bush v. Watson*, 918 P.2d 1130 (Haw. 1996) ......................................................... 8, 9

*Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361 (9th Cir. 1991) ..................................... 6

*Clark v. Spiegel*, 22 Cal App. 3d 74, 99 Cal. Rptr. 86 (Cal. Ct. App. 1971) ........................ 24

*Collins v. Union Federal Savings and Loan Assoc.*, 99 Nev. 284, 662 P.2d 610 (1983) ........... 26

*Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976) ................................ 4, 5

*Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 114 Nev. 1304, 971 P.2d 1251 (1999) ........................................................................... 25

*Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367 (9th Cir. 1991) ............................... 5

*Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP,* 440 F. Supp. 2d 1184 (D. Nev. 2006) ........................................................................... 23

*Cunningham v. Universal Underwriters*, 98 Cal. App. 4th 1141 (Cal. App. 2002) ............... 24

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal. 4th 376, 902 P.2d 740 (1995) ......... 17

*Des Vergnes v. Seekonk Water District,* 601 F.2d 9, 13-14 (1st Cir. 1979) ............................ 20

*Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480 (9th Cir. 1984) ................................ 25, 26

*Dow Chemical Co. Mahlum*, 114 Nev. 1468, 970 P.2d 98 (1998) ...................................... 25

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101

*Duvall v. Craig*, 15 U.S. 45 (1817)............................................................................ 26

*Excel Graphics Technologies, Inc. v. CFG/AGSCB 75 Ninth Ave., LLC*, 1 A.D.3d 65, 767 N.Y.S.2d 99 (N.Y. App. Div. 2003) ................................................................ 13, 14

*Fisher v. Va. Elec. & Power Co.*, 258 F. Supp. 2d 445 (E.D. Va. 2003) ...........................24

*Farmers Insurance Exchange v. Neal*, 119 Nev. 62, 64 P.3d 472 (2003)................................. 14

*Galaxy Networks, Inc. v. Kenan Sys. Corp.*, 2000 U.S. App. LEXIS 12588 (9th Cir. Cal. June 2, 2000)................................................................................................................ 17

*Govt. Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) ............................................ 5, 6

*Gramanz v. T-Shirts and Souvenirs, Inc.*, 111 Nev. 478, 894 P.2d 342 (1995) .......................... 14

*Green v. Los Angeles County of Superintendent of Schools*, 883 F.2d 1472 (9th Cir. 1989)............................................................................................................................21

*Green v. Superior Court of San Francisco*, 10 Cal 3d 616 (Cal. 1974) .............................24

*Hayes v. Arthur Young & Co.*, 1994 U.S. App. LEXIS 23608 (9th Cir. 1994) ........................ 25

*Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp.2d 1096 (D. Ariz. 2003)............................... 25

*Hilton Hotels Corp. v. Butch Lewis Prods.*, 107 Nev. 226, 808 P.2d 919 (1991)....................... 27

*Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 109 Nev. 1043, 862 P.2d 1207 (1993)............ 8

*J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 120 Nev. 277,  89 P.3d 1009 (2004). 27

*Jefpaul Garage Corp. v. Presbyterian Hospital in City of New York*, 61 N.Y.2d 442, 462 N.E.2d 1176 (N.Y. App. 1984)................................................................................... 13

*Laxalt v. McClatchy*, 622 F.Supp. 737 (D. Nev. 1985) ................................................... 26

*Ledbetter v. Goodyear Tire & Rubber Co.*, -- U.S. --, 127 S. Ct. 2162 (May 29, 2007) ..........28

*Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797 (7th Cir. 2008)............................... 21, 22

*McCaleb v. Pizza Hut of America, Inc.*, 28 F. Supp. 2d 1043 (N.D. Ill. 1980) .......................... 16

*McGraw Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339 (9th Cir. 1966).................. 4

*Merrill v. DeMott*, 113 Nev. 1390, 951 P.2d 1040 (1997) ............................................... 14

*Mionis v. Bank Julius Baer & Co., Ltd.*, 301 A.D.2d 104, 749 N.Y.S.2d 497 (N.Y. App. 2002) ............................................................................................................... 13

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101

iv

*Mission Resources v. Texaco Inc.*, 1996 U.S. App. LEXIS 21372 (9th Cir. Aug. 16, 1996) .................................................................................................................. 16, 17

*Monarch Information Services v. 161 William Associates*, 103 A.D.2d 703, 477 N.Y.S.2d 650 (N.Y. Sup. Ct. 1984) .................................................................................. 14

*Morris v. Bank of America, Nevada*, 110 Nev. 1274, 886 P.2d 454 (1994) ............................. 26

*Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931) ........................................................ 18

*Neitzke v. Williams*, 490 U.S. 319 (1989) ........................................................................... 2

*Nevada Yellow Cab Corp. v. Eighth Judicial District Court*, -- Nev. --, 152 P.3d 737, 740 (2007) ....................................................................................................... 14

*New York Times Co. v. United States*, 403 U.S. 713 (1971) ................................................. 18

*Organization for a Better Austin v. Keefe*, 402 U.S. 415, 29 L. Ed. 2d 1, 91 S. Ct. 1575 (1971) .......................................................................................................... 18

*Papasan v. Allain*, 478 U.S. 265 (1986) ........................................................................ 9, 23

*Perry v. Jordan*, 111 Nev. 943, 900 P.2d 335 (1995) ......................................................... 27

*Petroleum Collections Inc. v. Swords*, 48 Cal. App. 3d 841, 122 Cal. Rptr. 114 (Cal. App. 1975) .......................................................................................................... 24

*R/S Assoc. v. New York Job Dev. Auth.*, 98 N.Y.2d 29, 744 N.Y.S.2d 358, 771 N.E.2d 240 (N.Y App. 2002) .................................................................................... 13

*Robinson v. Robinson*, 303 A.D.2d 234, 757 N.Y.S.2d 13 (N.Y. App. Div. 2003) ................... 13

*Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) ............................. 2

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303 (N.D. Cal. 1997) ........ 15, 17

*Slater v. Conti*, 171 Cal. App. 2d 582, 341 P.2d 395 (Cal. Ct. App. 1959) .............................. 24

*Sutherland v. Gross*, 105 Nev. 192, 772 P.2d 1287 (1989) ............................................... 8, 26

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) ............................................................. 2

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) .................................. 18

*Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053 (9th Cir. 2004) ................................................................................................................ 21

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101

v

*Thompson v. City of North Las Vegas*, 108 Nev. 435, 833 P.2d 1132 (1992)............................ 14

*UMG Recordings, Inc. v. Norwalk Distribs.*, 2003 U.S. Dist. LEXIS 26303 (C.D. Cal. June 12, 2003) ..............................................................................................................15

*Vance v. Universal Amusement Co.*, 445 U.S. 308 (1980) ......................................................... 18

*Veysey v. Moriyama*, 184 Cal. 802, 195 P. 662  (1921).............................................................. 24

*Williams v. Owens-Illinois, Inc.*, 665 F.2d 918 (9th Cir.) ........................................................... 21

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)...................................................................... 4, 5

*Yellow Cab Co. v. City of Chicago*, 186 F.2d 946 (7th Cir. 1951) ................................................. 4

## OTHER AUTHORITIES

42 U.S.C. § 1981.................................................................................................................. 16, 20

BLACK'S LAW DICTIONARY 1425 (6th ed. 1990)......................................................................... 8, 9

Declaratory Judgment Act, 28 U.S.C. § 2201(a) (1988 ed., Supp. V)............................................ 4

FED. R. CIV. P. 12(b)(6) ............................................................................................................ 1, 2

FED. R. CIV. P. 12(f).................................................................................................................. 1, 27

Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235-236 (3d ed. 2004)............... 2

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101

Defendants FORUM SHOPS, LLC ("Forum"), FORUM DEVELOPERS LIMITED PARTNERSHIP, SIMON PROPERTY GROUP LIMITED PARTNERSHIP and SIMON PROPERTY GROUP, INC. (collectively "Defendants") by and through their attorneys of record, LIONEL SAWYER & COLLINS, hereby submit the following Reply in Support of Motion To Dismiss of Defendants Forum Shops, LLC, Forum Developers Limited Partnership, Simon Property Group Limited Partnership, and Simon Property Group, Inc. and Joinder in Co-Defendants' Alternative Motion to Strike Immaterial, Impertinent and Scandalous Matter from Plaintiffs'' Complaint ("Reply"). This Reply is made and based on FED. R. CIV. P. 12(b)(6) and 12(f), the attached Memorandum of Points and Authorities, the papers and pleadings on file herein, and any oral argument allowed by the Court at a hearing on Defendants' Motion to Dismiss.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### LEGAL ARGUMENT

A.    **Plaintiffs' Claims Must be Dismissed Pursuant to FED. R. CIV. P. 12(b)(6).**

(1)  **The Motion to Dismiss Standard.**

Both Plaintiffs have mangled the correct standard by which a complaint shall be dismissed pursuant to FED. R. CIV. P. 12(b)(6).[1]  In its opposition, plaintiff Love & Money ("OPM") states, "The Complaint must be construed on the assumption that *all of its allegations are true*... even if doubtful in fact. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 167 L.Ed 2d 929 (2007)."[2] However, had OPM supplied the entire sentence from which it quotes, the court's <u>true</u> ruling would have been revealed:

---

[1] *See* Love & Money, LLC's Opposition to Motion to Dismiss of Defendants Forum Shops, LLC, Forum Developers Limited Partnership, Simon Property Group Limited Partnership, and Simon Property Group, Inc. and Opposition to Motion to Dismiss the Caesar Defendants (Docket No. 22; "OPM's Opposition") and Opposition to Motion to Dismiss of Defendants Forum Shops, LLC, Forum Developers Limited Partnership, Simon Property Group Limited Partnership, and Simon Property Group, Inc. (#12), filed by Chinois, LLC (Docket No. 23; "Chinois' Opposition").

[2] OPM's Opposition at 4, lns. 3-5 (emphasis added by OPM).

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain <u>something more</u>... than... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atl. Corp.*, 127 S. Ct. at 1965 (emphasis added). OPM has misquoted and intolerably mischaracterized the motion to dismiss standard by failing to even acknowledge the essential point articulated by the court that "[f]actual allegations must be enough to raise a right to relief above the speculative level."

Phase II Chin, LLC ("Chinois") in its opposition does no better. It chose instead to quote at length from *Angel v. Eldorado Casino, Inc.*, 2008 U.S. Dist. LEXIS 37491, *4-*5 (D. Nev. April 25, 2008). Foretelling the proper result in this case, the court in *Angel* found that the plaintiff could "prove no set of facts in support of his claim which would entitle him to relief, even when his claims are liberally construed," and properly dismissed the complaint pursuant to FED. R. CIV. P. 12(b)(6). As the court observed,

> the factual allegations included in a complaint "must be enough to raise a right to relief above the speculative level." [*Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955,] 1964-65. "The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 1965.

*Angel*, 2008 U.S. Dist. LEXIS 37491, *4-*5.

What Chinois fails to appreciate throughout its opposition are the basic fundamental guideposts that have been set by this Court in construing a motion to dismiss. Chinois has repeatedly asserted that Defendants are seeking to "dispose of... the principal issue in dispute....

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

simply by stating their position and saying it is so," or by "simply deny[ing] its allegations."[3]   On the contrary, what Defendants are "simply" recognizing is that insufficient facts under a cognizable legal claim warrant dismissal and that factual allegations require more than "labels and conclusions," formalistically reciting the elements of a cause of action. *Bell Atl. Corp.*, 127 S.Ct. at 1965.

**(2)   Plaintiffs Have Failed to Aver the Necessary Elements of a Claim for Declaratory Relief (First Cause of Action).**

In its lead-off argument, Chinois ridiculously asserts, "Defendants do not seek dismissal of Chinois' claim for declaratory relief (First Cause of Action) under Rule 12(b)(6). Indeed, nowhere in their brief do they state that the first Cause of Action fails to state a claim upon which relief may be granted...."[4] This assertion is baffling considering: (1) Defendants' bold heading, which states **"Plaintiffs Have Failed to Aver the Necessary Elements of a Claim for Declaratory Relief (First cause of Action);"** (2) the concluding sentence of that section which states, "For these reasons, Plaintiff's claim for declaratory relief should be dismissed;" and, (3) Defendants' plea on the first page of their motion for the Court to dismiss the entire Complaint for failure to a claim upon which relief can be granted.[5]

Chinois' claim that pursuant to Moore's Federal Practice Guide, their claim for declaratory relief "need allege only 'facts demonstrating the existence of an actual controversy, including facts showing standing and ripeness'" in order to survive Defendants' Motion to Dismiss is likewise

---

[3]  Chinois' Opposition at 9, lns. 23-25; *id.* at 12, ln. 28.

[4]  Chinois' Opposition at 6, lns. 4-7.

[5]  Motion to Dismiss of Defendants Forum Shops, LLC, Forum Developers Limited Partnership, Simon Property Group Limited Partnership, and Simon Property Group, Inc. (Docket No. 12; "Defendants' Motion to Dismiss") at 1, lns. 25-26; *id.* at 12, lns. 8-9; *id.* at 13 lns. 28- 14, ln. 1.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

incorrect.[6] The Ninth Circuit has ruled that a claim for declaratory relief is properly dismissed where the declaratory relief will "not finally determine the rights of the parties" or is being sought to determine issues already pending in a case that may be properly disposed of in the pending case. *McGraw Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342-43 (9th Cir. 1966), *quoting Yellow Cab Co. v. City of Chicago*, 186 F.2d 946, 950-51 (7th Cir. 1951). As already discussed at length in Defendants' Motion to Dismiss, and as Defendants will more fully discuss below, due primarily to the pending litigation in Delaware, this Court should either dismiss all of Plaintiffs' claims or enter an order abstaining from further proceedings. Alternatively, as suggested by Chinois, the Court should "stay Chinois' declaratory relief claim rather than dismiss it."[7]

Lastly, relying once again on Moore's Federal Practice Guide, Chinois claims that if both injunctive and declaratory relief are pled, abstention will be assessed pursuant to *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976) and not *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942).[8] If true, this Court's discretion in dismissing the declaratory relief claim would be limited to "exceptional circumstances." Plaintiffs' assertion is not true, however, and flies in the face of the command handed down by the United States Supreme Court in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995), a case incidentally cited by Chinois.[9] In *Wilton*, the court stated:

> Neither *Colorado River*, which upheld the dismissal of federal proceedings, nor *Moses H. Cone*, which did not, dealt with actions brought under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (1988 ed., Supp. V). Distinct features of the

---

[6] Chinois' Opposition at 6, lns. 7-9.

[7] Defendants' Motion to Dismiss at 13, lns. 12-28; Chinois' Opposition at 8, fn. 8, lns. 26-27.

[8] Chinois' Opposition at 7, lns. 18- 21.

[9] Chinois' Opposition at 7, lns. 13-14.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the "exceptional circumstances" test of *Colorado River* and *Moses H. Cone*.

*Wilton*, 515 U.S. at 286. Contrary to Chinois' assertions, nothing in *Wilton* suggests that the court's holding was limited only to actions consisting <u>solely</u> of a request for declaratory relief. Rather, the court's reasoning rested on whether the Declaratory Judgment Act, an enabling act, had been invoked or whether other federal statutes mandating action by the court, such as those in *Colorado River* and *Moses H. Cone*, had instead been invoked. *Id*. at 286-287.

*Govt. Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998), also cited by Chinois in its opposition, supports that conclusion. As a preliminary matter, *Govt. Employees Ins. Co.* specifically stands for the opposite proposition of that posited by Chinois: "the district court's authority is found in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491... and its progeny[,]" <u>not</u> *Colorado River*, as Chinois has incorrectly stated.[10] *Id*. at 1223. Additionally, as the decision specifically notes, the district court was without authority to decline to entertain the bad faith, breach of contract, breach of fiduciary duty, and rescission claims because there was an independent basis for federal diversity jurisdiction, unlike the case the at hand. *Id*. at 1226, n. 6. In *Govt. Employees Ins. Co.* the court simply had no discretion to exercise. *Id*.

Secondly, pursuant to *Govt. Employees Ins. Co.* and its reaffirmation of *Brillhart*, abstention would be proper for all claims asserted by Plaintiffs, not just the declaratory and injunctive relief claims:

> The *Brillhart* factors remain the philosophic touchstone for the district court. The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation. [*Continental Cas. Co. v.*] *Robsac* [*Indus.*], 947 F.2d [1367,] 1371-73 [(9th Cir. 1991)]. **If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit**

---

[10] Chinois' Opposition at 7, lns. 18-23.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

**should be heard in state court.** *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366-67 (9th Cir. 1991). The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief. *Id.* at 1367. Nonetheless, federal courts should generally decline to entertain reactive declaratory actions.

*Id.* at 1226 (emphasis added). Other factors considered in addition to those listed in *Brillhart* include those

> such as "whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies."

*Id.* at 1226, n. 5, *quoting American States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994).

Here, a parallel state proceeding involving the same issues and parties was already pending at the time this declaratory judgment action was filed.[11] In the parallel Delaware action, Defendants are seeking a declaration regarding the parties' rights and duties pursuant to the Lease and whether a breach has occurred.[12] In response to the Complaint filed in the Delaware action, Chinois and OPM have asserted counterclaims against Defendants that are identical to the claims asserted in this action.[13] Moreover, Chinois, OPM and all of the named defendants in this action are named parties to the first-filed Delaware action. Therefore, there is a presumption that the entire suit should be heard in Delaware.

Looking to the additional *Brillhart* factors, the declaratory judgment action before this Court is clearly a product of Plaintiffs' procedural fencing. Defendants first brought suit for

---

[11] *See* Delaware Complaint for Declaratory Judgment, attached to Defendants' Motion to Dismiss as Exhibit E.

[12] *Id.*

[13] *See* Answer of Defendants Chin-LV, LLC, Chinois, LLC and Chinois-LV, LLC and Counterclaims of Chinois, LLC and Love & Money, LLC, attached hereto as Exhibit F ("Plaintiffs' Delaware Answer and Counterclaim"). Defendants request that the Court take judicial

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

declaratory relief in Delaware seeking resolution of the controversy between Defendants and Plaintiffs.[14] Plaintiffs' attempt to dismiss or stay the Delaware action was unsuccessful.[15] Plaintiffs are now seeking the very same declaratory relief in both actions.[16] This implicates yet another *Brillhart* factor: entanglement between the federal and state court systems. As the Delaware court's Opinion denying Plaintiffs' motion to dismiss makes clear, the Delaware court is not only ready, able and willing to resolve the controversy between Plaintiffs and Defendants, it is actually moving forward to do so.[17] The instant declaratory judgment action will therefore serve no useful purpose in clarifying the legal relations at issue and will instead potentially lead to conflicting or duplicative rulings. Finally, looking to the convenience of the parties and the availability and relative convenience of other remedies, there has already been a formal ruling that Plaintiffs will not be inconvenienced by moving forward with the first-filed case in Delaware.[18]

In their Opposition, Plaintiffs argue factors pertaining to venue in Delaware and Nevada's jurisdiction to hear this matter, neither of which are in dispute but are otherwise irrelevant.[19] Under the holding in *Brillhart*, these are not the appropriate factors to be assessed by a federal district court in determining whether to abstain from deciding matters being entertained in a current parallel state case.

Plaintiffs have not stated a claim for declaratory relief and it should be dismissed. In the

---

notice of the pleading pursuant to FED. R. EVID. 201.

[14] *See* Motion to Dismiss, Exhibit E.

[15] *See* Delaware Memorandum Opinion attached hereto as Exhibit G. Defendants request that the Court take judicial notice of the Memorandum Opinion pursuant to FED. R. EVID. 201.

[16] Actually, all of the claims for relief asserted by Plaintiffs in both actions are identical. *See* Plaintiffs' Delaware Answer and Counterclaim, Exhibit F.

[17] *See id.*

[18] *See id.*

[19] Chinois' Opposition at 8, lns. 17-24; OPM's Opposition at 4, lns 28- 5, ln. 5; *see also* Memorandum Opinion (Exhibit G), wherein the same arguments are made by OPM and Chinois

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 353-8888

alternative, this Court should exercise its discretion to abstain from entertaining Plaintiffs' claims

asserted in this action and stay these entire proceedings pending the outcome of the parallel first-

filed Delaware action.

### (3) **Plaintiffs Have Failed to State a Claim for Intentional Interference with Contractual Relations (Second Cause of Action).**

In opposition to Defendants' Motion to Dismiss their second cause of action for intentional

interference with contractual relations, OPM and Chinois argue: (1) the so-called "Management

Agreement" (Sublease) between OPM and Chinois is not really a sublease entered into in violation

of the Lease between Forum and Chinois or, if it is a sublease, Defendants waived any objection

thereto; and (2) Defendants have somehow disrupted the contractual relationship between OPM

and Chinois established by the Sublease. These contentions are utterly without merit.

The elements of a claim for intentional interference with contractual relations are: "(1) a

valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts

intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract;

and, (5) resulting damage." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 109 Nev. 1043, 1048,

862 P.2d 1207, 1210 (1993) (emphasis added); *Sutherland v. Gross*, 105 Nev. 192, 196, 772 P.2d

1287, 1290 (1989).

### (a) **As a Matter of Law, Plaintiffs Cannot Establish that Defendants Interfered with a Valid and Existing Contract.**

#### (i) **The "Management Agreement" Is an Invalid Sublease.**

A sublease is defined as

> a lease executed by the lessee of land or premises to a third person, conveying the same interest which the lessee enjoys, but for a shorter term than that which the lessee holds (as compared to assignment, where the lessee transfers the entire unexpired term of the leasehold to a third party). Transaction whereby tenant grants interests in leased premises less than his own, or reserves to himself a reversionary interest in term.

---

regarding *forum non conveniens*.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

*Bush v. Watson*, 918 P.2d 1130, 1139, n. 11 (Haw. 1996), *quoting* BLACK'S LAW DICTIONARY 1425 (6th ed. 1990) (emphasis in original).

Although Chinois and OPM stress that their "Management Agreement"/Sublease did not assign or transfer any of Chinois' rights or obligations pursuant to the Lease to OPM and did not constitute a sublease,[20] this Court is not bound to accept such legal conclusions merely because they are alleged as a facts. *Papasan v. Allain*, 478 U.S. 265 (1986); *Arpin v. Santa Clara Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001) (when deciding a motion to dismiss, a district court is not bound to accept as true conclusory allegations of law or legal conclusions couched as a factual allegation).

Moreover, the issue isn't whether Chinois "assigned or transferred" any rights to OPM under the Lease (although that too would have been a clear violation of the Lease); the relevant issue is whether, as a matter of law, Chinois "[1] grant[ed] an interest in the leased premises less than [its] own, or [2] reserve[ed] to [itself] a reversionary interest in [the] term." As to the relevant issue, there is simply no dispute. The Sublease does both. It granted OPM an interest in the leased premises less than that held by Chinois[21] and it reserved to Chinois a reversionary interest in the term.[22]

---

[20] Chinois' Opposition at 9, lns. 19-24.

[21] Section 1 of the Sublease states:

> During the term of this Agreement, and subject to the provisions herein, Owner shall permit Manager to utilize a portion of the Upstairs Premises consisting of approximately 10,000 square feet as more particularly described in Exhibit 'A' attached hereto (the 'Facilities') solely for the Permitted Use, as defined in Section 3 below.

Motion to Dismiss, Exhibit B. The premises under the Lease include an "Upstairs Premises" and a "Ground Floor Premises." *See* Sublease, Recital A, Motion to Dismiss, Exhibit B. The Sublease grants OPM the right to use only the Upstairs Premises.

[22] The term of the Lease is 15 years. Lease, § 2.3, Motion to Dismiss, Exhibit A. The term of the Sublease is 5 years with an option to renew for an additional 5 years. Sublease, § 2,

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

If the Sublease is truly a "Management Agreement," as Chinois (and now even its counsel) steadfastly insist, its compensation provisions are most unusual. Normally, an owner pays a manager for management services rendered. Not so here. For all of the "management services" required under the Chinois/OPM "Management Agreement,"[23] Chinois pays OPM not a cent; all compensation goes the other way. For the rights granted by the "Management Agreement"/Sublease, OPM must pay to Chinois a "security deposit,"[24] a "minimum management fee" payable in monthly installments and referred to as the "monthly management fee,"[25] and a "percentage fee" calculated as a percentage of "gross sales."[26]

Just as most well written triple-net leases (or subleases) require, OPM as Chinois' "manager"/subtenant is also required to "pay a pro rata share of all utilities except gas"[27] and to maintain the following insurance coverages: commercial general liability insurance with a limit of not less than $5 million; workers compensation insurance; all risk property insurance; business interruption insurance; and employment practices liability insurance with coverage of not less than $2 million.[28] OPM is solely responsible for the cost of all signage at the nightclub[29] and the

Motion to Dismiss, Exhibit B.

[23] These services are detailed at Section 7.1 of the Sublease, which begins: "Subject to the terms and conditions hereof, Manager shall, at its sole cost and expense, operate and manage the Facilities for the Permitted Use...." Motion to Dismiss, Exhibit B.

[24] Section 6 of the Sublease states:

[T]hroughout the Term of this Agreement, the Security Deposit, as specified in Section 11.2 below, shall be held by Owner as security for the faithful performance of its obligations relating to Management Fees, Percentage Fees, repairs, or other charges due from Manager or to cure any other defaults of Manager.

Motion to Dismiss, Exhibit B.

[25] Section 10.2 of the Sublease. *Id.*

[26] Section 12 of the Sublease. *Id.*

[27] Section 13 of the Sublease. *Id.*

[28] Section 15 of the Sublease. *Id.*

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

payment of "all taxes assessed or incurred in connection with its use of the Facilities or its operation of the Nightclub, including, but not limited to, all federal and state business, employer, wage, use and sales taxes."[30] Without question, Chinois tried to pull a "fast one" by giving what was undeniably a sublease the title of "Management Agreement" and calling the sub-lessor "owner" and the sub-tenant "manager."

As is apparent from a plain reading of the Lease and the subsequently-executed Sublease (signed in contravention of the Lease), there could be no valid contract created between Chinois and OPM with which Defendants could have interfered, because Chinois was not permitted to sublet all or any part of the premises, "to license concessions" or "to lease any departments therein" without the landlord's <u>prior written approval</u>.[31] Contrary to the Lease, the Sublease effected a subletting to OPM: (1) of "a portion of the Upstairs Premises consisting of approximately 10,000 square feet;" (2) "to operate and manage such nightclub" (3) for a term less than that of Chinois' Lease with Forum, all subject to the terms of the Lease between Chinois and Forum.[32] To argue that the contract between Chinois and OPM is anything but a sublease is futile.

Regrettably, the copy of the Sublease provided by Plaintiffs in 2002 was heavily redacted to conceal critical terms in an effort to further disguise the sub-tenancy it created.[33] To this day, Defendants have never received a true and complete copy of the Sublease. Had Defendants' lay representative who was given the "Management Agreement"/Sublease received an unredacted copy, it would have been more readily recognized for what it truly is.

---

[29]  Section 16 of the Sublease. *Id.*

[30]  Section 21 of the Sublease. *Id.*

[31]  Lease at p. 20, Article XIII, Motion to Dismiss, Exhibit A.

[32]  *See* Sublease at pp. 2-3, Recitals (C) and (E) and Sections 1 and 2, attached to Defendants' Motion to Dismiss as Exhibit B.

[33]  *See id.*

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

**(ii)   As a Matter of Law, Defendants Neither Approved the Sublease Nor Waived the Prohibition in the Lease Against Subletting.**

Chinois argues in its Opposition that "Forum approved Chinois' plan for the operation of a nightclub, OPM, on the second level of the Premises to be managed by plaintiff Love & Money, at the time doing business as O.P.M.L.V."   As support for this assertion, Chinois cites to the allegations at paragraphs 20 and 21 of its Complaint.   Those allegations state:

> 20.   On November 12, 2002, Kaplan [representing Chinois] wrote Lewis [representing Defendants] again, this time telling Lewis that the new club would be called OPM and would be <u>managed</u> by O.P.M.L.V. in conjunction with Chinois. Kaplan again described the club, including, *inter alia,* its expected clientele, its hours of operation and the fact that it would serve Wolfgang Puck food from Chinois.   Kaplan also provided a description of O.P.M.L.V., its principal, Michael Goodwin ("Goodwin"), and other clubs operated by O.P.M.L.V.

> 21.   In an e-mail message of December 1, 2002, Lewis informed Kaplan that the <u>club</u> had been approved.   Lewis reiterated this approval in a letter to Kaplan of January 28, 2003 on "Simon Property Group" letterhead.   Forum was provided a copy of the Management Agreement with certain financial information redacted on July 10, 2002. [Emphasis added.]

Even assuming these allegations are true, it is nowhere alleged by Chinois that Defendants approved OPM <u>as a subtenant</u>.   Chinois always represented to Defendants that OPM was nothing more than a "<u>manager</u>."   Nor is it alleged anywhere that Defendants approved the Sublease (so-called "Management Agreement") in writing (or otherwise) as expressly required by the Lease.   At the very most, it is alleged (or, more accurately, implied) by Chinois that Defendants waived any objection to the unauthorized Sublease by not declaring it a breach of the Lease prior to the March 6, 2006 Notice of Default.[34]   This argument fails as a matter of law, however, because the Lease expressly provides that the requirement of Landlord's prior written consent to subletting cannot be waived by any conduct of Landlord.[35]   This "non-waiver clause" must be given effect and

---

[34]   *See* Motion to Dismiss, Exhibit D.

[35]   Section 13.1 of the Lease provides in pertinent part:

> If this Lease is assigned or the Premises or any part sublet or occupied by anybody other than Tenant <u>without Landlord's written consent</u> [emphasis in original], Landlord may collect rent from the assignee, subtenant or occupant and

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

enforced.

In *Excel Graphics Technologies, Inc. v. CFG/AGSCB 75 Ninth Ave., LLC*, 1 A.D.3d 65, 767 N.Y.S.2d 99, 102 (N.Y. App. Div. 2003), a tenant brought an action against its landlord seeking a declaration of waiver as to a provision in the lease requiring the landlord's prior written consent to subletting. The tenant argued that the landlord waived the written consent requirement in the lease by allowing the subtenant to be listed on the building directory and collecting rent from the tenant with full knowledge of the sub-tenancy. *Id.*, 767 N.Y.S.2d at 102. The landlord moved to dismiss the action claiming, as a matter of law, the non-waiver provision in the lease had to be enforced. The trial court denied the motion to dismiss and the landlord appealed. *Id.*, 767 N.Y.S.2d at 100. On appeal, a four-judge appellate panel unanimously reversed, holding that the non-waiver clause was enforceable as a matter of law and the trial court was required to give it effect by granting the landlord's motion to dismiss. *Id.*, 767 N.Y.S.2d at 104. The court stated:

> It bears noting that "[w]hile a complaint is to be liberally construed in favor of plaintiff on a motion to dismiss, the Court is not required to accept factual allegations that are plainly contradicted by the documentary evidence"(*Robinson v. Robinson,* 303 A.D.2d 234, 235, 757 N.Y.S.2d 13). A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms (*R/S Assoc. v. New York Job Dev. Auth.,* 98 N.Y.2d 29, 32, 744 N.Y.S.2d 358, 771 N.E.2d 240). Courts "are obliged to interpret a contract so as to give meaning to all of its terms"(*Mionis v. Bank Julius Baer & Co., Ltd.,* 301 A.D.2d 104, 109, 749 N.Y.S.2d 497). Here, the lease provisions unambiguously and unequivocally negate the two essential facts asserted by plaintiff in support of its claim of waiver as alleged in the complaint.
>
> Waiver is the voluntary abandonment or relinquishment of a known right (*Jefpaul Garage Corp. v. Presbyterian Hosp.,* 61 N.Y.2d 442, 446, 474 N.Y.S.2d 458, 462 N.E.2d 1176). There, like here, the tenant argued that, by accepting rent with knowledge of the tenant's violations and without terminating the lease, the landlord had waived the lease violations as a matter of law. As here, the lease

apply the same to the rent herein reserved, but <u>no such assignment, subletting, occupancy or collection of rent shall be deemed a waiver of any restrictive covenant contained in this Section 13.1 or the acceptance of the assignee, subtenant or occupant as tenant, or a release of Tenant from the performance by Tenant of any covenants on the part of Tenant herein contained</u> [emphasis added].

Motion to Dismiss, Exhibit A, p. 20. In addition, Section 24.1 of the Lease states: "No covenant, term or condition of this Lease shall be deemed waived by Landlord or Tenant <u>unless waived in writing</u> [emphasis added]." *Id.* at p. 28.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

contained a nonwaiver and merger clause that provided: "The receipt by Landlord of rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Landlord unless such waiver be in writing signed by the Landlord (*id.*)." The court held that tenant's waiver argument was barred by the clause, stating, "Its language is clear and unambiguous. The parties having mutually assented to its terms, the clause should be enforced to preclude a finding of waiver of the conditions precedent to renewal"(*id.*). <u>Thus, it is clear that the parties to a commercial lease may mutually agree that conduct, which might otherwise give rise to an inference of waiver, shall not be deemed a waiver of specific bargained for provisions of a lease</u> (*see Monarch Information Services v. 161 William Associates*, 103 A.D.2d 703, 477 N.Y.S.2d 650).

\* \* \*

<u>Since each of plaintiff's factual arguments in support of its waiver claim is negated by the express language of the lease, the cross motion to dismiss based on documentary evidence should have been granted.</u>

*Excel Graphics Technologies, Inc. v. CFG/AGSCB 75 Ninth Ave., LLC*, 1 A.D.3d 65, 767 N.Y.S.2d 99, 102 (N.Y. App. Div. 2003) (emphasis added); *see also, Jefpaul Garage Corp. v. Presbyterian Hospital in City of New York*, 61 N.Y.2d 442, 462 N.E.2d 1176, 1178 (N.Y. App. 1984).

Although the foregoing cases are from New York, the result in Nevada would be no different. *Farmers Insurance Exchange v. Neal*, 119 Nev. 62, 64, 64 P.3d 472, 473 (2003) ("a contract...must be enforced according to its terms to accomplish the intent of the parties"); *Thompson v. City of North Las Vegas*, 108 Nev. 435, 833 P.2d 1132, 1134 (1992) ("a waiver is the intentional relinquishment of a known right [;i]n order to be effective a waiver must occur with full knowledge of all material facts"); *Gramanz v. T-Shirts and Souvenirs, Inc.*, 111 Nev. 478, 483, 894 P.2d 342, 346 (1995) (waiver to be implied from conduct requires conduct that is inconsistent with any other intention than waiver); *Nevada Yellow Cab Corp. v. Eighth Judicial District Court*, __ Nev. __, 152 P.3d 737, 740 (2007) (delay alone is insufficient to establish waiver); *Merrill v. DeMott*, 113 Nev. 1390, 1399, 951 P.2d 1040, 10445-46 (1997) (where question of waiver turns on implications arising from written instrument, it is a question of law).

. . . .

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

**(b)    There Was No "Actual Disruption" of the Contract Between Chinois and OPM**.

Even assuming the Sublease between the Chinois and OPM is valid, there has been no "actual disruption" of their contract as required under Nevada law to state a claim for relief for intentional interference.  At most, Plaintiffs have alleged that their relationship has been strained or that the Lease <u>with Forum</u> has been breached, but they have not made any allegations that there has been an actual disruption of <u>their</u> contract.  Vague and conclusory allegations that it is somehow "more difficult for a business' customers to find the business," as claimed by Chinois, does not equate to an actual disruption of the contract <u>between Chinois and OPM</u>.  OPM is still actively operating its nightclub pursuant to the Sublease with Chinois to this very day.  Chinois offers several alleged examples of supposed actual disruptions, but these are no more than their recycled examples of how Defendants have supposedly breached the Lease <u>between Chinois and Forum</u> or more unsupported legal conclusions masked as factual allegations.

Because there is no valid contract between Chinois and OPM and Plaintiffs have not pleaded that Defendants' acts actually disrupted the contractual relationship, Plaintiffs second cause of action must be dismissed.

**(4)    <u>Plaintiffs Have Failed to State a Claim for Intentional Interference with Prospective Business Advantage (Third Cause of Action)</u>**.

The crux of Plaintiffs' opposition to dismissing their claim for intentional interference with prospective business advantage rests in their contention that each and every time a person patronizes a restaurant or club, an ongoing, forward-looking contractual relationship between the customer and restaurant manifests, resulting in a cause of action for any future disruption thereof.  Such a contention is nonsensical.  As Defendants have continually maintained, Plaintiffs have not and cannot claim <u>prospective</u> contractual relations with their transitory customers. [36]  As even Plaintiffs have recognized, two of the required elements for intentional interference with

---

[36] As Defendants have already discussed in their Motion to Dismiss, "intentional interference [is] not applicable to hypothetical relationships." *UMG Recordings, Inc. v. Norwalk Distribs.*, 2003 U.S. Dist. LEXIS 26303 (C.D. Cal. June 12, 2003), *citing Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1311 (N.D. Cal. 1997).

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1  prospective business advantage are a <u>prospective</u> relationship and intent to harm the plaintiff by
2  <u>preventing</u> the relationship. Plaintiffs have instead focused their oppositions on their relationships
3  with their customers at the time of the customer's patronage. This does not meet the requirement
4  of a future, forward-looking contractual relationship with which a defendant interferes.

5      Chinois recites an inapposite ruling that "dining at a restaurant generally involves a
6  contractual relationship <u>over the course of the meal</u>."[37] In *Arguello*, plaintiffs brought a 42 U.S.C.
7  § 1981 discrimination claim because a gas station clerk demanded identification when a patron
8  attempted to make a credit card purchase for gas and beer. *Id.*, 330 F. 3d at 356-57. The court
9  noted that for purposes of 42 U.S.C. § 1981, dining at a restaurant generally involves a contractual
10 relationship that continues over the course of the meal and entitles the customer to appurtenant
11 benefits such as proper utensils and a non-hostile atmosphere in which to consume their food. *Id.*,
12 330 F.3d at 360-61; *accord McCaleb v. Pizza Hut of America, Inc.*, 28 F. Supp. 2d 1043, 1048
13 (N.D. Ill. 1980). Nowhere has it been alleged that Defendants have attempted or intended to
14 interfere with Plaintiffs' contractual responsibilities to provide the proper utensils or a non-hostile
15 dining environment while Plaintiffs' customers are <u>in the process of dining</u>.

16     Plaintiffs have nonetheless persisted in arguing that an actual disruption has occurred
17 instead of recognizing that their claimed harm is merely speculative. Plaintiffs' claim will be
18 properly dismissed if they have "failed to plead facts either showing or allowing the inference of
19 actual disruption to its relationship with the Customers." *Sybersound Records, Inc. v. UAV Corp.*,
20 517 F.3d 1137, 1151 (9th Cir. Cal. 2008) (plaintiff failed to allege it lost a contract or that a
21 negotiation with a customer failed). "[T]he failure to achieve the maximum profits contemplated
22 under a contract is insufficient to establish the element of actual 'disruption' of the relationship."
23 *Mission Resources v. Texaco Inc.*, 1996 U.S. App. LEXIS 21372 (9th Cir. Aug. 16, 1996). The
24 pleadings are insufficient where a complaint alleges only that misrepresentations induced a party
25 not to deal with plaintiffs without providing facts alleging an actual disruption to negotiations or
26 potential contracts, or where it "merely states in a conclusory manner that it has been harmed

27

---

[37] Chinois' Opposition at 13, lns. 20-22, *quoting Arguello v. Conoco Inc.*, 330 F.3d 355, 360-361 (5th Cir. 2003) (emphasis added).

28
LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

because its ongoing business and economic relationships with Customers have been disrupted."
*Id., citing Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1313 (N.D. Cal. 1997). Plaintiffs also must plead (and ultimately prove as part of its case in chief) that "the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful 'by some legal measure other than the fact of interference itself.'" *Galaxy Networks, Inc. v. Kenan Sys. Corp.*, 2000 U.S. App. LEXIS 12588 (9th Cir. Cal. June 2, 2000), *quoting Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393, 902 P.2d 740 (1995).

In their Complaint, Plaintiffs merely state that "Forum has acted, without right or privilege, to harm plaintiffs by interfering with and preventing this prospective business and contractual relationship."[38] Plaintiffs fare no better in their oppositions by claiming that <u>possible</u> customers were confused by Forum's signage or did not want to use the side entrance.[39] Plaintiffs do not allege in their Complaint, for example, that they lost a single contract or that a single negotiation with a customer failed[40] or even that any "<u>ongoing</u> business and economic relationships with customers have been disrupted."[41] Moreover, Plaintiffs cannot maintain that the measures taken by Defendants were wrongful "by some legal measure other than the fact of interference itself,"[42] because Plaintiffs' actions were necessary safety measures or specifically authorized pursuant to the Lease.

Plaintiffs have failed to state a cause of action for intentional interference with prospective economic advantage and this claim must be dismissed.

> (5) **Plaintiffs Have Failed to State a Claim for Preliminary Injunction (Fourth Claim for Relief).**

Plaintiffs acknowledge -- as they must -- that for their claim for injunctive relief to stand, it

---

[38] Complaint ¶ 82.

[39] Chinois' Opposition 15-21; OPM's Opposition 7-9.

[40] *See Sybersound Records*, 517 F.3d at 1151.

[41] *Mission Resources v. Texaco Inc.*, 1996 U.S. App. LEXIS 21372 (9th Cir. Aug. 16, 1996).

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

must be tied to underlying legally cognizable claims.[43]  As has been shown, Plaintiffs do not have a likelihood of success on the merits of any of their claims and each and every claim should be dismissed.

More specifically, Chinois takes issue with Defendants' position that an injunction prohibiting Defendants from serving cease and desist letters or notices of breach would be an unconstitutional prior restraint of their First Amendment Right of free speech by faulting Defendants' citation to *Alexander v. U.S.,* 509 U.S. 544 (1993).[44]  According to Plaintiffs, *Alexander*'s recitation of a long-standing hornbook rule is inapplicable because that case involved obscenity laws and an adult entertainment establishment. *Id.*  Plaintiffs are wrong. *Alexander* goes on to cite many other examples of impermissible prior restraint:

> In *Near v. Minnesota ex rel. Olson*, [283 U.S. 697 (1931)], we invalidated a court order that perpetually enjoined the named party, who had published a newspaper containing articles found to violate a state nuisance statute, from producing any future "malicious, scandalous or defamatory" publication. *Id.*, at 706. *Near*, therefore, involved a true restraint on future speech -- a permanent injunction. So, too, did *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 29 L. Ed. 2d 1, 91 S. Ct. 1575 (1971), and *Vance v. Universal Amusement Co.*, 445 U.S. 308, 63 L. Ed. 2d 413, 100 S. Ct. 1156 (1980) (per curiam), two other cases cited by petitioner. In *Keefe*, we vacated an order "enjoining petitioners from distributing leaflets anywhere in the town of Westchester, Illinois." 402 U.S. at 415 (emphasis added). And in *Vance*, we struck down a Texas statute that authorized courts, upon a showing that obscene films had been shown in the past, to issue an injunction of indefinite duration prohibiting the future exhibition of films that have not yet been found to be obscene. 445 U.S. at 311. *See also New York Times Co. v. United States*, 403 U.S. 713, 714, 29 L. Ed. 2d 822, 91 S. Ct. 2140 (1971) (per curiam) (Government sought to enjoin publication of the Pentagon Papers).

*Alexander*, 509 U.S. at 550.  The rule enunciated in *Alexander* is thus not limited in the manner which Chinois suggests.

Chinois next asserts that its proposed injunction for Defendants to "cease and desist the

---

[42]  *Id.*

[43]  OPM's Opposition at 7, lns. 15-20; Chinois' Opposition at 15, ln. 14.

[44]  Chinois' Opposition at 16, lns. 7-15; *id.* at 17, lns. 1-2.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

racially-motivated misconduct alleged herein" is not "incapable of judicial supervision," "inconvenient or inefficient to administer" and would not "require continuous supervision by the court," because "Chinois does not seek to regulate defendant's '<u>motivation</u>;' Chinois demands only that they cease and desist their racially-biased <u>conduct</u>."[45]  Not so.  In their Complaint, "plaintiffs pray as follows: ...[for] the issuance of an injunction ordering Forum to: ...(4) cease and desist all <u>racially motivated</u> misconduct alleged herein."[46]  Plaintiffs are clearly seeking to regulate Defendant's motivation, something neither this Court nor any earthly being (at least those lacking the ability to read minds) is capable of doing.

The misconduct alleged in the Complaint is Defendants' attempt to enforce the terms of its Lease.  It will be for the Court to decide whether the breaches alleged by the Defendants occurred.  If they did not occur, Chinois will be vindicated in its assertion that it committed no breaches of the Lease -- but that is all.  It will not be relieved from the obligation to pay future rent or from complying with all of the other terms of the Lease.  What Chinois apparently seeks is a permanent "free pass" prohibiting Defendants from taking any action in the future to enforce the Lease terms.  Clearly, this would be improper.  No one is entitled to a permanent injunction prohibiting a person from ever asserting that his contractual rights have been violated.  If Defendants falsely or mistakenly assert in the future that Chinois has breached the Lease, Chinois' remedy at law will be wholly adequate -- a court will decide whether in fact a breach has occurred and only thereafter apply an appropriate remedy.  Most assuredly, that remedy will not include a permanent injunction against Defendants from asserting future breaches of the Lease.

Plaintiffs' fourth cause of action for injunctive relief must be dismissed.

. . . .

---

[45]   Chinois' Opposition at 17, lns. 14-16 (emphasis in original).

[46]   Complaint at 25-26, ¶ 3 (emphasis added).

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

**(6)** **Plaintiffs Have Failed to State a Claim for Violation of 42 U.S.C. §** **1981 (Fifth Claim for Relief).**

Plaintiffs' opposition to dismissal of their claim for violation of 42 U.S.C. § 1981 is fatally infected by their misapprehension of the applicable standing requirements. Plaintiffs rely heavily on *Des Vergnes v. Seekonk Water District*, 601 F.2d 9, 13-14 (1st Cir. 1979). However, *Des Vergnes* does not apply to the facts of this case and, as a decision by the First Circuit, does not alter the requirements more recently laid down by the Ninth Circuit. In *Des Vergnes*, 601 F.2d at 14, the First Circuit found that

> in order to effectuate the public policy embodied in § 1981, and in order to protect the Legal rights of non-whites expressly created by § 1981, a person has an implied Right of action against any other person who, with a racially discriminatory intent, interferes with his right <u>to make contracts with non-whites</u>. A fortiori a person has an implied Right of action against any other person who, with a racially discriminatory intent, injures him <u>because he made contracts with non-whites</u>. [Emphasis added.]

However, Plaintiffs do not allege that Defendants have interfered with any contracts they have made with non-whites but rather that they have interfered with the Lease and Lease Amendment <u>between Chinois and Forum</u>. As stated in the Complaint, "defendants... have discriminated <u>against plaintiffs</u> in the making, performance, and attempted termination <u>of the Lease and Lease Amendment</u>, and interfered with their enjoyment of the benefits, privileges, terms, and conditions <u>of those contracts</u>."[47] Plaintiffs have not alleged the proper elements of this claim and cannot amend their Complaint by adding to or changing their allegations in their Opposition. Even if Plaintiffs had alleged such, as already discussed in subsection (I)(A)(4), Defendants have not interfered with whatever sort of implied contractual relationship Plaintiffs may have with their customers during the course of a customer's meal.

Defendants have already fully discussed what the Ninth Circuit requires pursuant to

---

[47] Complaint ¶ 90 (emphasis added).

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

*Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053 (9th Cir. 2004)

in order to establish standing to maintain this claim.[48]  Plaintiffs have failed to: (1) counter how

any injury to a protected class will be redressed by an award of damages to either Chinois or OPM,

or (2) allege particularized, concrete, and actual or imminent discrimination harm as contemplated

in § 1981, instead alleging interference with the contract between Forum and Chinois.  *See*

*Thinket*, 368 F.3d at 1057; *see also* Complaint ¶ 90.

Plaintiffs deny that their claim is barred by the applicable statute of limitations pursuant to

the "continuing violation" principle of *Green v. Los Angeles County of Superintendent of Schools*,

883 F.2d 1472 (9th Cir. 1989).  As *Green* states,

> [A] systematic policy of discrimination is actionable even if some or all of the
> events evidencing its inception occurred prior to the limitations period. The reason
> is that the continuing system of discrimination operates against the employee and
> violates his or her rights up to a point in time that falls within the applicable
> limitations period. Such continuing violations are most likely to occur in the matter
> of placements or promotions.

883 F.2d at 1480, *quoting Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir.) (emphasis

added).

Both *Green* and *Williams* involved claims of discriminatory employment practices. *Green*,

883 F.2d at 1480-81, *Williams*, 665 F.2d at 924.  Discriminatory employment practice claims have

a unique nature: multiple acts by the employer must accumulate in order for the action to come to

fruition.  *Id.; Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008).  This is

because the first instance of such harassment or discrimination may be too trivial to support the

claim, and the plaintiff must wait for a pattern to emerge.  *Id.; Limestone Dev. Corp. v. Vill. of

Lemont*, 520 F.3d 797, 801 (7th Cir. 2008).  As it was recently explained,

> Like too many legal doctrines, the "continuing violation" doctrine is misnamed.
> Suppose that year after year, for ten years, your employer pays you less than the

---

[48]  *See* Defendants' Motion to Dismiss at 20- lns. 24- 21, ln. 27.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

minimum wage. That is a continuing violation. But it does not entitle you to wait until year 15 (assuming for the sake of illustration that the statute of limitations is five years) and then sue not only for the wages you should have received in year 10 but also for the wages you should have received in years 1 through 9. The statute of limitations begins to run upon injury (or, as is standardly the case with federal claims, upon discovery of the injury) and is not tolled by subsequent injuries. The office of the misnamed doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought.

*Limestone Dev. Corp.*, 520 F.3d at 801 (internal citations omitted; emphasis added).[49]

In the case at hand, Plaintiffs have not alleged discriminatory employment practices, but have alleged that Defendants have interfered with the Sublease between Chinois and OPM because of Defendants' supposed hostility towards African-Americans.[50] If what Plaintiffs have alleged is true, their cause of action had fully matured at the first alleged act of discrimination. There was no need to wait for any sort of pattern to emerge, as would be the case in an employment discrimination action. Plaintiffs should have brought their claim upon the alleged discovery of the harm, *i.e.*, when Defendants first allegedly attempted to interfere with the contract.

Because Plaintiffs do not have standing to assert a claim pursuant to § 1981 and because plaintiffs' claims are barred by the applicable statute of limitations, this claim must be dismissed.

(7)     **Plaintiffs Have Failed to State a Claim for Breach of Lease (Sixth Claim for Relief).**

In an attempt to skirt the entire issue that Chinois first breached the Lease, Plaintiffs assert that such a contention is not appropriately raised in a motion to dismiss and that Defendants must wait to raise the issue of "who breached first" in their answer to Plaintiffs' Complaint as an affirmative defense.[51] No authority is cited for this proposition.[52] Plaintiffs simply argue that this

---

[49] *See also Ledbetter v. Goodyear Tire & Rubber Co.*, -- U.S. --,127 S. Ct. 2162 (May 29, 2007) (plaintiff's arguments that each paycheck and raise denial violated Title VII and triggered a new charging period were not supported by the law; the on-going effects alone could not breathe life into prior, uncharged acts).

[50]    Complaint ¶ 90.

[51]    Chinois' Opposition at 23 ln. 23- 24 ln. 8.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

Court must accept their <u>legal</u> conclusion that they have complied with all terms of the Lease as fact, but as previously discussed, no such requirement exists.[53] The law in Nevada on this point is well settled: "[T]he party who commits the first breach of a contract <u>cannot maintain an action</u> against the other for a subsequent failure to perform." *Bradley v. Nevada-California-Oregon Ry.*, 42 Nev. 411, 178 P. 906, 908 (1919) (emphasis added). Indeed, this Court has recently dismissed breach of contract claims on a Rule 12(b)(6) motion where the moving party alleged that its adversary first breached. *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184, 1193 (D. Nev. 2006) (quoting the rule in *Bradley* stated above and dismissing a breach of contract claim where counterclaimant first breached the contract at issue).

As discussed above, Chinois was not permitted to sublet all or any part of the premises or to lease any departments therein without the landlord's prior written approval.[54] Pursuant to the Sublease, Chinois granted to OPM: (1) the right "to utilize a portion of the Upstairs Premises consisting of approximately 10,000 square feet;" (2) "to operate and manage such nightclub," (3) for a term less than that of Chinois' lease with Forum; and, (4) subject to the terms of the Lease between Chinois and Forum.[55] Chinois cannot claim that its breach has been waived by Defendants and because it breached the Lease first it cannot maintain this cause of action.

Plaintiffs also allege that Defendants have breached the covenant of quiet enjoyment and object to Defendants' use of valid and well-established case law because of the years in which the opinions were published.[56] Should Plaintiffs have given Defendants' cited cases an even cursory overview, they would have found that not only are the cases still good law, they have been cited

---

[52] *Id.*

[53] *See discussion supra* at Section I(A)(3)(a)(i) *citing Papasan v. Allain*, 478 U.S. 265, 286, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986); *Arpin v. Santa Clara Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001) (when deciding a motion to dismiss, a district court is not bound to accept as true conclusory allegations of law or legal conclusions couched as a factual allegation).

[54] Lease at p. 20, Article XIII, Motion to Dismiss, Exhibit A. *See also discussion supra* at Section I(A)(3).

[55] Sublease at pp. 2-3, Recital (C) and Sections 1 and 2, Motion to Dismiss, Exhibit B.

[56] Chinois' Opposition at 24, lns. 19-22.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1   and followed by courts to the near present.[57] Thus, as Defendants correctly stated in their Motion

2   to Dismiss, where a plaintiff admits to still being in possession of the premises, he or she cannot

3   state a claim for breach of the implied covenant of quiet enjoyment based on either actual or

4   constructive eviction, and the claim should therefore be dismissed. *Veysey v. Moriyama*, 184 Cal.

5   802, 805-06, 195 P. 662, 663 (1921); *see also Duvall v. Craig*, 15 U.S. 45, 62 (1817) ("it is

6   necessary to set forth in the breach, assigned in the declaration, an actual eviction or disturbance of

7   the possession of the grantee").

8        Plaintiffs cite *Petroleum Collections Inc. v. Swords*, 48 Cal. App. 3d 841, 846, 122 Cal.

9   Rptr. 114, 117 (Cal. Ct. App. 1975) for the proposition that the covenant "insulates the tenant

10  against any act or omission on the part of the landlord, or anyone claiming under him, which

11  interferes with a tenant's right to use and enjoy the premises for the purposes contemplated by the

12  tenancy."[58] This citation is baffling considering that the court there went on to state:

13         Stated in another manner, the covenant of quiet enjoyment is not broken until there
           has been an actual or constructive eviction (*Clark v. Spiegel*, 22 Cal.App.3d 74, 80
14         [99 Cal.Rptr. 86 (Cal Ct. App. 1971)]; *Slater v. Conti*, 171 Cal.App.2d 582, 585-
15         586 [341 P.2d 395 (Cal. Ct. App. 1959)]); an actual eviction takes place when the
           tenant is physically dispossessed of the property; a constructive eviction occurs
16         when the act of molestation merely affects the beneficial use of the property,
           causing the tenant to vacate the premises.

17

18  48 Cal. App. 3d at 847, 122 Cal. Rptr. at 117-118. The court then found that the implied covenant

19  of quiet enjoyment had not been breached until the defendant in that case vacated the premises

20  (noting that defendant and his sublessee had remained in possession of the service station for

21  almost 11 months after the alleged breach). *Id.*, 48 Cal. App. 3d at 848, 122 Cal. Rptr. at 118.

22       Whatever acts Plaintiffs allege were committed by Defendants, it is undisputed that none

23  had an effect of dispossessing Plaintiffs from the leased premises impairing the character of those

24  premises. Even if the purported acts allegedly affected the conduct of Plaintiffs' business, none of

25

26      [57] *See Cunningham v. Universal Underwriters*, 98 Cal. App. 4th 1141, 1152 (Cal. App.
        2002) and *Green v. Superior Court of San Francisco*, 10 Cal. 3d 616, 625 (Cal. 1974) (both citing
27      *Veysey v. Moriyama*, 184 Cal. 802, 195 P. 662 (1921)); *see also Fisher v. Va. Elec. & Power Co.*,
        258 F. Supp. 2d 445, 449 (E.D. Va. 2003), *citing Duvall v. Craig*, 15 U.S. 45 (1817).

28      [58] Chinois' Opposition at 24, lns. 23-27.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

the acts affected the physical premises or Plaintiffs' right of occupancy. Plaintiffs admit to being in both actual and constructive possession of the premises and, as a matter of law, no claim for breach of the implied covenant of quiet enjoyment can be maintained.

**(8)    Plaintiffs Fail to State a Claim for Conspiracy (Seventh Claim for Relief).**

Purportedly relying on *Hayes v. Arthur Young & Co.*, 1994 U.S. App. LEXIS 23608, *67-68 (9th Cir. 1994), Chinois asserts that to state a claim for conspiracy, Plaintiffs need merely allege (1) a duty owed to Plaintiffs and (2) a breach of this duty.[59] As the *Hayes* court made clear, however, these are not the only elements of a conspiracy claim. The language cited by Chinois in *Hayes* referred to the appellee's civil conspiracy claim and aiding and abetting breaches of fiduciary duty. *Id.* The court there was clarifying to the appellee that the gist of its conspiracy action lay in the underlying tort of breach of fiduciary duty, hence the requirement that it (1) allege a fiduciary duty that (2) had been breached. *Id.; see also Doleman v. Meiji Mutual Life Ins. Co.*, 727 F.2d 1480, 1482 n.3 (9th Cir. 1984), cited by *Hayes* for the very proposition in question.

Equally misleading, OPM argues that "[a] suit should not be dismissed if it is possible to hypothesize facts, consistent with the Complaint, that would make out a claim," attributing this quote to *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp.2d 1096, 1011 (D. Ariz. 2003). Unfortunately, no such quote exists in *Hearn*. In Nevada, courts may certainly draw favorable inferences from the facts as alleged, but those facts still need to be alleged and not merely "hypothesized" from facts that are alleged.

Chinois and OPM cannot avoid the true elements of a cause of action for conspiracy by simply ignoring them. Those elements are: (1) defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming plaintiff; and (2) plaintiff sustained damage resulting from their act or acts. *Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1999). The claim must identify a combination between two or more persons, name the alleged parties to the conspiracy, and identify

---

[59] Chinois' Opposition at 26, lns. 5-10.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1  the required unlawful object. *Morris v. Bank of America, Nevada*, 110 Nev. 1274, 1276, 886 P.2d
2  454, 456 (1994); *Sutherland v. Gross*, 105 Nev. 192, 196, 772 P.2d 1287, 1290 (1989). Plaintiff
3  must allege an agreement, whether explicit or tacit, between the tortfeasors. *Dow Chemical Co.*
4  *Mahlum*, 114 Nev. 1468, 1489, 970 P.2d 98, 112 (1998). "[T]he existence of an alleged civil
5  conspiracy must be established by *clear*, *cogent*, and *convincing* evidence." *Doleman v. Meiji*
6  *Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984) (emphasis in original). Moreover, agents
7  and employees of a corporation cannot conspire with their corporate principal or employer where
8  they act in their official capacities on behalf of the corporation and not as individuals for their
9  individual advantage. *Collins v. Union Federal Savings and Loan Assoc.*, 99 Nev. 284, 303, 662
10  P.2d 610, 622 (1983); *Laxalt v. McClatchy*, 622 F.Supp. 737, 745 (D.Nev. 1985).

11      Here, Plaintiffs have not alleged <u>any</u> agreement -- explicit or tacit -- let alone an unlawful
12  agreement, between Defendants. Likewise, Plaintiffs have utterly failed to point to any unlawful
13  acts engaged in by Defendants or to allege any individual or entity with which Defendants could
14  have conspired that are not employees or agents of Defendants. These omissions are fatal and,
15  consequently, Plaintiffs' claim for conspiracy must be dismissed.

16      **(9)    Plaintiffs' Fail to State a Claim for Breach of the Implied Covenant of Good**
17          **Faith and Fair Dealing (Eighth Cause of Action).**

18      In its Opposition, Chinois clarifies that Plaintiffs are not pursuing a claim for tortious
19  breach of the implied covenant of good faith and fair dealing. Rather, we are assured they are
20  pursuing an alleged breach of the contract-based form of the implied covenant.[60] OPM's silence
21  regarding the necessity to allege a special relationship mirrors Chinois' abdication of the tort form
22  of the claim.[61]

23      Contractual breach of the implied covenant of good faith and fair dealing exists where: (1)
24  plaintiff and defendant are parties to a contract; (2) defendant owed a duty of good faith and fair
25  dealing; (3) defendant breached this duty by performing in a manner that is unfaithful to the
26  purpose of the contract; and, (4) plaintiff's justified expectations, as "determined by the various

----

27

28

[60]  Chinois' Opposition at 27, lns. 1-6.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1  factors and special circumstances that shape these expectations," were denied. *Hilton Hotels Corp.*

2  *v. Butch Lewis Prods.*, 107 Nev. 226, 234, 808 P.2d 919, 923-24 (1991); *Perry v. Jordan*, 111 Nev.

3  943, 948, 900 P.2d 335, 338 (1995). Where the actions allegedly constituting a violation of the

4  covenant of good faith and fair dealing are also a violation of the contract itself, those claims are

5  properly asserted as a breach of contract claim. *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis,*

6  *Inc.,* 120 Nev. 277, 287, 287-88, 89 P.3d 1009, 1016 (2004); *Hilton Hotels Corp. v. Butch Lewis*

7  *Prods.*, 107 Nev. 226, 233-34, 808 P.2d 919, 923-24 (1991).

8  First and foremost, as previously explained by Defendants, Plaintiffs first materially

9  breached the Lease by subletting a portion of the premises to OPM and any acts that could

10  possibly be construed as "unfaithful" were necessary for security or were authorized pursuant to

11  the Lease. Additionally, OPM entirely failed to address how it can maintain this claim when it

12  was not a party to the contract between Forum and Chinois, and both Plaintiffs steadfastly refuse

13  to explain how any Defendant -- aside from Forum -- could be a party to that contract. Secondly,

14  the purpose of the Lease, providing Chinois (not OPM) with space within the Forum Shops to

15  conduct its business, has in no way been breached. Chinois is, and has always been, in possession

16  of the premises it leased and is conducting its business uninterrupted. Lastly, the actions alleged

17  by OPM and Chinois that supposedly constitute a violation of the covenant of good faith and fair

18  dealing are also an alleged violation of the contract itself, and those claims are thus properly

19  asserted as a breach of contract claim.[62] Indeed, Plaintiffs are impermissibly realleging breach of

20  express covenants of the Lease. For these reasons, the claim should be dismissed or, at a

21  minimum, must be dismissed as to OPM and all Defendants save Forum.

22  **B.**     **Defendants' Joinder in Co-Defendants' Motion to Strike Immaterial,**
          **Impertinent, or Scandalous Matters Pursuant to FED. R. CIV. P. 12(f).**
23

24  Rule 12(f) allows this Court to strike any immaterial, impertinent, or scandalous matter

25

26  [61] *See* OPM's Opposition at 14, lns. 1-17.

27  [62]    Complaint ¶ 102, on file with this Court (stating Defendants breached the implied
covenant "by failing to comply with the terms and conditions of the Lease"); OPM's Opposition at
28  14, lns. 5-11; Chinois' Opposition at 27, lns. 3-4.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1  from a pleading.  Co-defendants in their Motion to Dismiss the Caesars Defendants (Docket No.

2  20), request that this Court strike certain portions of Plaintiffs' Complaint that are either

3  scandalous or wholly irrelevant, should the Complaint survive the Motions to Dismiss.  *Id.* at 8,

4  lns. 20-27.  Defendants hereby join with co-defendants in such motion.

5

**II.    CONCLUSION**

6

7         Based on the foregoing reasons, this Court should dismiss Plaintiffs' Complaint in its

8  entirety.

9         DATED this 2⸜᷄ day of July 2008.

10                                         Respectfully submitted,

11                                         LIONEL SAWYER & COLLINS

12                                         By: _____

13                                             Samuel S. Lionel (NSB # 1766)
                                               Charles H. McCrea (NSB # 104)
14                                             Christopher Mathews (NSB # 10674)
                                               Lauren Calvert-Arnold (NSB # 10534)
15

16                                         Attorneys for Defendants FORUM SHOPS,
                                           LLC, FORUM DEVELOPERS LIMITED
17                                         PARTNERSHIP, SIMON PROPERTY GROUP
                                           LIMITED PARTNERSHIP, and SIMON
18                                         PROPERTY GROUP, INC.

19

20

21

22

23

24

25

26

27

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888