MORRIS PICKERING & PETERSON
Kristina Pickering, No. 992
Jean-Paul Hendricks, No. 10079
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Facsimile: (702) 474-9422

Attorneys for Defendants
Caesars Palace Corp. and
Caesars Palace Realty Corp.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PHASE II CHIN, LLC and LOVE & MONEY, LLC, (formerly dba O.P.M.L.V., LLC, <br><br>Plaintiffs,<br><br>v.<br><br>FORUM SHOPS, LLC, FORUM DEVELOPERS LIMITED PARTNERSHIP, SIMON PROPERTY GROUP LIMITED PARTNERSHIP, SIMON PROPERTY GROUP, INC., CAESARS PALACE CORP., and CAESARS PALACE REALTY CORP.,<br><br>Defendants. | CASE NO. 2:08-cv-162-JCM-GWF<br><br><br><br><br><br><br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS THE CAESARS DEFENDANTS** |

## I. Introduction

The Court should grant the motion to dismiss filed by Caesars Palace Corporation and Caesars Palace Realty Corporation ("Caesars defendants"). As an initial housekeeping matter, the plaintiffs' separate oppositions (Dkt. No. 22, pp. 8-14; Dkt. No. 29; Dkt. No. 30), do not contest and therefore concede the Caesars defendants' point that the Complaint, fairly read, does not attempt to state any of its Causes of Action against them except the Fifth Cause of Action, entitled "Violation of 42 U.S.C. § 1981," and the Seventh Cause

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

of Action, entitled "Conspiracy." Accordingly, all claims in the Complaint against Caesars should be summarily dismissed except the Fifth and Seventh Causes of Action. *See* LR 7-2(d).[1] This is because, as plaintiffs *also* concede, plaintiffs have no contract with – and no contract rights against – the Caesars defendants. The plaintiffs' remaining Causes of Action, which the Forum defendants challenge in their separate motion to dismiss (Dkt. No. 12),[2] arise under the Lease and the Lease Agreement. Caesars is not a party to either.

Though plaintiffs argue otherwise, with no contract and no contract rights alleged with or against Caesars, the plaintiffs' Fifth Cause of Action, "Violation of 42 U.S.C. § 1981," fails as to the Caesars defendants as a matter of law and also should be dismissed as to them. In 2006, the United States Supreme Court reversed the Ninth Circuit's expansive reading of § 1981 – by which the Ninth Circuit had reversed this Court's more faithful reading of the statute – and made clear that the *sine qua non* of a § 1981 claim is the assertion by the plaintiff of a contract right in a contract made or attempted to be made with a defendant. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006). Reversing the Ninth Circuit and reinstating this Court's ruling, the Supreme Court wrote: "[N]othing in the text of § 1981 suggests that it was meant to provide an omnibus remedy for *all* racial injustice. [It is] limited to situations involving contracts." *Id.* at 479 (emphasis in original). Consistent with the plain text of the statute, "Any claim brought under § 1981 . . . must identify an impaired 'contractual relationship,' §

---

[1] Caesars specifically moved to dismiss the Eighth Cause of Action, entitled "Breach of Implied Covenant of Good Faith and Fair Dealing," Dkt. No. 20, pp. 2, 7-8, noting that it was unclear whether the plaintiffs intended to include the Caesars entities as defendants to this claim or not. As the Caesars defendants established in their moving papers, since they are not a party to nor do they owe an implied duty under the Lease or Lease Amendment between plaintiffs and the Forum defendants, there is no implied covenant claim as to Caesars. Plaintiffs' failure to oppose this point concedes it under LR 7-2(d).

[2] Caesars joins the Forum defendants' reply in support of their motion to dismiss, Dkt. No. 36, to the extent it applies to the issues in dispute between Caesars and the plaintiffs.

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1981(b), under which the plaintiff has rights." *Id.* at 476 (footnote omitted). It is an "explicit statutory requirement that the plaintiff be the 'perso[n]' whose 'right . . . to make and enforce contracts,' § 1981(a), was 'impair[ed],' § 1981[c], on account of race." *Id.* at 478. "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id.* at 479.

Citing pre-*Domino's* case law, the plaintiffs nonetheless insist that their § 1981 claim against Caesars is sufficient. As the discussion that follows will show, it is not. Neither plaintiffs nor the prospective and/or actual but inconvenienced customers on whose behalf they purport to assert rights have a contract right, actual or prospective, to gain access to the plaintiffs' premises through Caesars after midnight, without arranging and paying for the extra security required. Without such a contract-based right, plaintiffs' § 1981 claim against the Caesars defendants fails. Case after case has so held, on a variety of grounds, all applicable here.

In addition, plaintiffs have failed to allege *plausible* facts, as required by *Bell Atlantic v. Twombly*, 127 S.Ct. 1955 (2007), to support either their Fifth Cause of Action, "Violation of 42 U.S.C. § 1981," or Seventh Cause of Action, "Conspiracy." Plaintiffs improperly include a laundry list of grievances intended to scandalize the Court that are irrelevant to their § 1981 claim because unrelated to any contract claim of right – and which the Caesars defendants thus have moved to strike under Rule 12(f). Plaintiffs rely on that list to establish their common law conspiracy claim. But as *Twombly* holds, conclusory allegations of evil animus or "concerted action" do not suffice. Specific, plausible facts establishing the conspiracy are required but wholly missing here. The common law conspiracy claim, equally with the legally insufficient § 1981 claim, can and properly should be dismissed.

## II. THE *TWOMBLY* STANDARD APPLIES

*Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1974 (2007), requires a complainant to plead "enough facts to state a claim to relief that is *plausible on its face*" (emphasis added). Although plaintiffs argue otherwise, Dkt. No. 29, p. 20, the Ninth Circuit has applied *Towmbly*'s "plausible on its face" standard in contexts other than the Sherman Act setting in which *Twombly* arose. In *Maloney v. Scottsdale Insurance Co.*, 256 Fed. Appx. 29, *1 (9th Cir. 2007), a breach of contract case, the Court cited *Twombly* for the proposition that, while "a complaint need not contain detailed factual allegations . . . it must plead enough facts to state a claim to relief that is *plausible* on its face" (emphasis added). The Ninth Circuit reiterated this standard in *Weber v. Department of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008), addressing a complaint for back pay and benefits and stating, again, that the claim to relief must be "plausible on its face."[3] *Accord Angel v. Eldorado Casino, Inc.*, 2008 US Dist LEXIS 37491, *4-*5 (D. Nev. April 25, 2008) (citing *Twombly* for the proposition that a complaint must be "supported by showing enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level").

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65. As to Caesars, plaintiffs' complaint fails this standard.

---

[3] This holding is clearly in line with other Circuit Courts. *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) (adopting the *Twombly* plausibility standard and requiring the pleader to "amplify a claim with some factual allegations when such amplification is needed to render a claim *plausible*") (emphasis in original); *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (adjusting the former Rule 12(b)(6) standard to comply with *Twombly*).

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

## III. DISCUSSION

### A. The Complaint Fails to State a § 1981 Claim Against Caesars.

"Section 1981 prohibits discrimination in the making and enforcement of private contracts." *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 837 (7th Cir. 2005). As the first step in the analysis, the plaintiff must identify the private contract at issue and the plaintiffs' and the defendants' relationship to it and to each other; absent such a relationship, the claim fails. *Burnett v. Sharma*, 511 F. Supp.2d 136, 140-41 (D.D.C. 2007) (citing and analyzing *Domino's*). Next, "To state a claim under § 1981, [plaintiffs] must allege facts in support of the following propositions: (1) [plaintiffs are] a member of a racial minority; (2) [the defendant] intended to discriminate on the basis of race; and (3) the discrimination deprived [plaintiffs] of one or more rights enumerated in § 1981, such as the making and enforcing of a contract." *Black Agents & Brokers Agency*, 409 F.3d at 837. Here, plaintiffs have failed in each step.

#### 1. Plaintiffs Have No Contract with Caesars.

With no contract and no contract right, there is no § 1981 claim. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006). Plaintiffs correctly note *Domino's* facts differ from those alleged here. Dkt. No. 22, pp. 9-10. In *Domino's*, the plaintiff was an individual who owned a company allegedly discriminated against based on race in the making and enforcing of a contract; because the plaintiff did not have rights under the identified contract, his claims failed. *But see infra* § III.A.2 (here, plaintiffs have no contract right either; they are asserting the rights of their patrons, deficiently). Caesars' point in citing *Domino's*, however, was not that the facts were on all fours with this case but that the law it states, and the reading it gives § 1981, apply here. *Domino's* holding is emphatic: "Any claim brought under § 1981 . . . *must initially identify* an impaired

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

5

'contractual relationship,' § 1981(b), under which the plaintiff has rights." 546 U.S. at 476 (emphasis added).

Here, plaintiffs have identified no impaired contractual relationship with Caesars under which they have rights. This is fatal. The District of Columbia faced a similar situation in *Burnett*. The plaintiff there was an African-American tenant who brought a § 1981 claim against her landlord, her landlord's attorney, and the District of Columbia, which had entertained her landlord's eviction proceedings against her. The Court began its analysis by quoting the following language from *Domino's*: "A plaintiff cannot state a claim under § 1981 unless she has (or would have) rights under the existing (or proposed) contract that she wishes to make and enforce. Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship." *Burnett*, 511 F. Supp.2d at 141. Because "nothing in her complaint even suggests the existence of an actual or proposed contractual agreement involving the District of Columbia" – the lease there, as here, was with her landlord – the Court *granted* the District's motion to dismiss. *Id.*

*Benton v. Cousins Properties, Inc.*, 230 F. Supp.2d 1351 (N.D.Ga. 2002), is to like effect. The plaintiff in *Benton* was an African-American woman who operated a shoeshine stand in an office building managed by Cousins but whose conference and cafeteria facilities were managed by Marriott. Plaintiff separately contracted with Marriott to lease a conference room in the building for a holiday bazaar for a small group of twenty-five which later expanded into a larger group, requiring different and additional services beyond those for which plaintiff had contracted with Marriott. Cousins, as the building manager, asked Marriott "to be responsible for the costs of providing security and janitorial services due to the potentially large traffic that would be passing through the facility to the conference room bazaar." *Id.* at 1372. As here, while concerned about the event and the security issues it posed, Cousins "allowed the event" but not without

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

passing on the extra cost. Cousins also rejected plaintiffs' request to use the elevators to transport goods to display at the bazaar unless plaintiff provided padding to protect them and denied plaintiffs' request to hand out flyers to Cousins' tenants. When plaintiff demanded additional services beyond those provided in the contract from Marriott, Marriott refused, unless plaintiff paid for them. *Id.* at 1373.

The Court granted both Cousins' and Marriott's motions for summary judgment. As to Cousins, the absence of a contract between plaintiff and Cousins was significant: "[W]hile it is true that plaintiff was not granted free signage, access to the elevators for her vendors to load their equipment, or access to the mail-drop boxes, for purposes of distributing internal flyers, *plaintiff had no contract with Cousins that would have entitled her to these benefits.*" *Id.* at 1375 (emphasis added). The Court then went on to address the plaintiffs' claim with Marriott. Noting the paucity of case law "defining the conduct that will constitute actionable harrassment under Section 1981 in a non-employment contract situation," *id.* at 1376, the Court concluded that, because the benefits denied or in dispute were benefits claimed but not provided for in the Marriott contract, "any rudeness to which plaintiff was subjected was a result of this business dispute . . . over services that plaintiff wanted, but that defendants argued she had not contracted for, and expenses that defendant Marriott believed plaintiff owed, but that she had not agreed to pay . . . and not because of plaintiff's race." *Id.* at 1378. The Court granted summary judgment against plaintiff and in favor of Cousins and Marriott.

*Benton* was pre-*Domino's* but, like *Burnett*, it makes Caesars' point. A defendant who is not under contract to provide services to a tenant of another and who in fact offers to provide services provided plaintiff will agree to pay for them has not violated 42 U.S.C. § 1981. The injury plaintiff complains of here, as against Caesars, is that Caesars is closing the gate between its premises and

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

7

Forum's Mall after midnight. Plaintiff admits that it has no contract right to demand that Caesar keep the gate open for free; indeed, the Lease Amendment plaintiffs have with the Forum defendants states that plaintiffs, i.e., "Tenant shall pay for all security . . . costs associated with the Premises after normal Center hours . . . ." Dkt. No. 12, Ex. C, ¶ 3. This is a garden variety business dispute between plaintiffs and the Forum defendants. Caesars, as a private party, not a state actor and a non-party to the contract in dispute, cannot be sued under the Civil Rights Act for a contract dispute between the Forum defendants and plaintiffs when plaintiffs allege no contract rights against Caesars. *See Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F. 3d 833, 837 (7th Cir. 2005) (noting that "it is difficult to understand how" a person who, while under contract to its co-defendant and the source of funds for performance of a contract between plaintiff and the co-defendant, "could have intended to discriminate against [plaintiff] in the making and termination of a contract when the two were never parties to a binding agreement nor were they trying to enter into an agreement"; summary judgment granted); *Collier v. Plumbers Local No. 1*, 2007 WL 1673047 * 2 n.5 (E.D.N.Y. 2007) ("Collier cannot recover for harm to her expectation interest in defendants' referral and assignment practices, because that interest is not contractual").

*Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303 (9th Cir. 1992), *overruled on other grounds*, does not help plaintiffs, though they argue it does. Dkt. No. 22, p. 11.[4] In the first place, *Kiewit* is a pre-*Domino's* case and the Ninth Circuit's loose reading of § 1981's requirement of a plaintiff identifying a

---

[4] Plaintiffs also cite an unpublished District of California case, *Franklin v. Allstate*, 2007 U.S. Dist. Lexis 51332, for the proposition privity is not required. Dkt. No. 22, p. 11. The case contains no analysis, only a citation to *Kiewit*, and Caesars submits does not comport with *Domino's*, the other cases cited in the text, or developing law in this area. *See also Horton v. Hussmann Corp.*, 2007 WL 3352367 *8 (noting that "it is less clear, however, whether a wronged plaintiff may proceed against a defendant not a party to the contract," but disposing of the case on other grounds and so not reaching the issue).

contractual relationship under which he has rights against the defendant was rejected in *Domino's*. In the second place, the language plaintiffs find comfort in from *Kiewit* is dictum. Third, and most importantly, *Kiewit* upheld the district court's grant of the defendant's motion to dismiss. It held that, based on the complaint, "[w]e simply cannot know what contract Kiewit prevented the MBE plaintiffs from entering into." *Id.* at 1313. Thus, *Kiewit*, as *Domino's* holds, took the identification of a contract under which plaintiff would have rights as the starting point. Here, no such contract with Caesars has been alleged. And, as the discussion in the section that immediately follows will show, plaintiffs have not identified an adequate substitute.

2. **Plaintiffs Fail to Allege Plausible Facts to Support the Prima Facie Elements of a 42 U.S.C. § 1981 Claim.**

Not only do plaintiffs fail to identify a contractual right Caesars owes that has been denied them, they also fail to establish the three elements of a prima facie § 1981 claim which, as noted above and argued at greater length by the Forum defendants, are: "(1) [plaintiffs are] a member of a racial minority; (2) [the defendant] intended to discriminate on the basis of race; and (3) the discrimination deprived [plaintiffs] of one or more rights enumerated in § 1981, such as the making and enforcing of a contract." *Black Agents & Brokers Agency*, 409 F.3d at 837.

a. **Plaintiffs Are Not Themselves Members of a Racial Minority and Have Failed to Identify Contract Rights That Were Denied to Those They Claim to Represent.**

Plaintiffs acknowledge they are not themselves minorities or minority-owned. They claim instead to be asserting the rights of their actual and prospective patrons, the majority of whom they allege are African-Americans. *Citing Thinkjet Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1057 (9th Cir. 2004), plaintiffs argue they have representational standing on behalf of their prospective customers. Dkt. No. 22, p. 9. But plaintiffs misread

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

*Thinkjet*. This case arises in the for-profit context; indeed, the gravamen of the complaint is that plaintiffs are making less money now than they were in the past. As the *Thinkjet* opinion emphasizes, "*applying the associational standing model in the for-profit context ordinarily would not be appropriate.*" *Id.* at 1059 (emphasis added). The Court in *Thinkjet* did not have to reach the question of associational standing in the for-profit context, because the plaintiff entity there, unlike the plaintiffs here, was minority-owned and operated and thus had standing in its own right. *Id.* at 1060.

Nothing in the complaint establishes or suggests a factual basis for finding associational standing appropriate in this for-profit case. Indeed, plaintiffs' argument for associational standing proves too much. Assuming *arguendo* plaintiffs do have representational standing, what rights are being asserted on behalf of their patrons under § 1981 against Caesars? As already developed, the *sine qua non* of a § 1981 claim is discrimination in the making or enforcement of a contract. Here, plaintiffs claim to be asserting the rights of their patrons to make contracts with plaintiffs for food and drink. As noted in *Kinnon v. Arcoub, Gopman & Associates, Inc.*, 490 F.3d 886, 891 (11th Cir. 2007), "there exists scant authority . . . applying § 1981 to claims brought by customers against commercial establishments." The cases that do exist make clear, however, that "Section 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process. Rather, in the retail context, the plaintiff must demonstrate the loss of an actual contract interest." *Id.* at 892. This means that "there must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping." *Id.* Thus, it is not enough in the retail setting that the plaintiff thought about but failed to make a purchase. She had to attempt and be thwarted in an actual commercial transaction. *Id.*; *Kirt v. Fashion Bug*, 479 F. Supp.2d 938, 953-54 (N.D. Iowa 2007), *adhered to on rehearing*, 495 F. Supp.2d 957 (N.D. Iowa 2007).

As plaintiffs concede, neither they nor their patrons have a contractual right to pass through Caesars' gate after hours to access the Forum Shops mall. The plaintiffs' patrons' claims thus are limited to the proposition that they are being thwarted in their efforts to contract with the plaintiffs for food and beverage. But the plaintiffs' patrons either gained access to plaintiffs' premises through the other Forum Shops' entrance and so, in fact, concluded their retail transactions with the plaintiffs (actual customers); or left and went elsewhere without attempting to transact business with plaintiffs. This is insufficient, because, as in *Kiewit*, 972 F.2d at 1313, it simply is impossible to know what contract, if any, would have been made. With no identifiable contract, there is no § 1981 claim. *See Kinnon*, 490 F.3d at 891.

The absence of a contractual right to use the Caesars' gateway to the Forum Shops mall after hours without paying for the associated security costs – whether by plaintiffs or their patrons or anyone else – distinguishes this case from those in which representational standing has been allowed. *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969), illustrates the point. The plaintiff in *Sullivan* was a white man who rented his house to a black man, Freeman. He also assigned Freeman a membership share in a corporation which permitted the owner to use a private park the corporation controlled. Because Freeman was black, the corporation refused to approve the share assignment and, when Sullivan protested, the association expelled him. Sullivan sued under the companion statute to § 1981, 42 U.S.C. § 1982, and the Court allowed him to proceed, noting that "the white owner is at times the only effective adversary of *the unlawful restrictive covenant."* Id. at 237 (emphasis added). To rule otherwise, "would give impetus to the perpetuation of racial restrictions on property," which § 1982 forbids. *Id.*

Here, by contrast, there is no racial discrimination in the making or enforcement of a contract by Caesars. On the contrary, plaintiffs concede they

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

have no right or entitlement to after-hours access through Caesars without paying for security; they simply believe it is unfair to have to pay for the whole of the security. Compl. ¶¶63 & 64. Unlike *Sullivan*, where the plaintiff had a property right he attempted to assign to another and had extinguished as a result, there is no contract right, whether in plaintiffs or their patrons, to pass through the Caesars gate after hours. There is thus no statutorily protected contract right requiring representational standing for its vindication. Plaintiffs' associational standing argument cannot create a right where none exists. Indeed, the absence of such a right militates *against* not in favor of such standing which, as *Thinkjet* holds, is rarely, if ever, appropriate in the for-profit setting.

### b. Plaintiffs Fail to Allege Plausible Discrimination.

Plaintiffs allege that the Caesars defendants are "hostile towards, and prejudiced against, African-Americans" and thereby OPM and "seek to force OPM out of business." Compl. ¶ 27. These allegations are directly refuted and thereby rendered implausible by other allegations in plaintiffs' own complaint. Plaintiffs allege that "Caesars stated that it would be willing to keep the door open only If O.P.M.L.V. paid the entire cost of increased security near the doorway." Compl. ¶ 63. If the Caesars defendants were as hostile towards African-Americans and OPM as plaintiffs allege, the Caesars defendants would not have offered to keep the gate open with increased security. Furthermore, the Caesars and Forum defendants would not have "held holiday parties at OPM" and "both Caesars and Simon executives" would not "have been to OPM during operating hours," Compl. ¶ 63, if they secretly held racial animus for OPM or its patrons.

The Ninth Circuit has previously dismissed claims under 42 U.S.C. § 1981 when allegations in the complaint were contradictory. "We have held that a plaintiff can . . . plead himself out of a claim by including unnecessary details contrary to his claims." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th

12

Cir. 2001) (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."); *cf. Soo Line R.R. v. St. Louis Southwestern Ry., Co.*, 125 F.3d 481, 483 (7th Cir. 1997) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts.")

The allegations in plaintiffs complaints simply do not allege sufficient plausible facts to show that the Caesars defendants intended to discriminate against OPM on the basis of race concerning an activity enumerated under § 1981. The complaint does not meet the plausibility standard as required by the Supreme Court in *Twombly* and recognized by the Ninth Circuit in *Maloney* and *Webber*. Notwithstanding the fact that "[t]he standard used to evaluate a motion to dismiss is a liberal one ... a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Board of Regents of Uni. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, the allegations in the complaint are readily contradicted by the alleged actions of the Caesars defendants. Plaintiffs 42 U.S.C. § 1981 claim should be dismissed as to the Caesars defendants.

### c. The Making and Enforcing of a Contract.

As Caesars has already demonstrated, plaintiffs fail to identify a contract right owed them or their patrons by Caesars that they have been denied. They have no contractual expectation or entitlement to after-hours passage through Caesars to the Forum Shops mall without paying for associated additional security. Nor is it sufficient to hold Caesars in to allege rights under the Lease and Lease Agreement with the Forum Shops. *See supra* § III.A.1. In essence, what plaintiffs appear to be asserting is some sort of conspiracy to deprive them of contract rights with Forum. But for a civil rights conspiracy

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

claim, state action is required. 42 U.S.C. §§ 1983 & 1985. None has been alleged. Absent a contract right with Caesars, their § 1981 claim fails.

### B. Plaintiffs' Common Law Conspiracy Claim Also Fails.

Plaintiffs attempt to distinguish *Twombly*, based on *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 2000 U.S. Dist Lexis 9256, *20-*21, 2000-2 Trade Cas. (CCH) P72, 971 (S.D.N.Y. July 6, 2000) (quoting *Modern Home Institute, Inc. v. Hartford Accident & Indemnity Co.*, 513 F.2d 102, 110 (2d Cir. 1975)). However, multiple circuit courts, including the Second Circuit,[5] and more recently the Ninth Circuit, § II *supra*, have adopted the *Twombly* "plausible on its face" pleading standard when considering claims under a Fed. R. Civ. P. 12(b)(6) motion to dismiss. To assert a claim of civil conspiracy claim under *Twombly*, plaintiffs must allege facts plausible on their face that "a combination of two or more persons who by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from those acts." *Consolidated Generator*, 114 Nevada at 1311, 911 P.3d at 1256. Plaintiffs have utterly failed to allege the required plausible facts.

In their opposition, plaintiffs point to paragraph 27 as outlining the motivations behind the alleged conspiracy between the Caesars defendants and the Forum defendants. In its simplest form paragraph 27 alleges that defendants' actions are "calculated to force plaintiffs out of business," Compl. ¶ 27, because of "hostility towards and prejudice against African-Americans." *Id.* These allegations, coupled with the conclusory and self-serving allegations in Plaintiffs' Seventh Cause of Action for "conspiracy" still do not provide the court with "plausible" allegations as required by *Twombly*. The Complaint alleges no facts that the Caesars Defendants and the Forum Defendants agreed in any way to accomplish an "unlawful" objective.

---

[5] *See* Note 2, *supra*.

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

14

As alleged in the complaint, the Caesars Defendants closed the gate to the Forum Shops on the weekends beginning in August, 2007 in response to a shooting at the Caesars resort complex, Compl. ¶ 58, a safety issue that all concede required redress. The fact that this security measure has harmed OPM's business, while unfortunate, does not prove, or plausibly allege, that the Caesars defendants and the Forum Shops defendants entered into a conspiracy to further the alleged goal of discriminating against OPM.

"A plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights. The defendants must have, by some concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming another which results in damage." *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999). In this case plaintiffs' allegations demonstrate nothing beyond the Caesars defendants' concern for their patrons' safety. Therefore, plaintiffs' conspiracy claim should be dismissed as to the Caesars defendants.

C. **Plaintiffs' Complaint Includes Allegations That Should Be Stricken under Fed. R. Civ. P. 12(f).**

Rule 12(f) provides that the court may strike "any redundant, immaterial, impertinent, or scandalous matter from a pleading. [T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Stiefel v. Bechtel Corp.*, 2008 WL 2025105, *4 (S.D. Cal. 2008) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal quotation marks omitted). "The decision to grant or deny a motion to strike is within the sound discretion of the trial court." *Id.*

Plaintiffs' complaint against the Caesars defendants comes down to their mistaken belief that they have a right to keep the Caesars Palace entrance to the Forum Shops open after hours without paying for the extra security required.

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

This core grievance is not actionable and not made actionable by the irrelevant and spurious accusations contained in the complaint.

Caesars defendants request that if any part of the Complaint survives motion practice and is allowed to proceed against any defendant the allegations in paragraphs 28, 30, 34, 35, 37, 40, 42, 51, and 55 should be stricken under Fed R. Civ. P. 12(f).

## IV. CONCLUSION

For the foregoing reasons and the additional reasons stated in the Forum defendants' Motion to Dismiss and Reply in Support of Motion to Dismiss, the Caesars defendants ask for an order dismissing the complaint for failure to state a claim against them upon which relief can be granted under federal or state law.

MORRIS PICKERING & PETERSON

By: /s/ Kristina Pickering
Kristina Pickering, No. 992
Jean-Paul Hendricks, No. 10079
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101

Attorneys for Defendants
Caesars Palace Corp. and
Caesars Palace Realty Corp.

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of MORRIS PICKERING & PETERSON, and that the following documents were served via electronic service: **REPLY IN SUPPORT OF MOTION TO DISMISS THE CAESARS DEFENDANTS**

TO:

C. Stanley Hunterton
Pamela R. Lawson
HUNTERTON & ASSOCIATES
333 South Sixth Street
Las Vegas, Nevada 89101

Philip Heller
FAGELBAUM & HELLER, LLP
2049 Century Park East, Suite 4250
Los Angeles, CA 90067

Attorneys for Plaintiff
Phase II Chin, LLC

Harold Gewerter
GEWERTER LAW OFFICES
5440 W. Sahara Ave. Third Floor
Las Vegas, Nevada 89146

Attorneys for Plaintiff
Love & Money, LLC

Samuel S. Lionel
LIONEL SAWYER & COLLINS
300 S. Fourth St., #1700
Las Vegas, Nevada 89101

Attorneys for Defendants
Forum Shops, LLC, Forum Developers Limited Partnership, Simon Property Group Limited Partnership, and Simon Property Group, Inc.

DATED this 5th day of August, 2008.

/s/ Patricia Camm

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422