1  HAROLD P. GEWERTER, ESQ.
   Nevada Bar No. 499
2  HAROLD P. GEWERTER, ESQ., LTD.
   5440 West Sahara Avenue, Third Floor
3  Las Vegas, Nevada 89146
4  Telephone: (702) 382-1714
   Facsimile: (702) 382-1759

5
   C. STANLEY HUNTERTON, ESQ.
6  Nevada Bar No. 5044
   HUNTERTON & ASSOCIATES
7  333 S. Sixth Street
8  Las Vegas, Nevada 89101
   Telephone: (702) 388-0098
9  Facsimile: (702) 388-0361

E-filed: 09/12/2008

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\*\*\*\*

| | |
|---|---|
| PHASE II CHIN, LLC and LOVE & MONEY, LLC, formerly O.P.M.L.V., LLC,<br><br>Plaintiffs,<br><br>v.<br><br>FORUM SHOPS, LLC, FORUM DEVELOPERS LIMITED PARTNERSHIP, SIMON PROPERTY GROUP LIMITED PARTNERSHIP, SIMON PROPERTY GROUP, INC., CAESARS PALACE CORP, CAESARS PALACE REALTY CORP., DOES 1 through 20, AND ROE CORPORATIONS 1 through 20,<br><br>Defendants. | Case No. 2:08-cv-00162-JCM-GWF |

1

# PLAINTIFFS' JOINT SUR-REPLY TO MOTIONS TO DISMISS FILED BY FORUM SHOPS, LLC, FORUM DEVELOPERS LIMITED PARTNERSHIP, SIMON PROPERTY GROUP LIMITED PARTNERSHIP, SIMON PROPERTY GROUP, INC., CAESARS PALACE CORP. AND CAESARS PALACE REALTY CORP.

## I. INTRODUCTION

Plaintiffs Phase II Chin, LLC ("Chinois") and Love & Money, LLC (formerly O.P.M.L.V., LLC) respectfully jointly submit this sur-reply in further support of their opposition to Defendants' motions to dismiss. This sur-reply is necessary because, as explained below, Defendants' Reply briefs mischaracterize and distort the law with respect to Plaintiffs' claim under 42 U.S.C. § 1981 and Chinois' claim for breach of the covenant of quiet enjoyment.[1]

## II. ARGUMENT

**A. Plaintiffs Have Stated A Claim Under 42 U.S.C. § 1981**

    **1. Plaintiffs Have Standing To Assert A Section 1981 Claim.**

        **a. Defendants Blatantly Mischaracterize The United States Supreme Court's Holding in *Domino's Pizza v. McDonald*.**

Purporting to rely on *Domino's Pizza v. McDonald,* 546 U.S. 470 (2006), Defendants tell the Court that, for standing to exist under 42 U.S.C. § 1981, there must exist a contract directly between the plaintiff and the defendant. This is a blatant misrepresentation—the *Domino's* decision says no such thing. It does indeed stand for the proposition that a plaintiff must identify "an impaired 'contractual relationship' . . . under which the plaintiff has rights." 546 U.S. at 476. But it nowhere even hints that that contractual relationship must be with the defendant.

Here is the court's actual holding:

> Any claim brought under § 1981 . . . must initially identify an impaired "contractual relationship," § 1981(b), under which the plaintiff has rights. Such a contractual relationship need no already exist, because § 1981 protects the would-be contractor along with those who have already made contracts. We made this clear in *Runyon v. McCrary,* 427 U.S. 160 . . . (1976), which subjected Defendants to liability under § 1981 when, for racially-motivated

---

[1] That Chinois does not address certain arguments in defendants' replies does not in any way signify acceptance of any of those arguments, all of which are rejected.

2

reasons, they prevented individuals who "*sought to enter* into contractual relationships" from doing so, *id.,* at 172 . . . (emphasis added). We have never retreated from what should be obvious from reading the text of the statute: <u>Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship</u>.

546 U.S. at 476 (footnote and parallel cite omitted) (emphasis added).

That is precisely what Plaintiffs have alleged occurred in this case: Defendants – for racially motivated reasons – have repeatedly and intentionally interfered with Plaintiffs' contracts, including the Lease, the Management Agreement, and Plaintiffs' ability to contract with their customers. See, e.g., Complaint ¶¶ 30, 34, 40, 51, 58, 60, 62. These allegations state a claim for relied under Section 1981.

### b. Plaintiffs Do Not Have To Be Members Of A Protected Class To Assert A Section 1981 Claim.

Defendants also contend that Plaintiffs lack standing because they are not themselves racial minorities. Defendants base this argument on a mischaracterization of the Ninth Circuit's decision in *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053 (9th Cir. 2004). Though Defendants claim that *Thinket* limited standing to corporations with "imputed" racial identities, the *Thinket* court flatly stated that a "corporation ha[s] 'an implied right of action against any other person who, with a racially discriminatory intent, ***interferes with its right to make contracts with non-whites.***'" *Id.* at 1058 (quoting *Des Vergnes v. Seekonk Water District*, 601 F.2d 9, 13-14 (1st Cir. 1979) (emphasis added)); *accord Parks School of Business, Inc. v. Fife Symington*, 51 F.3d 1480 (9th Cir. 1995) (school (a corporation) had § 1981 standing where defendant interfered with contracts with students). Plainly, this standing test does not require that a corporation have an imputed racial identity.

Moreover, Defendants simply ignore the controlling Ninth Circuit authority of *Parks School of Business, Inc. v. Fife Symington*, 51 F.3d 1480 (9th Cir. 1995).[2] In *Parks*, the plaintiff

---

[2] Parks continues to be good law even after *Thinket*. *See Bains LLC v. ARCO Prods. Co.*, 405 F.3d 764, 770 (9th Cir. 2005) ("In *Parks School of Business, Inc. v. Symington* we held that a school, which was organized as a corporation and mostly enrolled minority students, had standing to bring a § 1981 claim because racial discrimination against its students would damage the corporation's business by interfering with its right to contract with minority students.")

3

was a private junior college that primarily enrolled minority students. *Id*. at 1483. When the defendant student loan guarantor terminated the college's participation in the Arizona loan guarantee program, the college asserted a claim under Section 1981, alleging that the defendant had terminated the college from the program because it enrolled minority students. *Id*. The district court granted a motion to dismiss all claims against the Defendants.

On appeal, the Defendants argued that the college did not have standing to assert a Section 1981 claim because the discrimination (if it had occurred) was directed at the college's students. *Id*. at 1487. The Ninth Circuit rejected the argument, holding that the college had standing because it "asked protection against arbitrary, unreasonable, and unlawful interference with their patrons and the consequent destruction of their business and property. Their interest is clear and immediate . . ." *Id*. at 1488, citing to *Pierce v. Society of Sisters*, 268 U.S. 510, 535-36, 45 S.Ct. 571, 573-74, 69 L.Ed. 1070 (1925). Moreover, "[the college] claims that [the defendant] has taken action against it because it contracts with minority students. In other words, it presents a classic case of a corporation that is injured by racially discriminatory intent. That is sufficient to withstand [defendant's] 12(b)(6) motion." *Id*. (citing to *Des Vergnes, supra*).

The *Parks* decision is directly on point. In *Parks*, the plaintiff corporation filed suit under Section 1981 to protect its right to contract with its students. Here, Plaintiffs have filed suit under Section 1981 to protect their right to contract with their patrons. As the Ninth Circuit held in *Parks*, such an interest confers standing on Plaintiffs to maintain this claim.

### c. Defendants' Argument Regarding "Representational Standing" Is A Red Herring.

Keying off of their distortion of *Thinket*, and ignoring the actual holdings of that case, as well as those of *Parks, Des Vergnes* and the other cases cited in Chinois' opposition, Defendants next argue that Plaintiffs here are asserting "representational standing" on behalf of their minority patrons, and then proceed to attempt to debunk the rights those patrons might have under § 1981. This is all pure nonsense. "Representational standing" is a concept having to do with an association's right to sue on behalf of its members. *See, e.g., Associated General Contractors, Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1405-1406 (9th Cir. 1991)

(concerning whether association of general contractors had right to sue on behalf of members).

This concept has no application here. Plaintiffs are not suing as "associations" on behalf of any "members." As clearly permitted by such cases as *Parks, Thinket* and *Des Vergnes,* Plaintiffs are suing in their own right. As the court in *Des Vergnes* held, "a person has an implied right of action against any other person who, with a racially discriminatory intent, injures ***him*** because he made contracts with non-whites." 601 F.2d at 13-14 (emphasis added). At issue here is the harm suffered by Plaintiffs, not the non-whites with whom they contracted or attempted to contract. Consequently, Defendants' entire argument regarding the rights of restaurant patrons under Section 1981 is irrelevant to the issue of whether Plaintiffs have stated a claim under Section 1981.

### d. Defendants' Other Authority Similarly Fails To Support Their Claim That Plaintiffs' Section 1981 Claim Is Defective.

Defendants cite several other cases that supposedly support their position that Plaintiffs cannot assert a Section 1981 claim because they are not in contractual privity with certain of the Defendants. None of these cases support such a position.

For example, the Caesars Defendants misleadingly cite to *Burnett v. Sharma*, 511 F. Supp. 2d 136, 141 (D.D.C. 2007) to support the proposition that a plaintiff must be in contractual privity with the defendant to state a claim under Section 1981. The Caesar Defendants claim that *Burnett* dismissed the Section 1981 claim in the case because "'nothing in her complaint even suggests the existence of an actual or proposed contractual agreement involving the District of Columbia [the defendant in the case].'" Caesars Reply at p. 6. The Caesars Defendants fail to quote the very next sentence in that case, in which the *Burnett* court states that "[s]he alleges neither that the District itself failed or refused to enter into a contract with her, <u>that the District interfered with her efforts to make or enforce a contract with another person</u>, nor that the District prevented her from taking or defending a legal action." *Id*. (emphasis added). Clearly, *Burnett* is inapposite as the court did not confront a situation − like in this case − in which the plaintiff alleged that the defendant had interfered with her ability to enter into contracts with third parties.

Caesars also purports to rely on *Black Agents & Brokers Agency*, 409 F.3d 833 (7th Cir.

2005) and *Benton v. Cousins Properties, Inc.*, 230 F. Supp. 2d 1351 (N.D. Ga. 2002). These cases, however, afford Caesars no support. The plaintiff in *Black Agents* essentially alleged that a non-party to the relevant contract had breached the contract. That is manifestly not the situation here. Plaintiffs here allege that the Forum and Simon Defendants breached the Lease between Chinois and Forum for racially-motivated reasons, and that all Defendants interfered with the Management Agreement between Chinois and O.P.M.L.V., and the contracts and potential contracts between Plaintiffs, on the one hand, and their minority patrons, on the other.

Caesars tries to twist the facts of this case to fit those of *Benton.* Unlike plaintiff in *Benton*, the basis of the § 1981 claim against Caesars is not Caesars' breach of any contract with Plaintiffs. It is Caesars' interference with the contract between the Plaintiffs, and between the Plaintiffs, on the one hand, and their minority patrons, on the other. That Defendants in *Benton* might have been held not to have violated § 1981 because they did not breach their contracts with plaintiff there is therefore utterly irrelevant.

Finally, *Collier v. Plumbers Local No. 1*, 2007 WL 1673047 (E.D. N.Y. 2007) is yet another red herring for the simple reason that Plaintiffs here are not suing on any mere "expectation interest." They are suing for interference with "the creation of . . . contractual relationship[s], as well as . . . racial discrimination impair[ing] an existing contractual relationship," squarely within the meaning of *Domino's*.

**2.     Plaintiffs' Claim Is Not Time-Barred.**

The Forum Defendants continue to argue that Plaintiffs § 1981 claim is time-barred, asserting that the "continuing violation" principle applies only in the employment context. They cite neither authority nor rationale, however, for why this should be so. Moreover, they fail to explain why, even if the continuing violation doctrine did not apply, the misconduct that occurred within the limitations period would be time-barred.

**B.     The Court Should Not Abstain From Hearing Plaintiffs' Declaratory Relief Claim.**

Defendants' claim that the Court should abstain from hearing Plaintiffs' cause of action for Declaratory Relief ignores the weight of authority holding that the Court should not decline

to hear the case when the declaratory relief claim is joined with other causes of action.

"If a suit seeks both injunctive and declaratory relief, the appropriateness of abstention must be assessed according to the general abstention doctrine of *Colorado River Water Conservation Dist. v. U.S.*, [424 U.S. 800 (1976)], rather than under *Brillhart*." Moore's, *supra*, § 57.42[b][ii][B] (citing *Black Sea Investment, Ltd. v. United Heritage Corp.,* 204 F.3d 647, 652 (5th Cir. 2000); *accord Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) ("when other claims are joined with an action for declaratory relief (*e.g.*, bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief"); *Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163, 1167 (9th Cir. 1998) (same); *Unum Life Ins. Co. of America v. Humphrey*, 2008 WL 182251, *2 (D. Nev. Jan. 15, 2008) (same where declaratory relief claim joined with rescission claim); *Cedar Rapids Cellular Tel., LP v. Miller*, 280 F.3d 874, 879 (8th Cir. 2002) (*Brillhart* not applicable to cases that involve claims for injunctive relief); *Westfield v. Welch's*, 170 F.3d 116, 124 n.5 (2d Cir. 1999) (applying *Colorado River* where federal action did not seek "purely declaratory relief"). This is because "[c]laims that exist independent of the request for a declaration are not subject to the Declaratory Judgment Act's discretionary jurisdictional rule." *Snodgrass*, 147 F.3d at 1167.

The Forum Defendants contend that the *GEICO* decision supports their position that abstention *vel non* here should be decided under *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942). The Forum Defendants are wrong. The *GEICO* court applied *Brillhart* for the simple reason that that case involved only a declaratory relief claim. 133 F.3d at 1222. But that court unambiguously recognized that ("when other claims are joined with an action for declaratory relief (*e.g.*, bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." *Id.* at 1225.

The Forum Defendants' argument that this case belongs in Delaware ignores the facts. All of the relevant parties are in Nevada. All of the relevant events transpired in Nevada. The great majority of the witnesses are in Nevada. The bulk of the physical evidence is in Nevada.

The leased premises at issue are in Nevada. Nevada law governs the relevant contracts. Nevada is the only state with any conceivable public interest in the case's outcome, and that interest is considerable—whether discrimination will be tolerated in the state's premiere industry, entertainment and hospitality. There can be no doubt that Forum filed its case in Delaware solely to make it difficult or impossible for Plaintiffs to fully vindicate their rights. Defendants offer no reason why a court sitting in Nevada should defer to one sitting in Delaware given the circumstances here, and there is none.

Additionally, the Forum Defendants' reliance on the Delaware court's denial of Chinois' motion to dismiss on *forum non conveniens* grounds must be placed in its proper context. As the Delaware Chancery Court itself has recognized, "Delaware does not conceive of the *forum non conveniens* doctrine as a mere 'balancing of convenience test.' By requiring the strict, heavy burden of a particularized showing of overwhelming hardship, the Delaware standard of *forum non conveniens* is probably tantamount to the federal standard required to avoid a forum selection clause." *Aveta, Inc. v. Colon*, 942 A.2d 603, 608 (Del. Ch. 2008).

### C. Chinois Has Stated A Claim For Breach Of The Covenant Of Quiet Enjoyment.

Part of Chinois' breach of lease claim is that Forum breached the covenant of quiet enjoyment. In their moving papers, the Forum Defendants claim that Chinois may not state a claim for breach of the covenant of quiet enjoyment unless Chinois has been "evicted" from the premises.

In its Opposition, Chinois pointed out that the covenant now "insulates the tenant against any act or omission on the part of the landlord, or anyone claiming under him, which interferes with a tenant's right to use and enjoy the premises for the purposes contemplated by the tenancy." *Petroleum Collections, Inc. v. Swords*, 48 Cal. App. 3d 841, 846, 122 Cal. Rptr. 114, 117 (1975) (citing *Green* v. *Superior Court*, 10 Cal.3d 616, 625, n. 10, 111 Cal. Rptr. 704, 517 P.2d 1168 (1974); 49 Am.Jur.2d, Landlord and Tenant, § 336, p. 351).

In their Reply, the Forum Defendants assert that the *Swords* case holds that without an eviction, Chinois cannot assert a claim for breach of the covenant of quiet enjoyment. However,

the *Swords* case clearly states that

> [W]hen the act of molestation merely affects the tenant's beneficial use of the premises, the tenant is not physically evicted and he has a choice in the matter. ***He can remain in possession and seek injunctive or other appropriate relief or he can surrender possession of the premises within a reasonable time thereafter.*** If the tenant elects to remain in possession, his obligation to pay rent continues unless the landlord has breached some other express or implied covenant which the covenant to pay rent is dependent upon. ( <u>Veysey</u> v. <u>Moriyama</u>, 184 Cal. 802, 805-806 [195 P. 662, 20 A.L.R. 1363]; *see* <u>Green</u> v. <u>Superior Court</u>, . . . <u>10 Cal.3d 616, 625, fn. 10, 631-637</u>; *cf.* <u>Medico-Dental etc. Co.</u> v. <u>Horton & Converse</u>, 21 Cal.2d 411, 418-419 [132 P.2d 457].) If, on the other hand, the tenant elects to surrender possession of the premises, a *constructive* eviction occurs at that time and, as in the case of an actual eviction, the tenant is relieved of his obligation to pay any rent which accrues thereafter. (<u>49 Am.Jur.2d, Landlord and Tenant, § 576</u>, pp. 553-554.) It is this doctrine, known as the doctrine of constructive eviction, ". . . which expanded the traditional 'covenant of quiet enjoyment' from simply a guarantee of the tenant's possession of the premises [citations] to a protection of his 'beneficial enjoyment' of the premises . . . ." (<u>Green</u> v. <u>Superior Court, supra</u>. <u>10 Cal.3d 616, 625, fn. 10</u>.)

48 Cal. App. 3d at 847 (emphasis added).

Thus, the *Swords* court simply held that a tenant still in possession of the premises may not disclaim its duty to pay rent. However, if the covenant has been violated while the tenant is in possession of the premises, the tenant may seek "appropriate relief" for the violation.

Additionally, Chinois has asserted that Forum has breached its <u>express contractual obligation under the Lease</u> to ensure that Chinois "shall peaceably and quietly hold and enjoy the Premises for the Lease Term, without interruption by Landlord . . ." *See* Forum Motion to Dismiss, Ex. A at p.28. Defendants have offered no authority supporting the proposition that Chinois may not seek relief for Forum's breach of its contractual commitment to ensure Chinois' quiet enjoyment of the Premises unless Chinois relinquishes occupancy of the Premises.

### III.    CONCLUSION

For the reasons explained above and in Plaintiffs' Opposition briefs, Plaintiffs

/ / /

/ / /

/ / /

9

respectfully request that the Court deny Defendants' Motions *in toto*. Should the Court find any of Plaintiffs' claims to be inadequately pled, however, they respectfully request leave to amend.

Dated: September 12, 2008                     HAROLD P. GEWERTER, ESQ., LTD.


                                                        /s/ Harold P. Gewerter, Esq.
                                             HAROLD P. GEWERTER, ESQ.
                                             Nevada Bar No. 499
                                             5440 West Sahara Avenue, Third Floor
                                             Las Vegas, Nevada 89146
                                             Attorney for Love & Money, LLC

Dated: September 12, 2008                     FAGELBAUM & HELLER LLP
                                                    /s/ Philip Heller, Esq.
                                             Philip Heller, Esq.
                                             2049 Century Park East, Suite 4250
                                             Los Angeles, CA 90067-3254
                                             Counsel for Phase II Chin, LLC

                                             C. STANLEY HUNTERTON, ESQ.
                                             Nevada Bar No. 5044
                                             333 S. Sixth Street
                                             Las Vegas, Nevada 89101
                                             Attorney for Plaintiff, Phase II Chin, LLC

71039\3001\617304.2