1   Philip Heller, PLC (CA State Bar No. 113938)
    ph@philipheller.com
2   Jerold Fagelbaum, Esq. (CA State Bar No. 92584)
    office@fhllplaw.com
3   **FAGELBAUM & HELLER LLP**
    2049 Century Park East, Suite 4250
4   Los Angeles, CA 90067
    Telephone: 310.286.7666
5   Facsimile: 310.286.7086

6

7   C. STANLEY HUNTERTON, ESQ
    Nevada Bar No. 5044
8   **HUNTERTON & ASSOCIATES**
    333 S. Sixth Street
9   Las Vegas, NV 89101
    Telephone: 702.388.0098
    Facsimile: 702.388.0361
10

11  Attorneys for Plaintiff Phase II Chin, LLC

12

13                  **UNITED STATES DISTRICT COURT**

14                       **DISTRICT OF NEVADA**

15

16  PHASE II CHIN, LLC and LOVE &          ) Case No. 2:08-cv-00162-JCM-GWF
    MONEY LLC (formerly dba                )
17  O.P.M.L.V., LLC),                      ) **PLAINTIFF PHASE II CHIN LLC'S**
                                           ) **NOTICE OF MOTION AND**
18                  Plaintiffs,            ) **MOTION TO DISQUALIFY**
                                           ) **ATTORNEY STEVE MORRIS AND**
19          and                            ) **THE LAW FIRM OF MORRIS,**
                                           ) **PICKERING & PETERSON (NOW**
20                                         ) **MORRIS PETERSON);**
    FORUM SHOPS, LLC, FORUM                ) **MEMORANDUM OF POINTS AND**
21  DEVELOPERS LIMITED                     ) **AUTHORITIES; DECLARATIONS**
    PARTNERSHIP, SIMON                     ) **OF PHILIP HELLER AND JEROLD**
22  PROPERTY GROUP LIMITED                 ) **FAGELBAUM**
    PARTNERSHIP, SIMON                     )
23  PROPERTY GROUP, INC.,                  )
    CAESARS PLACE CORP., and               )
24  CAESARS PALACE REALTY                  )
    CORP.                                  ) **DATE: To Be Determined**
25                                         ) **TIME:  To Be Determined**
26                  Defendants             ) **CTR: Hon. James C. Mahan**
                                           )
27  _____       )

28

                                    1

**PLEASE TAKE NOTICE THAT** on a date to be set by, and convenient to, the Court (respectfully requested to be on or before February 6, 2009), located at the Lloyd D. George United States Courthouse, United States District Court, 333 Las Vegas Blvd.-South, Las Vegas, NV 89101, the Hon. James C. Mahan presiding, Plaintiff Phase II Chin LLC ("Chinois") will, and hereby does, respectfully move this Court to disqualify attorney Steve Morris and the law firm of Morris Pickering & Peterson ("MP&P") (now known as Morris Peterson) from continuing as counsel of record herein for Defendants Caesars Place Corp. and Caesars Place Realty Corp (collectively "Caesars") due to Chinois' previous consultation with Mr. Morris at which time confidential information was disclosed to, and legal advice was rendered by, Mr. Morris, to Chinois' counsel of record herein. This motion is made and based upon Local Rule of Practice LR IA 10-7 of the United States District Court for the District of Nevada, Rule 1-9 of the Nevada Rules of Professional Conduct and the Court's inherent power to regulate the conduct of attorneys appearing it, the pleadings and papers on file herein, the Memorandum of Points and Authorities, and the declarations of Philip Heller and Jerold Fagelbaum with accompanying exhibits attached hereto, and any oral argument permitted by the Court at a hearing on this Motion.

Dated: January 5, 2009      FAGELBAUM & HELLER LLP

By: _____
       Jerold Fagelbaum
       2049 Century Park East, Suite 4250
       Los Angeles, CA 90067-3254
       Attorneys for Phase II Chin, LLC

Dated: January 5, 2009      **HUNTERTON & ASSOCIATES**

By: __/ s /_____
       Stanley C. Hunterton
       333 S. Sixth Street
       Las Vegas, NV 89101
       Attorneys for Phase II Chin, LLC

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 3

I.  PRELIMINARY STATEMENT .................................................................. 3

II. RELEVANT BACKGROUND .................................................................... 4

III. UNDER NEVADA LAW AN ATTORNEY MUST BE DISQUALIFED WHERE HE SWITCHES SIDES IN THE SAME CASE WITHOUT CLIENT CONSENT ............................................................................................... 7

    A.    Attorney Disqualification Under Nevada Law ........................................ 7

    B.    The Previous Consultation ..................................................................... 9

    C.    The Formation Of An Attorney Client Relationship ............................ 11

    D.    The Sharing Of Confidential Information ............................................. 13

    E.    The Information Revealed Is Relevant To The Current Action ........... 14

IV. MORRIS PICKERING & PETERSON'S PERFUNCTORY OBJECTIONS TO DISQUALIFICATION ARE WITHOUT MERIT ..... 16

    A.    Grounds For Disqualification Were Not Waived In Exchange For A Continuance Of A Hearing Date ................................................................. 16

    B.    The Ostensible Lack Of A Basis For Disqualification ........................... 18

    C.    Chinois' Motion To Disqualify MP&P Is Not Tactically Motivated ...... 18

V. CONCLUSION .......................................................................................... 22

Declaration of Philip Heller
Declaration of Jerold Fagelbaum

i

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Coles v. Arizona Charlie's*
    973 F.Supp. 971, 973 (D. Nev. 1997) ................................................................ 8

*DCA Foods Indus. Inc. v. Tasty Foods, Inc.,*
    626 F. Supp. 54, 58-60 (W.D. Wis. 1985) ........................................................ 12

*Fierro v. Gallucci,*
    2007 U. S. Dist. LEXIS 89296 (E.D. N.Y. 2007) ................................... 18, 20, 21

*Green v. Montgomery County, Alabama,*
    784 F. Supp. 841, 847 (M.D. Ala. 1992) ......................................................... 9, 12

*In Re Rossana,*
    397 B.R. 697 (U.S.Bkry.Ct. Nev. 2008) ........................................... 11,13,14,16

*In-N-Out Burger v. In & Out Tire & Auto Inc.,*
    2008 U.S. Dept. Lexis 63883 (D.Nev. 2008); ...................................................... 7

*Kearns v. Fred Lavery Porsche Audi Co.*
    745 F.2d at 600, 603-05 (Fed. Cir. 1984) ........................................................ 12

*The Laryngeal Mask Company Ltd. v. Ambu A/S*
    2008 Dist LEXIS 15320 (S.D. Ca. 2008), .................................................... 13, 30

*Trone v.Smith*
    621 F.2d 994, 1000 (9th Cir. 1980) ............................................................. 13, 15

*Westinghouse Elec. Corp. v. Gulf Oil Corp.*
    588 F.2d 221 (7th Cir. 1978) ............................................................................. 9

*Westinghouse Electric Corporation v. Kerr McGee Corporation*
    580 F. 2d 1311, 1319 (7th Cir. 1978) ................................................................ 11

///

///

///

///

///

ii

**STATE CASES**

*Bays v. Theran,*

    418 Mass. 685, 639 N.E. 2d 720, 722-24 (Mass. Sup. Ct. 1994)..................... 12

*Burton v. Burton*

    139 A.D.2d 554,555,527 N.Y.S. 2d 53 (NY App. 1988) ................................ 12

*In Re County of Los Angeles,*

    223 F.3d 990, 995 (9th Cir. 2000)........................................................................7

*Lovell v. Winchester,*

    941 S.W. 2d 466, 467-69, 44 2 *Ky, L. Summary* 15 (Ky. Sup. Ct. 1997)........ 12

*Nevada Yellow Cab Corporation v. The Eighth Judicial District Court*

    (2007) 152 P.3d 737, 741 ...................................................................................9

**People ex rel Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.**

    (1999) 20 Cal.4th 1135, 1148 ..................................................................... 11,14

*Robbins v. Gillock*

    (1993) 109 Nev. 1015, 1017-1018 ................................................................... 13

*Taylor v. Sheldon,*

    172 Ohio St. 118, 173 N.E. 2d 892, 895 (Ohio Sp. Ct. 1961) .......................... 12

*Waid v. Eighth Judicial Dist. Ct.*

    (2005) 121 Nev. 605, 610................................................................................9


**OTHER AUTHORITIES**

Local Rules of Practice for the United States District Court

for the District of Nevada, LR IA 10-7 ................................................................. 8

Nevada Rules of Professional Conduct, Rule 1.9 .............................................7,15

# MEMORANDUM OF POINTS AND AUTHORITIES
## I.
## PRELIMINARY STATEMENT

Plaintiff Phase II Chin LLC ( "Chinois") submit this Memorandum of Points and Authorities in support of its Motion To Disqualify Steve Morris, Esq. and the law firm of Morris, Pickering & Peterson ("MP&P"), now known as Morris Peterson, as attorneys of record in this action for Defendants Caesars Place Corp. and Caesars Place Relay Corp. (Collectively "Caesars"). This Motion is based upon the grounds that Mr. Morris was initially consulted by counsel for Chinois to act as legal counsel in this (at that time proposed) action, and that confidences were disclosed to, and legal advice was given by, Steve Morris prior to Mr. Morris disclosing that his firm had a professional relationship with Caesars and that it might be difficult for Mr. Morris to represent Chinois in a case adverse to Caesars. Accordingly, Chinois selected alternative local counsel.

Nevertheless, once this action was filed, naming Caesars as a defendant, Mr. Morris' firm MP&P appeared on behalf of Caesars. In response to objections raised by Chinois, Mr. Morris represented that he had not disclosed, and would not disclose, the contents of his discussion with Chinois' counsel to anyone, including others in his firm, and would not be involved in this lawsuit. Relying on Mr. Morris' assurance that he had isolated himself from this case (creating a so-called "ethical wall"), Chinois did not further object to Mr. Morris' wife and law partner, Kris Pickering and MP&P representing Caesars in this case.

However, now Ms. Pickering has been elected to a seat on the Nevada Supreme Court and has designated Mr. Morris to replace her as counsel of record on behalf of Caesars in this case. In light of Mr. Morris' previous substantive contact with Chinois about this case, Mr. Morris effectively has "switched sides" breaching his twin duties of confidentially and loyalty to Chinois. As discussed

3

below, under applicable Nevada law, and pursuant to the Court's inherent power to regulate the conduct of attorneys who appear before it, both Mr. Morris and his law firm MP&P must be disqualified from this action not only to protect the interests of Chinois, but also, to maintain the integrity of the bar and the public trust in the administration of justice.

## II.

## RELEVANT BACKGROUND

On October 3, 2007, Forum Shops LLC filed an action limited for Declaratory Relief in the Superior Court of the State of Delaware, County of New Castle against Chin LV, LLC, Phase II Chin , LLC and Phase II Chin-LV, LLC. Phase II Chin, LLC ("Chinois") retained Philip Heller and the law firm of Fagelbaum & Heller LLP ("FHLLP") to represent it in that action.

As a result of the Delaware State Action, it was determined that Chinois would file an action of its own in Las Vegas, Nevada where Chinois and Forum Shops, LLC are actually doing business, where other potential parties resided, where the relevant documents and witnesses were located, and where the relevant events occurred and were subject to Nevada law.  To that end, Chinois' counsel, Philip Heller, contacted Steve Morris of Morris Pickering & Peterson ("MP&P") by telephone with the intention of retaining Mr. Morris and his firm to act as local counsel for Chinois in the case it anticipated filing in Las Vegas.  Mr. Morris was well known to FHLLP as another of its partners previously worked along with Mr. Morris on the MGM Grand Fire Litigation, when Mr. Morris was a partner in the firm of Lionel Sawyer & Collins (counsel in this case for the Forum Shops Defendants).

Mr. Heller introduced himself to Mr. Morris and explained the purpose behind the call, i.e. that he was representing Chinois in Delaware and also would be representing Chinois in an action to be filed in Las Vegas for which local counsel was necessary. At that point, Mr. Morris did *not* invoke any conflicts

4

avoidance measures and listened as Mr. Heller discussed and disclosed Chinois' confidential plan to file an action in Las Vegas, venue, possible defendants (including Caesars), prospects for settlement and the selection of co-counsel. Mr. Morris responded by providing legal advice to Mr. Heller, including his views on parties and proposed parties, venue, claims and selection and assessment of counsel and judges. The first time Mr. Morris raised a concern about being retained as local counsel was when Mr. Heller discussed that among the potential parties being considered as a defendant was Caesars. Mr. Morris explained his firm had represented Caesars and that potentially could be a problem.

Chinois subsequently decided not to place Mr. Morris or itself in the middle of a potential conflict and selected other attorneys, Hunterton & Associates, as local counsel. At that point, Chinois anticipated that Mr. Morris would have no further involvement in this matter.

On January 8, 2008, Chinois filed a Complaint in Nevada State Court along with Love and Money LLC against Forum Shops LLC, Forum Developers Limited Partnership, Simon Property Group Limited Partnership, Simon Property Group Inc., Caesars Place Corp. and Caesars Place Realty Corp. containing eight causes of action, and seeking damages and injunctive relief. On February 7, 2008, Caesars removed the case to the United States District Court for the District of Nevada. To Chinois' surprise, Caesars was represented by Mr. Morris's partner Kris Pickering and MP&P.

Accordingly, Mr. Heller called Mr. Morris and objected to his firm's representation of Caesars in the very matter upon which he previously had been consulted provided with confidential information and in return offered legal advice. Mr. Morris responded by stating that, although he recalled initially speaking to Mr. Heller, Mr. Morris only had the faintest recollection of the call. However, he said he took no notes and did not speak with anyone in the firm

5

about the call. He further stated he had no involvement in the case. The following day he memorialized his comments in an e-mail to Mr. Heller (Ex. A)

Given those assurances that Mr. Morris had erected a form of "ethical wall" around himself, on February 14, 2008 Mr. Heller responded that he had no problem with Kris Pickering continuing to represent Caesars. (Ex. A) Later the same day, Ms. Pickering confirmed that her husband had not discussed the call with her and the she would "keep this work separate from him." (Ex. A)

Since then, Mr. Morris has made no appearance in this case on behalf of Caesars. However, on December 19, 2008, in connection with the continuance of a hearing on two Motions to Dismiss filed by Caesars and the remaining Defendants, Ms. Pickering first revealed that as a result of her election to the Nevada Supreme Court she would be leaving the case and that Mr. Morris would be replacing her:

> Gentlemen,
>
> Judge Mahan was not available yesterday afternoon. With Charlie McCrea out from Monday through the 4[th], it looks as though there is no workable date before year-end that will allow me to participate. ***Since this takes me out, I've asked my partner, Steve Morris, to step in (which you on the plaintiffs' side will come to regret).*** His assistant is patty Ferrugia, whom I'm copying to get a new date that works for him and JP. (Emphasis added)
>
> Best wishes for the holidays.
>
> Kris

E-mail from Kris Pickering 12/19/08 (Ex. B)

Upon consulting with Chinois, Mr. Heller wrote to Ms. Pickering objecting to her plan to substitute Mr. Morris in her place. Mr. Heller requested that Ms. Pickering comply with her prior assurance that Mr. Morris would have no involvement in the case, and failing that, Chinois would have no alternative but to

6

seek the disqualification of both Mr. Morris and MP&P. (Ex. C) Ms. Pickering responded by contending Chinois had waived its objections in exchange for a continuance of the hearing on the Motions to Dismiss, that there was no substantive basis for disqualification in any event, and that any motion to disqualify would be tactically motivated. (Ex. D) Mr. Heller then advised Ms. Pickering that she had her facts wrong and that Chinois would be proceeding with a formal Motion to Disqualify. (Ex. E)

## III

### UNDER NEVADA LAW AN ATTORNEY MUST BE DISQUALIFED WHERE HE SWITCHES SIDES IN THE SAME CASE WITHOUT CLIENT CONSENT

**A.      Attorney Disqualification Under Nevada Law**

"Federal courts apply state law in determining whether attorney disqualifications are warranted." *In-N-Out Burger v. In & Out Tire & Auto Inc.*, 2008 U.S. Dept. Lexis 63883 (D.Nev. 2008); *In re County of Los Angeles* 223 F.3d 990, 995 (9th Cir. 2000).

The Nevada Rules of Professional Conduct provide that an attorney owes a duty to former clients:

Rule 1.9. Duties to Former Clients:

(a)      A lawyer who had formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests for the former client unless the former client gives informed consent, confirming in writing.

(b)      A lawyer shall not knowingly represent a person in the same or substantially related matter in which a firm with which the lawyer formerly was associated had previously presented a client.

(1)      Whose interest are materially adverse to that person; and

7

(2)     About whom the lawyer had acquired information
        protected by Rules 1.6 and 1.9(c) that is material to
        the matter;

(3)     Unless the former client gives informed consent,
        confirmed in writing.

(c)     A lawyer who had formerly represented a client in a matter or
whose present or former firm has formerly represented a client in a
matter shall not thereafter:

(1)     Use information relating to the representation to the
        disadvantage of the former client except as these
        Rules would permit or require with respect to a
        client, or when the information has become
        generally known: or

(2)     Reveal information relating to the representation
        except as these Rules would permit or require with
        respect to a client.

This Court adheres to the standards contained in the Rules of Professional
Conduct adopted by the Nevada Supreme Court. *See* LR IA 10-7 of the Local
Rules of Practice for the United States District Court for the District of Nevada.
In addition, the Court has the inherent power to regulate attorneys appearing
before it:

> The court has power to disqualify an attorney from
> representing a particular client in order to preserve the
> integrity of its judgment, maintain public confidence in the
> integrity of the bar, eliminate conflict of interest, and
> protect confidential communication between attorneys and
> their clients.

*Coles v. Arizona Charlie's* 973 F.Supp. 971, 973 (D. Nev. 1997)

Under Nevada law:

> … for a potentially disqualifying conflict to exist, the party seeking
> disqualification must established three elements: (1) that it had an
> attorney-client relationship with the lawyer, (2) that this former
> matter and the current matter are substantially related and (3) that

8

this current representation is adverse to the party seeking disqualification.

*Nevada Yellow Cab Corporation v. The Eighth Judicial District Court* (2007) 152 P.3d 737, 741.

With regard to disqualification of an attorney for accepting employment with a client in conflict with a former client on a substantially related matter the Nevada Supreme Court has accepted the framework utilized by the Seventh Circuit in *Westinghouse Elec. Corp. v. Gulf Oil Corp.* 588 F.2d 221 (7th Cir. 1978) requiring a trial court to:

> (1) make a factual determination concerning the issue of the former representation, (2) evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in these matters, and (3) determine whether that information is relevant to the issues raised in the present litigation.

*Waid v. Eighth Judicial Dist. Ct.* (2005) 121 Nev. 605, 610.

**B.    The Previous Consultation**

In October 2007, FHLLP was retained by Chinois to represent it in an action filed by Forum Shops, LLC in Delaware. FHLLP recommended to Chinois that, in connection with the filing of a more comprehensive action in Nevada, Steve Morris, a veteran Las Vegas attorney known to FHLLP, be consulted for the purposed of retaining Mr. Morris (and his firm MP&P) to act as local counsel for Chinois in association with FHLLP. Mr. Morris employed no conflict avoidance measures (such as telling Mr. Heller to limit his comments to information necessary to conduct a conflict check). *See Green v. Montgomery County, Alabama,* 784 F. Supp. 841, 847 (M.D. Ala. 1992)

Towards that end, Philip Heller, a partner in FHLLP, telephoned Mr. Morris. During the telephone conversation, Mr. Heller explained the purpose behind the call and discussed the Complaint which had been filed by Forum Shops

9

in Delaware and Chinois' plan to file a more comprehensive action in Nevada. Among the subjects discussed were the strategy behind filing a second action in Las Vegas, venue, possible defendants (including Caesars) and the selection and assessment of co-counsel to represent Chinois. The two-way discussion involved the disclosure of confidential information to Mr. Morris and the receipt of legal advice from Mr. Morris including his candid assessment of the parties and potential parties to be sued, and the selection of co-counsel.

Only towards the end of the discussion did Mr. Morris reveal he had represented Caesars and, if there was a real possibility that Caesars could end up as a defendant in a Nevada action, Mr. Morris expressed concern about accepting a matter potentially adverse to Caesars. Accordingly, Chinois subsequently retained Stan Hunterton as local counsel, anticipating that Mr. Morris would have no further involvement in this matter.

On January 8, 2008 Chinois filed this action in Nevada State Court. Among the Defendants was Caesars. On February 7, 2008, Caesars removed the Nevada State Action to Federal Court. It was at that time that Chinois first learned that Kris Pickering and MP&P were representing Caesars.

FHLLP on behalf of Chinois immediately contacted Mr. Morris to object to MP&P representing Caesars adverse to Chinois in this action. Mr. Morris assured FHLLP that he had not discussed the contents of his previous conversation with Mr. Heller with anyone else at his firm, including his wife Kris Pickering. He further assured FHLLP that he would have nothing to do with the case. Moreover, Ms. Pickering also advised FHLLP that Mr. Morris had not spoken to her about his conversation with Mr. Heller and that she would keep work on the case separate from Mr. Morris. With those assurances, Chinois withdrew its objection to Kris Pickering, but not Steve Morris, representing Caesars in this matter.

///

///

10

Ms. Pickering subsequently was elected to a seat on the Nevada Supreme Court. On December 19, 2008, in conjunction with a continuance of a hearing on two Motions to Dismiss filed by Caesars and the other Defendants in this case, it was first revealed that Ms. Pickering intended to designate Steve Morris to replace her as counsel of record in this case. (Ex. G) FHLLP sent a letter to Ms. Pickering reminding her of her prior assurances, upon which Chinois relied, that Steve Morris would have no involvement in this case. (Ex.C) Ms. Pickering refused to honor the prior promise, denied any basis for the objection and self-servingly labeled it "tactically motivated". (Ex. D)

## C.    The Formation Of An Attorney Client Relationship

A duty to maintain confidences and avoid conflicts can be triggered when a prospective client provides confidential information during the initial determination of whether to hire the attorney:

> The fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result. (Footnote omitted)

*Westinghouse Electric Corporation v. Kerr McGee Corporation* 580 F. 2d 1311, 1319 (7th Cir. 1978). *Accord, In Re Rossana*, 397 B.R. 697 (U.S.Bkry.Ct. Nev. 2008)

With reference to *Westinghouse, supra,* the California Supreme Court in *People ex rel Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1148 ("*SpeeDee Oil*") noted:

> The primary concern is whether and to what extent the attorney acquired confidential information. (see *Henriksen v. Great American Savings & Loan* (1992) 11 Cal. App. 4th 109, 113-114 [14 Cal. Rptr. 2d 184]. That question is not necessarily answered by the amount of time involved. "Even the briefest conversation between a lawyer and a client can result in the disclosure of confidences." (*Novo Terapeutisk, etc. v. Baxter Travenol Lab.* (7th Cir. 1979) 607 F.2d 186,195.

11

To this end, a single telephone call has been held sufficient to trigger the formation of a confidential attorney/client relationship. *See Green v. Montgomery County, Alabama, supra,* 784 F. Supp. and 845-847.

A similar approach has been taken in other jurisdictions. *See e.g. Lovell v. Winchester*, 941 S.W. 2d 466, 467-69, 44 2 *Ky, L. Summary* 15 (Ky. Sup. Ct. 1997) (private initial consultation with informal discussion of claims and some type of value judgment obligated attorney to decline representation of opponent); *Bays v. Theran*, 418 Mass. 685, 639 N.E. 2d 720, 722-24 (Mass. Sup. Ct. 1994) (respecting potential client's belief that consultation was confidential, when attorney shared basics legal considerations based on plaintiff's background summary); *Burton v. Burton* 139 A.D.2d 554,555,527 N.Y.S. 2d 53 (NY App. 1988) (accepting reasonable inference that potential client revealed "confidential or strategically valuable information" during initial consultation to preclude attorney form representing adversary); *DCA Foods Indus. Inc. v. Tasty Foods, Inc.*, 626 F. Supp. 54, 58-60 (W.D. Wis. 1985) (applying Seventh Circuit law to patent infringement case, question is whether client submitted confidential information with reasonable belief that lawyer was acting as his attorney, who shared impressions of strengths and weaknesses of litigation position): *Kearns v. Fred Lavery Porsche Audi Co.* 745 F.2d at 600, 603-05 (Fed. Cir. 1984) (in patent infringement case, client, who knew that attorney represented opponent but thought a waiver was possible, established attorney-client relationship during initial consultation) and *Taylor v. Sheldon,* 172 Ohio St. 118, 173 N.E. 2d 892, 895 (Ohio Sp. Ct. 1961) ("[C]ommunications made by a person to an attorney with the view of retaining the attorney to act on his behalf constitute privileged communications. It might well be said that a tentative attorney-client relationship exists during such period.")

Accordingly, here a confidential attorney client relationship was formed when Chinois' counsel telephoned Mr. Morris for the purpose of discussing his

12

retention as local counsel in the case to be filed in Nevada on behalf of Chinois, and client confidences were disclosed and legal advice was received.

**D.    The Sharing Of Confidential Information**

To warrant disqualification, the preliminary contact must be beyond mere "initial or peripheral contacts." *Trone v. Smith* 621 F.2d 994, 1000 (9th Cir. 1980). Absent a formal retention, focus is shifted to whether the meeting involved the sharing of confidential information. The inquiry is "not whether the attorney actually reviewed confidential information, but whether the attorney potentially acquired confidential information that would be harmful to the previous client in the current matter." In *Re Rossana*, *supra*, 395 B.R. at 706 (quoting *Robbins v. Gillock* (1993) 109 Nev. 1015, 1017-1018).

In *The Laryngeal Mask Company Ltd. v. Ambu A/S* 2008 Dist LEXIS 15320 (S.D. Ca. 2008), a patent infringement law suit, the Court found that an attorney-client relationship had been formed as a result of preliminary meeting held between plaintiff and the two attorneys from the same law firm. The Court concluded that confidences had been shared following discussion of the subjects of venue, claim construction in relation to the theory of the case, settlement, damages, and remedies and that the attorneys offered "some legal advice" on these topics. *Id.* at *19-20.

Similarly, in the case at bar, Mr. Morris was provided with an overview of the existing litigation pending in Delaware, the prospect of filing a related action in Nevada, venue, (*i.e.* this action), the addition of new parties and potential claims, litigation strategy and prospects for settlement, and Mr. Morris provided legal advice on these subjects as well as on other topics including current and possible counsel and judges. Moreover, the fact that this was a lawyer to lawyer exchange of information (not just a client to lawyer exchange) only heightened the likelihood that material confidential information was discussed:

> Moreover,[attorney] Disner did not receive the information about Mobil's case theories, strategy , and analyses from a layperson who might or might not be knowledgeable about which matters were significant.

13

Instead, after receiving the background information on the case, Disner participated in an extended briefing with the attorneys' conducting Mobil's defense against respondents' claims. ***Obviously, communications of that kind are likely to involve an efficient transfer of material confidential information and attorney work product.*** (Emphasis added)

***Speedee Oil***, *supra*, 20 Cal. 4th at 1149.

The likelihood that confidential information was shared is illustrated by Mr. Morris conceding that the potential naming of Caesars as a defendant was discussed (*i.e.* that prompted his disclosure that his firm had represented Caesars). Potentially naming Caesars was not a matter of public knowledge and it was only part of a broader discussion of litigation strategy discussed during the preliminary consultation. Without disclosing the specifics of the discussion, Mr. Morris admits the topics discussed included Caesars and Mr. Morris' assessment of Forum Shops as a litigant and other counsel. While Mr. Heller's recollection of the contents of the consultation provides additional detail, it is apparent that due to the nature of the discussion it is likely that confidential information was disclosed to, and legal advice was provided by, Mr. Morris.

## E. The Information Revealed Is Relevant To The Current Action

Here not only did counsel for Chinois consult with Steve Morris, disclose confidential information and receive legal advice, but also, this occurred in connection with this very case:

> The duties to the former client arise only if the proposed representation is in the same or a substantially related matter as the one in which the attorney previously represented the former client. Here, it is not only substantially related, it is identical.

***In Re Rossana***, *supra*, 395 B.R. at 705.

Disqualification is warranted when a lawyer "switches sides" not only because confidences may be disclosed, but in addition it undermines an attorney's duty of loyalty to a client:

14

Perhaps the most important facet of the professional relationship served by this rule of disqualification is the preservation of secrets and confidences communicated to the lawyer by the client. If there is a reasonable probability that confidences were disclosed which could be used against the client in later, adverse presentation, a substantial relation between the two cases is presumed. Confidentiality, however, is not the only aspect of the professional tie preserved by the disqualification rule.

\*     \*     \*

Both lawyer and the client should expect that the lawyer will use every skill, expended every energy, and tap every legitimate resource in the exercise of independent professional judgment on behalf of the client and in undertaking representation on the client's behalf. That professional commitment is not furthered, but endangered, if the possibility exists that the lawyer will change sides later in a substantially related matter. Both the fact and the appearance of total professional commitment are endangered by adverse representation in related cases. From this standpoint it matters not whether confidences were in fact imparted to the lawyer by the client. The substantial relationship between the two representations is itself sufficient to disqualify.

*Trone, supra,* 621 F.2d at 998-999.

What was said in *Trone,* over 28 years ago was true then and is true now, and is reflected in current Nevada law:

Both Rules 1.9 and 1.7 of the NEV. RULES PROF'L CONDUCT are prophylactic rules whose purpose is not simply to punish a lawyer who does share former client confidences or does injure a former client. The purpose of Rule 1.9 of the Nev. RULES PROF'L CONDUCT is also to prevent a representation in which former client confidences could be shared or a former client injured. The prophylactic nature of the rule discredits Beller's arguments that no client confidences were shared and that the Rossanas would not have been adversely affected.

\*     \*     \*

The court finds that this is an egregious violation of the Nevada Rule of Professional Conduct that fall outside all accepted

15

norms of the legal profession. Indeed, Beller's conduct discredits the work of all attorneys before this court and in the state of Nevada by calling into question whether attorneys will faithfully and loyally serve the interests of their clients.

*In re: Rossana, supra,* 395 B.R. at 706-707.

## IV.

### MORRIS PICKERING & PETERSON'S PERFUNCTORY OBJECTIONS TO DISQUALIFICATION ARE WITHOUT MERIT.

MP&P advances three objections to disqualification: 1). that Chinois agreed to waive disqualification in exchange for a motion continuance; 2). there is no substantive basis for disqualification; and 3). the motion is tactically motivated. None of these grounds are factually or legally supported.

### A. Grounds For Disqualification Were Not Waived In Exchange For A Continuance Of A Hearing Date.

Defendants currently have pending with the Court two Motions to Dismiss. Counsel for both Plaintiffs and Defendants have requested several continuances of the hearing date for these Motions. These stipulated continuances were handled professionally and courteously among counsel without strings attached and were approved by the Court.

Most recently, due to a rare snowstorm which closed McCarran Airport, counsel for Chinois notified the Court that flights had been cancelled on December 17, 2008 preventing counsel from travelling to Las Vegas for the hearing schedule on December 18, 2008. The Court vacated the hearing date and directed all counsel to select a new date and submit a stipulation to the Court. (The Court indicated it was available as soon as December 22, 2008 to conduct the hearing). (Ex. F)

While December 22, 2008 was acceptable to counsel for all Plaintiffs, and Kris Pickering could have argued on behalf of Caesars, counsel for Defendants

16

Forum Shops, LLC, Forum Developers Limited Partnerships, Simon Property Group Limited Partnership and Simon Property Group, Inc., Mr. McCrea, indicated he was not available on December 22, 2008 due to a holiday vacation. January 6, 2009 was proposed and was acceptable to all of Plaintiffs' counsel, but this time Kris Pickering objected, indicating her client Caesars wanted her to argue the Motion before she left the case to take a seat on the Nevada Supreme Court. However, Mr. McCrea was not available before January 6, 2009.

Mr. McCrea then unilaterally contacted the Court and asked for a December 19, 2008 hearing date. However, that date was unavailable to one or more of Plaintiffs' counsel. Ms. Pickering suggested Chinois' counsel participate by telephone. However, not only is that not the preference of the Court, Plaintiff's counsel objected to not being able to appear in person. When it was suggested that the hearing be set for December 22, 2008 and Mr. McCrea could participate by telephone, he declined for the very same reasons. (Ex. G)

Mr. McCrea again contacted the Court and as a result of the Court's own calendar conflicts in January, was unable to obtain an alternate date until February 6, 2009. Chinois' counsel immediately consented to that date. A proposed stipulation reflecting Ms. Pickering's signature block was sent to Plaintiffs' counsel and Chinois' counsel agreed to the stipulation and Fagelbaum & Heller LLP requested its name be added to the stipulation. (Ex. H)

However, Mr. McCrea did not implement Chinois' counsel's request. Instead, Mr. McCrea filed a *different* stipulation with the Court which, although maintaining the February 6, 2009 date, changed the signature block deleting Ms. Pickering and substituting Steve Morris. In addition, Mr. McCrea did not add a signature block for Fagelbaum & Heller LLP. (Ex. I)

Upon seeing Mr. Morris' name, and after consulting with his client, Chinois' counsel contacted MP&P to object to Steve Morris appearing in the case. (Ex. C) At no time, did Chinois' counsel consent to Mr. Morris appearance or waive their objections to Mr. Morris' appearance as a *quid pro quo* for a motion

continuance. As reflected in the accompanying e-mails, this argument is without foundation and frivolous on its face.

**B.     The Ostensible Lack Of A Basis For Disqualification**

For the reasons set forth above, Mr. Morris's disqualification is warranted because he personally had been consulted in this case by counsel for Chinois, he received confidential information and, in return, provided legal advice. To permit Mr. Morris to appear on behalf of Caesars would result in the breach of the twin duties of client/attorney confidentially and loyalty. Mr. Morris' statement that he cannot now recall the details of the telephone conversation he admits took place does not immunize him from disqualification. *See Fierro v. Gallucci*, 2007 U. S. Dist. LEXIS 89296 (E.D. N.Y. 2007) ("Although Mr. Dollinger states that he has no recollection of any conversation with Mr. Fierro or Mr. Arnold, his failure to recall the conversation did not change the analysis". *Id*. at *23).

Both Mr. Morris and Ms. Pickering correctly understood the ethical problems associated with Mr. Morris' involvement in the case when Mr. Morris agreed to step aside in February 2008. Those reasons do not evaporate now because Ms. Pickering is leaving the firm for the Bench. To the contrary, now more than ever, with Ms. Pickering election to the Nevada Supreme Court, care should be taken to avoid even the appearance of impropriety. Ethical rules safeguarding client confidences cannot be sacrificed for the sake of expediency.

**C.     Chinois' Motion To Disqualify MP&P Is Not Tactically Motivated**

When Steve Morris was first contacted, it was at the recommendation of one of the partners at FHLLP who had worked with Mr. Morris in connection with the MGM Fire Litigation in the mid-1980's. Mr. Morris had a reputation for being an experienced and ethical attorney.

For those reasons, after Mr. Morris disclosed his firm's relationship with Caesars and Chinois retained Mr. Hunterton as local counsel, Chinois reasonably anticipated that Mr. Morris would not be involved on behalf of Caesars in any litigation which was the subject of the preliminary consultation. It therefore came

18

as a surprise when Caesars appeared in the case represented by Mr. Morris' wife and partner Kris Pickering and MP&P.

Plaintiffs counsel immediately contacted Mr. Morris and objected to Mr. Morris representing Caesars in this case. Mr. Morris assured Chinois' counsel that he would have no involvement in the case and had *not* discussed the contents of his prior conversation with Mr. Heller, let alone the fact that it had occurred, with anyone at his office, including his wife Kris Pickering. Ms. Pickering corroborated those assurances and added she would make sure to keep any work away on this case from Mr. Morris.

Based upon these assurances, Chinois' counsel did not object further to Ms. Pickering's appearance on behalf of Caesars. Had this been a tactically inspired "gotcha" moment, Chinois would have pursued its objections then and there. Instead, Chinois' counsel relied upon the word of an attorney with whom they had a prior professional relationship and with whom they expected would honor his legal and ethical duties.

The *status quo,* however, was shattered after Ms. Pickering successfully ran for a seat on the Nevada Supreme Court. Unable to practice law after January 5, 2009, Ms. Pickering first let it be known on December 19, 2008, in communications regarding the continuance of the December 18, 2008 hearing on Caesars' Motion to Dismiss, that she intended to hand over responsibility for the case to Mr. Morris. (Ex. G) This decision directly contradicted the assurances and promises made by both Mr. Morris and Ms. Pickering that Mr. Morris would have no involvement directly or indirectly in this case.

When promptly reminded of these assurances, Ms. Pickering, among other things, labeled Chinois objection as tactically motivated. (Exs. C and D.) Had that been the case, Chinois would have objected when Ms. Pickering first appeared in the action. However, so long as MP&P honored Mr. Morris' commitment not to participate in the case, Chinois' counsel did not object. Nevertheless, once those assurances as to Mr. Morris were tossed aside, Chinois not only renewed its

objection to Mr. Morris' participation, but also, to MP&P's participation in this case. (Ex. E) Once Mr. Morris indicated he would not honor his promise to Chinois counsel, Mr. Morris also rendered suspect his ongoing commitment to keep confidential from MP&P (and now Morris Peterson) the confidences he learned from Chinois regarding this matter. *See Laryngeal Mask Company, LTD supra*, 2008 U.S. Dist. LEXIS 15320 at *22-23 ("When an attorney is disqualified due to a relationship that amounts to prior representation on the same lawsuit, then the entire firm is disqualified.")

Ms. Pickering's attempt to characterize Chinois' Motion as a tactic is baseless. First, there was no delay. As soon as Ms. Pickering indicated that, contrary to previous assurances, Mr. Morris would be appearing in this case, Chinois renewed its objection. Nevertheless, even if there had been a delay (and here there was none) it would not trump an otherwise properly based Motion to Disqualify:

> The court in Abel specifically stated "[d]elay in bringing an application to disqualify counsel, whether tactical or inadvertent, cannot defeat the motion because the basis for disqualification, if it exists, would be breach of the Code of Professional responsibility, a matter which implicates the public interest." *Id.* at *1 (internal citations omitted). Thus, undue delay was not a factor in the Court's analysis and decision to deny the motion. In the instant case, the Court does not believe there is any basis to conclude that plaintiffs intentionally delayed bringing this motion.

*Fierro v. Gallucci. supra*, 2007 U.S. Dist. LEXIS 89296 at *26.

Second, no tactical advantage has been gained by the timing of this Motion. *In Fierro, supra*, the court, noted that no tactical advantage had been achieved by not raising the issue of disqualification as soon as the conflicted attorney appeared in the case *almost a year earlier*:

> The case was filed in September 2006, discovery has not begun, and defendants have suffered no material prejudice from any alleged delay.

20

*     *     *

>Thus, the Court does not conclude there was undue delay or prejudice to the defendants from the timing of the motion. Moreover, although defendants will need to retain new counsel, that counsel will not necessarily need to duplicate the work product of the Dollinger Firm. Specifically, new counsel could adopt the motion papers already filed by the Dollinger Firm or, if necessary, the Court will allow supplemental briefing before oral argument.

*Fierro, supra,* at 2007 U.S. Dist. LEXIS 89296 at *27. By contrast, Ms. Pickering and MP&P were notified *within days* of Chinois' objection to Steve Morris appearing in this matter.

So too here, there has not been any discovery taken in this case. The first motions in the case, although fully briefed, are not set to be heard until February 6, 2009. Had Ms. Pickering abided by her agreement, any attorney at MP&P, other than Steve Morris, could have substituted in for her and argued Caesars' Motion to Dismiss now set for February 6, 2009.

///
///
///
///
///
///
///
///
//
///
///
///
///

21

## V.

## CONCLUSION

When a lawyer switches sides in the same case, not only is the former client prejudiced, but the appearance of justice itself is called into question. This Court has an ongoing duty to protect client confidences and the legal profession's institutional need to avoid even the appearance of breach of confidence and loyalty in cases pending before it. For all the reasons set forth herein, Plaintiff Chinois' Motion to Disqualify Steve Morris and MP&P (now Morris Peterson) should be granted in its entirety.

Respectfully submitted,

Dated: January 5, 2009

**FAGELBAUM & HELLER LLP**

By: _Jerold Fagelbaum_
Jerold Fagelbaum
2049 Century Park East, Suite 4250
Los Angeles, CA 90067-3254
Attorneys for Phase II Chin, LLC

Dated: January 5, 2009

**HUNTERTON & ASSOCIATES**

By: _/s/_
Stanley C. Hunterton
333 S. Sixth Street
Las Vegas, NV 89101
Attorneys for Phase II Chin, LLC

22

# DECLARATION OF PHILIP HELLER

I, Philip Heller, declare:

1. I am co-counsel of record herein for Plaintiff Phase II, Chin LLC ("Chinois "). I submit this declaration based upon my own first hand personal knowledge of the facts set forth below and, if called upon as a witness herein, could and would competently testify thereto.

2. On October 2007, I was retained by Chinois to represent it in an action for Declaratory Relief filed by Forum Shops LLC in Superior Court in the State of Delaware, County of New Castle. (Forum Shops LLC hold the grand lease to restaurant space lease to Chinois located at the Forum Shops at Caesars Place in Las Vegas). As a result of the Delaware State Action, it was determined that Chinois would file a more comprehensive action of its own in Las Vegas, Nevada where both Chinois and Forum Shops LLC actually conduct business, where other potential parties resided, where the relevant documents and witnesses were located and where the relevant events occurred and were subject to Nevada law.

3. In preparation for filing an action in Las Vegas, Chinois needed to obtained local counsel. At the suggestion of my partner, Jerold Fagelbaum, I telephoned Steve Morris of the law firm of Morris Pickering & Peterson ("MP&P"). My partner previously had worked with Mr. Morris in other litigation in which he was considered to be an experienced and ethical attorney.

4. After introducing myself to Mr. Morris, I explained the purpose of my call. I disclosed to Mr. Morris that I represented Chinois in an action it had with Forum Shops LLC pending in Delaware State Court. Mr. Morris did not invoke any conflict avoidance measures (such as asking me to limit my discussion to information necessary to conduct a conflict check). Accordingly, I revealed to him Chinois' confidential plan to file an action of its own in Las Vegas, Nevada.

///

23

We discussed the pros and cons of filing in state versus federal court in Nevada, potential causes of action (the action in Delaware was limited to Declaratory Relief, the proposed action in Nevada would contain eight causes of action for damages and injunctive relief), possible defendants, litigation strategy, prospects for settlement, other counsel expected to be included in the case and potential state and federal judges. In response, Mr. Morris provided legal and other advice on all these subjects and his personal and professional views on counsel and judges.

5.     After I had disclosed to Mr. Morris that Caesars was one of the potential defendants, Mr. Morris revealed that his firm had represented Caesars. He did not say he could not act as local counsel, but indicated it might present a problem. Nevertheless, it was subsequently decided that in order not to place Mr. Morris or Chinois in the middle of a potential conflict, Chinois would select other attorneys (Hunterton & Associates) as local counsel. At that point, the expectation was that Mr. Morris would have no further involvement in this matter.

6.     On January 8, 2008, Chinois filed a Complaint in Nevada State Court, along with Love and Money LLC, against Forum Shops, LLC, Forum Developers Limited Partnership, Simon Property Group Limited Partnership, Simon Property Group, Inc., Caesars Place Corp., and Caesars Palace Realty Corp. containing eight causes of action and seeking damages and injunctive relief. On February 7, 2008, Caesars removed the case to the United States District Court for the District of Nevada.  To my surprise, Caesars was represented by Mr. Morris' partner Kris Pickering and MP&P.

7.     I called Mr. Morris on February 13, 2008 to object to his firm's representation of Caesars on the very same matter in which he personally had consulted with me, was provided with confidential information and in response provided me with legal advice. Mr. Morris responded by saying he had only a vague recollection of the details of the call, that he had not taken any notes and

24

had not discussed the call with anyone else. He further assured me he had no involvement with the case at MP&P.

8.     The following day, Mr. Morris memorialized his comments to me in an e-mail. (See Ex. A.) Based upon the assurances he had erected the equivalent to an ethical wall around himself and would have no involvement in the case, Chinois did not press its objections to Kris Pickering and MP&P representing Caesars in this case. (Ex. A.) Ms. Pickering thanked me in an e-mail of her own and assured me that Mr. Morris had never discussed with her his conversation with me and that she would keep the work on this case separate from Mr. Morris. (Ex. A.)

9.     Since then, Mr. Morris made no appearances in this case on behalf of Caesars or to my knowledge was involved in any of its filings made with the Court. However, on December 19, 2008, in connection with the continuance of a hearing on two Motions to Dismiss filed by Caesars and the remaining Defendants, Ms. Pickering first revealed that as a result of her election to the Nevada Supreme Court she would be leaving the case and that Mr. Morris would be replacing her. (Ex. B).

10.     After consultation with Chinois, I wrote to Ms. Pickering objecting to her plan to substitute Mr. Morris in her place.  I reminded her of both her and Mr. Morris' assurances that Mr. Morris would have no involvement in this case, assurances upon which Chinois relied when it agreed to allow Kris Pickering and MP&P, but not Steve Morris, to represent Caesars in this case. I advised Ms. Pickering that, unless Steve Morris remained away from this case, Chinois would be forced to seek the disqualification of Mr. Morris and MP&P. (Ex. C)

11.     Ms. Pickering responded in writing (an e-mail) that Chinois ostensibly had waived its objection in exchange for a continuance of Caesars' Motion to Dismiss, that there was no substantive basis for disqualification, and that any motion to disqualify would be tactically motivated. (Ex. D) I wrote back

to Ms. Pickering advising her she had her facts wrong and that, unless Mr. Morris stood down, we planned to move to disqualify Mr. Morris and MP&P. (Ex. E).

12. Attached herewith are true and correct copies of the following documents:

Ex. A: An exchange of e-mails between Philip Heller, Steve Morris and Kris Pickering, dated 2/14/08;

Ex. B: Kris Pickering's e-mail to all counsel, dated 12/19/2008;

Ex. C: Philip Heller's letter to Kris Pickering, dated 12/23/08;

Ex. D: Kris Pickering e-mail to Philip Heller, dated 12/23/08; and

Ex. E: Philip Heller's e-mail to Kris Pickering, dated 12/26/08.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of January, 2009 at Kansas City, Missouri.


                              /s/ Philip Heller
                              Philip Heller

# DECLARATION OF JEROLD FAGELBAUM

I, Jerold Fagelbaum, declare:

1.     I am a partner in the law firm of Fagelbaum & Heller LLP ("FHLLP"), co-counsel of record herein for Plaintiff Phase II, Chin LLC ("Chinois"). I submit this declaration based upon my own first hand knowledge of the facts set forth below and, if called upon as a witness herein, could and would competently testify thereto.

2.     Shortly after Chinois retained FHLLP to represent it in an action pending in Delaware State Court brought by Forum Shops LLC, it was decided to file a more comprehensive action in Las Vegas, Nevada where both Chinois and Forum Shops LLC conduct business, where other potential parties resided, where the relevant documents and witnesses were located, and where the events and issues occurred and were subject to Nevada law. When the subject of retention of local counsel arose, I suggested to my partner Philip Heller that Chinois consider Steve Morris.

3.     I knew Steve Morris before he formed his current law firm Morris Pickering & Peterson. When Mr. Morris was a partner at Lionel Sawyer & Collins in the 1980's, I worked with him as co-counsel on the MGM Fire Litigation. I knew Mr. Morris to be an experienced and ethical lawyer and had no hesitation in recommending him to Chinois.

4.     Following Mr. Heller's telephonic consultation with Mr. Morris, Mr. Heller related to me the substance of that call, including what he had disclosed in confidence to Mr. Morris and the advice received from Mr. Morris. However, in an effort not to place Mr. Morris or Chinois in the middle of a potential conflict, the decision was reached to seek alternative local counsel, rather than Mr. Morris.

5.     I was chagrined to say the very least when Mr. Morris' firm MP&P subsequently appeared on behalf of Caesars in this case. I had recommended Mr. Morris to Chinois. Therefore, after Chinois' objections were relayed to Mr.

27

Morris, I was re-assured when Mr. Morris represented to us that he would have no involvement in this matter on behalf of Caesars. He expressed how he kept his consultation with Mr. Heller separate from all the other lawyers in his firm. Based upon our prior relationship, I had no reason to believe that Mr. Morris was not sincere and would not honor his promise or that his wife Kris Pickering would not honor her commitment to keep the work on this case separate from Mr. Morris.

6.    Since last February, as far as I know, Mr. Morris has had no involvement in this case. However, on December 19, 2008, we first received word that his status was about to change.

7.    A hearing on this case on Defendants' two Motions to Dismiss was scheduled for December 18, 2008. As a result of a rare snowstorm on December 17, 2008, Las Vegas' McCarran Airport was closed and I was unable to travel to Las Vegas to attend the hearing set for the following day. As soon as the travel problem arose, I contacted the Court's staff from Burbank Airport to advise them of the problem and requested that at a minimum the hearing be delayed until later in the day on December 18, 2008. I was advised by the Court's staff that setting the hearing for later in the day on December 18 was problematic and that the Court preferred to vacate the hearing date and re-set it subject to a stipulation among the parties agreeing to a new date. The Court suggested December 22, 2008 as an available date.

8.    Since I was at the Airport, I asked my secretary to notify all counsel of record that the 12/18/2008 hearing was vacated; that the Court wanted counsel for the parties to agree on a new date; and that December 22, 2008 was available. (Ex. F)

9.    Agreeing upon a new date proved to be difficult. While continuances in the past had been routinely requested and agreed to by and among counsel, this time was different. I was available on any date from December 22, 2008 through the end of the year. However, in addition to routine calendar conflicts, other

28

counsel were confronted with pre-planned end of year holiday commitments. Moreover, Kris Pickering, who had just been elected to a seat on the Nevada Supreme Court, indicated her clients wanted her to attend the hearing on Caesars' Motion to Dismiss. The last day for her to do that was January 5, 2009, but counsel for the other Defendants, Mr. McCrea, was unavailable until January 6, 2009 (another date for which I was available). A flood of e-mails were sent back and forth in an attempt to arrive at a compromise. (Ex. G)

10.    Finally, on December 19, 2008, Mr. McCrea sent a proposed stipulation suggesting February 6, 2009 as the new date for the hearing. I agreed to the proposed stipulation and advised Mr. McCrea's office to that effect. I requested that my name be added to the stipulation and I authorized him to sign on my behalf and requested a copy of the stipulation (as filed) for my files. (Ex. H)

11.    Shortly thereafter, I received a copy of the stipulation. Contrary to my request, it did not contain a space for my signature and was not signed by FHLLP. Moreover, the signature block for counsel for Caesars had been changed from the previous version sent to me. Instead of Kris Pickering signing the stipulation, Steve Morris signed the stipulation. (Ex.I)

12.    Following Mr. Morris' appearance in the case, my partner wrote to Ms. Pickering and requested that Mr. Morris stand down. Ms. Pickering refused to assign anyone else in her firm, other than Mr. Morris, to the case to replace her and rejected the request to have Mr. Morris honor his prior commitment not to be involved in this case.

13.    Attached hereto are true and correct copies of the following documents:

      Exhibit F:    FHLLP's e-mail to all counsel, dated 12/17/08, advising of vacating of 12/18/08 hearing date;

      Exhibit G:    e-mails between and among counsel, dated 12/18/08-12/19/08, regarding selecting a new date to hear Defendants' Motions to Dismiss;

29

Exhibit H:    Mr. McCrea's first proposed stipulation, dated
             12/19/08;

Exhibit I:    Mr. McCrea stipulation, as filed, substituting
             Mr. Morris for Ms. Pickering, dated 12/19/08.


I declare under penalty of perjury under the laws of the United States of America that he foregoing is true and correct.

Executed this 5th day of January, 2009 at Los Angeles, California

_____
Jerold Fagelbaum

EXHIBIT "A"

| | |
|---|---|
| **From:** | Philip Heller [ph@philipheller.com] |
| **Sent:** | Thursday, February 14, 2008 8:07 PM |
| **To:** | 'Kris Pickering'; 'Steve Morris' |
| **Cc:** | 'Stan Hunterton' |
| **Subject:** | RE: Representation of Caesar's Palace |

Kris,

I really appreciate the clarification and your assurance.
It was unnecessary but very kind of you to write.
Caesars is very fortunate to have you in their corner.

Philip

This message is intended solely for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply email and delete all copies. Your cooperation is appreciated.

**From:** Kris Pickering [mailto:KP@morrislawgroup.com]
**Sent:** Thursday, February 14, 2008 6:18 PM
**To:** Philip Heller; Steve Morris
**Cc:** Stan Hunterton
**Subject:** RE: Representation of Caesar's Palace

Thank you.

In the interest of full disclosure, you should also know that Steve and I are married.

I can confirm, though, that he never discussed his conversation with you with me and, further, that I will keep this work separate from him.

Kris

----------------------

Kristina Pickering
Morris Pickering & Peterson
300 S. Fourth St., Suite 900
Las Vegas, NV 89101

PRIVILEGED & CONFIDENTIAL; ATTORNEY WORK PRODUCT
kp@morrislawgroup.com
Direct Dial: (702) 474-9472
Fax: (702) 382-2620
This email message is intended solely for the named recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please contact the sender by reply email and delete the original message.

Morris Pickering & Peterson
Website: www.morrislawgroup.com

**From:** Philip Heller [mailto:ph@philipheller.com]
**Sent:** Thursday, February 14, 2008 4:41 PM

**EXHIBIT A**

**To:** Steve Morris
**Cc:** Kris Pickering; Stan Hunterton
**Subject:** RE: Representation of Caesar's Palace

Dear Steve,

I good deal more about the Chinois dispute was discussed than you recall.
However, in light of your very limited recollection of what was discussed, and the fact that you are personally not involved in the case, I see no problem with your partner's continued participation in the litigation.
BTW, Stan Hunterton was recommend by a close friend and colleague in Los Angeles, but you recall correctly making some very favorable comments to me about Stan (all of which have proven to be true).
My Partner Jerry Fagelbaum sends his warm regards.
Hope we get to work together on the same side next time.

Philip

This message is intended solely for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply email and delete all copies. Your cooperation is appreciated.

**From:** Steve Morris [mailto:SM@morrislawgroup.com]
**Sent:** Thursday, February 14, 2008 4:08 PM
**To:** ph@philipheller.com
**Cc:** Kris Pickering; Stan Hunterton
**Subject:** Representation of Caesar's Palace

Dear Phillip—I've thought about our conversation yesterday and your belief that my firm and partner Kris Pickering should not represent Caesar's in a lawsuit filed by Chinois. Notwithstanding your call and thinking about your request, I am unable to recall anything from our conversation several weeks or months ago that justifies your request. I have only the faintest recollection of our previous conversation. I recall you said you represented Chinois at the Forum Shops in some sort of dispute with another tenant or subtenant involving a nightclub. I do recall telling you that Simon is the lessor at the Forum Shops, that it would be a difficult party to litigate against, and that it leases the ground for the Forum Shops from Caesar's. I told you we represent Harrah's, which owns Caesars.

I don't recall the context in which these remarks were made, but I probably said we would not represent tenants at the Forum Shops because of the relationship between the Forum and Caesar's. In any event, I either recommended Stan Hunterton to you as local counsel or confirmed another lawyer's recommendation of him to you as a very capable and experienced litigator. I think you asked me about my knowledge of Harold Gewerter (only because you said yesterday you did). I don't remember what I told you about Harold, but it likely would have been my assessment of his skills and experience, based on my knowledge of him as a local lawyer over the years he has been in practice here.

2

**EXHIBIT A**

That's about all I can recall. I took no notes when we spoke, and I did not make a record that we had spoken. I did not speak to anyone in the firm about our call, not even Kris. Frankly, I put the call completely out of mind and did not recall it from the message you left with my secretary yesterday to return your call, which, of course, I did. Until you told me yesterday that we had spoken some time ago, I did not associate you with litigation here. I did not speak to anyone in the firm about your earlier call, and I was, until you mentioned it yesterday, unaware that you have anything to do with the lawsuit in which Kris represents Caesar's. I am not familiar with the case or involved in it in any respect.

For these reasons, I do not believe you have a basis to ask that the firm discontinue representing Caesar's in the case in which you and Stan are involved. I regret that our brief conversation last year which apparently resulted in you retaining Stan prompts you to believe otherwise.

Steve Morris

**EXHIBIT A**

From: Kris Pickering <KP@morrislawgroup.com>
To: 'Fagelbaum & Heller LLP ...snip...
    <cmccrea@lionelsawyer.com>
Subject: RE: Continuance of Hearing Chin LV v. Forum Shops

Gentlemen,

Judge Mahan was not available yesterday afternoon. With Charlie McCrea out from Monday through the 4th, it looks as though there is no workable date before year-end that will allow me to participate. Since this takes me out, I've asked my partner, Steve Morris, to step in (which you on the plaintiffs' side will come to regret). His assistant is Patty Ferrugia, whom I'm copying to get a new date that works for him and JP.

Best wishes for the holidays.

Kris

------

From: Fagelbaum & Heller LLP [mailto:office@fhllplaw.com]
Sent: Thursday, December 18, 2008 11:08 AM
To: cmccrea@lionelsawyer.com
Cc: harold@gewerterlaw.com; slionel@lionelsawyer.com; Kris Pickering; JP Hendricks
Subject: Continuance of Hearing Chin LV v. Forum Shops

Dear Mr. McCrea: I an unavailable tomorrow December 19, 2008. However, I am available on the alternative dates you proposed for January as well as December 22, 2008 (on which I understand you are unavailable). Accordingly, by copy of this e-mail, I am requesting that all counsel determine if they are available on January 7 through 9 or 13 through 15, 2009. Once we all agree on a date, we can clear it with the court and prepare a stipulation. Thank you for the courtesy. J. Fagelbaum.


Zorina S. Sohl
Legal Assistant to
Jerold Fagelbaum, Esq.,and Philip Heller PLC
FAGELBAUM & HELLER LLP
2049 Century Park East, Suite 4250
Los Angeles, CA 90067
Phone: 310.286.7666
Facsimile: 310.286.7086

**EXHIBIT B**

EXHIBIT "C"

**FAGELBAUM &** | ATTORNEYS | LOS ANGELES
**HELLER LLP** | AT LAW | NEW YORK
| | BOSTON

2049 Century Park East  ❖  Suite 4250  ❖  Los Angeles, California 90067  ❖ USA
Telephone (310) 286-7666  ❖  Facsimile (310) 286-7086  ❖  E-mail: office@fhllplaw.com

December 23, 2008

Philip Heller
ph@fhllplaw.com

**By: E-Mail and U. S. Mail**
Kristina Pickering, Esq.
**MORRIS, PICKERING & PETERSON**
300 S. Fourth Street, Suite 900
Las Vegas, NV 89101

Re: *Phase II Chin, LLC v. Forum Shops*
　　*Case No.: 2:08-cv-162 JCM- GUF*

Dear Kris:

　　As a result of the flurry of e-mails generated by the continuance of the hearing on Defendants' Motions to Dismiss and your elevation to the Nevada Supreme Court, we were surprised to see that you intend to transfer responsibility for this case (on behalf of Caesars) to your partner and husband Steve Morris. You may recall that Steve's participation in this case was objected to by us last February on the basis that we previously had contacted and spoken with him regarding representation of Chinois in this case.

　　We believed that this conflicts issue had been contained when you represented to us that Steve would not be involved in this case, that he had not discussed his communications with us with you, and that you would keep work on this matter away from him. Your recent e-mails now suggest otherwise.

　　We repeat our objections to Steve's participation in this case on behalf of Caesars. Whether viewed from the Bench or from the Bar, Steve's participation in the case raises both ethical and legal problems. Accordingly, we request your written assurance that, while the law firm currently known as Morris Pickering & Peterson may continue to represent Caesars in this case, Steve Morris has had and will have no personal involvement in any aspect of the case, including talking with or supervising other lawyers in the firm on the case or advising Caesars in connection

**EXHIBIT C**

with the case.  If we cannot agree on this informally, you will leave us no alternative
but to bring this matter to the Court's attention.

Sincerely,

Philip Heller
A Professional Law Corporation
for
**FAGELBAUM & HELLER LLP**

PH/zs

**EXHIBIT C**

Subject: Fw: Phase II Chin v. Forum Shops
To: "FAGELBAUM & HELLER LLP" <office@fhllplaw.com>
From: "Philip Heller" <ph@philipheller.com>


This message is intended solely for the use of the individual or entity to which it is addressed and may
contain information that is privileged, confidential and exempt from disclosure under applicable law. If
the reader of this message is not the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, you are hereby notified that any dissemination,
distribution or copying of this communication is strictly prohibited. If you have received this
communication in error, please notify us immediately by reply email and delete all copies. Your
cooperation is appreciated.

---

**From:** Kris Pickering
**Date:** Tue, 23 Dec 2008 16:58:59 -0800
**To:** 'Philip Heller'<ph@philipheller.com>
**Subject:** RE: Phase II Chin v. Forum Shops

Philip,

We will respond formally by letter but my staff is out.

I don't want the intervening holiday to suggest any acquiescence: We will not accede to your demand that Steve Morris not
handle this going forward. In the first place, your partner, Jerry Fagelbaum, secured our consent to a post-12/31/08
hearing date knowing my husband and law partner, Steve, would be arguing the motion and that, by law, I could not. I
relied on your partner's acceptance of Steve's involvement, even copying you on the exchange, meaning you have waived
your objection. Second, as I wrote when you expressed concern about our firm, Steve has no memory of the single phone
call your side says Mr. Fagelbaum made to Steve as involving any discussion of substance. More important than waiver,
there is thus no substantive basis for your request. Finally, this seems on its face tactically motivated and contrary to what
needs to happen: Get this case decided on the merits of the pending motions without any further delay.

I apologize for this brusque exchange on what is almost Christmas Eve. I do wish you all best for the coming holidays.

Sincerely,

Kris Pickering

---

**From:** Philip Heller [mailto:ph@philipheller.com]
**Sent:** Tuesday, December 23, 2008 12:47 PM
**To:** Kris Pickering
**Subject:** Phase II Chin v. Forum Shops

Dear Kris,

Please see my attached letter regarding the transfer of responsibilities for this case to Steve Morris.

Philip

This message is intended solely for the use of the individual or entity to which it is addressed and may contain information that is
privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or
the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination,
distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us
immediately by reply email and delete all copies. Your cooperation is appreciated.

EXHIBIT "E"



FAGELBAUM & | ATTORNEYS | LOS ANGELES
HELLER LLP | AT LAW | NEW YORK
                              | BOSTON

**Philip Heller**

2049 Century Park East
Suite 1250
Los Angeles, CA 90067
Telephone: (310) 286-7656
Facsimile: (310) 286-7605
e-mail: ph@fhllplaw.com

Website: www.fhllplawfirm.com

This message is intended solely for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply email and delete all copies. Your cooperation is appreciated.

**From:** Philip Heller [mailto:ph@phllpheller.com]
**Sent:** Friday, December 26, 2008 12:34 PM
**To:** 'Kris Pickering'
**Cc:** 'Steve Morris'
**Subject:** RE: Phase II Chin v. Forum Shops

Kris:

For the same reason you gave for sending us an interim e-mail on Tuesday, we do not want our waiting for your "formal" response to suggest any "acquiescence" on our part. You have your facts wrong.

First, my partner never agreed to any *quid pro quo*. You alone are responsible for your own unavailability after January 5, 2009. We were available to argue the motion on December 22, 2008, but your co-counsel, Mr. McCrea, was not. The fact, that the motion had to be continued to February 6, 2009 was due to all counsels' and the Court's availability. We never secured your consent for that date, Mr. McCrea secured ours.

Second, the contention that Steve has no memory of any substantive telephone call with my partner may be true, but not for the lack of any substance. The call was between Steve and me. As for that call, the discussion was substantive and detailed, and involved the disclosure of confidential information by me and the provision of advice by Steve.

Third, there is no tactical motivation involved here. We relied upon Steve and your representations and quite frankly are very disappointed. We view this turn of events

**EXHIBIT E**
1/5/2009

seriously and unless, upon reflection, Steve stands down, we will be forced to move to disqualify Steve and your firm.

Philip



This message is intended solely for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply email and delete all copies. Your cooperation is appreciated.

---

**From:** Kris Pickering [mailto:KP@morrislawgroup.com]
**Sent:** Tuesday, December 23, 2008 4:59 PM
**To:** 'Philip Heller'
**Cc:** Steve Morris
**Subject:** RE: Phase II Chin v. Forum Shops

Philip,

We will respond formally by letter but my staff is out.

I don't want the intervening holiday to suggest any acquiescence: We will not accede to your demand that Steve Morris not handle this going forward. In the first place, your partner, Jerry Fagelbaum, secured our consent to a post-12/31/08 hearing date knowing my husband and law partner, Steve, would be arguing the motion and that, by law, I could not. I relied on your partner's acceptance of Steve's involvement, even copying you on the exchange, meaning you have waived your objection. Second, as I wrote when you expressed concern about our firm, Steve has no memory of the single phone call your side says Mr. Fagelbaum made to Steve as involving any discussion of substance. More important than waiver, there is thus no substantive basis for your request. Finally, this seems on its face tactically motivated and contrary to what needs to happen: Get this case decided on the merits of the pending motions without any further delay.

I apologize for this brusque exchange on what is almost Christmas Eve. I do wish you all best for the coming holidays.

Sincerely,

Kris Pickering

---

**From:** Philip Heller [mailto:ph@philipheller.com]
**Sent:** Tuesday, December 23, 2008 12:47 PM
**To:** Kris Pickering
**Subject:** Phase II Chin v. Forum Shops

**EXHIBIT E**

Dear Kris,

Please see my attached letter regarding the transfer of responsibilities for this case to Steve Morris.

Philip

This message is intended solely for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply email and delete all copies. Your cooperation is appreciated.

 Philip Heller28.vcf

 Philip Heller29.vcf

**EXHIBIT E**

## Fagelbaum & Heller LLP

| | |
|---|---|
| **From:** | "Charles H. McCrea Jr." <cmccrea@lionelsawyer.com> |
| **To:** | "Fagelbaum & Heller LLP" <office@fhllplaw.com>; <harold@gewerterlaw.com> |
| **Cc:** | <shunterton@huntertonlaw.com>; <janallen@huntertonlaw.com>; <jallen@huntertonlaw.com>; "Samuel Lionel" <slionel@lionelsawyer.com>; "FEDVEGAS" <fedvegas@lionelsawyer.com>; "Raynell Caliguire" <rcaliguire@lionelsawyer.com>; <kp@morrislawgroup.com>; <pac@morrislawgroup.com>; <plawson@huntertonlaw.com>; <dlawson@huntertonlaw.com> |
| **Sent:** | Thursday, December 18, 2008 8:32 AM |
| **Subject:** | RE: Chin LV v. Forum Shops Hearing for 12/18/08 |

12/22 does not work for me. I will be in Hawaii from 12/20 to 1/4/09. I am available 1/7-9,13-15/09 if any of those dates work.

---

**From:** Fagelbaum & Heller LLP [mailto:office@fhllplaw.com]
**Sent:** Wed 12/17/2008 5:12 PM
**To:** harold@gewerterlaw.com
**Cc:** shunterton@huntertonlaw.com; janallen@huntertonlaw.com; jallen@huntertonlaw.com; Samuel Lionel; Charles H. McCrea Jr.; FEDVEGAS; Raynell Caliguire; kp@morrislawgroup.com; pac@morrislawgroup.com; plawson@huntertonlaw.com; dlawson@huntertonlaw.com
**Subject:** Chin LV v. Forum Shops Hearing for 12/18/08

Gentlemen and Ladies:   The e-mail is to inform each of you that the court has cancelled the hearing set for tomorrow (12.18.08) because the airport in Las Vegas is closed. The court would like the parties to stipulate to a new date. The Court has available December 22, 2008 @ 10:00 a.m. Please confirm that this date is convenient for you. If not, could you please provide us with a date you would be available?  Please note that Kristina Pickering has confirmed that the 12/22/08 date is ok with her.  Thank you.

Zorina S. Sohl
Legal Assistant to
Jerold Fagelbaum, Esq.,and Philip Heller PLC
FAGELBAUM & HELLER LLP
2049 Century Park East, Suite 4250
Los Angeles, CA 90067
Phone: 310.286.7666
Facsimile: 310.286.7086

This e-mail message is a confidential communication from the law firm of Lionel Sawyer & Collins and is intended only for the named recipient(s) above and may contain information that is a trade secret, proprietary, privileged or attorney work product. If you have received this message in error, or are not the named or intended recipient(s), please immediately notify the sender at 702-383-8888 and delete this e-mail message and any attachments from your workstation or network mail system.

Subject: RE: Continuance of Hearing Chin LV v. Forum Shops
From: "Charles H. McCrea Jr." <cmccrea@lionelsawyer.com>
To: "Kris Pickering" <KP ...snip... LLP" <office@fhllplaw.com>
Cc: <harold@gewerterlaw.com>,
       ...snip... "Stan Hunterton" <SHunterton@Huntertonlaw.com>

Counsel: Yesterday, Judge Mahan's assistant indicated that the motion could be heard on January 6, 2009 at
2:00 PM.   Mr. Gewerter and Mr. Fagelbaum have indicated that this works for them.  I need confirmation from
Mr. Hunterton or Ms. Lawson that this will work for them as well.  Attached is a stipulation and order resetting the
hearing to that date.  Please confirm that we are authorized to sign and e-file it on your behalf.

## LIONEL SAWYER & COLLINS

### CHARLES McCREA
**Shareholder**

1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101

E-Mail      Web Site

Main ~ 702.383.8888          Direct ~ 702.383.8981
Fax  -  702.383.8845           Mobile - 702.370.7632

---

**From:** Kris Pickering [mailto:KP@morrislawgroup.com]
**Sent:** Friday, December 19, 2008 10:52 AM
**To:** 'Fagelbaum & Heller LLP'; Charles H. McCrea Jr.
**Cc:** harold@gewerterlaw.com; Samuel Lionel; JP Hendricks; Patricia Ferrugia; 'Philip Heller'; Patricia Ferrugia;
Steve Morris; Stan Hunterton
**Subject:** RE: Continuance of Hearing Chin LV v. Forum Shops

Gentlemen,

Judge Mahan was not available yesterday afternoon.  With Charlie McCrea out from Monday through the 4th, it
looks as though there is no workable date before year-end that will allow me to participate.  Since this takes me
out, I've asked my partner, Steve Morris, to step in (which you on the plaintiffs' side will come to regret).  His
assistant is Patty Ferrugia, whom I'm copying to get a new date that works for him and JP.

Best wishes for the holidays.

Kris

---

**From:** Fagelbaum & Heller LLP [mailto:office@fhllplaw.com]
**Sent:** Thursday, December 18, 2008 11:08 AM
**To:** cmccrea@lionelsawyer.com
**Cc:** harold@gewerterlaw.com; slionel@lionelsawyer.com; Kris Pickering; JP Hendricks
**Subject:** Continuance of Hearing Chin LV v. Forum Shops

**EXHIBIT G**

Dear Mr. McCrea: I an unavailable tomorrow December 19, 2008. However, I am available on the alternative dates you proposed for January as well as December 22, 2008 (on which I understand you are unavailable). Accordingly, by copy of this e-mail, I am requesting that all counsel determine if they are available on January 7 through 9 or 13 through 15, 2009. Once we all agree on a date, we can clear it with the court and prepare a stipulation. Thank you for the courtesy. J. Fagelbaum.


Zorina S. Sohl
Legal Assistant to
Jerold Fagelbaum, Esq.,and Philip Heller PLC
FAGELBAUM & HELLER LLP
2049 Century Park East, Suite 4250
Los Angeles, CA 90067
Phone: 310.286.7666
Facsimile: 310.286.7086

This e-mail message is a confidential communication from the law firm of Lionel Sawyer & Collins and is intended only for the named recipient(s) above and may contain information that is a trade secret, proprietary, privileged or attorney work product. If you have received this message in error, or are not the named or intended recipient(s), please immediately notify the sender at 702-383-8888 and delete this e-mail message and any attachments from your workstation or network mail system.

 081219 SAO to Continue Hearing.doc

**EXHIBIT G**

Printed for "Jerold Fagelbaum, Esq." <office@fhllplaw.com>          12/29/2008

From: Patricia Ferrugia <paf@morrislawgroup.com>
To: "'Charles H. McCrea Jr. ...snip... LLP <office@fhllplaw.com>
Subject: RE: Continuance of Hearing Chin LV v. Forum Shops

Steve is not available the first two weeks of January. However, he is available on the 21st, 22nd, 26th, or the 27th

---

**From:** Charles H. McCrea Jr. [mailto:cmccrea@lionelsawyer.com]
**Sent:** Friday, December 19, 2008 11:08 AM
**To:** Kris Pickering; Fagelbaum & Heller LLP
**Cc:** harold@gewerterlaw.com; Samuel Lionel; JP Hendricks; Patricia Ferrugia; Philip Heller; Patricia Ferrugia; Steve Morris; Stan Hunterton
**Subject:** RE: Continuance of Hearing Chin LV v. Forum Shops

Counsel: Yesterday, Judge Mahan's assistant indicated that the motion could be heard on January 6, 2009 at 2:00 PM. Mr. Gewerter and Mr. Fagelbaum have indicated that this works for them. I need confirmation from Mr. Hunterton or Ms. Lawson that this will work for them as well. Attached is a stipulation and order resetting the hearing to that date. Please confirm that we are authorized to sign and e-file it on your behalf.

## LIONEL SAWYER & COLLINS

### CHARLES McCREA
Shareholder

1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101

E-Mail          Web Site

Main - 702.383.8888              Direct - 702.383.8981
Fax - 702.383.8845               Mobile - 702.370.7632

---

**From:** Kris Pickering [mailto:KP@morrislawgroup.com]
**Sent:** Friday, December 19, 2008 10:52 AM
**To:** 'Fagelbaum & Heller LLP'; Charles H. McCrea Jr.
**Cc:** harold@gewerterlaw.com; Samuel Lionel; JP Hendricks; Patricia Ferrugia; 'Philip Heller'; Patricia Ferrugia; Steve Morris; Stan Hunterton
**Subject:** RE: Continuance of Hearing Chin LV v. Forum Shops

Gentlemen,

Judge Mahan was not available yesterday afternoon. With Charlie McCrea out from Monday through the 4th, it looks as though there is no workable date before year-end that will allow me to participate. Since this takes me out, I've asked my partner, Steve Morris, to step in (which you on the plaintiffs' side will come to regret). His assistant is Patty Ferrugia, whom I'm copying to get a new date that works for him and JP.

Best wishes for the holidays.

Kris

**From:** Fagelbaum & Heller LLP [mailto:office@fhllplaw.com]
**Sent:** Thursday, December 18, 2008 11:08 AM
**To:** cmccrea@lionelsawyer.com
**Cc:** harold@gewerterlaw.com; slionel@lionelsawyer.com; Kris Pickering; JP Hendricks
**Subject:** Continuance of Hearing Chin LV v. Forum Shops

Dear Mr. McCrea: I an unavailable tomorrow December 19, 2008. However, I am available on the alternative dates you proposed for January as well as December 22, 2008 (on which I understand you are unavailable). Accordingly, by copy of this e-mail, I am requesting that all counsel determine if they are available on January 7 through 9 or 13 through 15, 2009. Once we all agree on a date, we can clear it with the court and prepare a stipulation. Thank you for the courtesy. J. Fagelbaum.

Zorina S. Sohl
Legal Assistant to
Jerold Fagelbaum, Esq.,and Philip Heller PLC
FAGELBAUM & HELLER LLP
2049 Century Park East, Suite 4250
Los Angeles, CA 90067
Phone: 310.286.7666
Facsimile: 310.286.7086

This e-mail message is a confidential communication from the law
firm of Lionel Sawyer & Collins and is intended only for the named
recipient(s) above and may contain information that is a trade
secret, proprietary, privileged or attorney work product. If you have
received this message in error, or are not the named or intended
recipient(s), please immediately notify the sender at 702-383-8888
and delete this e-mail message and any attachments from your
workstation or network mail system.

**EXHIBIT G**

**Subject:** RE: Continuance of Hearing Chin LV v. Forum Shops
**From:** "Charles H. McCrea Jr." <cmccrea@lionelsawyer.com>
**To:** "Kris Pickering" <KP ...snip... LLP" <office@fhllplaw.com>
**Cc:** <harold@gewerterlaw.com>,
    ...snip... "Stan Hunterton" <SHunterton@Huntertonlaw.com>

Does 1/8/09 at 1:30 PM work? If not, the next date available to the Court is not until February.

## LIONEL SAWYER & COLLINS

**CHARLES McCREA**
Shareholder

1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101

E-Mail      Web Site

Main - 702.383.8888      Direct - 702.383.8981
Fax - 702.383.8845      Mobile - 702.370.7632

---

**From:** Kris Pickering [mailto:KP@morrislawgroup.com]
**Sent:** Friday, December 19, 2008 11:03 AM
**To:** Charles H. McCrea Jr.; Fagelbaum & Heller LLP
**Cc:** harold@gewerterlaw.com; Samuel Lionel; JP Hendricks; Patricia Ferrugia; Philip Heller; Patricia Ferrugia; Steve Morris; Stan Hunterton
**Subject:** RE: Continuance of Hearing Chin LV v. Forum Shops

That date does not work for Morris.

---

**From:** Charles H. McCrea Jr. [mailto:cmccrea@lionelsawyer.com]
**Sent:** Friday, December 19, 2008 11:08 AM
**To:** Kris Pickering; Fagelbaum & Heller LLP
**Cc:** harold@gewerterlaw.com; Samuel Lionel; JP Hendricks; Patricia Ferrugia; Philip Heller; Patricia Ferrugia; Steve Morris; Stan Hunterton
**Subject:** RE: Continuance of Hearing Chin LV v. Forum Shops

Counsel: Yesterday, Judge Mahan's assistant indicated that the motion could be heard on January 6, 2009 at 2:00 PM. Mr. Gewerter and Mr. Fagelbaum have indicated that this works for them. I need confirmation from Mr. Hunterton or Ms. Lawson that this will work for them as well. Attached is a stipulation and order resetting the hearing to that date. Please confirm that we are authorized to sign and e-file it on your behalf.

## LIONEL SAWYER & COLLINS

**CHARLES McCREA**
Shareholder

**EXHIBIT G**

1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101

E-Mail     Web Site

Main - 702.383.8888        Direct - 702.383.8981
Fax - 702.383.8845         Mobile - 702.370.7632

---

**From:** Kris Pickering [mailto:KP@morrislawgroup.com]
**Sent:** Friday, December 19, 2008 10:52 AM
**To:** 'Fagelbaum & Heller LLP'; Charles H. McCrea Jr.
**Cc:** harold@gewerterlaw.com; Samuel Lionel; JP Hendricks; Patricia Ferrugia; 'Philip Heller'; Patricia Ferrugia; Steve Morris; Stan Hunterton
**Subject:** RE: Continuance of Hearing Chin LV v. Forum Shops

Gentlemen,

Judge Mahan was not available yesterday afternoon. With Charlie McCrea out from Monday through the 4th, it looks as though there is no workable date before year-end that will allow me to participate. Since this takes me out, I've asked my partner, Steve Morris, to step in (which you on the plaintiffs' side will come to regret). His assistant is Patty Ferrugia, whom I'm copying to get a new date that works for him and JP.

Best wishes for the holidays.

Kris

---

**From:** Fagelbaum & Heller LLP [mailto:office@fhllplaw.com]
**Sent:** Thursday, December 18, 2008 11:08 AM
**To:** cmccrea@lionelsawyer.com
**Cc:** harold@gewerterlaw.com; slionel@lionelsawyer.com; Kris Pickering; JP Hendricks
**Subject:** Continuance of Hearing Chin LV v. Forum Shops

Dear Mr. McCrea: I an unavailable tomorrow December 19, 2008. However, I am available on the alternative dates you proposed for January as well as December 22, 2008 (on which I understand you are unavailable). Accordingly, by copy of this e-mail, I am requesting that all counsel determine if they are available on January 7 through 9 or 13 through 15, 2009. Once we all agree on a date, we can clear it with the court and prepare a stipulation. Thank you for the courtesy. J. Fagelbaum.

Zorina S. Sohl
Legal Assistant to
Jerold Fagelbaum, Esq.,and Philip Heller PLC
FAGELBAUM & HELLER LLP
2049 Century Park East, Suite 4250
Los Angeles, CA 90067
Phone: 310.286.7666
Facsimile: 310.286.7086

**EXHIBIT G**

This e-mail message is a confidential communication from the law
firm of Lionel Sawyer & Collins and is intended only for the named
recipient(s) above and may contain information that is a trade
secret, proprietary, privileged or attorney work product. If you have
received this message in error, or are not the named or intended
recipient(s), please immediately notify the sender at 702-383-8888
and delete this e-mail message and any attachments from your
workstation or network mail system.

This e-mail message is a confidential communication from the law
firm of Lionel Sawyer & Collins and is intended only for the named
recipient(s) above and may contain information that is a trade
secret, proprietary, privileged or attorney work product. If you have
received this message in error, or are not the named or intended
recipient(s), please immediately notify the sender at 702-383-8888
and delete this e-mail message and any attachments from your
workstation or network mail system.

Subject: RE: Continuance of Hearing Chin LV v. Forum Shops
From: "Charles H. McCrea Jr." <cmccrea@lionelsawyer.com>
To: "Patricia Ferrugia ...snip... LLP" <office@fhllplaw.com>
Cc: <harold@gewerterlaw.com>,
    ...snip... "Stan Hunterton" <SHunterton@Huntertonlaw.com>

The next date is February 6, 2009 at 10:30 AM.

## LIONEL SAWYER & COLLINS

**CHARLES McCREA**
**Shareholder**

1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101

E-Mail     Web Site

Main - 702.383.8888        Direct - 702.383.8981
Fax  -  702.383.8845       Mobile - 702.370.7632

---

**From:** Patricia Ferrugia [mailto:paf@morrislawgroup.com]
**Sent:** Friday, December 19, 2008 11:10 AM
**To:** Charles H. McCrea Jr.; Kris Pickering; Fagelbaum & Heller LLP
**Cc:** harold@gewerterlaw.com; Samuel Lionel; JP Hendricks; Philip Heller; Steve Morris; Stan Hunterton
**Subject:** RE: Continuance of Hearing Chin LV v. Forum Shops

Steve is not available the first two weeks of January.  However, he is available on the 21st,
22nd, 26th, or the 27th

---

**From:** Charles H. McCrea Jr. [mailto:cmccrea@lionelsawyer.com]
**Sent:** Friday, December 19, 2008 11:08 AM
**To:** Kris Pickering; Fagelbaum & Heller LLP
**Cc:** harold@gewerterlaw.com; Samuel Lionel; JP Hendricks; Patricia Ferrugia; Philip Heller; Patricia Ferrugia;
Steve Morris; Stan Hunterton
**Subject:** RE: Continuance of Hearing Chin LV v. Forum Shops

Counsel:  Yesterday, Judge Mahan's assistant indicated that the motion could be heard on January 6, 2009 at
2:00 PM.   Mr. Gewerter and Mr. Fagelbaum have indicated that this works for them.  I need confirmation from
Mr. Hunterton or Ms. Lawson that this will work for them as well.  Attached is a stipulation and order resetting the
hearing to that date.  Please confirm that we are authorized to sign and e-file it on your behalf.

## LIONEL SAWYER & COLLINS

**CHARLES McCREA**
**Shareholder**

**EXHIBIT G**

1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101

E-Mail      Web Site

Main - 702.383.8888        Direct - 702.383.8981
Fax  - 702.383.8845        Mobile - 702.370.7632

---

**From:** Kris Pickering [mailto:KP@morrislawgroup.com]
**Sent:** Friday, December 19, 2008 10:52 AM
**To:** 'Fagelbaum & Heller LLP'; Charles H. McCrea Jr.
**Cc:** harold@gewerterlaw.com; Samuel Lionel; JP Hendricks; Patricia Ferrugia; 'Philip Heller'; Patricia Ferrugia;
Steve Morris; Stan Hunterton
**Subject:** RE: Continuance of Hearing Chin LV v. Forum Shops

Gentlemen,

Judge Mahan was not available yesterday afternoon.  With Charlie McCrea out from Monday through the 4th, it
looks as though there is no workable date before year-end that will allow me to participate.  Since this takes me
out, I've asked my partner, Steve Morris, to step in (which you on the plaintiffs' side will come to regret).  His
assistant is Patty Ferrugia, whom I'm copying to get a new date that works for him and JP.

Best wishes for the holidays.

Kris

---

**From:** Fagelbaum & Heller LLP [mailto:office@fhllplaw.com]
**Sent:** Thursday, December 18, 2008 11:08 AM
**To:** cmccrea@lionelsawyer.com
**Cc:** harold@gewerterlaw.com; slionel@lionelsawyer.com; Kris Pickering; JP Hendricks
**Subject:** Continuance of Hearing Chin LV v. Forum Shops

Dear Mr. McCrea:  I an unavailable tomorrow December 19, 2008.  However, I am available on the alternative
dates you proposed for January as well as December 22, 2008 (on which I understand you are unavailable).
Accordingly, by copy of this e-mail, I am requesting that all counsel determine if they are available on January 7
through 9 or 13 through 15, 2009.  Once we all agree on a date, we can clear it with the court and prepare a
stipulation.  Thank you for the courtesy.  J. Fagelbaum.

Zorina S. Sohl
Legal Assistant to
Jerold Fagelbaum, Esq.,and Philip Heller PLC
FAGELBAUM & HELLER LLP
2049 Century Park East, Suite 4250
Los Angeles, CA 90067
Phone: 310.286.7666
Facsimile: 310.286.7086

**EXHIBIT G**