MORRIS PETERSON
Steve Morris, No. 1543
Jean-Paul Hendricks, No. 10079
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Facsimile: (702) 474-9422

Attorneys for Defendants
Caesars Palace Corp. and
Caesars Palace Realty Corp.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PHASE II CHIN, LLC and LOVE & MONEY, LLC, (formerly dba O.P.M.L.V., LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> FORUM SHOPS, LLC, FORUM DEVELOPERS LIMITED PARTNERSHIP, SIMON PROPERTY GROUP LIMITED PARTNERSHIP, SIMON PROPERTY GROUP, INC., CAESARS PALACE CORP., and CAESARS PALACE REALTY CORP., <br><br> Defendants. | CASE NO. 2:08-cv-162-JCM-GWF <br><br> **[CORRECTED] OPPOSITION TO PLAINTIFF PHASE II CHIN, LLC'S MOTION TO DISQUALIFY ATTORNEY STEVE MORRIS AND THE LAW FIRM OF MORRIS PICKERING & PETERSON (NOW MORRIS PETERSON)** |

Defendants Caesars Palace Corp. and Caesars Palace Realty Corp. ("Caesars") hereby oppose plaintiff Phase II Chin, LLC's ("Chinois") motion to disqualify Steve Morris and the law firm of Morris, Pickering & Peterson (now Morris Peterson). This opposition is based on the following memorandum of points and authorities, the Declarations of Steve Morris and Michael Kostrinsky, and the papers and pleadings on file, including Chinois's motion and the exhibits thereto.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

# POINTS AND AUTHORITIES

## I. INTRODUCTION

This motion to disqualify is based on a single and brief telephone call in October 2007 for which there is neither a record nor an estimate of duration by Chinois counsel. The call did not result in an attorney-client relationship of any nature or duration between Steve Morris or his law firm and Chinois or any person or entity associated with this plaintiff. No documents or pleadings were sent to or received by Morris to obtain legal advice or an opinion from him with respect to litigation then pending in Delaware against Chinois by the Forum Shops or contemplated by Chinois against the Forum Shops and/or Simon Property Group in Las Vegas.

During the October telephone call, Morris told Heller that Morris Peterson (then Morris Pickering & Peterson) represented Harrah's, Caesars parent, and could not represent Chinois in a dispute in which Caesar's would be an adverse party. Steve Morris Declaration ¶6, attached hereto ("Morris Decl."). Heller describes this bar to representation of Chinois merely as something that "might present a problem." Phillip Heller Declaration ¶5 ("Heller Decl."). In doing so, he omits the fact that during their single conversation Morris recommended Stan Hunterton as a "very capable and experienced litigator," whom Heller was also considering and who might be able to advise and represent Chinois in Las Vegas. Exhibit A to Motion to Disqualify at 2. There was no discussion or communication with Morris thereafter, as Heller implies, in which "it was . . . decided that in order not to place Mr. Morris or Chinois in the middle of a potential conflict Chinois would select other attorneys (Hunterton & Associates) as local counsel." Heller Declaration ¶5, attached to the Motion to Disqualify as page 24. The decision to consult and "select other attorneys" was made when Heller identified Caesars as a potential defendant in the telephone discussion.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Against these facts Chinois claims Heller and Morris discussed, among other things, not merely litigation but "potential causes of action" in Nevada and "eight causes of action for damages and injunctive relief, possible defendants, litigation strategy, [and] prospects for settlement . . . "!, Heller Decl. at 24, ¶4, without a scintilla of evidence to confirm these conclusory allegations. Not only is it improbable that such a discussion took place, Chinois has not demonstrated that an attorney-client relationship was established in a ten minute telephone call that would confer "former client" status on Chinois under Nevada Model Rule 1.9 sufficient to support disqualification of Morris and his firm.[1]

More to the point, however, Chinois, as a "prospective client" in October 2007, must establish that it disclosed confidential information under Nevada Model Rule 1.18 (Duties to Prospective Client) to qualify it to invoke Model Rule 1.9. Without demonstrating that Phillip Heller disclosed information from Chinois to Morris "that could be significantly harmful to that person in the matter," Model Rule 1.18(c), Rule 1.9 is irrelevant *in this lawsuit*. No such demonstration of disclosure harmful to Chinois is made in the pending motion, nor is Model Rule 1.18 even acknowledged in the motion. This failure of evidence and authority to support disqualification is not overcome by the conclusory

---

[1] The motion to disqualify relies largely on the assumption that in speaking to Morris for several minutes about a contemplated lawsuit in Las Vegas and whether to file it in state or federal court, Heller necessarily disclosed significantly harmful confidential information to Morris about this lawsuit. This assumption distinguishes most of the case authority relied on by Chinois to invoke Model Rule 1.9, which applies to communications with *former clients* and depends on evidence of disqualifying confidences disclosed by the client and/or legal advice given in response thereto. *See, e.g., Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980) (involving Mr. Fagelbaum's prior law firm under several provisions of the Model Code that are not found in the Model Rules applicable here. The confidences in question in *Trone* came from admitted former representation and were shown to be ones that could be used against the firm's *former client*); *Green v. Montgomery County*, 784 F. Supp. 841, 845 (M.D. Ala. 1992) (lawyer consulted by former client heard his story and advised client not to sue and then appeared for the defendant when client went elsewhere for representation. *Evidence* established that Green was an actual former client and his belief that he was consulting his former attorney about a new case).

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

declarations of either Phillip Heller or Jerold Fagelbaum, and for this reason the motion to disqualify should be denied.

## II. RELEVANT FACTS

At some time in or about October 2007, on a date not recorded by either party, Morris Decl. ¶2; Heller Decl. ¶¶3-4, Morris received a telephone call from Heller to discuss a lawsuit he was contemplating against the Forum Shops and the Simon parties on behalf of Chinois, a lessee at the Forum Shops. Morris Decl. ¶2. The content of this single conversation is the issue in this case.

Heller said he represented Chinois in some sort of dispute with Simon, Chinois's lessor, or another tenant or subtenant involving a nightclub. Morris Decl. ¶¶2-3. Morris told Heller that Simon was the operator/ground lessor of the Forum Shops. Morris Decl. ¶2. Morris did not make a record or notes of the call or speak to anyone in his law firm about the call. Morris Decl. ¶10(4). He estimates that it was ten to fifteen minutes in duration. *Id.*

During the course of this brief but cordial telephone conversation, Morris was asked about and discussed his experience as a litigator in Las Vegas and of his familiarity with the local and state federal district courts and their calendars, Morris Decl. ¶4, which he freely discussed. *Id.* Heller told Morris that Chinois had been sued in Delaware by the Forum Shops/Simon and that Chinois had hired Heller to represent this Las Vegas lessee, and he was considering a counter-suit here against Simon for various reasons. Morris Decl. ¶¶3-4; Heller Decl. ¶4.[2]

In the course of their discussion about the "pros and cons of state versus federal court," Heller Decl. ¶4, Heller mentioned Caesars as a possible additional defendant in the action he was considering, and Morris informed him

---

[2] It is incredible that Heller could have discussed "eight causes of action" with Morris in October 2007. Heller Decl. ¶4. That discussion must have occurred with Stan Hunterton, who filed Chinois's 8-count complaint in January 2008, three months after Heller spoke to Morris.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

4

that Caesars/Harrah's were clients of his firm and recommended he speak to another Las Vegas attorney about acting as local counsel, in particular Stan Hunterton and Harold Gewerter. Morris Decl. ¶¶6, 7; Heller Decl. ¶5. The call then concluded. Morris Decl. ¶8.

In January 2008, Chinois sued the defendants in this lawsuit, including Caesars, with Stan Hunterton as local counsel. Caesars requested Kristina Pickering to represent it in the lawsuit, and she removed the case to this Court. Michael Kostrinsky Declaration ¶3 ("Kostrinsky Decl."), attached hereto; Morris Decl. ¶8. Heller thereafter called Morris to complain of the firm's representation of Caesars. Morris Decl. ¶8; Ex. A to Motion to Disqualify. Morris told Heller he had no knowledge of the lawsuit and had very little recollection of their telephone conversation the preceding October and no record of it. Morris Decl. ¶8; Ex. A, at 2-3, email 2/14/08 Morris to Heller.

This was the last contact between Morris and Heller. When Ms. Pickering was elected to the Nevada Supreme Court, she began transferring her pending cases to others in December. Caesars requested that this case be transferred to Morris. Kostrinsky Decl. ¶4. Ms. Pickering so informed Mr. Fagelbaum and Mr. Heller and other counsel in the case on December 19. On December 23, Heller objected to Morris replacing Pickering. Exs. G and C to Motion to Disqualify. This motion to disqualify was filed on January 5, 2009.

Morris Peterson has consistently maintained that no disabling confidential information was received by Morris during his call with Heller in October 2007. Morris Decl. ¶9. The record, such as it is, does not support that in speaking to Heller 15 months ago for 10 to 15 minutes, Morris was acting as Chinois's attorney and delivering legal advice to this litigant through Heller.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

5

## III. STANDARD OF REVIEW FOR THIS MOTION

Federal courts apply state law in determining whether attorney disqualification is warranted. *In-N-Out Burger v. In & Out Tire & Auto, Inc.*, 2008 WL 2937294 at *2 (D. Nev. 2008), citing *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) ("because we apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue."). Exhibit 1 hereto. Therefore Nevada Rules of Professional Conduct ("NRPC") are directly applicable to this case. *See also* Local Rule IA 10-7(a) ("Model Rules of Prof. Conduct, as adopted and amended . . . by the Supreme Court of Nevada" govern lawyers practicing in this federal District Court).

Counsel for Chinois correctly points out that NRPC 1.9(a) says "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Rule 1.9, however, is inapplicable in this case *unless* Chinois was formerly Morris Pickering's client, which it was not. Chinois was merely a "prospective client" when Morris and Heller spoke in October 2007. Thus NRPC 1.18 (Duties to Prospective Clients) governs the application of NRPC 1.9 in respect this proceeding. Rule 1.18(c) requires the party moving for disqualification to demonstrate that the target lawyer (Morris) received "information from the prospective client that could be significantly harmful to that person in the matter."

The receipt by Morris of such disqualifying information is not presumed, nor has the receipt of such information been shown or otherwise established by Phillip Heller's conclusory declaration. Motions to disqualify are not favored: "To overcome the court's disfavor of motions to disqualify, the moving part must proffer compelling evidence that significantly harmful

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

information was disclosed. *ADP, Inc. v. PMJ Enterprises*, 207 WL 836658 at *5 (D.N.J., Hedges, M.J.) (depositions that elicited testimony that a lawyer disclosed "specific background information" in a conversation that the target lawyer "had difficulty recalling," including settlement discussions and claims the lawyer *did* recall, did not establish receipt of "significantly harmful" under Mode Rule 1.18(c). *Id*. at *1, 5). Exhibit 2 hereto.

"In addressing a motion to disqualify, the threshold question is whether there existed an attorney-client relationship that subjects a lawyer to the ethical obligation of preserving confidential communications." *Nelson v. Green Builders*, 823 F.Supp. 1439, 1445 (E.D. Wisc. 1993) *(citing Westinghouse Elec. Corp. v. Kerr McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978)). To determine whether Morris is Chinois's former attorney, it is first necessary to determine if he "formerly represented" Chinois as a consequence of the October call between Morris and Heller. The fact that one lawyer who represents a client speaks to another lawyer about the client's affairs does not make the second lawyer co-counsel with the first.

"The burden of establishing an attorney-client relationship rests on the claimant of the privilege . . . ." *United States v. Gartner*, 474 F.2d 297, 298 (9th Cir. 1973). Here, there is no agreement to establish that Morris was Chinois's attorney for any reason at any time, nor do the declarations of Heller and Fagelbaum say that there was. They do not say, either, that they or Chinois believed Morris was acting as counsel to Chinois when Heller spoke to him.

Courts also consider that "opposing one party's interest in preserving confidential communications is another party's interest in being represented by the counsel of his choice." *Nelson v. Green Builders*, 823 F.Supp. 1439, 1445 (E.D. Wisc. 1993) *citing Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1993). Kostrinsky Decl. ¶5. Moreover, "motions to disqualify counsel . . . should be resolved with extreme caution because they may be used abusively as a litigation tactic, when, for example, a movant is facing a formidable opponent." *Nelson v. Green Builders*, 823

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

F.Supp. 1439, 1444 (E.D. Wisc. 1993) (*citing Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)). "Because of the potential for abuse, disqualification motions should be subjected to "particularly strict scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Co., LTD.*, 760 F.2d 1045, 1050 (9th Cir. 1985); *see ADP, Inc. v. PMJ Enterprises*, 2007 WL836658 (D.N.J.). This means a party's right to counsel of its choice must be balanced against another party's right to disqualify that counsel because of contact with the moving party. *Polyargo Plastics, Inc., v. Cincinnnati Milacron, Inc.*, 903 F. Supp. 253, 258 (D. P.R. 1995)(*citing Kevlik v. Goldstein*, 724 F.2d 844, 850 (1st Cir. 1984)). Disqualification is not accomplished merely by requesting it.

## IV. NO ATTORNEY-CLIENT RELATIONSHIP WAS CREATED BETWEEN MORRIS PETERSON AND CHINIOS

### A. *Morris Did Not Receive Confidential Information from Chinois that Chinois Did Not Publish by Filing This Lawsuit.*

The unspecified information alleged in the Motion to Disqualify does not rise to the level of confidential client information that warrants denying Caesars its counsel of choice. From the description of the information Chinios alleges as confidential, most if not all of it has been disclosed in the complaint that was filed on January 8, 2008. Information that is public cannot be, by definition, confidential, much less can public information – such as facts alleged, claims made in a complaint – be "significantly harmful" to Chinois if also "disclosed" by Morris or any member of Morris Peterson.

#### 1. *No Confidential Client Information Was Disclosed*

In addition to Model Rule 1.18, courts say that " 'confidential information' for the purposes of a disqualification motion is information that if revealed could put the plaintiff at a disadvantage or the other party at an advantage." *Polyargo Plastics, Inc., v. Cincinnati Milacron, Inc.*, 903 F. Supp. 253, 258 (D. P.R. 1995). What could that be here? Chinois has not established that Morris Peterson obtained any confidential fact from Chinois that could put Caesars at an

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

advantage in this lawsuit or disadvantage Chinois. To confirm this conclusion, "the court should . . . undertake a realistic appraisal of whether confidences might have been disclosed in the prior matter that will be harmful to the client in the later matter." *Robbins v. Gillock*, 109 Nev. at 1018, 862 P.2d at 1197 (1993).

When undertaking this appraisal, the Court should consider that "unless there is evidence to the contrary . . . [it] must assume that an attorney will observe his responsibilities to the legal system, as well as to his client." *United States v. Walker River Irrigation, Dist.* 2006 WL 618823 at *5 (D. Nev. 2006, McQuaid, M.J.) (*citing Geders v. United States*, 425 U.S. 80, 93 (1976)(internal quotations omitted). Exhibit 3 hereto. This Court and others also say, that in assessing disqualification for conflict of interests that "a party is presumptively entitled to the counsel of his choice, [and] that right may be overridden only if compelling reasons exist." *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003) (internal quotations omitted); *accord, United States v. Walker River Irrigation Dist.*, 2006 WL 618823 at *3 (D. Nev.) ("disqualification is a 'drastic measure which courts should hesitate to impose except when absolutely necessary' ").

It is not "absolutely necessary" to disqualify Morris Peterson and/or Morris for Morris speaking to Heller in October 2007 for a few minutes about litigation for Chinois in Las Vegas until Morris elicited a potential conflict from Heller. *See* 1 Restatement of the Law Governing Lawyers (Third) § 15, comment c, at 140 (personal disqualification for dealing with a prospective client "occurs only when the subsequent matter presents the opportunity to use information obtained from the former prospective client that would be 'significantly harmful' "). Heller's declaration does not support the "drastic measure" of disqualification.

2. *The Case Law Relied on by Chinois*

Chinois cites *In Re Rossana*, 359 B.R. 697, 706 (D. Nev. 2008) for the proposition that it may be implied under Nevada law that a lawyer received confidential information during a previous representation. However, in *Rossana*,

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

9

the prior representation was actual motion practice and obtaining a judgment in Rossana's favor by the targeted lawyer. These facts of *real* representation by the lawyer in *Rossana* distinguish it from the phone conversation in this case. Moreover, this Court has observed that the burden of proof falls on the movant for disqualification, which means " 'that party must have evidence to buttress the claim that a conflict exists' "). *In-N-Out-Burger v. In & Out Tire & Auto, Inc.*, 2008 WL 2937294 at *4 (D. Nev. Leavitt, M.J.) (citing *Robbins v. Gillock*, 109 Nev. 1015, 1017). Ex. 1 hereto. This means here and in California, where Chinois counsel originated the call to Morris, that "a motion to disqualify should be accompanied by declarations and admissible evidence sufficient to establish the factual predicate on which the motion depends." *U.S. v. Walker River Irrigation District*, *supra*, at *3. This evidence is missing in the pending motion.

Similarly, in *Laryngeal Mask v. Ambu*, 2008 WL 558561 (S.D. Cal. 2008), Exhibit 4 hereto, and *The people ex rel Dept. Of Corps. v. Speedy Oil Change Systems*, 20 Cal. 4th 1135 (1999), cited by plaintiffs for the proposition that even the briefest of client meetings can result in an attorney-client relationship, are inapposite here. First, these cases do not reflect application or consideration of Model Rule 1.18 that is an integral part of the Nevada Rules that address attorney-client relationships in this Nevada federal court. More importantly, however, these two California cases involved an extended face-to-face meeting and a *series* of telephone calls concerning the subject lawsuits, which are absent here.

The matters alleged to have been disclosed in *Speedy Oil* included "the background of the case, Mobil's theories in the case, Mobil's discovery strategy and an analysis of the procedural and substantive issues which had arisen to date, and [were] likely to arise in the future the state of the case, experts, and consultants, and specific factual issues." This is significantly more information than Chinois alleges was disclosed to Morris in one telephone call of short duration. Furthermore, Chinois has not met its burden to show that confidential

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

10

information was in fact passed between Heller and Morris. Absent evidence to support the conclusory and self-serving affidavits of Heller and Faglebaum, *see In re Marriage of Zimmerman*, 16 Cal. App. 4th 556, 565 (1993), the instant motion to disqualify must be denied. *See Robbins v. Gillock*, 109 Nev. at 1017 ("party must have evidence to buttress the claim that a conflict exists"); *Colyer v. Smith*, 50 F. Supp. 2d 966, 967 (C.D. Cal. 1999).

    3.    *Even If the Court Believes the Information Conferred by Heller Was Confidential, it Has Now Been Publicly Disclosed and Is No Longer Privileged*

Even if Heller discussed the facts of this case and his claims for relief, these facts were made public in the complaint he and Stan Hunterton filed on January 8, 2008. A similar situation was before the court in *Leathem v. City of Laprote, Indiana*, 2008 WL 1804150 (N.D. Ind. 2008), attached as Exhibit 5 hereto, where plaintiff Leathem alleged that in telephone conversation with attorney Friedman he disclosed numerous facts about his cause of action. Representation did not result. Thereafter, Leathem filed a motion to disqualify attorney Friedman from representing one of the defendants sued by Leathem through another lawyer. In denying Laethem's motion to disqualify attorney Friedman the court said the "facts of this case have been disclosed in Leathem's complaint and various other filings by Leathem. Leathem's recitation of facts cannot reasonably be construed as confidential information." *Id.* at *2.

The same is true here. We are not dealing with "confidential" facts that Morris could disclose that would be harmful to Chinois. These "facts," even if disclosed by Morris, would not be significantly harmful to Chinois because they are not "confidential facts." *ADP, Inc. v. PMJ Enterprises*, 2007 WL 836658 at *5 (D.N.J.) (discussion of plaintiff's business, the history of its dispute with the defendant, and the factual basis of anticipated counterclaim is not significantly harmful information under Mode Rule 1.18). Ex. 2 hereto.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

The opinion in *Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc.*, 903 F.Supp 253 (D. P.R. 1995), is also instructive here: at the hearing on plaintiffs' motion to disqualify counsel based on a single 10-minute phone conversation, the court asked the plaintiffs what information disclosed to the targeted attorney would actually prejudice them in the present case. The plaintiff testified, "that the confidential information that would prejudice plaintiffs entailed the disclosure that there was an engineer who had been monitoring the problem, the identity of the father and son who own Polyargo, the reasons for the defects in the machinery, the theories for damages and the financial situation of Polyargo." *Id.* at 255. In denying Polyagro's motion to disqualify, the court relied on the fact that "most of the information was revealed in the complaint prior to [the attorney's] representation of defendants in this case." *Id.* at 258. The same is true here. It would be unfair and contrary to sound judicial policy to grant the pending motion to disqualify Morris and his firm for allegations made in Chinois complaint.

**B.     It Was And Is Not Reasonable for Chinois to Believe Morris Was Its Attorney for Ten Minutes in October 2007.**

An attorney-client relationship cannot be established absent facts to support a reasonable belief that the targeted lawyer was acting as the moving party's attorney: "Before a duty arises on the party [sic] of an attorney based upon implied or inferred attorney-client relationship or upon foreseeable reliance by one other than the actual client, more is required than an individual's subjective unspoken belief that the attorney is his attorney." 2001 WL 1699685 (Bkrtcy. M.D.N.C. May 30, 2001) (*quoting Sheinkopf v. Stone*, 927 F.2d 1259, 1265 (1st Cir. 1991))(internal quotations omitted). "The test for determining the existence of [an attorney-client] relationship is a subjective one and "hinges on the client's belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice." *Green v. Montgomery County Alabama*, 784 F.Supp. 841, 845-46 (M.D. Ala. 1992)(*citing Westinghouse Electric Corp.*, 580 F.2d at 1319).

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

This subjective belief must, however, be reasonable. If the evidence reflects the prospective client should have known that the relationship with the attorney had not developed to a point at which it could be deemed representation, there is no attorney-client relationship, notwithstanding the prospective client's subjective belief. The evidence here of an attorney-client relationship between Morris and Chinois is not equivocal – it is non-existent.

### 1. It Was Not Reasonable for Heller, a Seasoned Attorney, to Believe That an Attorney-Client Relationship Had Been Created, and He Does Not Say Otherwise in His Declaration.

Nearly all the cases cited by Chinios to support the allegation that an attorney-client relationship was established with Morris are based on the fact that a lay person, without experience with the law or knowledge of the Rules of Professional Conduct to which lawyers are subject, provided information to an attorney with the expectation the attorney would become the lay person's attorney. *Lovell v. Winchester*, 941 S.W.2d 466 (Ky. 1997) (lay land purchasers sought to disqualify opposing counsel based on prior consultation); *Bays v. Theron*, 418 Mass. 685 (1994)(*pro se* condominium owners motion to disqualify counsel previously consulted about the case); *Burton v. Burton*, 139 A.D.2d 554 (1988) (divorce action appealing grant of motion to disqualify wife's attorney); *Kearns v. Fred Lavery Porsche Audi Co.*, 745 F.2d 600 (1985) (upholding disqualification of a lay patent holder's attorney based on a prior consultation). These cases are simply inapposite here. Heller was an experienced counsel for Chinois, and he knew when he spoke to Morris that a conflict with an existing client of Morris would prevent establishing an attorney-client relationship with him. Heller does not say otherwise in his declaration.

*Guerrero v. Bluebeard's Castle Inc.*, 982 F.Supp. 343 (D. V.I. 1997), is in point for this discussion. There, the plaintiff sought to disqualify defendant's counsel based on a telephone conversation between plaintiff's counsel and defendant's counsel before defense counsel was retained by defendants. During

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

this call plaintiff's counsel sought assistance from defendant's counsel with plaintiff's case. Plaintiff argued that an attorney-client relationship was formed during that call, as Chinois contends here. In finding that no confidential information had passed between the participants in the call, the court said "the participants to this conversation were both sophisticated counsel well trained in the law. ...[This was not] an untrained layperson approaching a member of the bar for help in time of need." *Id.* at 347. Clearly in the instant case, both parties were aware of their obligations under the Nevada Model Rules. Chinois, through Heller, was informed that there was a disabling conflict once he disclosed Caesars as a potential party to the contemplated lawsuit. When the conversation concluded between Heller and Morris, both Heller and Fagelbaum treated the conflict as a bar to further discussions with Morris. It is disingenuous and unprofessional for them to now suggest that they turned to other Las Vegas lawyers for assistance "in an effort not to place Mr. Morris or Chinois in the middle of a potential conflict. . . ." Fagelbaum Decl. ¶4, Motion to Disqualify at 27.

The only case that Chinois tenders to the court that involves attorney-to-attorney contact, *The People ex rel. Dept. of Corps. v. Speedee Oil Change Sys., Inc.*, 20 Cal. 4th 1135 (1999) is altogether dissimilar to this case because the attorneys in *Speedee Oil* engaged in several telephone conversations to discuss the representation and then met in person for an extended two hour face-to-face discussion of the case. At that meeting, the attorneys discussed "the background of the case, Mobile's theories in the case, Mobile's discovery strategy and an analysis of the procedural and substantive issues which had arisen to date and [were] likely to arise in the future, the state of the case, experts, and consultants, and specific factual issues." *Id.* at 1141.

The telephone call of several minutes between Heller and Morris does not invoke *Speedee Oil*. The discussion here between two experienced attorneys

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

14

did not go into "discovery strategy" the "state of the case," "experts, consultants, and specific factual issues."

   2. *Chinois Was Put on Notice That No Attorney-Client Relationship Could Be Established with Morris.*

Chinois acknowledges that Morris immediately indicated a potential conflict in response to Heller mentioning Caesars. Heller Aff. ¶5. NRPC 1.18(f) allows an attorney "to condition conversations with a prospective client on the person's informed consent that no information disclosed during the consultation will prohibit the lawyer form representing a different client in the matter." Under to NRPC 1.0(e), informed consent is defined as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to a proposed course of conduct." Once Morris advised Heller that a conflict would be presented by including Caesars as a party, any information divulged thereafter by Heller makes it unreasonable for Heller or Chinois to believe that Morris Peterson was speaking as Chinois's lawyer.

V. **CHINOIS'S MOTION TO DISQUALIFY IS TACTICALLY MOTIVATED**

This Court has previously observed that "Tactical considerations often motivate such motions," *In-n-Out Burger v. In & Out Tire & Auto*, 2008 WL 2937294 at *3 (D. Nev. July 24, 2008), and went on to say, "courts must prevent parties from misusing motions for disqualification as instruments of harassment or delay. Courts therefore approach the issue of whether to disqualify opposing counsel as a drastic measure which courts should hesitate to impose except when absolutely necessary." *Id.* (Internal quotations and cites omitted.) When the spare facts of this case are evaluated, they simply do not support Chinois's allegations that Morris was its former attorney and received "significantly harmful information during [his] . . . one telephone conversation with [Heller]." *ADP v. PMJ Enterprises*, *supra*. The facts suggest that this motion is tactically motivated.

Chinois alleges that Heller called Morris and disclosed to him "the strategy behind the litigation, venue, possible defendants (including Caesars) and the selection and assessment of co-counsel to represent Chinois," Motion at 5, without first telling him that Caesars, which is not a lessor to the plaintiff or the developer and operator of the Forum Shops, would be a defendant in the lawsuit Heller was considering in retaliation for Simon's suit against Chinois in Delaware. An experienced lawyer, like Heller, could be expected to say who he was contemplating suing in addition to Simon in Las Vegas before discussing the proposed lawsuit with Las Vegas counsel. But he did not disclose that fact at the same time he disclosed Simon as his proposed defendant. Motion at 10.

Chinois also claims that Morris was given an overview of the existing Delaware litigation and the anticipated Las Vegas litigation including, "the addition of new parties and potential claims, litigation strategy and prospects for settlement, and Morris provided legal advice on these subjects as well as on other topics including current and possible counsel and judges." Motion at 13. What Heller does not say is that in disclosing "possible defendants" he disclosed Caesars. He *does* say that *after* he disclosed Caesars, "Morris revealed that his firm had represented Caesars." Heller Decl. ¶5; Motion at 5. It is preposterous and altogether disingenuous for Heller to suggest that Morris continued to provide "legal and other advice," against his own client, once Caesars had been disclosed, Heller Decl. ¶4, Motion at 24. It is also contradicted by Heller's response to Morris's 2/14/08 email in which Heller does not contest Morris's statement that "we would not represent tenants at the Forum Shops because of the relationship between the Forum and Caesars." Ex. A to Motion at 2 (page 56 of Motion papers). And Heller agreed with Morris's statement of referral to Stan Hunterton: "you recall correctly making some very favorable comments to me about Stan (all of which have proven to be true)." *Id.*

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

These facts suggest that Chinois's assertion that Morris should have invoked "conflicts avoidance procedures" is misleading at best and a deliberate distortion at worst. Mr. Heller, an experienced attorney, knew Morris Peterson could not be involved in his lawsuit with Caesars as a party. If he continued his conversation with Morris after that disclosure and received legal advice, which Morris denies, it could only have been for the purpose of providing support for this motion. This is an inappropriate basis on which to seek Morris's disqualification.

## V. CONCLUSION

Chinois has not met its burden to establish that confidential information was disclosed to Morris in the brief telephone conversation initiated by Heller in October 2007. Even if the information – whatever it was – could be considered confidential, Chinois has not established that the information was not made public in the complaint if filed herein in January 2008. Nor has Chinois established that Nevada Model Rule of Professional Conduct 1.18(c) should not apply to and bar this motion because the alleged information in question, which Morris does not have or know, has not been shown to be information "that could be significantly harmful" to Chinois if disclosed in this lawsuit.

For these reasons the motion to disqualify Steve Morris and his law firm should be denied.

MORRIS PETERSON

By: /s/ Steve Morris
Steve Morris, No. 1543
Jean-Paul Hendricks, No. 10079
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101

Attorneys for Defendants
Caesars Palace Corp. and
Caesars Palace Realty Corp.

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of Morris Peterson, and that the following documents were served via electronic service:

**[CORRECTED] OPPOSITION TO PLAINTIFF PHASE II CHIN, LLC'S MOTION TO DISQUALIFY ATTORNEY STEVE MORRIS AND THE LAW FIRM OF MORRIS PICKERING & PETERSON (NOW MORRIS PETERSON)**

TO:

C. Stanley Hunterton
Pamela R. Lawson
HUNTERTON & ASSOCIATES
333 South Sixth Street
Las Vegas, Nevada 89101

Philip Heller
FAGELBAUM & HELLER, LLP
2049 Century Park East, Suite 4250
Los Angeles, CA 90067

Attorneys for Plaintiff
Phase II Chin, LLC

Samuel S. Lionel
LIONEL SAWYER & COLLINS
300 S. Fourth St., #1700
Las Vegas, Nevada 89101

Attorneys for Defendants
Forum Shops, LLC, Forum Developers Limited Partnership, Simon Property Group Limited Partnership, and Simon Property Group, Inc.

Harold Gewerter
GEWERTER LAW OFFICES
5440 W. Sahara Ave. Third Floor
Las Vegas, Nevada 89146

Attorneys for Plaintiff
Love & Money, LLC

DATED this 27th day of January, 2009.

By: /s/ Patrin Furnish

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

18