Philip Heller, PLC (CA State Bar No. 113938)
ph@philipheller.com
Jerold Fagelbaum, Esq. (CA State Bar No. 92584)
office@fhllplaw.com
**FAGELBAUM & HELLER LLP**
2049 Century Park East, Suite 4250
Los Angeles, CA 90067
Telephone: 310.286.7666
Facsimile: 310.286.7086


C. STANLEY HUNTERTON, ESQ
Nevada Bar No. 5044
**HUNTERTON & ASSOCIATES**
333 S. Sixth Street
Las Vegas, NV 89101
Telephone: 702.388.0098
Facsimile: 702.388.0361

Attorneys for Plaintiff Phase II Chin, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PHASE II CHIN, LLC and LOVE & MONEY LLC (formerly dba O.P.M.L.V., LLC),<br><br>    Plaintiffs,<br><br>and<br><br>FORUM SHOPS, LLC, FORUM DEVELOPERS LIMITED PARTNERSHIP, SIMON PROPERTY GROUP LIMITED PARTNERSHIP, SIMON PROPERTY GROUP, INC., CAESARS PALACE CORP., and CAESARS PALACE REALTY CORP.<br><br>    Defendants | Case No. 2:08-cv-00162-JCM-GWF<br><br>**PLAINTIFF PHASE II CHIN LLC'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER DENYING PLAINTFF'S MOTION TO DISQUALTIFY COUNSEL FOR THE CAESARS DEFENDANTS ATTORNEY STEVE MORRIS AND THE LAW FIRM OF MORRIS PETERSON; AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**DATE: To Be Determined**<br>**TIME:  To Be Determined**<br>**CTR: Hon. James C. Mahan**<br><br>**[Request for Oral Argument]** |

1

Dockets.Justia.com

**PLEASE TAKE NOTICE THAT,** pursuant to 28 U.S.C. § 636(b)(1)(A) and Nevada District Court Local Rule 1B 3-1(a), Plaintiff Phase II Chin LLC (Chinois) hereby objects to the Honorable George Foley, Jr. United States Magistrate Judge's Order, dated February 19, 2009, denying Plaintiff Chinois' Motion To Disqualify Attorney Steve Morris and the Law Firm of Morris Peterson[1].

As detailed in Chinois accompanying Memorandum of Points and Authorities, the Magistrate Judge adopted a standard which was clearly erroneous and contrary to law when he required Chinois to disclose the contents of confidential information communicated to Mr. Morris in order to establish that confidential information had been disclosed to him. In addition, the Magistrate Judge ignored relevant case authority which set forth the appropriate standard requiring the Court to consider the context pursuant to which the communications were made and the likelihood confidences were disclosed. Finally, the Magistrate Judge failed to address the appearance of impropriety which resulted from the abandonment of ethical principles when, for the sake of expediency, Mr. Morris who previously had removed himself from this case, substituted in for his wife and partner upon her election to the Bench.

---

[1] Plaintiff requests that the Court hear and resolve this Disqualification Motion prior to hearing Defendants' Motions to Dismiss currently scheduled for March 12, 2009. *See Fierro v. Gallucci* 2007 U. S. Dist. LEXIS 89296*22 (E.D. N. Y. 2007):

> Defendants argue that the motion to disqualify should be held in abeyance until after the defendants' motion to dismiss is decided. However, the Court believes such an approach under the circumstances presented here is ill-advised. Although that motion to dismiss is fully briefed, the Court is going to hear oral argument on that motion and believes that this disqualification issue should be resolved prior to having oral argument and addressing the motion to dismiss.

Upon review, Plaintiff request an opportunity for oral argument due to the importance of the relief requested and seeks a ruling from this Court reversing the Magistrate Judge's Order and granting Plaintiff's Motion to Disqualify.

Dated:  February 24, 2009

**FAGELBAUM & HELLER LLP**

By: _____
Jerold Fagelbaum
2049 Century Park East, Suite 4250
Los Angeles, CA 90067-3254

and

Dated: February 24, 2009

**HUNTERTON & ASSOCIATES**

By: _____
C. Stanley Hunterton, Esq.
333 S. Sixth Street
Las Vegas, NV 89101

Attorneys for Phase II Chin, LLC

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES.........................................................1

I.      INTRODUCTION .................................................................................................1

II.     THE RECORD BELOW........................................................................................2

III.    THE STANDARD OF REVIEW............................................................................2

IV.     HOW THE MAGISTRATE JUDGE FRAMED THE ISSUE BELOW ...................3

V.      IN ESTABLISHING CONFIDENCES WERE COMMUNICATED TO MR.
        MORRIS, THE COURT SHOULD NOT, AND CANNOT, REQUIRE THAT THE
        CONFIDENCES SOUGHT TO BE PROTECTED BE REVEALED........................6

        A.      The Magistrate Judge Applied The Wrong Standard.........................................6

        B.      The Cases Relied Upon By The Magistrate Judge Are Distinguishable...........8

        C.      Based Upon All The Evidence, It Is Clear That The Magistrate   Judge's
                Order Was Clearly Erroneous And Contrary to Law .......................................9

                1.  The Magistrate Judge Overlooked The Key Distinction Between The
                    Respective  Authorities Cited By Caesars And Chinois ......................9

                2.  The Magistrate Judge Was Mistaken In Concluding That  Mr. Morris'
                    Own Conduct Did Not Belie His Argument That No Implied Attorney
                    Client Relationship Was Formed.................................................10

VI.     THE MAGISTRATE JUDGE IGNORED THE APPEARANCE OF
        IMPROPRIETY WHICH RESULTS FROM THE ABANDONMENT OF
        EITHICAL PRINCIPLES FOR THE SAKE OF EXPEDIENCY ...........................13

VII.    CONCLUSION ...................................................................................................17

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*ADP Inc. v. PMJ Enterprises, LLC*
  2007 WL 836658 (D.N.J. 2007) ................................................................. 9

*Dubin v. E.F. Hutton Group Inc.,*
  125 F.R.D. 372, 373-374 (S.D.N.Y.1989)..................................................... 2

*Fierro v. Gallucci,*
  2007 U. S. Dist. LEXIS 892 96 (E.D. N.Y. 2007) ........................... 2,8,10,13

*In-n-Out Burger v. In & Out Tire Auto, Inc.*
  2008 U.S. Dist. LEXIS 63883*7 (D. Nev. 2008) ......................................... 7

*Polyagro Plastics Inc. v. Cincinnati Mailacron Inc.*
  903 F. Supp. 253 (D.P.R. 1995) ................................................................ 8

*Smith v. Smith*
  154 F.R.D. 661, 665 (N.D. Tex 1994)......................................................... 3

*The Laryngeal Mask Company Ltd. v. Ambus A/S*
  2008 U.S.Dist. LEXIS 15320 *18-19 (S.D.Ca.2008)......................... 4,6,7,10

*United States v. United States Gypsum Co.*
  333 U.S. 364,395, 68 S. Ct. 525, 92 L.Ed. 746 (1948)................................. 2

**STATE CASES**

*Bays v. Therean*
  418 Mass. 685, 693, 639 N.E. 2d 720, 725 (1994)....................................... 8

*Chemcraft Holdings Corp. v. Shayban* 2006
  2006 NCBC 13; 2006 NCBC LEXIS 15 ** 11- ** 13 (N.C. Super. Ct. 2006) ...... 17

*Doucette v. Dlugolecki*
  2006 Conn. Super. LEXIS 2825 (Super. Ct. Conn. New Britain Jud, Dist.,2006)................ 10

*Lovelll v. Winchester,*
  941 S.W. 2d 466, 468 (Ky. Sup. Ct. 1997)........................................... 15, 16

*Municipal Reserve Services, Inc. v. Xspand, Inc.*
  537 F. Supp. 2d 740, 743 (M.D. Pa. 2008)................................................. 2

**People ex rel Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.**

(1999) 20 Cal.4th 1135...................................................................................10

*Robbins v. Gillock*

(1993) 109 Nev. 1015, 1118 ..........................................................................7

**FEDERAL STATUTES**

28 U.S.C.§ 636(B)(1)(A)...................................................................................2

**RULES**

Nevada District Court Local Rule 1B 3-1(a) .................................................2

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Phase II Chin, LLC ("Chinois") submits this Memorandum of Points and Authorities in support of its Objections to the Honorable George Foley, Jr. United States Magistrate/Judge's Order, dated February 19, 2009, denying Chinois' Motion to Disqualify attorney Steve Morris and his law firm Morris Peterson from further participation in his case on behalf of Defendants Caesars Palace Corp., and Caesars Palace Realty Corp. ("Caesars").

While Chinois has identified below several objections to the Magistrate Judge's Order, at root is the Magistrate Judge's error in applying an erroneous standard and setting the bar too high. In essence, the Magistrate Judge concluded that in order to establish that confidences were disclosed to Mr. Morris that could be significantly harmful to Chinois, the substance of those confidences had to be revealed. However, that is not the test and other courts have held that disclosure of confidences to protect confidences is neither necessary, nor appropriate. Instead, context is king, and as detailed herein, Chinois has established that an implied attorney client relationship was created between Mr. Morris and Chinois, and at a minimum, confidences were likely to have been disclosed which would be harmful to Chinois in this matter if Mr. Morris continued to represent the Caesars Defendants in this case.

Also, in addition to violations of the Rules of Professional Conduct, the appearance of impropriety sparked by Caesars' counsels' conduct implicates the Court's duty to maintain the public confidence in the integrity of the bar and further justifies disqualification.

For these reasons, and for all the other reasons set forth below, the Magistrate Judge's Order should be reversed and Chinois' Motion to Disqualify should be granted in its entirety.

## II.    THE RECORD BELOW

The record below attached hereto for the Court's convenience and incorporated by reference herein consists of Chinois' Motion to Disqualify supported by a Memorandum of Points and Authorities and the declarations of Philip Heller and Jerold Fagelbaum (Ex. A); Caesars' Opposition Memorandum and declarations of Steve Morris and Michael Kostrinsky (Ex. B), and Chinois' Reply Memorandum and Supplemented declaration of Philip Heller (Ex. C). In addition, there is a transcript of the proceedings before the Magistrate Judge on February 12, 2009 (Ex. D)[2] and the Magistrate Judge's Order, dated February 19, 2009 (Ex. E).

## III.    THE STANDARD OF REVIEW

A motion to disqualify is a non-dispositive motion:

> A district court may overturn a magistrate judge's order on a non-dispositive issue where it has been shown that the magistrate's order is clearly erroneous or contrary to law. 28 U.S.C.§636(b)(1)(A). *See also*, Fed. R. Civ. P. 72; *Peretz v. United States*, 501 U.S. 923, 944, 111 S. Ct. 2661, 115 L. Ed 2d 808 (1991); *NLRB v. Frazer* , 966 F.2d 812, 816 (3rd Cir. 1992)

*Municipal Reserve Services, Inc. v. Xspand, Inc.* 537 F. Supp. 2d 740, 743 (M.D. Pa. 2008). *See also*, Nevada District Court, Local Rule 1B 3-1(a).

A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.* 333 U.S. 364,395, 68 S. Ct. 525, 92 L.Ed. 746 (1948) An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure. *Dubin v. E.F. Hutton Group Inc.,* 125 F.R.D. 372, 373-374 (S.D.N.Y.1989) To that end, a magistrate's legal conclusion is freely reviewable

---

[2] All references in the Transcript to "Chin Hua" should read "Chinois".

by the district court applying a *de novo* standard. ***Smith v. Smith*** 154 F.R.D. 661, 665 (N.D. Tex 1994).

## IV. HOW THE MAGISTRATE JUDGE FRAMED THE ISSUE BELOW

The Magistrate Judge correctly recognized the differences between Nevada Rules of Professional Conduct 1.9 (re duties to former clients) and 1.18 (duties to prospective clients) and framed the key issue to be determined as follows:

> There is no question that Mr. Heller communicated with Mr. Morris about representing Chinois in the lawsuit it was planning to file in Nevada and that Mr. Morris's partner, Ms. Pickering, and their law firm were subsequently retained to represent the Defendant Caesars in that action. The disputed issue is whether an implied attorney-client relationship was formed during the telephone conversation between Mr. Morris and Mr. Heller, or alternatively, whether Mr. Morris received confidential information from Mr. Heller that disqualifies him from representing Defendant Caesars in this action.

Order at 8 (Ex. E)

In order to establish that an implied attorney client relationship was formed or that confidential information was disclosed to Mr. Morris, the Magistrate Judge concluded that disclosure of confidential information must be proved rather than assumed:

> In contrast to cases in which there was an explicit attorney-client relationship which gives rise to a presumption that confidences were divulged, the question of whether confidential information passed between the prospective client and the attorney is crucial in determining whether an implied attorney client relationship existed, and therefore must be proved rather than assumed.

Order at 10 (Ex. E)

Where the Magistrate Judge erred, however, was by requiring the actual disclosure of the communicated confidences in order to establish there were confidences disclosed. Nevertheless, authority within this Circuit provides that it

is not necessary (nor proper) to disclose the actual content of confidences, but rather, it is sufficient to disclose the nature of the relevant information or the general topics discussed. *The Laryngeal Mask Company Ltd. v. Ambus A/S* 2008 U.S.Dist. LEXIS 15320 *18-*19 (S.D.Ca.2008)

To establish that confidential information had been communicated to Mr. Morris by Mr. Heller, Chinois submitted the Declaration of Mr. Heller which stated in part that:

> After introducing myself to Mr. Morris, I explained the purpose of my call. I disclosed to Mr. Morris that I represented Chinois in an action it had with Forum Shops LLC pending in Delaware State Court. Mr. Morris did not invoke any conflict avoidance measures (such as asking me to limit my discussion to information necessary to conduct a conflict check). Accordingly, I revealed to him Chinois' confidential plan to file an action of its own in Las Vegas, Nevada. We discussed the pros and cons of filing in state versus federal court in Nevada, potential causes of action (the action in Delaware was limited to Declaratory Relief, the proposed action in Nevada would contain eight causes of action for damages and injunctive relief), possible defendants, litigation strategy, prospects for settlement, other counsel expected to be included in the case and potential state and federal judges. In response, Mr. Morris provided legal and other advice on all these subjects and his personal and professional views on counsel and judges.

Heller Decl. at ¶ 4 (Ex. A at 23-24)

In response Mr. Morris conceded that confidential information was disclosed to him, but contends that it all became public when the Complaint was filed. However, due to Mr. Morris' selective and demonstrably faulty memory[3], at

---

[3] Mr. Morris contends his prior consultation with Mr. Heller occurred in or about October 2007. (Ex. B, Morris Decl. ¶2) In his e-mail to Mr. Heller on February 14, 2008 ( Ex. A, to Heller Decl.) Mr. Morris states "I am unable to recall anything from our conversation several weeks or months ago . . .") Mr.

4

most, all he did was establish that *some* of the confidential information imparted to him was subsequently disclosed in the Complaint. Although Mr. Morris could not recall the rest, Mr. Heller did and therefore so testified uncontested. While the facts that the Caesars Defendants were added as defendants and eight causes of action were pled, but disclosed upon filing, the strategy behind the adding of these defendants and the selection of specific causes of action and the effect it would have upon the possible settlement of this case were not. Similarly, legal advice concerning this case was provided by Mr. Morris regarding the parties, proposed parties, venue, claims, and selection and assessment of counsel and judges which was not disclosed by the filing of the Complaint:

> Paragraph 9: While Mr. Morris contends he "cannot recall" any other confidences shared by me with him during the telephone call, he does not say there were none. In fact, there were others which I clearly remember. Without actually disclosing the confidences Chinois is now trying to protect, these confidences included, among other things, my thoughts on litigation strategy and settlement especially in light of Caesars potentially being added as a defendant, Mr. Morris views on these subjects, and legal advice from Mr. Morris regarding venue, possible claims, counsel and judges.

Suppl. Heller Decl. at ¶ 3 (Ex. C at 18.)

At this point Mr. Heller could go no further without revealing the confidences Chinois is seeking to maintain. However, as the following authorities attest Mr. Heller had gone far enough and established that confidences had been

---

Heller testified the call "occurred later than October 2007, shortly before local counsel Stan Hunterton was consulted in December 2007 and subsequently retained". (Ex. C at 16 Supp. Heller Decl. at ¶3). At the hearing before the Magistrate Judge, counsel for Chinois reported that a telephone bill had been located pinning down the date of the Morris/Heller call to December 26, 2007. (Ex. D, Transcript at 28)

disclosed to Mr. Morris and an implied-in-fact attorney/client relationship had been created.

## V. IN ESTABLISHING CONFIDENCES WERE COMMUNICATED TO MR. MORRIS, THE COURT SHOULD NOT, AND CANNOT, REQUIRE THAT THE CONFIDENCES SOUGHT TO BE PROTECTED BE REVEALED

### A. The Magistrate Judge Applied The Wrong Standard

In resolving disputed issues of fact in disqualification cases, courts have held that the client is not required to reveal the details of the privileged communications they seek to protect and that doubts are resolved in favor of disqualification:

> . . . Plaintiffs are not required to remind Defendants of specific statements that constitute confidences in order to meet their burden of proof on the disqualification motion. *It is sufficient for the moving party to substantiate its claim by describing the nature of the relevant information or the general topics of discussion.*
>
> * * *
>
> *Moreover, the Court will not require the moving party to disclose the actual content of those confidences to outside counsel or attorneys behind an ethical screen.* Though the Finnegan attorney's do not presently recall the details of the confidences, courts have wisely avoided even the "prospect of a swearing contest" between the client and attorney. (Internal citations omitted.) (Emphasis added.)

*Laryngeal Mask, supra,* at*18-*19.

Instead, context and the likelihood that confidences were disclosed are determinative:

> In proving that a prior representation is substantially related to present litigation, however, the moving party is not required to divulge the confidences actually communicated, nor should a court inquire into whether an attorney actually acquired confidential information in the prior representation

6

which is related to the current representation.

*   *   *

> The court should instead undertake a realistic appraisal of
> whether confidences might have been disclosed in the prior
> matter that will be harmful to the client in the later matter.
> (Internal citations omitted.)

*Robbins v. Gillock* (1993) 109 Nev. 1015, 1118. *See also*, ***Laryngeal Mask,***
*supra,* at *16 ("although the participants offer credible but divergent recollections
of the contents of the . . . meeting, the context suggest that an attorney-client
relationship may have arisen on these facts for the purposes of a disqualification
motion".) (Emphasis added.) Moreover, as stated in ***In-n-Out Burger v. In & Out***
***Tire Auto, Inc.*** 2008 U.S. Dist. LEXIS 63883*7 (D. Nev. 2008) "close cases are
resolved in favor of disqualification".

Notwithstanding these principles, the Magistrate/Judge concluded that
confidential information was not communicated because Chinois had not provided
sufficient detail about the confidential disclosures that were made:

> Other than generalities, Plaintiff has not indicated what if any
> additional information was conveyed about the eight causes of
> action that would be harmful to Plaintiff if Mr. Morris
> represented Defendant Caesars. *See Polyagro and ADP, supra.*
> Plaintiff has also failed to show that specific confidential
> information about its settlement position was disclosed to Mr.
> Morris that could be harmful to its position in this case.

Order at 14 (Ex. E)

However, the Magistrate/Judge could not properly ask Chinois to disclose
what it seeks to protect. Instead, the Magistrate should have examined the context
in which the statements were made and whether it was likely that within such a
context confidences would likely have been disclosed. A party moving to
disqualify opposing counsel is not required to prove that [opposing counsel] had

access to confidential information while representing the [moving party] but only that he was likely to have had such access." *Fierro v. Gallucci* , *supra*, at *20, *See also*, *Bays v. Therean* 418 Mass. 685, 693, 639 N.E. 2d 720, 725 (1994):

> At the ... evidentiary hearing, *the judge inquired as to the nature, topics, and extent of the communications between Lane and Errico, but instructed Lane not to discuss specifics so as not to compromise any privilege he might have.* Our review of the hearing transcript indicates that, given the description of the communications, the court reasonably could infer that confidential information was transmitted and that in camera hearings concerning the details of Lane and Errico's unrecorded oral communications would not have been helpful. (Emphasis added.)

### B. The Cases Relied Upon By The Magistrate Judge Are Distinguishable

Here we had counsel for Chinois contacting Mr. Morris to determine if he would agree to act as local counsel. Mr. Heller drove right to the point and provided Mr. Morris with an insider's perspective on Chinois' litigation and settlement strategy. That was, and remains, confidential. Moreover, the fact that other information, such as the specific eight causes of action in the complaint and the naming of Caesars as a defendant, was subsequently disclosed in the complaint only enhances the likelihood that confidential information was communicated to Mr. Morris. From the information published in the complaint (which undisputedly was discussed with Mr. Morris) it is clear that the subject matter of the telephone call involved litigation strategy. This contrasts with *Polyagro Plastics Inc. v. Cincinnati Mailacron Inc.* 903 F. Supp. 253 (D.P.R. 1995) cited by the Magistrate. In *Polyagro*, *all* the information deemed confidential was subsequently disclosed in the complaint or was otherwise known to defendant. Here, Chinois submitted evidence that, in addition to information subsequently disclosed, other confidential information communicated to Mr. Morris was not.

Similarly, the Magistrate concludes that the telephone conversation involved "fairly general matters" such as local courts, judges and other attorneys who might serve as local counsel. Order at 13. However, to the extent the matters are "general", it is because Chinois could not provide details without compromising their confidentiality. It would be different if Chinois contended the "general" topics were all that was discussed. However, as Mr. Heller's Declaration establish those "general" topics only provided the framework for more substantial confidences regarding litigation and settlement strategy. The topics Mr. Morris concedes were discussed are sufficient to establish that the telephone call was substantive and that it was likely that confidences were disclosed.

Moreover, Chinois states that in addition to confidences being disclosed, legal advice was given by Mr. Morris. The Magistrate Judge avoids any discussion of the significance of legal advice having been given and how it relates to the formation of an implied attorney-client relationship. Cases relied on by the Magistrate such as *ADP Inc. v. PMJ Enterprises, LLC* 2007 WL 836658 (D.N.J. 2007) do not contend that legal advice was given and therefore are not dispositive here.

### C.    Based Upon All The Evidence, It Is Clear That The Magistrate Judge's Order Was Clearly Erroneous And Contrary to Law

#### 1.    The Magistrate Judge Overlooked The Key Distinction Between The Respective Authorities Cited By Caesars And Chinois

In disputed fact situations, the Magistrate Judge indicated he had to rely on other factors to determine whether confidences were communicated. For example, the Magistrate places undue emphasis on the fact that Mr. Morris cannot recall much of the details provided by Mr. Heller. He views it as a tie. It is not, nor could it be, or every disqualification motion would be defeated by the attorney receiving the confidential information contending: "I don't remember that being disclosed."

*See Fierro v. Gallucci, supra,* at *21 ("Although Mr. Dollinger states that he has no recollection of any conversation with Mr. Fierro or Mr. Arnold, his failure to recall the conversation did not change the analysis".) *See also, Laryngeal Mask, supra,* at *19 ("Though the Finnegan attorneys do not presently recall the details of the confidences, courts have wisely avoided even the prospect of a swearing contest between the client and attorney.")

The Magistrate Judge also relied on such extrinsic facts as the telephone communication was at most 20 minutes long, it was not face to face as in *People ex rel Dept. of Corrections v. SpeeDee Oil Change Systems, Inc. (1999) 20 Cal. 4th 1035 (SpeeDee Oil)* and *Laryngeal Mask,* and no documents were given to Mr. Morris. Order at 13. However, in *Doucette v. Dlugolecki* 2006 Conn. Super. LEXIS 2825 (Super. Ct. Conn. New Britain Jud, Dist.,2006) the potential client and attorney never met face to face, no documents were provided to the attorney and the one telephone call between them lasted only 15 minutes. However, like here, legal advice was given by the attorney to the prospective client. As a result, a motion to disqualify was granted.

**2. The Magistrate Judge Was Mistaken In Concluding That Mr. Morris' Own Conduct Did Not Belie His Argument That No Implied Attorney-Client Relationship Was Formed.**

The Magistrate Judge also concluded that no admission of having received confidential information arose by Mr. Morris' conduct after Chinois initially objected to his involvement in this case in February 2008. However, that conclusion is directly contradicted by the evidence.

The Magistrate Judge states that Ms. Pickering was unaware of Mr. Morris' telephone conversation with Mr. Heller when she was first retained by Caesars. Similarly, the Magistrate Judge points out that Mr. Morris was unaware that Caesars had retained his wife, Ms. Pickering, prior to Mr. Heller's February 13, 2008 call to object. Accordingly, the Magistrate contends no ethical barrier had

been constructed. With due respect, the Magistrate Judge missed the point.

It was *after* the February 13, 2008 call that the ethical barrier was erected. It was as a result of Mr. Heller's call and the subsequent exchange of e-mails that Mr. Morris agreed (after confirming he had not previously disclosed the contents of his conversation with anyone) not to be involved in the case in any respect and Ms. Pickering further agreed that she would "keep this work separate from him." That is an ethical screen. Moreover, if Mr. Morris or Ms. Pickering believed that there was no justification for any limitations on Mr. Morris' future involvement then why did they both agree to impose such limitations? Neither the Magistrate Judge in his Order, nor Mr. Morris during the hearing before the Magistrate Judge, had an answer to that question. In fact, such representations by Mr. Morris and Ms. Pickering, agreeing to exclude Mr. Morris' involvement in this case, are consistent with an understanding that an implied attorney client relationship had been formed and Mr. Morris was subject to the dual obligations of duty of loyalty and duty to preserve client confidences.

Chinois relied on these assurances and did not file a motion to disqualify Mr. Morris in February 2008 (after all he agreed not to participate in the case). Mr. Morris should now be estopped from taking the position that after 10 months of staying out of this case he now can come in because his wife no longer can represent Caesars in this case.

Nevertheless, the Magistrate Judge is critical of Chinois' counsel accepting Mr. Morris at his word that his recollection of the contents of the original telephone call had waned and that he had not, and would not, discuss it with anyone including his wife. (The Magistrate Judge fails to mention that Mr. Morris had worked with Chinois' counsel in the past and was well-respected by Chinois' counsel.) By contrast, the Magistrate Judge willingly accepts at face value Mr. Morris' current version of events. If the Magistrate is willing to give credence to

Mr. Morris' statements, why was Mr. Heller not entitled to rely on Mr. Morris' representation in February 2008? Similarly, the Magistrate Judge expresses surprise that Chinois' counsel would accept Ms. Pickering's assurances that Mr. Morris' call with Mr. Heller would not be discussed. Is the Magistrate Judge suggesting it also was wrong to accept the word of a lawyer who recently was elected to the Nevada Supreme Court? On the one hand the Magistrate Judge concludes that keeping Mr. Morris out of the case in February 2008 "appears to have been a reasonable resolution of the issue at the time" (Ex. E, Order at 14), yet on the other, speculates that: "Regardless of Mr. Pickering's and Mr. Morris' assurances that they would not discuss the case with each other, it seems doubtful that Mr. Heller would have so readily agreed to Ms. Pickering's continued representation if he had, in fact, disclosed significant confidential information to her partner/husband Mr. Morris." (Ex. D, Order at 14-15). The Magistrate Judge's benign interpretation of Mr. Morris' absence from the case for 10 months is not supported by the evidence.

Finally, the Magistrate Judge erroneously concludes that whatever confidential information was disclosed in the prior consultation was rendered moot by Chinois' agreement to allow Ms. Pickering to defend Caesars. The Magistrate Judge contends that had there been confidential communication regarding forum preferences they were rendered moot by Chinois agreeing to allow Ms. Pickering to defend Caesars after the case was removed to Federal Court. However, those were not the confidences that Chinois contends may still be used to harm it. Rather, those discussions were probative of the broader litigation strategy discussions which were held in the prior consultation and not disclosed (*i.e.* it helped provide context that substantive matters were being discussed, including the likelihood of confidential communications as a predicate to receiving legal advice from Mr. Morris.):

Client confidences are not so inert as to limit their usefulness to

defined legal disciplines or practice areas. They are fungible, and once disclosed can be applied by an experienced lawyer in ways too numerous to anticipate at this stage of the proceedings. As the Second Circuit observed, "[t]the dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case."

*Fierro v. Gallucci* , *supra*, at *22-*23.

Based upon the reason for the prior consultation, the information both sides agree was discussed, the guidance provided by the information which, by necessity, was disclosed in the complaint, the remaining confidential information to which Mr. Heller testified, but Mr. Morris "cannot recall", and the conduct of Mr. Morris and Ms. Pickering over a ten month span (consistent with a recognition that confidences had been disclosed to Mr. Morris), Chinois has provided sufficient evidence that confidences had been disclosed to Mr. Morris which could be harmful to Chinois in this case. Upon that showing, disqualification should have been ordered.

## VI. THE MAGISTRATE JUDGE IGNORED THE APPEARANCE OF IMPROPRIETY WHICH RESULTS FROM THE ABANDOMENT OF EITHICAL PRINCIPLES FOR THE SAKE OF EXPEDIENCY

Mr. Heller called Mr. Morris and objected to his firm's representation of Caesars in the very matter upon which he previously had been consulted provided with confidential information and in return offered legal advice. Mr. Morris responded by stating that, although he recalled initially speaking to Mr. Heller, Mr. Morris only had the faintest recollection of the call. However, he said he took no notes and did not speak with anyone in the firm about the call. He further stated he had no involvement in the case. The following day he memorialized his comments in an e-mail to Mr. Heller. (Ex. A to Heller Decl.)

Given those assurances that Mr. Morris had erected a form of "ethical wall" around himself, on February 14, 2008 Mr. Heller responded that he had no problem with Kris Pickering continuing to represent Caesars. (Ex. A, to Heller Decl.)) Later the same day, Ms. Pickering confirmed that her husband had not discussed the call with her and the she would "keep this work separate from him." (*Id.*)

For ten months Mr. Morris made no appearance in this case on behalf of Caesars. Then, on December 19, 2008, in connection with the continuance of a hearing on two Motions to Dismiss filed by Caesars and the remaining Defendants, Ms. Pickering first revealed that as a result of her election to the Nevada Supreme Court she would be leaving the case and that Mr. Morris would be replacing her:

> Gentlemen,
>
> Judge Mahan was not available yesterday afternoon. With Charlie McCrea out from Monday through the 4th, it looks as though there is no workable date before year-end that will allow me to participate. *Since this takes me out, I've asked my partner, Steve Morris, to step in (which you on the plaintiffs' side will come to regret).* His assistant is patty Ferrugia, whom I'm copying to get a new date that works for him and JP. (Emphasis added)
>
> Best wishes for the holidays.
>
> Kris
>
> E-mail from Kris Pickering 12/19/08 (Ex. B, to Heller Decl.)

Reduced to its simplest, Caesars' counsel complied with their ethical obligations, including both their duty of loyalty to a former client and their duty to maintain client confidences, so long as it was convenient to do so. For ten months, Steve Morris and Kris Pickering complied with their promises and ethical obligations and kept this case away from Mr. Morris. However, when Ms.

Pickering was elected to the Nevada Supreme Court, it was no longer convenient or financially advantageous for Mr. Morris to comply with the Rules. Placing his own economic interests ahead of his former client, Mr. Morris did a 180° turn and tried to come aboard this case leaving Ms. Pickering to observe that Plaintiffs will come to regret Mr. Morris' appearance in the case. Given any objective measure, how could this not result in the appearance of impropriety? The Magistrate Judge's error here was that he not only did not resolve this issue, he never addressed it.

Chinois argued to the Magistrate Judge how the appearance of impropriety related to a disqualification motion brought pursuant to Nevada Rule of Professional Conduct 1.9:

> Other courts have held generally that "the mere appearance of impropriety is just as egregious as any actual or real conflict." *American Insurance Association v. Kentucky Bar Association* 917 S.W. 2nd 568, 573 (Ky. Sup. Ct. 1996). Still others, pursuant to Model Rule 1.9, have applied that principle to motions to disqualify attorneys based upon a prior consultation:

> Even thought the comment to Rule 1.9 specifically rejects the "appearance of impropriety" standard in favor of a fact-based test applied to determine whether the lawyer's duty of loyalty and confidentiality to a former client will likely to be compromised by the subsequent representation, the appearance of impropriety is still a useful guide for ethical decisions.

> *      *      *

> Lawyers still must avoid the appearance of impropriety because such is an integral component of professional responsibility. *First American Carriers, Inc. v. Kroger Co.,* 302 Ark. 86, 787 S.W. 2d 669(Ar.1990).

> *Lovell v. Winchester,* 941 S.W. 2d 466, 468 (Ky. Sup. Ct. 1997)

(Ex. C, Plaintiff's Reply Brief at 13)

Nevertheless, the Magistrate Judge does not mention a word about how

public confidence in the integrity of the bar is challenged when ethical rules are circumvented for the sake of expediency.

Contrary to the Magistrate Judge's ultimate conclusion that the competing interests weigh heavily towards Caesars being able to have the counsel of it choice, Order at 15, Caesars' choice is trumped by an attorney's duty to a former client:

> Although King argues that Appellants cannot demonstrate how his representation of Kidd would harm their case, we believe that the situation creates a perception of betrayal and disloyalty which cannot be condoned. To sanction this professional conduct merely on the claim that he recalls nothing of the prior contact impairs public confidence in the legal system. Further, there is the potential to prejudice clients in the employ of the legal counsel. Maintaining public confidence in the legal system requires that preservation of client confidences should outweigh the interests of individual lawyers and individual clients in freely contracting with each other. Client confidences should prevail among these competing interests.

*Lovell v. Winchester*, *supra*, 941 S.W. 2d at 467-468

Leaving aside the disputed facts, even the undisputed facts call into question what is going on here. To *represent* Caesars, Ms. Pickering was willing to "keep this work separate from [Mr. Morris]". To *keep* this business, Mr. Morris was willing to throw that promise under the bus when Ms. Pickering was elected to the Bench. Such conduct transcends the violation of Professional Rules of Conduct and directly implicates the Court's responsibility to maintain public confidence in the system of justice:

> …[T]he goal of maintaining public confidence in our system of justice demands that courts prevent even the appearance of impropriety and thus resolve any and all doubts in favor of disqualification. In preventing the appearance of impropriety, the client's perception of events is of paramount importance and overshadows the details of his attorney's conduct. The conduct of the attorney need not constitute a violation of Rules of

16

> Professional Conduct, and certainly need not rise to the level of professional negligence in order to warrant disqualification. The relevant cases instruct us to refrain from weighing the conduct of counsel with "hairsplitting nicety" in the context of a motion to disqualify. As Judge Goodwin so ably stated in Healthnet, "[a] motion to disqualify counsel . . . is not a referendum on the trustworthiness of the counsel sought to be disqualified. It is, rather, a motion that should succeed or fail on the reasonableness of a client's perception that confidences it once shared with its lawyer are potentially available to its adversary. Where a reasonable client would be concerned by a potential conflict, a court must err on the side of disqualification." (Internal citation omitted.)

*Chemcraft Holdings Corp. v. Shayban* 2006 NCBC 13; 2006 NCBC LEXIS 15 ** 11- ** 13 (N.C. Super. Ct. 2006)

## VII. CONCLUSION

The decision reached by the Magistrate Judge is demonstrably flawed. It is based upon material factual inconsistencies and errors of law. Upon scrutiny, it cannot withstand objective analysis.

The Magistrate Judge faults counsel for Chinois for believing and relying upon the factual assertions of Mr. Morris and Ms. Pickering made in February 2008, yet the Magistrate Judge gives full credit to the current hazy recollection of Mr. Morris which has be shown to be inaccurate.

The Magistrate Judge relies on case authorities provided by Mr. Morris which are factually distinguishable from this case. Unlike the facts here, the Magistrate Judge relies on cases where there was no contention that legal advice was received or that there were remaining confidences which were not subsequently revealed by the filing of a complaint. On the other hand, the Magistrate Judge fails to reference case authority cited by Chinois which compel disqualification on facts similar to the ones at issue here in this case.

The Magistrate Judge applies an improper standard which is unattainable

17

1  unless Chinois discloses the confidences it seeks to protect. In so doing, the
2  Magistrate Judge ignores dispositive authority to the contrary.

3      The Magistrate Judge abdicates any responsibility for maintaining the
4  public's confidences in the integrity of the bar.  By ignoring the issue, the
5  impression left is that high profile lawyers retained by high profile clients do not
6  have to abide by the same rules other attorneys have to follow and that high
7  profile clients receive special treatment. This may not have been the Magistrate
8  Judge's intent, but that is the perception left with Chinois as Mr. Morris' former
9  client and the public at large.

10      Counsel for Caesars should be faulted for dropping this hot potato into the
11  Court's hands. Mr. Morris knew the right thing to do was to step aside and that is
12  exactly what he did in February 2008. For no good reason, and for a lot of bad
13  ones, Mr. Morris now has changed his mind and wants the Court to bail him out of
14  his ethical dilemma.  In so doing, Mr. Morris is oblivious to the taint he brings to
15  this case and the broader stigma he now wants to impose on this Court.

16      The enforcement of Mr. Morris' duty of loyalty to his former client and
17  duty to maintain client confidences, and the protection of the public's confidence
18  in the integrity of the bar, compels the reversal of the Magistrate Judge's Order
19  and the granting of Chinois' Motion to Disqualify Mr. Morris and his firm Morris
20  Peterson from further participation in this case on behalf of the Caesars
21  Defendants.

22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28

Finally, because of the sensitivity and importance of this Motion, oral argument is requested.

Respectfully submitted,

Dated: February 24, 2009

**FAGELBAUM & HELLER LLP**

By: _____
    Jerold Fagelbaum
    2049 Century Park East, Suite 4250
    Los Angeles, CA 90067-3254

and

Dated: February 24, 2009

**HUNTERTON & ASSOCIATES**

By: _____
    C. Stanley Hunterton, Esq.
    333 S. Sixth Street
    Las Vegas, NV 89101

Attorneys for Phase II Chin, LLC

# CERTIFICATE OF SERVICE

[US DISTRICT COURT –NEVADA]

CASE NO. 2:08-CV-00162 JCM (GWF)

I hereby certify that on February 25, 2009 I caused a true and correct copy of the foregoing document :

**PLAINTIFF PHASE II CHIN LLC'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER DENYING PLAINTFF'S MOTION TO DISQUALTIFY COUNSEL FOR THE CAESARS DEFENDANTS ATTORNEY STEVE MORRIS AND THE LAW FIRM OF MORRIS PETERSON; AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

to be served on counsel for all parties via electronic filing the Court's ECF System.

| | |
|---|---|
| Samuel S. Lionel, Esq.<br>Charles McCrea, Esq.<br>**LIONEL SAWYER & COLLINS**<br>300 So. Fourth Street, # 1700<br>Las Vegas, Nevada 89101<br><br>Attorneys for Defendants Forum Shops, LLC Forum Developers Limited Partnership, Simon Property Group Limited Partnership and Simon Property Group, Inc. | **(FORMER ATTORNEYS)**<br>Kristina Pickering, Esq.<br>**MORRIS PICKERING & PETERSON**<br>900 Bank of America Plaza<br>300 So. Fourth Street<br>Las Vegas, Nevada 89101<br><br>Attorneys for Defendants Caesars Palace Corp. and Caesars Palace Realty Corp. |
| Harold Gewerter, Esq.<br>**GEWETER LAW OFFICES**<br>5440 W. Sahara Avenue, Third Floor<br>Las Vegas, Nevada 89146<br><br>Attorneys for Plaintiff Love & Money, LLC | C. Stanley Hunterton, Esq.<br>Pamela R. Lawson, Esq.<br>333 So. Sixth Street<br>Las Vegas, Nevada 89101<br><br>Attorneys for Plaintiff Phase II Chin, LV. |
| George W. Foley, Jr.<br>**Magistrate Judge**<br>Court Room 3A<br>United States District Court – District of Nevada<br>333 Las Vegas Blvd. South<br>Las Vegas, Nevada 89101 | **(NEW ATTORNEYS)**<br><br>Steve Morris, Esq.<br>**MORRIS PETERSON**<br>900 Bank of America Plaza<br>300 So. Fourth Street<br>Las Vegas, Nevada 89101<br><br>Attorneys for Defendants Caesars Palace Corp. and Caesars Palace Realty Corp. |

Zoynna Shah-Sohl

-1-