Phase II Chin, LLC et al v. Forum Shops, LLC et al Doc. 1



**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**THE HONORABLE JAMES C. MAHAN, JUDGE PRESIDING**

PHASE II CHIN, LLC, et al.,

Plaintiffs,

vs.

**NO. 2:08-CV-0162-JCM-GWF**

FORUM SHOPS, LLC,

**PARTIAL MOTION HEARING**

Defendant.
_______________________________/

**(Argument of Harold Gewerter, Esq.)**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

THURSDAY, MARCH 12, 2009

10:00 A.M.

**APPEARANCES:**

For the Plaintiffs: HAROLD P. GEWERTER, ESQ.
JEROLD FAGELBAUM, ESQ.
C. STANLEY HUNTERTON, ESQ.
PAMELA R. LAWSON, ESQ.

For the Defendant: CHARLES McCREA, JR., ESQ.
SAMUEL S. LIONEL, ESQ.
STEVE MORRIS, ESQ.

Reported by: Joy Garner, CCR 275



Dockets.Justia

Official Federal Court Reporter

**LAS VEGAS, NEVADA, THURSDAY, MARCH 12, 2009**

**10:00 A.M.**

*** * ***

**P R O C E E D I N G S**

. . . . .

THE COURT: Mr. Gewerter, or whoever from the plaintiff's side.

MR. GEWERTER: I'll need more than one minute.

THE COURT: All right, you've got two.

MR. GEWERTER: Thank you very much. I appreciate your generosity.

THE COURT: Yes.

MR. GEWERTER: Let me start off by saying my client operates an upscale nightclub upstairs in Chinois.

THE COURT: That's right.

MR. GEWERTER: Chinois is an upscale restaurant. It's a tenant at the Forum Shops which is an upscale shopping center which is the ground lease owned by Caesar's which is an upscale hotel and casino. We all agree on that. What we don't agree on and what the defendants won't state in this case is they accuse my client

of not being an upscale nightclub because it caters to black patrons. And that's the gist of the 1981 allegations here, but they don't come out and say that we don't want minorities in there because you can't say it, although they have done everything else but say it with their actions.

What have they done? Every time, or the majority of times, there is a problem where an altercation occurs outside of the Forum -- I'm sorry, outside of the Poetry in the Forum area in Caesar's Palace, and there was two black gentlemen who had a disagreement or an altercation. And what does Forum Caesar's do? They yell to those people from Poetry and they're wrong. They just make that assumption because they don't want black patrons in their establishment.

And this case was well pled. In fact, let me give you a couple of instances without going through the whole complaint because that would take hours. On the eve of -- Christmas Eve of 2004, there was a party at my client's premises. At that time it was a Jewish singles club, a private party. There wasn't a

single black person on the premises that night. There wasn't one. They had to allege there was one, and my client states in the complaint there wasn't one.

There was an altercation outside my client's premises between two black gentlemen. What's the first thing that gets yelled at by Forum, that gets yelled at by Caesar's? It's those people at Poetry, OPM, if it wasn't for them, we wouldn't have those problems. That' a false statement which has racial animus, racial hatred. They want to blame every problem they have on Poetry.

Another instance we cite, there's an altercation in Caesar's parking lot where two gentlemen, African-Americans, get into an altercation. What's the first thing Caesar's yells -- the one that says there's no contract with my client -- it's those people at Poetry. There's not one shred of evidence that those individuals were patrons at Poetry that evening. In fact, they didn't even have the proper dress code and my client would not have let them in that night.

We can go on, and on, and on

through all of these situations, and there's numerous instances here which have been well pled. We then hear that, gee, after being here three years, we don't have a lease over here. In essence, we heard Mr. McCrea on behalf of Forum say that my client is a squatter at the premises because you don't have a proper sublease because subleases aren't allowed in our lease. That is a disingenuous and false statement of fact and law.

First of all, there was an amendment to the lease between Forum Shops and between Chinois. The amendment to the lease at the insistence of Forum Shops provided for an after-hours club at the premises where Chinois is. They can go to 6:00 a.m. There is an amendment to that lease. My client does not have a sublease. It has a management agreement.

Three years after being there, they want to mischaracterize it and say, oh, by the way, we don't have a -- as a matter of fact, now after taking your money for three years, we're going to change this into a sublease because that would violate the master lease. That fails for two reasons. It fails for the first reason because they approved it. Forum

Shops in correspondence and in written writing on Forum Shops' letterhead approved the management agreement with my client, Poetry.

For them to come here today and say, oh, gee, you are here and there's a sublease, oh, my God, you just snuck one by us, is an absolutely false statement of fact and belies their own written correspondence. And, more importantly, call it what you want, they approved it. Who cares what it's called? They've approved it in writing. They've approved it verbally. They attended the opening of my client's premises. They've been there several times.

What they don't like is and what they say wasn't told to them, by the way, when you went in there, is you didn't tell us you were going to have black patrons. And so it's those black people that cause all the problems we have over here, which is false statement, and it's a racially motivated statement. For example, paragraph --

THE COURT: Well, I mean I've read all of that, Mr. Gewerter.

MR. GEWERTER: Okay, I'll get to the

standing issue which is the big issue then. The standing issue here really is also a red herring. First of all, this motion to dismiss and this motion for summary judgment, I think they are going to accept that.

THE COURT: But I mean even with that, there's really not enough here for the Court to judge. I mean here's some papers --

MR. GEWERTER: That's correct.

THE COURT: -- and there's just not enough that I can do it.

MR. GEWERTER: And in the Thinket case that they rely upon, Thinket does give standing to a corporation, and Thinket does say, if the corporation suffers discrimination under Section 1981 or has acquired an imputed racial identity, it may maintain a cause of action.

THE COURT: But I mean that goes back to the Sullivan case, the United States Supreme Court case.

MR. GEWERTER: That's correct, and all those cases they're all progeny up to the Sullivan.

THE COURT: Yeah, Sullivan versus The Little Hunting Park at 396 U.S. 229 from 1969.

MR. GEWERTER: But Mr. Morris cites the Domino's case. What he doesn't read in the Domino's case -- and I'll just read one sentence -- any claim under Section 1981 must initially identify an apparent contractual relationship under which the plaintiff has rights. Such a contractual relationship need not already exist because Section 1981 protects would-be contractors along with those who have already made contracts.

We made it clear, and they cite some other cases. You have 1981 racially motivated cause of action when you prevent an individual who seeks to enter into contractual relationships. You don't need an existing relationship. The patrons, that is the customers that go into Poetry have a contractual relationship with Poetry for the free enjoyment, free association, and whatever they do at Poetry.

That is what Caesar's is interfering with and that is what Forum Shops is interfering with. For them to say that it's only the contract with Caesar's and, therefore, we don't have a contract with Caesar's is a false statement of law. And it's not the holding of

the Domino's case. The United States Supreme Court stated otherwise in a case that was recently submitted to your Honor last week, a case that came out of the United States District Court, District of Maryland, Yesteryear versus Waldorf Restaurants.

THE COURT: You submitted that. I had that. I've got that, but Domino's -- I thought you were going to give me the Domino's statement, we've never retreated from what should be obvious from reading the text of the statute. Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship as well as when racial discrimination impairs an existing contractual relationship so long as the plaintiff has or would have rights under existing or proposed contractual relationship.

MR. GEWERTER: I was getting there, your Honor.

THE COURT: And I mean so I've read it all and both sides briefed it very well, but it just -- we're at the pleading stage. It's notice pleading. I haven't changed my mind.

MR. GEWERTER: Well, I appreciate that, your Honor. I don't want any silence to be

construed as --

THE COURT: I'm not trying to cut you off for any reason other than, you know, you're preaching to the choir at this point.

MR. GEWERTER: Well, then I will sit down and stop preaching to the choir, your Honor.

THE COURT: I just haven't heard anything to change my mind. We're at the pleading stage. It's notice pleading, and so the defendants are on notice, and I realize some of the arguments they made today I'm going to see again on summary judgment. And the decision may be, to be candid, may be different on summary judgment. I mean I don't know. I don't know what the facts of the case are, but I just think there's enough here that it survives a motion to dismiss.

MR. GEWERTER: May I ask for the motion to strike?

THE COURT: Absolutely, yeah.

MR. GEWERTER: That's just a red herring to hide up the reality of the racial animus, your Honor.

THE COURT: I mean you can say that, but that's denied as well. I'm not going to

characterize it that way.

MR. GEWERTER: Thank you. With that, your Honor, I only took ten minutes, and I know you have another hearing, your Honor.

. . . .

(Whereupon, Mr. Gewerter concluded.)

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter.

Date: March 18, 2009

/s/ Joy Garner
JOY GARNER, CCR 275
U.S. Court Reporter