GORENCE & OLIVEROS, P.C.
Robert J. Gorence, NM # 981
Louren Oliveros, NM # 14689
201 12th Street, NW
Albuquerque, NM 87102
Telephone:   (505) 244-0214
Facsimile:   (505) 244-0888
Attorneys for Plaintiff
*Love & Money, LLC,*
*(formerly dba O.P.M.L.V., LLC)*

HUNTERTON & ASSOCIATES
C. Stanley Hunterton, NSB # 1891
Pamela R. Lawson, NSB # 5044
333 South Sixth Street
Las Vegas, NV 89101
Telephone:   (702) 388-0098
Facsimile:   (702) 388-0361

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PHASE II, CHIN, LLC and LOVE & MONEY, LLC (formerly dba O.P.M.L.V., LLC,)<br><br>Plaintiffs,<br><br>vs.<br><br>FORUM SHOPS, LLC FORUM DEVELOPERS LIMITED PARTNERSHIP, SIMON PROPERTY GROUP LIMITED PARTNERSHIP, SIMON PROPERTY GROUP, INC., CAESARS PALACE CORP., and CAESARS PALACE REALTY CORP.<br><br>Defendants. | **LOVE & MONEY, LLC'S RESPONSE TO FORUM DEFENDANTS' MOTION TO STRIKE JURY DEMAND** |

Plaintiff Love & Money, LLC, by and through its attorneys of record, Gorence & Oliveros hereby responds to Forum Defendants' Motion to Strike Jury Demand and states as

follows in support thereof.

1. Facts.

    a. Forum Developers Limited Partnership and GGH Restaurant, LLC, executed a Lease on March 18, 1997. See Doc. 141-2, p. 3. The signatories on the Lease are David Simon and Scott Gordon. See Doc. 141-2, p. 36.

    b. The Lease contains a Waiver of Trial by Jury provision. See Doc. 141-2, p. 27. The provision, Section 18.5, reads:

    To the extent permitted by applicable law, Tenant hereby waives trial by jury in any action, proceeding or counterclaim brought by either party against the other on any matter whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant created hereby, Tenant's use or occupancy of the Premises or any claim or injury or damage.

    c. Michael Goodwin was the managing partner of O.P.M.L.V. In 2001 and 2002, Mr. Goodwin negotiated the terms and conditions of the Management Agreement with Joe Essa, a representative of Wolfgang Puck. See Affidavit of Michael Goodwin attached as Exhibit A, at ¶¶ 3 and 8; Deposition of Michael Goodwin attached as Exhibit B, 73:7-9, 18-21 and 74:8-12.

    d. O.P.M.L.V. was operating under the Management Agreement and was not a tenant of The Forum Shops. See Ex. A, ¶¶ 6 and 7; Ex. B, 75:8-12.

    e. Phase II Chin-LV, LLC and O.P.M.L.V. executed a Management Agreement on June 20, 2002. See Doc. 141. The signatories on the Management Agreement are Michael Goodwin and Thomas Kaplan. See Doc. 141-3, p. 47.

    f. The Management Agreement does not contain a jury trial waiver. See Ex. A, ¶ 11, Doc. 141-3.

    g. O.P.M.L.V./Love & Money, LLC was not a party to and had no involvement in negotiating the Lease between GGH Restaurant/Phase II Chin-LV, LLC

and The Forum Developers Limited Partnership. See Ex. A, ¶ 5.

h. Mr. Goodwin understood that Phase II Chin-LV or Wolfgang Puck was the tenant of The Forum Shops under the Lease and that O.P.M.L.V./Love & Money, LLC was not a tenant of The Forum Shops. See Ex. A, ¶¶ 6 and 7.

i. The Management Agreement allowed for O.P.M.L.V.'s use of the space rented by Phase II Chin-LV at The Forum Shops for the operation and management of a night club on the upper level of the Chinois Restaurant. See Ex. A, ¶ 7 and Doc. 141-3.

j. The Management Agreement was negotiated primarily between Michael Goodwin and Wolfgang Puck through Joe Essa. Mr. Goodwin understood that Joe Essa represented the interests of Phase II Chin-LV, LLC, the Chinois Restaurant, and Wolfgang Puck. Mr. Goodwin understood that Wolfgang Puck consulted with an attorney during the negotiations. Mr. Goodwin also understood that Wolfgang Puck consulted with representatives from The Forum Shops during the negotiations. See Ex. A, ¶ 8, Ex. B, 72:19-21, 73:1-9 and 18-21, 74:8-12 and 20-23, 75:23-25, 76:1-8.

k. The Forum Shops participated in the negotiation, finalization and approval of the Management Agreement. See Ex. A, ¶ 9; Ex. B, 74:20-23, 75:23-25, 76:1-8.

l. O.P.M.L.V. had minimal bargaining power in the negotiation of terms and conditions of the Management Agreement. Ex. A, ¶ 10, Ex. B, 75:18-22. The lack of bargaining power was primarily due to the fact that O.P.M.L.V. was not established in operating night clubs in Las Vegas. On the other hand, Wolfgang Puck had substantial bargaining power primarily

because Wolfgang Puck had successfully operated fine dining companies at the Forum Shops, around Las Vegas and nationally. See Ex. A, ¶ 10. Mr. Goodwin also understood that Wolfgang Puck, as a tenant, had to yield to the demands of The Forum Shops in developing the Management Agreement to obtain the approval of The Forum Shops. See Ex. A, ¶¶ 9 and 10, Ex. B, 74:20-23, 75:23-25, 76:1-8.

m. When Mr. Goodwin negotiated the Management Agreement on behalf of O.P.M.L.V., he did so without the assistance of an attorney. See Ex. A, ¶¶ 3 and 12; Ex. B, 72: 19-24. Mr. Goodwin understood that Wolfgang Puck's attorney prepared the Management Agreement. See Ex. A, ¶ 8; Ex. B, 72:25-73:1-9.

n. When Mr. Goodwin negotiated the Management Agreement, he was never advised and there was no discussion of any kind with the representatives of Phase II Chin-LV/Wolfgang Puck or with representatives of The Forum Shops that O.P.M.L.V.'s right to a jury trial in any future lawsuit against The Forum Shops or Caesars Palace would or might be waived. See Ex. A, ¶¶ 13 and 14.

o. Michael Goodwin never knowingly or voluntarily waived O.P.M.L.V. / Love & Money, LLC's right to a jury trial in the pending lawsuit, *Phase II Chin, LLC and Love & Money, LLC v. Forum Shops, LLC, et. al.,* No. 2:08-cv-00162-JCM-GWF, or any lawsuit. See Ex. A, ¶ 15.

p. O.P.M.L.V./Plaintiff Love & Money, LLC never knowingly or voluntarily waived Plaintiff Love & Money, LLC's right to a jury trial in the pending lawsuit, *Phase II Chin, LLC and Love & Money, LLC v. Forum Shops, LLC,*

*et. al.*, No. 2:08-cv-00162JCM-GWF, or any lawsuit. See Ex. A, ¶ 16.

q. Love & Money, LLC has never been a party to any lease or contract with the Forum Defendants.

r. Since Love & Money, LLC is not a signatory to any binding contract with the Forum Defendants, it cannot be bound by a jury waiver clause.

s. Love & Money, LLC never made a knowing waiver of its right to a jury trial.

t. The Management Agreement states: Manager acknowledges that Owner has delivered to Manager a full and complete copy of the Lease. This Agreement and all of the rights of the parties hereto are subject and subordinate to the Lease. Each party agrees that it will use its best commercial efforts to not, by its act or omission to act, cause a default under the Lease. In the event the Lease terminates or is terminated for any reason, this Agreement shall automatically terminate and both parties shall be released from all obligations and liabilities hereunder, except as may be otherwise specifically provided herein.

u. When a Lease Amendment was executed to govern the operation of the nightclub, Love & Money, LLC was not a signatory party to that amendment. *See,* Exhibit C.

2. <u>Love & Money, LLC is not a "tenant" under the jury waiver clause.</u>

Section 18.5 states that the "tenant hereby waives trial by jury in any action". Love & Money, LLC was never a "tenant" of the Forum Defendants. From the plain language of the contract, Love & Money, LLC is not bound to the jury waiver. *See, Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1264, 10 Cal. Rptr. 2d 538, 833 P.2d 545 (1992) (stating the established principle that "if contractual language is clear and explicit, it governs").

Page 5 of 12

3. Love & Money, LLC is not bound by the jury waiver clause.

The validity of contractual waivers of constitutional rights must be determined under federal law. *Phoenix Leasing v. Sure Broadcasting*, 843 F. Supp. 1379, 1384 (D. Nev. 1994). The right to a jury trial in federal court is governed by federal law. *Id., citing, Simler v. Conner*, 372 U.S. 221, 221-22, 9 L. Ed. 2d 691, 83 S. Ct. 609 (1963). Although the right to jury trial in civil cases tried before federal courts is a constitutionally protected right, it may be waived by a contract knowingly and voluntarily executed. *Id., citing, Okura & Co. (America), Inc. v. Careau Group*, 783 F. Supp. 482, 488 (C.D. Cal. 1991), *citing Leasing Service Corp. v. Crane*, 804 F. 2d 828, 832-33 (4th Cir. 1986). Because of the constitutional right at stake, a waiver must meet a higher knowing consent standard. *See, Fuentes v. Shevin*, 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1971). In that case, the Court refused to uphold a contractual provision waiving due process rights, noting that there was "no showing whatever that the appellants were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights." *Id.* at 95.

The federal standard for determining the validity of a waiver is whether the parties executed the contractual waiver knowingly, voluntarily and intelligently. *See Phoenix Leasing Inc.* at 1384. Any ambiguity is to be decided against the waiver. *Id.* Right to trial by jury is a fundamental one and courts will narrowly construe any waiver of right. *See, Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S. Ct. 948, 3 L. Ed. 2d 988 (1959); *Aetna Insurance Co. v. Kennedy*, 301 U.S. 389, 57 S. Ct. 809, 81 L. Ed. 1177 (1937) (Courts indulge every reasonable presumption against waiver of right of jury trial, since right is fundamental). Courts "must indulge every reasonable presumption against the waiver of the jury trial." *Id. See also, United States v. Nordbrock*, 941 F.2d 947, 950 (9th Cir.1991); *Hodges v. Easton*, 106 U.S.

408 (1882) (The trial by jury is a fundamental guaranty of the rights and liberties of the people; consequently every reasonable presumption should be indulged against its waiver).

Courts also look at four factors when considering contractual jury-trial waivers; (1) the relative bargaining power of the parties; (2) the extent to which the party opposing the waiver understood that provision; (3) the extent to which the provision was negotiated; and (4) the conspicuousness of the provision. *Phoenix Leasing Inc.,* supra.

Rule 38(a) of the Federal Rules of Civil Procedure provides that the right to a jury trial, as guaranteed by the Seventh Amendment to the United States Constitution, is to be preserved inviolate. *Pradier v. Elespuru,* 641 F.2d 808, 810 (9th Cir. 1981). In *Paracor Fin., Inc. v. GE Capital Corp.,* 96 F.3d 1151, (9th Cir. 1996), the Court held that a jury waiver is a contractual right and generally may not be invoked by one who is not a party to the contract. The Court stated:

> The Investors again argue that the defendants cannot invoke the jury waiver clause because they were not parties to the Purchase Agreement or the debentures. As with the choice-of-law clause, a jury waiver is a contractual right and generally may not be invoked by one who is not a party to the contract.
>
> ...
>
> Unlike arbitration clauses, courts generally construe jury waivers narrowly. *See, e.g., Pradier v. Elespuru,* 641 F.2d 808, 811 (9th Cir. 1981). Thus, we are even more hesitant to extend the protections of the jury waiver clause to a nonsignatory.

*Id.* at 1166.

The case at bar is analogous to *Paracor Fin.* supra, as in the present case, Love & Money, LLC was never a party to a contract or lease with the Forum Defendants. Nor was any type of agency relationship ever created among any of the parties at issue. Even when

the Lease Amendment dated October 9, 2003 was executed governing operation of the night club, Love & Money, LLC was not a party to that agreement. Love & Money, LLC cannot be bound by a contractual waiver of a jury when it was never a party to the alleged binding contract or lease. In addition, Love & Money, LLC never made a knowing and voluntary waiver of its right to a jury trial. Forum Defendants have made no showing whatsoever that Plaintiff Love & Money, LLC or Mr. Goodwin was actually aware or made aware of the significance or the jury waiver clause. At a minimum, this Court should respectfully indulge every reasonable presumption against the waiver, since the right to jury trial is a fundamental one. *See, Aetna v. Kennedy,* supra.

Even should this Court consider Love & Money, LLC to be a party to the Lease and thereby being subject to the waiver, it should respectfully hold Love & Money, LLC did not waive its right to a jury knowingly and voluntarily under the four factors set forth in *Phoenix Leasing Inc.,* supra. First Love & Money, LLC did not have a great amount of bargaining power when executing the management agreement with Phase II Chin, LLC. *See,* Facts, supra. Second, Love & Money not only did understand the jury waiver provision, it was unaware that provision would be binding on it. *See, Id.* Love & Money, LLC only executed a Management Agreement that stated its rights were subject and subordinate to the Lease. Third, the jury waiver provision was not negotiated in any way between Love & Money, LLC and the Forum Defendants because they never actually even contracted with one another. Finally, the jury waiver provision is not conspicuous.

4. <u>Plaintiffs claims fall outside the scope of the jury waiver.</u>

As this Court knows, the basis for the claims of this lawsuit are derived from the Forum and Caesars Defendants' racially discriminating acts against Plaintiffs. Such conduct does not arise out of the Lease or interpretation of any part of the Lease as required in the

jury waiver clause. In, *Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) the Court stated with relation to the contractual language of "arising out of":

> We interpret "arising hereunder" as synonymous with "arising under the Agreement." The phrase "arising under" has been called "relatively narrow as arbitration clauses go." *Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 253 F. Supp. 359, 364 (S.D.N.Y. 1966). In *In re Kinoshita & Co.*, 287 F.2d 951, 953 (2d Cir. 1961), Judge Medina concluded that when an arbitration clause "refers to disputes or controversies 'under' or 'arising out of' the contract," arbitration is restricted to "disputes and controversies relating to the interpretation of the contract and matters of performance." Judge Medina reasoned that the phrase "arising under" is narrower in scope than the phrase "arising out of or relating to," the standard language recommended by the American Arbitration Association. *Id.*.

Plaintiffs state a cause of action in the Complaint under 42 U.S.C. § 1981. Paragraph 90 alleges that the "defendants, and each of them, separately and acting in concert, have discriminated against plaintiffs in the making, performance, and attempted termination of the Lease and the Lease Amendment, and have interfered with their enjoyment of the benefits, privileges, terms and conditions of those contracts, *because of defendants' hostility to African-Americans in general, and to plaintiffs' African-American patrons in particular.*" Complaint, Doc. 1-2, ¶ 90 (emphasis added). The constitutional deprivation safeguarded by 42 U.S.C. § 1981 is race discrimination. Plaintiffs' claims under Section 1981, therefore, arise out of the racial animus of the Defendants, not the out of the terms and conditions of the Lease or the Lease Amendment. Likewise, a violation of 42 U.S.C. § 1981 would not automatically constitute a violation of the terms and conditions of the Lease or Amendment. As such, the claims under 42 U.S.C. ¶ 1981 are outside of the scope of Section 18.5 of the Lease and there is no jury waiver for the claims under 42 U.S.C. ¶ 1981. Thus the jury waiver does not apply in this case because Plaintiffs claims are not restricted to "disputes and controversies relating to the interpretation of the contract and matters of performance." *See, In re Kinoshita & Co.*, supra. Plaintiffs could have never predicted that they would waive a

jury on a claim of racial discrimination under the terms of the Lease.

FOR THESE REASONS, Plaintiff Love & Money, LLC requests that this Court deny the Forum Defendants' Motion.

DATED this 19th day of November, 2009.

                    GORENCE & OLIVEROS, P.C.

                    <u>/s/ Robert J. Gorence</u>
                    Robert J. Gorence, NM # 981
                    Louren Oliveros, NM # 14689
                    201 12th Street, NW
                    Albuquerque, NM 87102
                    Telephone:    (505) 244-0214
                    Facsimile:     (505) 244-0888
                    Attorneys for Plaintiff
                    *Love & Money, LLC,*
                    *(formerly dba O.P.M.L.V., LLC)*

                    C. Stanley Hunterton, NSB # 1891
                    Pamela R. Lawson, NSB # 5044
                    HUNTERTON & ASSOCIATES
                    333 South Sixth Street
                    Las Vegas, NV 89101
                    Telephone:    (702) 388-0098
                    Facsimile:     (702) 388-0361

                    Attorneys for Phase II Chin, LLC

# CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** by the undersigned that on the 19th day of November 2009, I deposited in the United States Mail at Albuquerque, New Mexico, a true and correct copy of the foregoing enclosed in a sealed envelope upon which first class postage was paid, addressed as follows and sent via CM/ECF:

Samuel S. Lionel, NSB #1766
Charles H. McCrea, Jr., NSB #104
LIONEL SAWYER & COLLINS
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Attorneys for Defendants
*Forum Shops, LLC, Forum Developers Limited Partnership, Simon Property Group Limited Partnership and Simon Property Group, Inc.*

Steve Morris (NSB #1543)
MORRIS PETERSON
Steve Morris
900 Bank of America Plaza
300 So. Fourth Street
Las Vegas, Nevada 89101
Attorneys for Defendants
*Caesars Palace Corp., and Caesars Palace Realty Corp.*

**BOWLES & CROW**
Robert Jason Bowles NM # 8922
Robert (B.J.) Crow NM # 17915
201 3rd Street, N.W., Suite 1370
Albuquerque, N.M. 87102
Telephone: (505) 217-2680
Facsimile: (505) 217-2681

/s/ Robert J. Gorence