LIONEL SAWYER & COLLINS
Samuel S. Lionel (NSB #1766)
slionel@lionelsawyer.com
Charles H. McCrea, Jr. (NSB #104)
cmccrea@lionelsawyer.com
Jing Zhao (NSB #11487)
jzahao@lionelsawyer.com
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Tel   (702) 383-8888
Fax   (702) 383-8845

Attorneys for FORUM SHOPS, LLC,
FORUM DEVELOPERS LIMITED
PARTNERSHIP, SIMON PROPERTY
GROUP LIMITED PARTNERSHIP and
SIMON PROPERTY GROUP, INC.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PHASE II CHIN, LLC and LOVE & MONEY, LLC (formerly dba O.P.M.L.V., LLC), <br><br> Plaintiffs, <br> v. <br><br> FORUM SHOPS, LLC, FORUM DEVELOPERS LIMITED PARTNERSHIP, SIMON PROPERTY GROUP LIMITED PARTNERSHIP, SIMON PROPERTY GROUP, INC., CAESARS PALACE CORP., and CAESARS PALACE REALTY CORP. <br><br> Defendants, <br><br> AND RELATED ACTIONS. | Case No. 2:08-cv-00162-JCM-GWF <br><br> **FORUM DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE JURY DEMAND** |

Defendants FORUM SHOPS, LLC, FORUM DEVELOPERS LIMITED PARTNERSHIP, SIMON PROPERTY GROUP LIMITED PARTNERSHIP and SIMON

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101

Page 1 of 8

Dockets.Justia.com

PROPERTY GROUP, INC. (collectively "Forum") submit this Reply in support of Forum Defendants' Motion to Strike Jury Demand (Doc. No. 141; the "Motion").

## MEMORANDUM OF POINTS AND AUTHORITIES

A.  **Plaintiff Love & Money, LLC Agreed to Be Bound by the Terms of the Lease.**

In the Management Agreement between plaintiff Phase II Chin, LLC ("Chinois") and plaintiff Love & Money, LLC ("L&M"), L&M was assigned the right "to utilize a portion of the Upstairs Premises consisting of approximately 10,000 square feet, as more particularly described in Exhibit A [] (the 'Facilities')...." In making that assignment, both parties to the Management Agreement expressly acknowledged the existence of the Lease between Chinois and Forum.[1] L&M as the "Manager" expressly agreed that its right to use the Facilities would be "[s]ubject to the terms of the Lease."[2] Section 39 of the Management Agreement provides:

> The Lease. [L&M] acknowledges that [Chinois] has delivered to [L&M] a full and complete copy of the Lease. This Agreement and all of the rights of the parties hereto are subject and subordinate to the Lease.

When L&M agreed that its use of the Facilities would be subject and subordinate to the Lease, it agreed to be bound by all of the terms of the Lease including section 18.5, which provides:

> Waiver of Trial by Jury. To the extent permitted by applicable law, Tenant hereby waives trial by jury in any action, proceeding or counterclaim brought by either party against the other on any matter whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant created hereby, Tenant's use or occupancy of the Premises or any claim or injury or damage.

Where, as here, an assignee expressly assumes liabilities and obligations under a contract between the assignor his obligee, the assignee stands in the shoes of the assignor and the obligee

---

[1]  See Recital A in the Management Agreement (Exhibit 2 to the Motion; Doc. No. 141-2).

[2]  Id. at Recital C.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101

Page 2 of 8

may enforce the contract against the assignee to the same extent as it could be enforced the assignor. See Electrical Products Consolidated v. Bodell, 316 P.2d 788, 791 (Mont. 1957); Enterprise Leasing Corporation v. Shugart Corporation, 282 Cal. Rptr. 620 (Cal. App. 1991).

"Under the parol evidence rule, a court looks to, and enforces, the plain language of a contract and does not look to extrinsic evidence to interpret the terms of an unambiguous written instrument." United States v. Nunez, 223 F.3d 956, 958 (9th Cir.2000) (internal citation and quotation omitted). This is a case involving two unambiguous contracts: A Lease Agreement ("Lease") that contains a jury waiver, and a Management Agreement that fully adopts the terms of the Lease.

A knowingly and voluntarily executed contract may waive the right to jury trial. Phoenix Leasing Inc. v. Sure Broad., Inc., 843 F.Supp. 1379, 1384 (D. Nev. 1994) (citing Okura & Co. (America), Inc. v. Careau Group, 783 F.Supp. 482, 488 (C.D.Cal.1991)). See also Gem Acquisitionco, LLC v. Sorenson Group Holdings, LLC, 2009 WL 3246747 at *4 (N.D. Cal. October 8, 2009) (citing Great Earth Int'l Franchising Corp. v. Milks Dev., 311 F.Supp.2d 419, 436-38 (S.D.N.Y. 2004); Okura, 783 F.Supp. 482, 488-89 (C.D. Cal. 1991)) ("Under Federal Rule of Civil Procedure 39(a), a Court may strike a jury demand where the parties have executed a waiver of their right to a jury trial").

Some of the factors used to determine whether a waiver was knowing and intelligent include: "(1) whether there was a gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was inconspicuous." Phoenix Leasing Inc., 843 F.Supp. at 1384 (citing Hydramar, Inc. v. General Dynamics Corp., No. 85-1788, 1989 WL 159267 (E.D.Pa. December 29, 1989)).

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101

Love & Money, LLC ("Love & Money") disputes the validity of the jury waiver only with respect to the terms of the Management Agreement. They do not dispute the validity of the jury waiver in the Lease. The jury waiver is valid with respect to the Management Agreement because Love & Money had notice of the jury waiver, yet still chose to enter into the Management Agreement. By Love & Money's own admission:

1. "Michael Goodwin was the managing partner of O.P.M.L.V. In 2001 and 2002, Mr. Goodwin negotiated the terms and conditions of the Management Agreement with Joe Essa, a representative of Wolfgang Puck."[3] Love & Money, LLC's Response to Forum Defendants' Motion to Strike Jury Demand, p. 2 (Doc. No. 144); and

2. "The Management Agreement states: Manager acknowledges that Owner has delivered to Manager a full and complete copy of the Lease. This Agreement and all of the rights of the parties hereto are subject and subordinate to the Lease." Love & Money, LLC's Response to Forum Defendants' Motion to Strike Jury Demand, p. 5 (Doc. No. 144).

As demonstrated by Love & Money's own admission above, Love & Money had the opportunity and did in fact negotiate the terms of the Management Agreement. Love & Money obtained a copy of the Lease when they entered into the Management Agreement. Finally, Love & Money agreed that the terms of the Management Agreement would be subordinate to the terms of the Lease. Thus, Love & Money knowingly and voluntarily accepted the terms of the Lease, including the jury waiver.

Moreover, in the negotiations over the terms of the Management Agreement, Love &

---

[3] In its opposition to the Motion, L&M states that "The Forum Shops participated in the negotiation, finalization and approval of the Management Agreement." Opposition, 3:20-22 (Doc. No. 144). This is a complete fabrication. The Forum Shops had no involvement in the negotiation and finalization of the Management Agreement and never approved it. Forum was simply provided a redacted copy of the Management Agreement several weeks after it was executed. Forum was not provided a complete copy of the Management Agreement until after this action was filed.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101

Money held abundant bargaining power. Love & Money is a sophisticated business, just like Chinois and Forum. Courts are especially inclined to uphold jury waivers when the parties involved are sophisticated businesses. For example, in Phoenix Leasing Inc., the United States District Court in the District of Nevada upheld a jury waiver where the party opposing the waiver was "not a novice but was in fact experienced, professional and sophisticated in business dealings." 843 F.Supp. at 1385. In Charlotte Commercial Group, Inc. v. Fleet National Bank, the court upheld a waiver negotiated by experienced businessmen represented by counsel. 288 B.R. 715 (Bankr. M.D. N.C. 2003). In Leasing Services Corp. v. Crane, a case that this Court has turned to for guidance in Phoenix Leasing, Inc., the Fourth Circuit Court of Appeals also upheld a waiver when the court found that businessmen understood provisions and were engaged in negotiations over operative agreement. 804 F.2d 828, 833 (4th Cir. 1986).

In the present case, there was no gross disparity in bargaining power between the parties because all parties are sophisticated business entities. All parties had the knowledge, experience, and opportunity to negotiate the contract terms acceptable to them.

**B.     Plaintiffs' Claims Are Clearly Within the Scope of the Jury Waiver.**

The jury waiver provision in the Lease expressly applies to "any matter whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant created hereby, Tenant's use or occupancy of the Premises or any claim or injury or damage." By Love & Money's own admission:

1. "Mr. Goodwin understood that Phase II Chin-LV or Wolfgang Puck was the tenant of The Forum Shops under the Lease," Love & Money, LLC's Response to Forum Defendants' Motion to Strike Jury Demand, p. 3 (Doc. No. 144); and

2. "The Management Agreement allowed for O.P.M.L.V.'s use of the space rented by Phase II Chin-LV at The Forum Shops for the operation and management of a night club on

the upper level of the Chinois Restaurant." Love & Money, LLC's Response to Forum Defendants' Motion to Strike Jury Demand, p. 3 (Doc. No. 144).

All of Plaintiffs' claims, including the claim of racial discrimination, arise out of O.P.M.L.V.'s (now Love & Money) use of the space rented under the Lease. Thus, all of Plaintiffs' claims also arise out of the Tenant's use or occupancy of the Premises and should be covered by the unambiguous terms of the jury waiver. Nunez, 223 F.3d at 958 ("Under the parol evidence rule, a court looks to, and enforces, the plain language of a contract and does not look to extrinsic evidence to interpret the terms of an unambiguous written instrument").

Where the claims are within the scope of a valid jury waiver, the jury waiver is enforceable against those claims. Phoenix Leasing, Inc., 843 F.Supp. at 1390. See also Gem Acquisitionco, LLC, 2009 WL at * 6 (finding that jury waiver was enforceable with respect to claims of fiduciary claim and unjust enrichment because they "necessarily relate to the interpretation of the Agreement," and to the determination of the claim of declaratory judgment, which "will necessarily involve interpretation of relevant provisions of the Agreement"). As such, the jury waiver is applicable to Plaintiffs' claims.

In Bakrac, Inc. v. Villager Franchise Systems, Inc., 2003 WL 25730511 (S.D. Fla.), the court enforced a jury waiver provision where all parties to the litigation were not signatories to the underlying contract:

> Finally, the jury waiver applies to all of the claims asserted by and against all parties, even Cendant and Rodgers, who are not signatories to the Franchise Agreement or the Guaranty. The broad language of the waiver -- "applying to any action related to this Agreement" -- brings it to bear on the claims against Cendant and Rodgers because those claims arise out of and are intertwined with the Franchise Agreement and Guaranty.

Similarly, the court enforced a jury waiver provision in Okura & Company v. Careau Group, 783 F. Supp. 482 (C.D. Cal. 1991):

> Further, while it was clear to the court that the jury waivers applied to

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101

Page 6 of 8

defendants' counterclaims against Okura-America, the defendants argued that the waivers were not applicable to their counterclaims against Okura-Japan, Messrs. Asakawa and Kobori, Q.P., and Q & B, since only Okura-America was a party to the financing agreement and notes and a beneficiary of the personal guaranties. The court disagreed. The waiver contained in the body of the agreement between Careau and Okura-America provides that the parties waive jury as to "any action, proceeding or counterclaim arising out of or relating to this Agreement or any of the Operative Agreements or the actions of the Lender in the enforcement thereof." Tr. Exh. No. 256. Careau's essential contention is that the Okura entities defrauded it into agreeing to the financing arrangement with the goal of forcing Careau into default so that plaintiff could assume control of Egg City. Further, Careau contends that plaintiff failed to keep promises about continued financing and took other actions that disabled Careau, thereby making it impossible for it to meet its obligations. Additionally, the basis for Careau's claims against Okura-Japan is that it is the alter ego of its subsidiary, Okura-America. Thus, it appears that all of the claims made by the Careau, whether denominated as counterclaims or third party claims, either relate to the financing arrangement itself or derive from duties allegedly created by the December 1987 agreement.

783 F. Supp. at 489.

Here, the jury waiver broadly encompasses "any action, proceeding or counterclaim brought by either party against the other on any matter whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant created hereby, Tenant's use or occupancy of the Premises or any claim or injury or damage." L&M's claims asserted against Forum in this action are clearly "in any way connected with" the Lease and "Tenant's use or occupancy of the Premises." As such, they are subject to the jury waiver provision in the Lease.

## CONCLUSION

The parties in this action knowingly and voluntarily executed the contracts at issue and L&M expressly agreed to be bound by the Lease, which included a valid and enforceable provision waiving trial by jury of any claim arising out of the use or occupancy of the Premises.

. . . .

. . . .

. . . .

. . . .

The claims asserted by L&M clearly fall within the scope of the waiver. Accordingly, the jury waiver provision should be enforced.

Respectfully submitted,

LIONEL SAWYER & COLLINS

By: *[signature]*

Samuel S. Lionel (NSB #1766)
Charles H. McCrea, Jr. (NSB #104)
Jing Zhao (NSB #11487)

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101