MORRIS PETERSON
Steve Morris, Bar No. 1543
Email:   sm@morrislawgroup.com
Jean-Paul Hendricks, Bar No. 10079
Email:   jph@morrislawgroup.com
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada   89101
Telephone:  (702) 474-9400
Facsimile:   (702) 474-9422

Attorneys for Defendants
Caesars Palace Corporation and
Caesars Palace Realty Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PHASE II CHIN, LLC and LOVE & MONEY, LLC, (formerly dba O.P.M.L.V., LLC, <br><br>Plaintiffs,<br><br>vs.<br><br>FORUM SHOPS, LLC, FORUM DEVELOPERS LIMITED PARTNERSHIP, SIMON PROPERTY GROUP LIMITED PARTNERSHIP, SIMON PROPERTY GROUP, INC., CAESARS PALACE CORP., and CAESARS PALACE REALTY CORP.,<br><br>Defendants. | CASE NO. 2:08-cv-162-JCM-GWF<br><br><br><br><br><br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

The parties in this matter having appeared for a trial to the court beginning on March 28, 2011, and having presented documentary evidence and testimony of witnesses in this matter, the court hereby finds as follows:

**FINDINGS OF FACT**

1.      In 1990, defendants Caesars Palace Realty Corp., as lessor, and Forum Developers Limited Partnership ("Forum developers"), as lessee, entered into a

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

ground lease on the property underlying the high-end retail mall now known as The Forum Shops at Caesar's Palace ("The Forum Shops").

2. On February 7, 2003 Caesars Palace Realty Corporation and Forum developers entered into a second amended and restated ground lease (the "ground lease"). The ground lease governs the rights and responsibilities of Caesars[1] and Forum[2] at all times relevant to this action. Although the management agreement and the Chinois sublease are "subject to" the ground lease, neither plaintiff is or has ever been a party to the ground lease.

3. On March 18, 1997, Forum developers entered into a lease (the "lease") with GGH Restaurant, LLC ("GGH") of premises in The Forum Shops to be used for the operation of a restaurant (the "premises"). Plaintiff Phase II Chin, LLC ("Chinois") succeeded to GGH's rights and obligations under the lease and, until July 2009, operated a restaurant on the premises known as "Chinois."

4. On June 20, 2002 Chinois entered into an agreement with plaintiff O.P.M.L.V., LLC[3] ("OPM/Poetry") granting OPM/Poetry the right to use a portion of the premises -- approximately 10,000 square feet on the second floor of the premises -- as an after-hours club to be operated Wednesday through Sunday from 10:00 p.m. to 6:00 a.m. the following day (the "Club"). OPM/Poetry did not pay any money directly to defendants to operate in The Forum Shops Mall, it paid rent only to Chinois.

---

[1] There are two "Caesars" entities named as defendants in this action: Caesars Palace Corp. and Caesars Palace Realty Corp. They are collectively referred to herein as the "Caesars defendants," "Caesars Palace" or simply "Caesars."

[2] There are four "Forum" entities named as defendants in this action: Forum Shops, LLC, Forum Developers Limited Partnership, Simon Property Group Limited Partnership and Simon Property Group, Inc. They are collectively referred to herein as the "Forum defendants," "Forum Shops" or simply "Forum."

[3] In September 2007, O.P.M.L.V., LLC changed its name to Love & Money, LLC.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

5. At no time did Chinois request that Forum approve a sublease between Chinois and OPM/Poetry.

6. At no time did Forum approve a sublease between Chinois and OPM/Poetry.

7. None of the defendants had any contractual relationship with OPM/Poetry which operated the club.

8. OPM/Poetry began operations on May 22, 2003 as a dance nightclub. It ceased operations on July 26, 2009. During all times pertinent to this case, OPM/Poetry was known and advertised itself as a "hip-hop" club that presented rap and "gangsta-rap" music along with other musical fare, such as rhythm and blues.

9. On October 9, 2003, Forum developers and Chinois executed an amendment to the lease (the "lease amendment") expanding Chinois' right to use the premises for the operation of "an after-hours club, with the sale of food and alcoholic beverages for on-premises consumption, along with live and/or pre-programmed music."

10. Generally, the OPM/Poetry club was open every Thursday through Sunday night from 10:00 p.m. to 4:00 - 6:00 a.m., depending on business.

11. OPM/Poetry began operations as a well run nightclub. However, that changed when defendants began to experience security incidents attributable to patrons of OPM/Poetry.

12. From on or about the time OPM/Poetry opened until the Caesars defendants began closing the fire door separating Caesars Palace from The Forum Shops Mall on August 17, 2007 (known as the "Won door"), the Caesars defendants experienced an increasing number of incidents that threatened the physical security and well-being of Caesars' guests and employees, such as violent altercations, guest and employee complaints of violent or threatening behavior in its casino area immediately adjacent to The Forum Shops Mall (the "forum casino"),

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

3

and in its guest parking facility. Investigations by Caesars security personnel revealed that these security incidents were attributable to unruly people going to or coming from OPM/Poetry.

13. On June 22, 2005, then Clark County Sheriff Bill Young wrote a letter to the Nevada Gaming Control Board urging the board to hold gaming licensees responsible for any violence related to gangster-rap entertainment in nightclubs operated on property owned by a licensee.

14. On February 7, 2006 the Nevada Gaming Control Board issued a directive to all of its gaming licensees, including Caesars Palace, stating "the board will hold the licensee accountable for any regulatory violations that occur within or outside a nightclub located on the property of the licensee." Of particular concern to the board, among other things, were incidences of violence and excessive inebriation associated with nightclubs.

15. Caesars Palace executives were informed by the Gaming Control Board in connection with the February 7, 2007 letter that they would be responsible for violence emanating from Pure nightclub, located inside Caesars Palace and OPM/Poetry nightclub, located in The Forum Shops on property leased to Forum by Caesars.

16. Café Dela Spiga is a coffee shop and bar located outside but near to OPM/Poetry, inside The Forum Shops on property controlled by Caesars. Although Café Dela Spiga is inside The Forum Shops, it is a lessee of Caesars Palace.

17. Because of the efforts of the Caesars defendants, Café Dela Spiga ceased serving alcoholic beverages and began closing at or near midnight beginning on or about March 10, 2007.

18. Café Dela Spiga was not the cause of violent incidents inside The Forum Shops, Caesars Palace forum casino, or in the guest parking structure because those violent incidents continued unabated after March 10, 2007.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

4

19. A gang-related shooting occurred on August 4, 2007 inside Caesars Palace near the guest parking structure elevators at the rear of the forum casino. The perpetrator of that shooting entered Caesars from The Forum Shops Mall after patronizing or attempting to patronize OPM/Poetry. At the time the shooter exited from The Forum Shops premises, OPM/Poetry was the only business open in the mall.

20. In response to the shooting and other violent breaches of the peace, the Caesars defendants closed the Won door after regular Forum Shops business hours, beginning on Friday August 17, 2007 and with the exceptions of the weekends beginning Friday October 19, 2007, when extra security was provided by OPM/Poetry, and Friday December 21, 2007, when the door malfunctioned, Caesars closed the Won door on weekend nights after 1:00 a.m. from August 17, 2007 until OPM/Poetry closed on July 26, 2009. The Won door continues to be closed after The Forum Shops Mall regular business hours on weekends through today.

21. Caesars Palace closed the Won door because it was concerned about physical violence and other employee and guest-threatening security incidents occurring in The Forum Shops Mall, the forum casino, and the Caesars guest parking structure that were attributable to people going to or coming from OPM/Poetry nightclub. Caesars was also concerned about "Gangsta' Rap" as stated in the February 7, 2007 Gaming Control Board letter to all Nevada licensees.

22. The Caesars Defendants offered to, and on October 19, 2007, in fact did, keep the Won door open after hours because OPM/Poetry agreed to pay for the necessary additional security to do so.

23. There is no credible evidence that the defendants' actions were motivated by racism, racial animosity, or bias against African Americans or any other ethnic group, nor was there credible evidence that race was a factor in

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

5

Caesar's decision to close the Won door on weekends to promote guest and employee safety.

24. Because there was no contractual relationship between defendants and OPM/Poetry, the Caesars defendants had no obligation to provide or permit access to OPM/Poetry patrons through the Won door, or to allow OPM/Poetry to advertise on Caesars Palace property.

25. No evidence was presented that the Caesars defendants had any control over or contractual duty to provide air conditioning or valet parking to plaintiffs.

26. No evidence was presented that the Forum defendants had any contractual duty to provide air conditioning, valet parking, extra security or advertising to OPM/Poetry.

27. When the Won door was closed, Caesars Palace allowed OPM/Poetry patrons alternate access from the forum casino area into The Forum Shops Mall through a service entrance, which patrons entered from the west end of the forum casino near the guest parking structure elevator.

28. The Won door was not the only entrance into The Forum Shops Mall available to OPM/Poetry customers. Forum also permitted entry into and exit from The Forum Shops Mall through other service entrances, one of which was nearly adjacent to OPM/Poetry, and two entrances to the mall offering valet parking.

29. The closure of the Won door had no effect on Chinois' restaurant business, nor did the evidence show that closure of the door affected OPM/Poetry's business by reducing the number of patrons attracted to OPM/Poetry.

30. The closure of the Won door significantly diminished the customer- and security-threatening incidents in and about The Forum Shops, the forum casino and Caesars' guest parking structure areas on and after August 17, 2007.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

6

31. The defendants discussed lawful means to evict OPM/Poetry from The Forum Shops Mall, but they did not succeed in doing so. The closure of the Won door only cut off the casual strollers or unruly people who might get into an altercation on Forum Shops or Caesars Palace property. The closure of the Won door was not designed to and did not curb the hard-core patrons who wanted to go to OPM/Poetry.

32. OPM/Poetry operated and managed a high-end successful nightclub in Las Vegas during its years of operation from May 2003 through July 2009, when it closed because its lessor, Chinois, ceased doing business and declared bankruptcy.

33. There is no credible evidence that efforts of the defendants adversely affected patronage of OPM/Poetry. One Metropolitan Police Department witness testified that on the night of the first undercover operation in 2008, nearly a year after the Won door began to close at 1 a.m., the club was very busy, with 75-100 people waiting in line to gain admittance. Evidence derived from OPM/Poetry's expert Bryan Bass was to the effect that OPM/Poetry was successful in Las Vegas for five years prior to closing in 2009 because of its operating efficiency in a highly competitive and challenging economic environment, even after the closure of the Won door.

34. Evidence was presented by the plaintiffs that OPM/Poetry won a *Nightclub & Bar* Editor's award in 2009 because it was one of the top 100 nightclubs in the country based on revenue, two years after the Won door began closing at 1 a.m. on weekends.

35. Pure nightclub, which is located inside Caesars Palace between its sports book and main valet did not cause the violence in The Forum Shops Mall, the forum casino or Caesars guest parking garage that resulted in Caesars closing the Won door on weekend nights. Pure remained open and operating on its normal schedule after the Won door was closed on August 17, 2007. It has

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

continued to operate since OPM/Poetry closed. The evidence shows that violence in The Forum Shops, the forum casino and Caesars guest parking structure greatly abated after the Won door was closed and further decreased following OPM/Poetry's closing in July 2009.

36. Pure nightclub and OPM/Poetry nightclub are not similarly situated. While they both presented entertainment and alcoholic beverage service, Pure is much larger, attracts a larger audience than OPM, and is located on Caesars defendants' property, which means the Caesars Defendants control the security outside Pure nightclub. Pure, as a lessee of Caesars Palace, also generates significant income for Caesars, while OPM/Poetry did not.

37. Although there is evidence that the Caesars defendants and the Forum defendants worked together to seek OPM/Poetry's lawful removal from The Forum Shops Mall, there is no evidence that these actions were undertaken by unlawful means or were undertaken to further an unlawful purpose.

38. There is no credible evidence that plaintiffs suffered damages as a result of the defendants' actions.

39. The Won door was controlled by Caesars.

40. The Caesars defendants closed the Won door because OPM/Poetry would not pay for the additional security necessary to control pedestrian traffic to and from OPM/Poetry and thereby prevent its patrons from causing and engaging in fights and related physically-threatening incidents in the forum casino and Caesars. The door was not closed as a pretext to mask intentional racial discrimination by the defendants.

41. On July 26, 2009, Chinois ceased operations, closed its business and abandoned the leasehold premises.

42. On July 29, 2009, Chinois filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

43. Nowhere in Chinois' bankruptcy petition or accompanying schedules does Chinois assert that it has any claim against any of the defendants for money damages.

44. Chinois does not claim that any defendant was responsible in any way for its closing or its bankruptcy. The defendants had nothing to do with Chinois' decision to cease doing business and close. Chinois admits that it seeks no money damages from the defendants in this action.

45. The management agreement between Chinois and OPM/Poetry was terminated by Chinois, under the terms of that agreement, on July 26, 2009 when Chinois closed its business.

46. OPM/Poetry ceased doing business and closed because Chinois ceased doing business and abandoned the Premises. The closure of OPM/Poetry's business was not caused by any act or omission of any defendant.

47. OPM/Poetry did not have its own liquor or operating licenses and was operating under the licenses held by Chinois.

48. OPM/Poetry is not a party to the lease or the lease amendment.

49. None of the defendants did anything that caused OPM/Poetry to breach or sever any contractual relationship it had with Chinois. Chinois received all of the rights and benefits to which it was entitled under the management agreement.

50. None of the defendants did anything that caused Chinois to breach or sever any contractual relationship it had with OPM/Poetry. OPM/Poetry received all of the rights and benefits to which it was entitled under the management agreement.

51. None of the defendants engaged in any act or omission that was the proximate cause of any damages claimed by OPM/Poetry.

52. Defendant Forum Shops, LLC voluntarily dismissed its second amended counterclaim.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

53. If any finding of fact should more properly be deemed a conclusion of law, it shall be so deemed.

## CONCLUSIONS OF LAW

Based on the foregoing findings of fact, the court reaches the following conclusions of law:

### The Claims Asserted by Plaintiffs Against the Caesars Defendants

1. The Caesars defendants decision to close the Won door did not interfere with a contract or contract right of plaintiffs under the management agreement or any other contract in a manner that would support a claim for intentional racial discrimination under 42 U.S.C. § 1981 against the Caesars defendants (plaintiffs' fifth cause of action).

2. No other action of the Caesars defendants interfered with a contract or contract right of plaintiffs in a manner that would support a claim for intentional racial discrimination under 42 U.S.C. § 1981 against the defendants (plaintiffs' fifth cause of action).

3. Plaintiffs have not established a claim for breach of the implied covenant of good faith and fair dealing against Caesars defendants because Caesars is not a party to the management agreement or the Forum lease.

4. Plaintiffs have not produced direct evidence of discrimination sufficient to support a claim for intentional racial discrimination under 42 U.S.C. § 1981 against the Caesars defendants.

5. Plaintiffs have not established a *prima facie* case of discrimination sufficient to support a cause of action for intentional racial discrimination under 42 U.S.C. § 1981 against the Caesars defendants.

6. Plaintiffs do not have a claim for breach of the duty of good faith and fair dealing against the Caesars defendants because they are not and have never

10

been a party to a contract with the Caesars defendants (plaintiffs' eighth cause of action).

7. Pure nightclub and OPM/Poetry nightclub are not similarly situated for purposes of disparate treatment analysis under 42 U.S.C. § 1981.

8. Café Dela Spiga restaurant and OPM/Poetry nightclub are not similarly situated for purposes of disparate treatment analysis under 42 U.S.C. § 1981.

9. Plaintiffs have not established "disparate treatment" by the Caesars defendants under 42 U.S.C. § 1981.

10. The Caesars defendants did not conspire to unlawfully remove OPM/Poetry from Chinois or to unlawfully diminish its business (plaintiffs' seventh cause of action).

11. Plaintiffs have not established that the Caesars defendants' concern for the safety and security of their patrons and employees was a pretext to mask intentional racial discrimination against plaintiffs or their patrons under 42 § U.S.C. 1981.

12. Judgment should be entered in favor of the Caesars defendants and against plaintiffs on all claims asserted by them in this action.

### The Claims Asserted by Chinois Against the Forum Defendants

13. As a result of the closing of Chinois' business, abandonment of the premises and bankruptcy filing -- none of which had anything to do with any alleged acts or omissions by Forum -- Chinois' claims for declaratory judgment (first) and injunctive relief (fourth) are moot and should be dismissed with prejudice.

14. Each of Chinois' remaining causes of action require proof of damages as an essential element. Thomas Kaplan, Chinois' senior managing partner, admitted that Forum did nothing that caused Chinois any monetary injury. He also testified that Chinois is seeking no damages from Forum in this action. This

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

fact is affirmed (1) in the filings Chinois has made with the bankruptcy court which are devoid of any mention of this lawsuit or any claim Chinois may have against Forum and (2) in Chinois' responses to Forum's written discovery requests concerning damages where Chinois provided no information from which any damages to it could be calculated. Because Forum did nothing that caused Chinois to suffer any monetary damages or other legally compensable injury, Forum is entitled to judgment on all of Chinois' remaining causes of action (second, third, fifth, sixth, seventh and eighth).

15. When it filed for bankruptcy protection, Chinois had an affirmative duty to disclose to the bankruptcy court all assets, including all contingent and unliquidated claims. This would include the claims asserted in this action against Forum. The schedules filed by Chinois with the bankruptcy court listing all of its assets include no claims -- contingent, unliquidated or otherwise -- against Forum. Accordingly, Chinois is judicially estopped from asserting any claims against Forum in this action.

16. The tort of intentional interference with contract (Chinois' second cause of action) requires proof that Forum actually disrupted the contractual relationship to which Chinois was a party by inducing one of the parties to breach. Neither OPM/Poetry nor Chinois has ever asserted that the other breached the management agreement in any way and there is no evidence to suggest that Forum did anything that induced OPM/Poetry or Chinois to breach the contract in any way. As between OPM/Poetry and Chinois, the management agreement remained in full force and effect until it terminated as a matter of course when Chinois ceased doing business, abandoned the leasehold premises and declared bankruptcy.

17. Chinois did not establish that Forum intentionally interfered with any contract to which Chinois was a party.

18. No action of Forum interfered with a contract or contract right of

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Chinois in a manner that would support a claim for intentional racial discrimination under 42 U.S.C. § 1981 against the defendants (plaintiffs' fifth cause of action).

19. Chinois has not produced direct evidence of discrimination sufficient to support a claim for intentional racial discrimination under 42 U.S.C. § 1981 against Forum.

20. Chinois has not established a *prima facie* case of discrimination sufficient to support a cause of action for intentional racial discrimination under 42 U.S.C. § 1981 against Forum.

21. Chinois has not established "disparate treatment" by Forum under 42 U.S.C. § 1981.

22. Chinois has not established that Forum's concern for the safety and security of its patrons and employees was a pretext to mask intentional racial discrimination against Chinois or its patrons under 42 § U.S.C. 1981.

23. With respect to Chinois' sixth (breach of contract) and eighth (breach of implied covenant of good faith and fair dealing) claims, Chinois has failed to meet its evidentiary burden establishing that Chinois was damaged by any act or omission of Forum.

24. In Nevada, an actionable civil conspiracy (Chinois' seventh cause of action) consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another. Paragraph 98 of the complaint sets forth Chinois' claim for conspiracy:

> Defendants, and each of them, acted in concert, directly or through common agents, to exert dominion and control over the other defendants, and each of them, and through such dominion and control, furthered the unlawful objectives of (i) improperly invoking remedies under the Lease, including termination of the Lease; (ii) intentionally disrupting the contractual relationships between Chinois and O.P.M.L.V.; and (iii) improperly disrupting the contractual relationships between Chinois and O.P.M.L.V., on the one hand, and actual and prospective patrons of Chinois and O.P.M.L.V. on the other, all of which has caused and will continue to cause grave damage to plaintiffs.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

13

25. None of the three "unlawful objectives" that form the basis of Chinois' alleged conspiracy were accomplished. The lease was not terminated by Forum. It was terminated by Chinois for reasons that had nothing to do with Forum. Similarly, Forum did nothing that "disrupted" the contractual relationship between Chinois and OPM/Poetry. That relationship remained fully intact until it terminated as a matter of course when Chinois terminated the Lease with Forum, abandoned the leasehold premises and declared bankruptcy. There was no credible evidence suggesting that Forum interfered with any prospective patrons of OPM/Poetry.

26. With respect to Chinois' conspiracy claim, Chinois failed to meet its evidentiary burden to show that Forum intended to accomplish an unlawful objective for the purpose of harming Chinois.

27. Forum engaged in no act or omission that was the proximate cause of any damages suffered by Chinois in this case.

28. Judgment should be entered in favor of Forum and against Chinois on all claims asserted in this action by Chinois.

### The Claims Asserted by OPM/Poetry Against the Forum Defendants

29. OPM/Poetry's first (declaratory judgment) and fourth (injunctive relief) causes of action have been rendered moot by the closing of its business, which had nothing to do with any alleged acts or omissions by Forum.

30. The tort of intentional interference with contract (OPM/Poetry's second cause of action) requires proof that Forum actually disrupted the contractual relationship to which OPM/Poetry was a party by inducing one of the parties to breach. Neither OPM/Poetry nor Chinois has ever asserted that the other breached the management agreement in any way and there is no evidence to suggest that Forum did anything that induced OPM/Poetry or Chinois to breach the contract in any way. As between OPM/Poetry and Chinois, the management agreement remained in full force and effect until it terminated as a matter of course

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

when Chinois ceased doing business and abandoned the leasehold premises which, in turn, caused OPM/Poetry to cease doing business.

31. OPM/Poetry did not establish that Forum intentionally interfered with any contract to which OPM/Poetry was a party.

32. No action of Forum interfered with a contract or contract right of OPM/Poetry in a manner that would support a claim for intentional racial discrimination under 42 U.S.C. § 1981 against the defendants (plaintiffs' fifth cause of action).

33. OPM/Poetry has not established a claim for breach of the implied covenant of good faith and fair dealing against Forum defendants because the covenant exists by virtue of the lease and OPM/Poetry is not a party to the lease.

34. OPM/Poetry has not produced direct evidence of discrimination sufficient to support a claim for intentional racial discrimination under 42 U.S.C. § 1981 against Forum.

35. OPM/Poetry has not established a *prima facie* case of discrimination sufficient to support a cause of action for intentional racial discrimination under 42 U.S.C. § 1981 against Forum.

36. OPM/Poetry has not established "disparate treatment" by Forum under 42 U.S.C. § 1981.

37. OPM/Poetry has not established that Forum's concern for the safety and security of its patrons and employees was a pretext to mask intentional racial discrimination against OPM/Poetry or its patrons under 42 § U.S.C. 1981.

38. With respect to OPM/Poetry's sixth (breach of contract) and eighth (breach of implied covenant of good faith and fair dealing) claims, OPM/Poetry was not a party to the contract to which these claims pertain -- the lease between Forum and Chinois. OPM/Poetry and Forum are not parties to any contract with one another. There was no privity of contract between Forum and OPM/Poetry and OPM/Poetry has no standing to assert a breach of any provision in the lease

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

(including the implied covenant of good faith and fair dealing).

39. With respect to OPM/Poetry's sixth (breach of contract) and eighth (breach of implied covenant of good faith and fair dealing) claims, OPM/Poetry also has failed to meet its evidentiary burden establishing that it was damaged by any act or omission of Forum.

40. OPM/Poetry's § 1981 claim for racial discrimination (fifth) is based solely and explicitly on the "benefits or privileges" arising under the lease between Forum and Chinois. OPM/Poetry is not a party to that lease. Because OPM/Poetry is not a party to a contract with Forum, OPM/Poetry cannot assert a claim under § 1981 for racially-motivated loss of or interference with contractual rights. OPM/Poetry lacks standing to bring a § 1981 claim. Accordingly, Forum is entitled to judgment on OPM/Poetry's fifth cause of action.

41. Even if OPM/Poetry had standing to assert a claim under 42 U.S.C. § 1981 and could seek damages thereunder for interference with prospective business opportunities, OPM/Poetry failed to meet its evidentiary burden to show that Forum took any action against OPM/Poetry with discriminatory intent.

42. In Nevada, an actionable civil conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another. Paragraph 98 of the Complaint sets forth OPM/Poetry's claim for conspiracy and is set forth above.

43. As noted above, none of the three "unlawful objectives" that form the basis of OPM/Poetry's alleged conspiracy (OPM/Poetry's seventh cause of action) were accomplished. OPM/Poetry also failed to meet its evidentiary burden to show that Forum intended to accomplish an unlawful objective for the purpose of harming OPM/Poetry.

44. Forum engaged in no act or omission that was the proximate cause of any damages suffered by OPM/Poetry in this case.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

45.  Judgment should be entered in favor of Forum and against OPM/Poetry on all claims asserted against Forum in this action by OPM/Poetry.

46.  If any conclusion of law should more properly be deemed a finding of fact, it shall be so deemed.

Submitted by:

| MORRIS PETERSON | LIONEL SAWYER & COLLINS |
|---|---|
| By: /s/Jean-Paul Hendricks<br>Steve Morris, Bar No. 1543<br>Jean-Paul Hendricks, Bar No. 10079<br>900 Bank of America Plaza<br>300 South Fourth Street<br>Las Vegas, Nevada 89101<br><br>Attorneys for Defendants Caesars Palace Corporation and Caesars Palace Realty Corporation | By: /s/Charles McCrea<br>Samuel S. Lionel, Bar No. 1766<br>Charles H. McCrea, Jr., Bar No. 104<br>300 South Fourth Street, #170<br>Las Vegas, Nevada 89101<br><br>Attorneys for Defendants Forum Shops, LLC, Forum Developers Limited Partnership, Simon Property Group Limited Partnership, and Simon Property Group, Inc. |

Let Judgment enter accordingly.

DATED and DONE this 24th day of May, 2011.

*/s/ James C. Mahan*
U.S. DISTRICT COURT JUDGE

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

17